# EXHIBIT A
# TO SALA DECLARATION

\

Form **843**

(Rev November 2002)

Department of the Treasury
Internal Revenue Service

## Claim for Refund and Request for Abatement

▶ See separate instructions.

OMB No. 1545-0024

*Use Form 843 only if your claim involves (a) one of the taxes shown on line 3a or (b) a refund or abatement of interest, penalties, or additions to tax on line 4a*

*Do not use Form 843 if your claim is for –*

- *An overpayment of income taxes,*
- *A refund for nontaxable use (or sales) of fuel; or*
- *An overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290*

**Type or print**

| Name of claimant | Your SSN or ITIN |
|---|---|
| Carlos E. Sala & Tina M. Zanolini-Sala | –5554 |
| Address (number, street, and room or suite no ) | Spouse's SSN or ITIN |
| 2424 Ginny Way | –2453 |
| City or town, state, and ZIP code | Employer identification number (EIN) |
| Layfayette  CO  80026 | |
| Name and address shown on return if different from above | Daytime telephone number |
| | (206) 223-0800 |

**1** Period. Prepare a separate Form 843 for each tax period

From    01/01/2000    to    12/31/2000

**2** Amount to be refunded or abated

$1,571,087.92

**3a** Type of tax, penalty, or addition to tax:

☐ Employment    ☐ Estate    ☐ Gift    ☐ Excise (see instructions)

☐ Penalty -- IRC section    ▶

**b** Type of return filed  (see instructions):

☐ 706    ☐ 709    ☐ 940    ☐ 941    ☐ 943    ☐ 945    ☐ 990-PF    ☐ 4720    ☒ Other (specify) 6404g

**4a** Request for abatement or refund of:

☐ Interest caused by IRS errors or delays.

☐ A penalty or addition to tax as a result of erroneous advice from the IRS.

**b** Dates of payment   ▶ 9/20/04

**5 Explanation and additional claims.** Explain why you believe this claim should be allowed, and show computation of tax refund or abatement of interest, penalty, or addition to tax. If you need more space, attach additional sheets

See attached.

**Signature.**  If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the signature must be accompanied by the officer's title.

Under penalties of perjury, I declare that I have examined this claim. including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct. and complete

Signature (Title, If applicable  Claims by corporations must be signed by an officer )    Date  9-24-04

Signature    Date

For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.

DXA

Form **843** (Rev 11-2002)

**CARLOS E. SALA**
**TINA M. ZANOLINI-SALA**
SSNs:          -1554 and          -2453

Attachment to Form 843
Claim for Refund

Explanation.

    This request for refund rises out of an IRS assessment of interest in violation of the interest suspension rules of § 6404(g) of the Internal Revenue Code, and a related failure to pay penalty. On September 20, 2004, the taxpayers paid $1,571,087.92, the amount which was asserted by the Internal Revenue Service as additional interest due (and a related failure to pay penalty) on their income tax liability for the year 2000. Although the taxpayers believe that the IRS was in error, they paid the amount asserted. The taxpayers now wish to have that error rectified and are filing this claim for refund.

    The interest suspension rules of § 6404(g) of the Internal Revenue Code were enacted as part of the 1998 Taxpayer Bill of Rights. These rules provide that taxpayers are generally only obligated to pay interest for 18 months. If the IRS has not informed the taxpayers of a potential additional liability by that point in time (indicating the amount of a possible proposed adjustment), the taxpayer's obligation to pay interest is suspended until the time that the IRS provides the taxpayer with a notice which specifically sets out the taxpayers' potential liability.

    Here, the IRS had not provided any notice of an additional liability with respect to the 2000 income tax return until after the 18 month period expired. While the taxpayer paid 18 months worth of interest (from April 16, 2001 to October 16, 2002), the IRS erroneously continued to compute interest on the account October 16, 2002 until September 20, 2004.

    The text of § 6404(g)(1)(A) provides as follows:

        In the case of an individual who files a return of tax imposed by subtitle A for a taxable year on or before the due date for the return (including extensions), if the Secretary does not provide a *notice to the taxpayer specifically stating the taxpayer's liability and the basis for the liability* before the close of a 1-year period (18-month period in the case of

3

taxable years beginning before January 1, 2004) beginning on the later of –

(i)    the date on which the return is filed; or

(ii)    the due date of the return without regard to extensions,

*the Secretary shall suspend the imposition of any interest*, penalty, addition to tax or additional amount with respect to any failure relating to the return which is computed by reference to the period of time the failure continues to exist and which is properly allocable to the suspension period.

In November of 2003, the taxpayers filed an amended 2000 federal income tax return, showing additional tax due of $23,705,626, which was processed by the IRS on or about November 26, 2003. After consulting with tax professionals, the total amount paid by the taxpayers with the filing of the amended return, including interest, was $26,179,875. The interest paid with the November 2003 amended return was calculated by computing interest from the due date of the original 2000 return (April 16, 2001), through a date 18 months after that date, or October 16, 2002. The taxpayer's computations were in accord with the new interest suspension rules enacted by Congress in 1998.

In this case, the taxpayers' joint return was filed on or before April 16, 2001. Thus, if the taxpayers did not receive notice from the IRS stating their additional tax liability and the adjustments to their previously (and timely) filed tax return giving rise to the liability by October 16, 2002 (18 months from April 16, 2001), interest due with respect to any liability would be suspended until the date 21 days *after* they received notice. § 6404(g)(3)(B).

The taxpayers did not receive any communication from the IRS regarding adjustments to their income tax liability until the IRS provided notice of adjustments in a letter dated December 29, 2003. This Notice is attached to this letter as Exhibit A. The purpose of the December 29, 2003, Notice was to inform the Salas that the IRS had changed their account. This letter specifically stated that the taxpayers' account was changed to correct the following aspects of the account:

- total exemption amount
- schedule E income (or loss) [and]
- schedule A

4

The December 29, 2003 Notice reflects that the taxpayers owe additional tax in the amount of $23,705,626 because of these changes. This Notice is precisely the type of notice that operates to inform taxpayers of adjustment to their accounts and restart the suspended interest. In Significant Service Center Advice 200114033, IRS Counsel opinioned that the CP2000 Notice, sent out to taxpayers where information received by the IRS does not match what taxpayers report on their returns and proposing adjustments, qualifies as a notice for purposes of the interest suspension provisions. The CP2000 Notice, like the Notice at issue here, states the nature of the corrections and makes (or proposes) adjustments to the account.

The Notice received by the taxpayers also reflects that there was a credit in the taxpayers' account before this change of $52,359,750 (which, because of a processing error – later corrected - was two times the $26,179,875 paid by the taxpayer). The Notice also reflected an "increase in tax" of $23,705,626.

When the IRS Service Center computed interest on the account, it did not take into account the limitations of § 6404(g), and calculated interest due in the amount of $3,991,881.20. This additional interest included $2,474,248.74, which was interest due from April 16, 2001 through October 16, 2002, along with $1,517,632.46, which reflected interest due from October 16, 2002 through November 26, 2003. The IRS's computation of interest is incorrect, and the additional $1,517,632.46 in interest was not due and owing because of the operation of the interest suspension rules from October 16, 2002 to December 29, 2003.

In correspondence dated February 9, 2004 (attached hereto as Exhibit B), the IRS indicated that "additional interest" of $10,997.72 was being imposed on the account. However, the explanation attached to this letter indicates that the $10,997.72 was, in fact, a late payment penalty. If the amount reflects additional interest, it is not due and owing for the reasons stated above. If instead, the amount reflects a penalty for late payment, this penalty should be abated because the taxpayers certainly had "reasonable cause" to believe that their account had been paid in full.

Section 6651(a)(2) imposes a penalty for failure to file pay a tax, unless it is shown that such failures are due to reasonable cause and not due to willful neglect. Treas. Reg. § 301.6651-1(c)(1) states:

> If the taxpayer exercises ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is

5

> due to a reasonable cause. A failure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship (as described in Section 1.6161-1(b) of this chapter) if he paid on the due date.

Section 301.6651-1(c)(2) of the Treasury Regulations specifically notes that the "nature of the tax" is to be taken into account in determining the application of the penalty:

> In determining if the taxpayer exercised ordinary business care and prudence in providing for the payment of his tax liability, consideration will be given to the nature of the tax, which the taxpayer has failed to pay.

Here, the only amount asserted as outstanding by the IRS relates to interest, for which there is no liability because of the interest suspension provisions. No compliance goals would be achieved by collecting penalties from the taxpayers. In fact, quite the opposite would be true; the taxpayers have acted in a very responsible manner, computing and paying the full amount of tax and interest believed due, *prior* to receiving any communications from the IRS.

H:\S\Sala-White-03-10627\Documents\Attachment to form 843 2004-09-22.doc

Exhibit A

Department of the Treas
Internal Revenue Service
PHILADELPHIA, PA   19255-0010

Date of this notice:   DEC. 29, 2003
Taxpayer Identifying Number          -5554
Form: 1040          Tax Period:   DEC. 31, 2000

For assistance you may
call us at:

1-800-829-8374

CALLER ID:   733838

CARLOS E  SALA
2424 GINNY WAY
LAFAYETTE  CO   80026-9155248

FOR ACCOUNT OF CARLOS E SALA & TINA ZANOLINI-SALA
WE CHANGED YOUR ACCOUNT          18221-117-22147-1

AS YOU REQUESTED, WE CHANGED YOUR ACCOUNT FOR 2000 TO CORRECT YOUR TOTAL
EXEMPTION AMOUNT, SCHEDULE E INCOME (OR LOSS), AND SCHEDULE A.

IF YOU HAVE ANY QUESTIONS, PLEASE CALL US AT THE NUMBER LISTED ABOVE.

STATEMENT OF ACCOUNT

ACCOUNT BALANCE BEFORE THIS CHANGE                   $52,359,750.00CR

INCREASE IN TAX BECAUSE OF THIS CHANGE               23,705,626.00
INTEREST CHARGED                                      3,991,881.20

AMOUNT TO BE REFUNDED TO YOU IF
YOU OWE NO OTHER TAXES OR OTHER
DEBTS WE ARE REQUIRED TO COLLECT                     $24,662,242.80

WE WANTED TO ENSURE THAT BOTH YOU AND YOUR SPOUSE RECEIVE THIS NOTICE, SO
WE'VE SENT A COPY TO EACH OF YOU.  EACH COPY CONTAINS THE SAME INFORMATION
RELATED TO YOUR JOINT ACCOUNT.  ANY AMOUNT YOU OWE OR BALANCE DUE SHOWN
SHOULD BE PAID ONLY ONCE.  WE WILL ISSUE ANY REFUND SHOWN ONLY ONCE.

YOU MAY HAVE ALREADY RECEIVED THIS CHECK.  IF NOT, PLEASE ALLOW 2 WEEKS FOR
IT TO BE MAILED TO YOU, UNLESS THERE ARE OTHER MATTERS PENDING WHICH COULD POSTPONE
YOUR REFUND.

· PHILADELPHIA SERVICE ꟷ*Eꟷⁿ*                    -5554                    X PERIOD: DEC. 31, 2000

## EXPLANATION OF PENALTY AND INTEREST CHARGES

THE PENALTY AND INTEREST CHARGES ON YOUR ACCOUNT ARE EXPLAINED ON THE FOLLOWING
PAGES. IF YOU WANT A MORE DETAILED EXPLANATION OF YOUR PENALTIES AND INTEREST,
PLEASE CALL US AT THE TELEPHONE NUMBER LISTED ON THE TOP OF THIS NOTICE.

**\***   $3,991,881.20 INTEREST - IRC SECTION 6601

WE CHARGE INTEREST WHEN YOUR TAX ISN'T PAID ON TIME.  INTEREST IS
COMPUTED FROM THE DUE DATE OF YOUR RETURN (REGARDLESS OF EXTENSIONS)
UNTIL PAID IN FULL OR TO THE DATE OF THIS NOTICE.

INTEREST COMPOUNDS DAILY EXCEPT ON LATE OR UNDERPAID ESTIMATED TAXES FOR INDIVIDUALS
OR CORPORATIONS.  INTEREST IS ALSO CHARGED ON PENALTIES FOR LATE FILING, OVER OR
UNDERSTATING VALUATIONS, AND SUBSTANTIALLY UNDERSTATING THE TAX YOU OWE.

THE FOLLOWING TABLE SHOWS THE INTEREST CHARGES ON YOUR ACCOUNT.  IT MAY INCLUDE
AMOUNTS CHANGED BEFORE THIS ADJUSTMENT.  TO COMPUTE YOUR INTEREST WE USED
PRINCIPAL X FACTOR.

| From Date | To Date | Days | Rate | Factor | Principal | Interest |
|-----------|---------|------|------|--------|-----------|----------|
| 04/15/2001 | 06/12/2001 | 58 | 8.0% | 0.012792063 | 23705626.00 | 303243.86 |
| 06/12/2001 | 06/30/2001 | 18 | 8.0% | 0.003952564 | 24008869.86 | 94896.60 |
| 06/30/2001 | 12/31/2001 | 184 | 7.0% | 0.035914165 | 24103766.46 | 865666.64 |
| 12/31/2001 | 06/30/2002 | 181 | 6.0% | 0.030197962 | 24969433.10 | 754025.98 |
| 06/30/2002 | 12/31/2002 | 184 | 6.0% | 0.030706088 | 25723459.08 | 789866.80 |
| 12/31/2002 | 06/30/2003 | 181 | 5.0% | 0.025102720 | 26513325.88 | 665556.60 |
| 06/30/2003 | 09/30/2003 | 92 | 5.0% | 0.012681615 | 27178882.48 | 344672.12 |
| 09/30/2003 | 11/26/2003 | 57 | 4.0% | 0.006265781 | 27523554.60 | 172456.58 |
| 11/26/2003 | 12/05/2003 | 9 | 4.0% | 0.000986734 | 1516136.18 | 1496.02 |
| | | | | | Total Interest: | 3991881.20 |

**\***   ADDITIONAL INTEREST CHARGES

IF THE AMOUNT YOU OWE IS $100,000 OR MORE, PLEASE MAKE SURE THAT WE RECEIVE YOUR
PAYMENT WITHIN 10 WORK DAYS FROM THE DATE OF YOUR NOTICE.  IF THE AMOUNT YOU OWE IS
LESS THAN $100,000, PLEASE MAKE SURE THAT WE RECEIVE YOUR PAYMENT WITHIN 21 CALENDAR
DAYS FROM THE DATE OF YOUR NOTICE.  IF WE DON'T RECEIVE FULL PAYMENT WITHIN THESE
TIME FRAMES, THE LAW REQUIRES US TO CHARGE INTEREST UNTIL YOU PAY THE FULL AMOUNT
YOU OWE.

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

WE'RE MAKING AN ADJUSTMENT TO YOUR ACCOUNT.  YOU WILL RECEIVE A SEPARATE NOTICE
EXPLAINING THE CORRECTION.

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

HELPFUL HINT:  FOR FASTER SERVICE, TRY CALLING US ANY DAY EXCEPT MONDAY WHEN OUR
CALL VOLUMES ARE HIGHEST.

PHILADELPHIA SERVICE CENT                    -5554                    PERIOD:  DEC. 31, 2000

URN THIS PART TO US WITH YOUR CHECK OR INQUIRY
IR TELEPHONE NUMBER         BEST TIME TO CALL
)

REFUND AMOUNT...............$24,662,242.8

0,420,294   60,015,736           0

8221117221471

00351   09              18254-745-20073-3

INTERNAL REVENUE SERVICE              CARLOS E  SALA
PHILADELPHIA,  PA   19255-0010         2424 GINNY WAY
                                       LAFAYETTE  CO    80026-9155248

|ıııllhlıııhlılılıbbllııllıııııllllıılııll

256155554 ZD SALA 30 0 200012

11

Exhibit B

**IRS** Department of the Treasury
Internal Revenue Service
OGDEN, UT  84201-0030

0( '98      200012 SBW

ᵃ Number: CP 504
Notice Date:  02-09-2004

**SSN/EIN:**          -5554
**Caller ID:**  864024

7178 2665 9398 2800 5680

CARLOS E SALA
2424 GINNY WAY
LAFAYETTE  CO    80026-9155248

*256155554101*

)6

# Urgent !!

**We intend to levy on certain assets.  Please respond NOW.**

(To avoid additional penalty and interest, pay the amount you owe within ten days from the date of this notice.)

Our records indicate that you haven't paid the amount you owe.  The law requires that you pay your tax at the time you file your return.  This is your notice, as required by Internal Revenue Code Section 6331(d), of our intent to levy (take) any state tax refunds that you may be entitled to if we don't receive your payment in full.  In addition, we will begin to search for other assets we may levy.  We can also file a Notice of Federal Tax Lien, if we haven't already done so. **To prevent collection action, please pay the current balance now.**  If you've already paid, can't pay, or have arranged for an installment agreement, it is important that you **call us immediately** at the telephone number shown below.

## Account Summary

| Form: 1040 | Tax Period: 12-31-2000 |
|---|---|

| | |
|---|---|
| Current Balance: | $1,528,629.92 |
| Includes: | |
| Penalty: | $0.00 |
| Interest: | $10,997.72 |
| Last Payment: | $0.00 |

For information on your penalty & interest computations, you may call 1-800-829-8374

Questions?  Call us at 1-800-829-8374

See the enclosed Publication 594, The IRS Collection Process, and Notice 1219B, Notice of Potential Third Party Contact, for additional information.

lease mail this part with your payment, payable to United States Treasury.

Notice Number: CP 504
Notice Date: 02-09-2004

write on your check:

| 1040 | 12-31-2000 | -5554 |
|---|---|---|

| Amount Due: |
|---|
| $1,528,629.92 |

Internal Revenue Service
OGDEN, UT  84201-0030

CARLOS E SALA
2424 GINNY WAY
LAFAYETTE  CO    80026-9155248

I₂

,155554 ZD SALA 30 0 200012 670 00152862992

# Penalty and Interest

About Your Notice - The penalty and interest charges on your account are explained below. If you want a more detailed explanation of your penalties and interest, please call the telephone number listed on the front of this notice. You may call your local IRS telephone number if the number shown on your notice is a long-distance call for you. All days mentioned in the paragraphs below are calendar days, unless specifically stated otherwise.

## Penalty:   $10,997.72

### 07 Paying Late

### IRC section 6651 (a) (2)

We charged a penalty because you didn't pay your tax on time. Initially, the penalty is 1/2 % of the unpaid tax for each month or part of a month you didn't pay your tax.

If you think we should remove or reduce the penalty, see "Removal of Penalties - Reasonable Cause."

### Removal of Penalties - Reasonable Cause

The law lets us remove or reduce the penalties explained in this notice if you have an acceptable reason. If you believe you have an acceptable reason, you may send us a signed statement explaining your reason. We'll review it and let you know if we accept your explanation as reasonable cause to remove or reduce your penalty. This procedure doesn't apply to interest and, in some cases, we may ask you to pay the tax in full before we reduce or remove the penalty for paying late.

### Erroneous Written Advice from IRS

We'll also remove your penalty if:

- you wrote to IRS and asked for advice on a specific issue,
- you gave IRS complete and accurate information,
- IRS wrote back to you and gave you a specific course of action to take or explained what actions not to take,
- you followed our written advice in the manner we outlined, and
- you were penalized for the written advice we gave you.

To have the penalty removed because of erroneous written advice from IRS, you should:

- complete Form 843, Claim for Refund and Request for Abatement,
- request that IRS remove the penalty, and

# EXHIBIT B
# TO SALA DECLARATION

 **IRS** Department of the Treasury
Internal Revenue Service

AUSTIN  TX  73301-0025

In reply refer to:  0635609454
Mar. 18, 2005    LTR 86C
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  200012 30 000   1
                              01612
                    BODC: SB



CARLOS E SALA & TINA ZANOLINI-SALA
% CORI FLANDERS-PALMER ATTY
1011 WESTERN AVE STE 803
SEATTLE  WA  98104-1083

RECEIVED
MAR 2 2 2005
CHICOINE & HALLETT

2974

Taxpayer Identification Number:      -5554
            Tax Period(s):  Dec. 31, 2000

Form:  1040

Dear Taxpayer:

Thank you for the inquiry of Feb. 24, 2005.

We have forwarded your claim to our Examination Department for
consideration.  You will be contacted when a decision has been made.

If you have any questions, please call us toll free at 1-800-829-0922.

If you prefer, you may write to us at the address shown at the top
of the first page of this letter.

Whenever you write, please include a copy of this letter with your
response.  Use the space below to indicate a telephone number and
the best time for us to call you should we need more information.
Keep a copy of this letter and any information that you send to us
for your records.

Telephone Number (    )_____  Hours_____

2

# EXHIBIT C
# TO SALA DECLARATION

Form **1040X**
(Rev. November 2003)

Department of the Treasury—Internal Revenue Service

## Amended U.S. Individual Income Tax Return
► See separate instructions.

OMB No. 1545-0091

This return is for calendar year ► 2000 , or fiscal year ended ►

| | | |
|---|---|---|
| Your first name and initial **CARLOS E.** | Last name **SALA** | Your social security number :5554 |
| If a joint return, spouse's first name and initial **TINA M.** | Last name **ZANOLINI-SALA** | Spouse's social security number :2435 |
| Home address (no. and street) or P.O. box if mail is not delivered to your home **2424 GINNY WAY** | Apt. no. | Phone number ( ) |
| City, town or post office, state, and ZIP code. If you have a foreign address, see page 2 of the instructions. **LAFAYETTE  CO, 80026** | | For Paperwork Reduction Act Notice, see page 6. |

**A** If the name or address shown above is different from that shown on the original return, check here . . . . . . ► ☐

**B** Has the original return been changed or audited by the IRS or have you been notified that it will be? . ☑ Yes ☐ No

**C** Filing status. Be sure to complete this line. **Note.** You cannot change from joint to separate returns after the due date.

On original return ► ☐ Single ☑ Married filing jointly ☐ Married filing separately ☐ Head of household ☐ Qualifying widow(er)

On this return ► ☐ Single ☑ Married filing jointly ☐ Married filing separately ☐ Head of household* ☐ Qualifying widow(er)

* If the qualifying person is a child but not your dependent, see page 2.

### Use Part II on the back to explain any changes

| | **Income and Deductions (see pages 2–6)** | | A. Original amount or as previously adjusted (see page 2) | B. Net change—amount of increase or (decrease)—explain in Part II | C. Correct amount |
|---|---|---|---|---|---|
| **1** | Adjusted gross income (see page 3) . . . . . . . | **1** | 60,420,294 | (60,393,913) | 26,381 |
| **2** | Itemized deductions or standard deduction (see page 3). . | **2** | 348,487 | 1,655,814 | 2,004,301 |
| **3** | Subtract line 2 from line 1 . . . . . . . | **3** | 60,071,807 | (62,049,727) | (1,977,920) |
| **4** | Exemptions. If changing, fill in Parts I and II on the back | **4** | 0 | 5,600 | 5,600 |
| **5** | Taxable income. Subtract line 4 from line 3 . . . . . . . | **5** | 60,071,807 | (62,055,327) | (1,983,520) |
| **6** | Tax (see page 4). Method used in col. C............. | **6** | 23,727,830 | (23,727,830) | 0 |
| **7** | Credits (see page 4) . . . . . . . . . . | **7** | | | |
| **8** | Subtract line 7 from line 6. Enter the result but not less than zero . | **8** | 23,727,830 | (23,727,830) | 0 |
| **9** | Other taxes (see page 4) . . . . . . . . | **9** | | | |
| **10** | Total tax. Add lines 8 and 9 . . . . . . . . | **10** | 23,727,830 | (23,727,830) | 0 |
| **11** | Federal income tax withheld and excess social security and tier 1 RRTA tax withheld. If changing, see page 4 . . . . | **11** | 14,498,658 | | 14,498,658 |
| **12** | Estimated tax payments, including amount applied from prior year's return . . . . . . . . | **12** | | | |
| **13** | Earned income credit (EIC) . . . . . . . | **13** | | | |
| **14** | Additional child tax credit from Form 8812 . . . . | **14** | | | |
| **15** | Credits from Form 2439, Form 4136, or Form 8885 . . | **15** | | | |
| **16** | Amount paid with request for extension of time to file (see page 4) . . | **16** | | | |
| **17** | Amount of tax paid with original return plus additional tax paid after it was filed . . . . | **17** | | | 23,727,830 |
| **18** | Total payments. Add lines 11 through 17 in column C . . . . . . . . . | **18** | | | 38,226,488 |

### Refund or Amount You Owe

| | | | |
|---|---|---|---|
| **19** | Overpayment, if any, as shown on original return or as previously adjusted by the IRS . . . | **19** | 14,498,658 |
| **20** | Subtract line 19 from line 18 (see page 5) . . . . . . . . . . | **20** | 23,727,830 |
| **21** | **Amount you owe.** If line 10, column C, is more than line 20, enter the difference and see page 5 . | **21** | |
| **22** | If line 10, column C, is less than line 20, enter the difference . . . . . . . | **22** | 23,727,830 |
| **23** | Amount of line 22 you want **refunded to you** . . . . . . . . . | **23** | 23,727,830 |
| **24** | Amount of line 22 you want applied to your estimated tax | 24 | |

**Sign Here**
Joint return?
See page 2.
Keep a copy for your records.

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which the preparer has any knowledge.

Your signature          *[signature]* 8/25/04        Spouse's signature. If a joint return, both must sign. *[signature]* 8.25.04

**Paid Preparer's Use Only**

| | | | | |
|---|---|---|---|---|
| Preparer's signature *[signature]* | Date 9/13/04 | Check if self-employed ☑ | Preparer's SSN or PTIN 6623 | |
| Firm's name (or yours if self-employed), address, and ZIP code | *Cori Flanders-Palmer* *13132 SW Pl NE Kirkland, WA 98034* | | EIN | Phone no. (425) 823-9216 |

Cat. No. 11360L

Form **1040X** (Rev. 11-2003)

2

Form 1040X (Rev. 11-2003)

Page **2**

| **Part I** | **Exemptions.** See Form 1040 or 1040A instructions. | | **A. Original number of exemptions reported or as previously adjusted** | **B. Net change** | **C. Correct number of exemptions** |
|---|---|---|---|---|---|
| | If you are **not changing your exemptions,** do not complete this part. | | | | |
| | If claiming **more exemptions,** complete lines 25–31. | | | | |
| | If claiming **fewer exemptions,** complete lines 25–30. | | | | |
| 25 | Yourself and spouse | 25 | 2 | | 2 |
| | **Caution.** If your parents (or someone else) can claim you as a dependent (even if they chose not to). you cannot claim an exemption for yourself. | | | | |
| 26 | Your dependent children who lived with you | 26 | | | |
| 27 | Your dependent children who did not live with you due to divorce or separation | 27 | | | |
| 28 | Other dependents | 28 | | | |
| 29 | Total number of exemptions. Add lines 25 through 28 | 29 | 2 | | 2 |
| 30 | Multiply the number of exemptions claimed on line 29 by the amount listed below for the tax year you are amending. Enter the result here and on line 4. | 30 | 0 | 5,600 | 5,600 |

But see the instructions for line 4 on page 3 if the amount on line 1 is over:

| Tax year | Exemption amount | |
|---|---|---|
| 2003 | $3,050 | $104.625 |
| 2002 | 3.000 | 103.000 |
| 2001 | 2.900 | 99.725 |
| 2000 | 2.800 | 96.700 |

31  Dependents (children and other) not claimed on original (or adjusted) return:

| (a) First name   Last name | (b) Dependent's social security number | (c) Dependent's relationship to you | (d) ✓ if qualifying child for child tax credit (see page 5) |
|---|---|---|---|
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |

No. of your children on line 31 who:
• lived with you  ☐
• did not live with you due to divorce or separation (see page 5). ▶  ☐
Dependents on line 31 not entered above ▶  ☐

| **Part II** | **Explanation of Changes to Income, Deductions, and Credits** |
|---|---|

Enter the line number from the front of the form for each item you are changing and give the reason for each change. Attach only the supporting forms and schedules for the items changed. If you do not attach the required information, your Form 1040X may be returned. Be sure to include your name and social security number on any attachments.

If the change relates to a net operating loss carryback or a general business credit carryback, attach the schedule or form that shows the year in which the loss or credit occurred. See page 2 of the instructions. Also, check here   ▶  ☐

PLEASE SEE ATTACHED

| **Part III** | **Presidential Election Campaign Fund.** Checking below will not increase your tax or reduce your refund. |
|---|---|

If you did not previously want $3 to go to the fund but now want to, check here   ▶  ☐
If a joint return and your spouse did not previously want $3 to go to the fund but now wants to, check here   ▶  ☐

Form **1040X** (Rev. 11-2003)

3

Carlos E. Sala & Tina M. Zanolini-Sala
2000 Form 1040X, Amended U.S. Individual Tax Return
Schedule 1

Part II - Explanation of Changes to Income, Deductions, and Credits

In November of 2003, Carlos E. Sala and Tina M. Zanolini-Sala ("Taxpayers") filed an amended return for their 2000 Joint Federal Income Tax Return in response to Treasury's promulgation of Section 1.752-6T of the Treasury Regulations, a regulation that was issued subsequent to the filing of the Taxpayers' original tax return. Following the mandate of the temporary regulation, Taxpayers reduced Schedule E losses by $60,393,913. The total amount paid with the filing of the Form 1040X for the year 2000 in November 2003, including interest, was $26,179,875.

Subsequently, in 2004, the IRS opened an audit on Taxpayers' 2000 Joint Federal Income Tax Return and issued a Notice of Deficiency, asserting a deficiency in tax in the amount of $22,204, and penalties in the amount of $4,440.80. A copy of the Notice of Deficiency is attached hereto as Exhibit A. Thereafter, Taxpayers executed a Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment, Form 870. The asserted deficiency, plus interest, was subsequently assessed, and, on June 30, 2004, Taxpayers subsequently paid the entire asserted deficiency in tax and penalties, plus interest, for a total payment of $31,987.23.

Having reviewed the matter, Taxpayers have determined that the Schedule E losses reflected on the original return (filed in April 2001) were accurately computed based on the Internal Revenue Code of 1986 ("the Code"). Therefore, Taxpayers are now filing this claim to recover the $26,179,875 paid with the filing of the 2000 amended return in 2003, and the $31,987 paid in response to the IRS' Notice of Deficiency issued in June of 2004. Taxpayers hereby claim a refund of the tax, penalties, and interest paid, together with interest and other amounts allowed by law.

Line 1

Facts: Taxpayer Carlos Sala ("Taxpayer") entered into positions in foreign currencies, including long and short foreign currency options. Taxpayer formed a wholly owned S-Corporation known as Solid Currencies, Inc. ("Solid Currencies"). Taxpayer was the sole shareholder of Solid Currencies and contributed his positions in foreign currency, including the long and short currency options, to Solid Currencies, at the time of that corporation's formation. Subsequently, Solid Currencies contributed its assets, including foreign currency and the long and short foreign currency options, to Deerhurst Investors General Partners ("Deerhurst Investors GP"), a domestic pooled investment entity that was treated as a partnership for tax purposes.

The call options purchased on foreign currencies (hereinafter, the "Long Options) had a cost basis of $60,987,866.79. While significant premium had been

1

received by Taxpayer when he sold call options ("Short Options") at the time of the transfer, the Short Options were out-of-the-money (options that would be worthless if they expired at that time) on the date of contribution to Solid Currencies.

In December 2000, Solid Currencies received a distribution of foreign currency in exchange for its partnership interest in Deerhurst Investors GP. Solid Currencies in turn converted the foreign currency into dollars and distributed the proceeds to its shareholders in liquidation. Taxpayer then contributed the proceeds, along with additional monies, to another investment fund, Deerhurst Trading Strategies, LLC, and has retained his interest in that fund, or its affiliates, to the present date.

The Tax Return

On Taxpayers' original 2000 tax return, they reported a Schedule E loss, related to Solid Currencies' loss on the conversion of certain foreign currency in the amount of $60,393,913. Deerhurst Investors GP also paid investment management and performance fees. Solid Currencies share of these fees (as a partner) was $56,021; this amount was likewise passed through to Taxpayer as the sole shareholder of Solid Currencies. Solid Currencies also paid a $50 corporate registration fee.

As set forth in the discussion below, in determining the basis in the foreign currency that it received on the liquidation of its interest in Deerhurst Investors GP, Solid Currencies was required to take a transferred basis, which was measured by Solid Currencies' basis in its partnership interest in Deerhurst Investors GP. Solid Currencies then realized a net loss on the conversion of the foreign currency into US Dollars that was reported on Solid Currencies tax return, which in turn passed through to Taxpayers' 2000 Joint Income Tax Return.

Grounds Relied Upon by the Taxpayers

**Taxpayers' Basis in Options**

The amount of option premium paid, plus any fees or other costs associated with acquiring an option, is included in the taxpayer's basis in an option pursuant to Rev. Rul. 78-182. The Long Options had a cost basis of $60,987,866.79.

**Taxpayers' Basis in Solid Currencies' Stock**

Section 351 of the Internal Revenue Code generally provides for nonrecognition of gain or loss on the transfer of property to a controlled corporation. Section 358(a) of the Code provides that, in a transaction to which section 351 applies, a shareholder's basis of stock received in a section 351 exchange equals the shareholder's basis in the property exchanged. In other words, a shareholder will hold the same basis in the newly received corporate stock as it had in the transferred property. Likewise, the transferee corporation will take the contributed property at the shareholder's adjusted basis. As discussed above, Taxpayer's basis in the property transferred to Solid

5

2

Currencies includes the premiums paid and costs incurred in purchasing the Long Options.

Section 358(d) provides that a transferor's basis is reduced by the amount of any liabilities assumed by the corporation in connection with the transfer of property in a section 351 transaction. Taxpayers also transferred the Short Options to Solid Currencies. When Taxpayers transferred the Short Options to Solid Currencies, they were out-of-the money.

For the Short Options to become a fixed liability, the option would have to move in-the-money and remain in-the-money at the time designed for exercise. There was, therefore, a significant probability that out-of-the money options would expire worthless, resulting in no obligation on the part of the option seller. Thus, it was highly speculative and contingent whether the Short Options would result in an actual liability.

A short option holder ordinarily does not know whether he will ever be called on to perform under the obligation. In Field Service Advice 199904033, the IRS took the position that a call option would be deemed an obligation to sell under section 246(c)(3) of the Code in a situation where the option's strike price was so deep-in-the-money that it was virtually guaranteed that the option will be exercised. It is clear that Taxpayer's out-of-the money options were neither guaranteed, nor even likely to be exercised, thus, economically, not equivalent to a liability.

In 2000, Congress added section 358(h) to the Code, as part of the Community Renewal Tax Relief Act of 2000 (Pub. L. 106-554, 114 Stat. 2763). This new subsection provides rules that reduce a transferor's basis in stock received in a section 351 transaction under certain situations. If section 358(h) is applicable, it reduces shareholder basis by the "amount" of any liabilities (including any contingent liabilities) with respect to which the normal rules governing assumption of liabilities do not apply. For purposes of this reduction, the "amount" of any liability is determined "as of the date of the exchange." In this case, the Short Options were "out of the money" on the date of the transfer, and therefore the "amount" of the contingent liability with respect to the Short Options would be zero. Therefore, there is no reduction in basis pursuant to section 358(h).

Moreover, there are exceptions to the rule reducing basis by the amount of contingent liabilities, and this reduction is not required if either: (1) the trade or business with which the liability is associated is transferred to the person assuming the liability as part of the exchange; or (2) substantially all of the assets with which the liability is associated are transferred to the person assuming the liability as part of the exchange. The Joint Committee Explanation of this provision states, "[T]he exception for transfers of a trade or business or substantially all of the assets, with which the liability is associated, are intended to obviate the need for valuation or basis reduction

3

in such cases." In this case, the statutory exception is applicable to Taxpayer's transfer of all of his foreign currency and foreign currency options to Solid Currencies.

**Solid Currencies' Basis in its Partnership Interest in Deerhurst Investors GP**

Under section 721(a) of the Code and Treas. Reg. § 1.721-1, generally no gain or loss is recognized by either the partnership or any partner in the case of a contribution of property to the partnership in exchange for a partnership interest. Accordingly, the transfer of the options from Solid Currencies to Deerhurst Investors GP in exchange for an interest in Deerhurst Investors GP does not constitute a taxable event to either Deerhurst Investors GP or Solid Currencies. Under section 722 of the Code, a partner's basis in its partnership interest is equal to the amount of money plus the adjusted basis of the property contributed by the partner to the partnership, increased by the amount of gain, if any, recognized by the partner on the contribution. Under section 752(b) of the Code, the amount of a partner's liabilities assumed by the partnership are treated a distribution of money to the partner, effectively reducing basis.

Thus, Solid Currencies' basis in Deerhurst Investors GP would be equal to the adjusted basis of the property it transferred to Deerhurst Investors GP. As discussed above, Solid Currencies' basis in the option positions was in turn measured by Taxpayer's adjusted basis in the property (including the Long Options) received from Taxpayer.

The Tax Court addressed the issue of whether the seller of an option is considered to have a "liability" for purposes of section 752(b) in *Helmer v. Commissioner*, T.C. Memo. 1975-160. In that case, the government argued, and the Tax Court agreed, that an option issued for the purchase of property did not constitute a liability for purposes of section 752. *Helmer* made clear that the government and the Tax Court viewed contingent liabilities as something other than a "liability" for purposes of section 752. *Also see, Long v. Commissioner,* 71 T.C. 1, 7-8 (1978), *aff'd and remanded*, 660 F.2d 416 (10th Cir. 1981); *La Rue v. Commissioner*, 90 T.C. 465, 479 (1988).

The Tax Court approved and reaffirmed *Helmer* in *Salina Partnership, LP v. Commissioner*, T.C. Memo. 2000-352. In *Salina*, the Tax Court treated an obligation by the taxpayer to perform under a short sale as a liability for purposes of section 752. The *Salina* court recognized the general rule set out in *Helmer* that a contingent obligation under an option did not generally constitute a liability under section 752, while holding open the possibility that if any performance (additional payments or provision of services) were required of the option seller, the obligation might be treated as a liability under section 752. Here, again, whether any performance might be required under the Short Options was entirely speculative.

7

### The Purportedly Retroactive Temporary Regulation Under Section 752

When Congress enacted section 358(h) as part of the Community Renewal Act of 2000, it also provided that Treasury was authorized to adopt "appropriate adjustments under Subchapter K of Chapter 1 of the Code to prevent the acceleration or duplication of losses through the assumption of (or transfer of assets subject to) liabilities prescribed in I.R.C. § 358(h)(3) ... in transactions involving partnerships." Section 309(c), Pub.L. 106-554, 114 Stat. 2763.

Ultimately in June of 2003, the IRS adopted regulations generally governing the application of the rules for contingent liabilities set out in section 358(h) to partnerships. Specifically, Treasury adopted both Prop.Reg. § 1.752-7 and Temp.Reg. § 1.752-6T. While the rules set out in Prop.Reg. § 1.752-7 are generally applicable to all partnerships, Temp.Reg. § 1.752-6T is aimed at a narrow class of transactions, and applies an intentionally circumscribed version of the rules of section 358(h) to partnerships for the sole purpose of disallowing benefits claimed by certain taxpayers and improving the IRS's litigation position. The Temporary Regulation is purportedly retroactive in effect, affecting transactions dating after October 19, 1999.

Like section 358(h), the Temp.Reg. § 1.752-6T provides for a reduction in basis under section 752 by the amount of any contingent liability. Just as in section 358(h), the "amount" of any liability is determined "as of the date of the exchange." As set out above, the Short Options contributed by Solid Currencies were "out-of-the-money" on the date of the transfer to Deerhurst Investors GP, and therefore the amount of the contingent liability with respect to the Short Options would be zero.

The provisions of Temp.Reg. § 1.752-6T provide that rules similar to those set out in section 358(h) apply to partnerships. However, the Temporary regulation expressly provides that the exception — seout in section 358(h)(2)(B), (providing that contingent liabilities are not to be taken into account if the assets associated with the liabilities are contributed to a corporation), does not apply to partnership transactions that are similar to those described in IRS Notice 2000-44. This temporary regulation is invalid for four reasons. First, it is an impermissible attempt to use retroactive rulemaking authority solely to bolster the IRS' litigation position with respect to transactions described in Notice 2000-44. Second, without any analytic justification, the regulation improperly denies the explicit exceptions to the inclusion of contingent liabilities adopted by Congress in section 358(h) for corporations for a limited class of transactions involving partnerships. Third, while section 309(c) of the 2000 Act provided Treasury with the authority to adopt rules to prevent "the acceleration or duplication of losses," the Temporary Regulation goes far beyond the scope, purportedly affecting transactions, such as this one, which have nothing to do with "the acceleration or duplication of losses." Fourth, while the intent of the statutory grant of authority was to provide that Treasury could adopt rules governing the peculiar interplay which arises when partnerships are shareholders of corporations involved in section 351 and similar nonrecognition transactions, the Temporary Regulation

impermissibly extended the rules of section 358 to apply to transactions solely involving partnerships.

## Solid Currencies' Loss on the Conversion of Foreign Currency

Upon the liquidation of the Deerhurst Investors GP, Solid Currencies received a liquidating distribution of foreign currency with a value equal to the then value of Solid Currencies partnership interest. Section 731(a) of the Code provides that a partner does not recognize gain on the distribution of property from a partnership, except to the extent that the cash received exceeds the partner's adjusted basis, and loss can only be recognized if the distribution consists solely of money, unrealized receivables, and inventory. While the term "money" ordinarily includes "marketable securities," which in turn includes "foreign currency" (Section 731(c)(2)), in the case of investment partnerships, such as Deerhurst Investors GP, no gain or loss is recognized on the distribution of marketable securities (including foreign currency) to partners. Section 731(c)(3)(A)(iii). If a partner in an investment partnership receives a liquidating distribution consisting of foreign currency, the partner takes this property with a basis measured by his adjusted basis in the partnership. Section 732(b). Thus, when Solid Currencies received foreign currency from Deerhurst Investors GP in liquidation of its interest in Deerhurst Investors GP, it also received a basis in that foreign currency measured by its basis in the Deerhurst Investors GP.

Section 988(a)(1)(A) of the Code provides that any foreign currency gain or loss is computed separately and treated as ordinary income or loss. When Solid Currencies disposed of the foreign currency, it recognized an ordinary loss measured by the difference between its basis in the foreign currency (which was measured by its adjusted basis in Deerhurst Investors GP), and the sales price of the foreign currency. It is this loss which is passed through to Solid Currencies' shareholder (Taxpayer), and taken into account on this Form 1040X Claim for Refund.

<u>Line 2</u>

The increase in Taxpayers' adjusted gross income due to the disallowance of claimed basis resulted in the disallowance of a portion of Taxpayers' claimed itemized deductions. Because the increase in adjusted gross income was without merit (and is being reversed on this amended return), the limitation on the itemized deductions likewise must be reversed.

The IRS also improperly disallowed the investment management and performance fees paid to Deerhurst Investors GP, as well as the corporate registration fee paid by Solid Currencies, in its June 2004, Notice of Deficiency. The management and performance fees were negotiated, market-rate fees paid to the professionals who managed the investments. In excess of half of the fees were incentive fees, based entirely on the performance of the investments. These fees were clearly ordinary and necessary expenses. Likewise, the corporate registration fee was also clearly allowable.

The IRS imposition of an accuracy related penalty with respect to the deduction for these fees was likewise completely unwarranted, as Taxpayers acted with reasonable cause and good faith, relying upon the advice of professionals.

10

**Department of the Treasury**
**Internal Revenue Service**
SB/SE (Compliance), Area 3
Technical Services, Room 5202
600 Arch Street
Philadelphia, PA 19106

Date:

JUN 18 2004

Carlos E. Sala & Tina M. Zanolini-Sala
2424 Ginny Way
Lafayette, CO 80026-9155

Letter Number: 531(DO)

Form Number:
  1040

Taxpayer Identifying Number:
  -5554

Person to Contact:
  Ms. G. Washington, 90 Day Manager

Telephone Number:
  (215) 861-1188

Employee Identification Number:
  23-06046

Refer Reply To:
  Technical Services: 90 Day

Last Day to File a Petition With
the United States Tax Court:

SEP 15 2004

CERTIFIED MAIL

| Tax Year Ended: | December 31, 2000 |
| --- | --- |
| Deficiency: | |
| Increase in tax | $22,204.00 |
| Penalties or Additions to Tax | |
| IRC § 6662(a) | $4,440.80 |

Dear Taxpayer(s):

### NOTICE OF DEFICIENCY

    We have determined that you owe additional tax or other amounts, or both, for the tax year(s) identified above. This letter is your NOTICE OF DEFICIENCY, as required by law. The enclosed statement shows how we figured the deficiency.

    If you want to contest this determination in court before making any payment, you have 90 days from the date of this letter (150 days if this letter is addressed to you outside of the United States) to file a petition with the United States Tax Court for a redetermination of the deficiency. You can get a copy of the rules for filing a petition and a petition form you can use by writing to the address below.

    United States Tax Court, 400 Second Street, NW, Washington, DC 20217

    The Tax Court has a simplified procedure for small tax cases when the amount in dispute for each tax year is $50,000 or less. If you intend to file a petition for multiple tax years and the amount in dispute for any one or more tax years exceeds $50,000, this simplified procedure is not available to you. If you use this simplified procedure, you cannot appeal the Tax Court's decision. You can get information pertaining to the simplified procedure for small cases from the Tax Court by writing to the court at the above address or from the court's internet site at www.ustaxcourt.gov.

Letter 531(DO) (Rev. 6-2003)



EXHIBIT A

Send the completed petiti~ ~ , a copy of this letter, and copies of all ~ ~nts and/or schedules you received with this letter to the Tax Cou ~ me above address. The Court cannot cons. ~ your case if the petition is filed late. The petition is considered timely filed if the postmark date falls within the prescribed 90 or 150 day period and the envelope containing the petition is properly addressed with the correct postage.

The time you have to file a petition with the court is set by law and cannot be extended or suspended. Thus, contacting the Internal Revenue Service (IRS) for more information, or receiving other correspondence from the IRS won't change the allowable period for filing a petition with the Tax Court.

As required by law, separate notices are sent to husbands and wives. If this letter is addressed to both husband and wife, and both want to petition the Tax Court, both must sign and file the petition or each must file a separate, signed petition. If more than one tax year is shown above, you may file one petition form showing all of the years you are contesting.

You may represent yourself before the Tax Court, or you may be represented by anyone admitted to practice before the Tax Court.

If you decide not to file a petition with the Tax Court, please sign the enclosed waiver form and return it to us at the IRS address on the top of the first page of this letter. This will permit us to assess the deficiency quickly and can help limit the accumulation of interest.

If you decide not to sign and return the waiver, and you do not file a petition with the Tax Court within the time limit, the law requires us to assess and bill you for the deficiency after 90 days from the date of this letter (150 days if this letter is addressed to you outside the United States).

NOTE: If you are a C-corporation, section 6621(c) of the Internal Revenue Code requires that we charge an interest rate two percent higher than the normal rate on corporate underpayments in excess of $100,000.

If you have questions about this letter, you may write to or call the contact person whose name, telephone number, and IRS address are shown on the front of this letter. If you write, please include your telephone number, the best time for us to call you if we need more information, and a copy of this letter to help us identify your account. Keep the original letter for your records. If you prefer to call and the telephone number is outside your local calling area, there will be a long distance charge to you.

The contact person can access your tax information and help you get answers. You also have the right to contact the office of the Taxpayer Advocate. Taxpayer Advocate assistance is not a substitute for established IRS procedures such as the formal appeals process. The Taxpayer Advocate is not able to reverse legally correct tax determinations, nor extend the time fixed by law that you have to file a petition in the U.S. Tax Court. The Taxpayer Advocate can, however, see that a tax matter that may not have been resolved through normal channels gets prompt and proper handling. If you want Taxpayer Advocate assistance, please contact the Taxpayer Advocate for the IRS office that issued this notice of deficiency. See the enclosed Notice 1214, *Helpful Contacts for Your "Notice of Deficiency"*, for Taxpayer Advocate telephone numbers and addresses.

Thank you for your cooperation.

Sincerely,

*Mark W. Everson*
Commissioner
By

Robert T. Misinkavitch
Technical Services Territory Manager, Area 3

Enclosures:
Explanation of tax changes
Waiver
Notice 1214

Letter 531(DO) (Rev. 6-2003)