# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:05-cv-00636-LTB-OES

CARLOS E. SALA, and
TINA ZANOLINI-SALA,

      Plaintiffs,

v.

UNITED STATES OF AMERICA,

      Defendant.

---

### PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RELIEF UNDER FED.R.CIV.P. 56(f) WITH RESPECT TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

### ORAL ARGUMENT REQUESTED

---

Plaintiffs CARLOS E. SALA and TINA ZANOLINI-SALA, by and through their

undersigned counsel, oppose Defendant's Motion for Relief under Fed.R.Civ.P. 56(f) ("Rule

56(f)") and submit the following:

Page 1
PLS' OPP. TO DEF'S MOT. FOR RELIEF

## I.   <u>INTRODUCTION</u>

In Plaintiffs'[1] Opening Brief, they established that the interest suspension provisions of

the Internal Revenue Code[2], as applied to the undisputed facts of this case, entitle Plaintiff to

Partial Summary Judgment.  Over 90 days after the brief was filed, the government responded

by requesting that Plaintiff's motion be denied, pending completion of discovery, on the

grounds that this "may" be "a case involving fraud" within the meaning of the fraud exception

of the interest suspension statute.[3]

This is not "a case involving fraud" because fraud was not asserted:

(1)     by the IRS following its extensive audit of Plaintiff's tax return and its related
        review of a large volume of documents and information pertaining to the loss
        claimed and the relevant transactions and events;

(2)     by the IRS, after a statutory six month review period, as a ground for denying
        Plaintiff's claim for excess interest assessed and collected[4]; nor

(3)     by the government in its Answer filed in this case.

Moreover, the government has not met the requirements of Rule 56(f) entitling it to an

order denying Plaintiff's motion, and permitting the government to attempt to investigate its

---

[1] Plaintiffs Carlos E. Sala and Tina Zanolini-Sala are husband and wife.  Plaintiff wife is a party to this suit solely
by reason of having filed a joint federal income tax return.  Plaintiff husband will hereinafter be referred to as
"Plaintiff".

[2] Section 6404(g) of the Internal Revenue Code of 1986 ("Code").

[3] Code § 6404(g)(2)(B).

[4] This Opposition uses the term "excess interest" to refer to the interest the IRS asserted was due and which accrued
subsequent to the expiration of the period which ended 18 months following the filing of Plaintiff's 2000 return.
Plaintiff's Claim for Refund of this interest is referred to as the "excess interest" claim.

unsupported fraud allegations through discovery. Based upon the documents and information received by the IRS well over one year prior to the filing of the Complaint, as well as the IRS' ability to compel testimony and production of even more documents pursuant to administrative summonses, the government has had an adequate opportunity to determine if this is "a case involving fraud." It did not. Therefore, the government is not relieved of its obligation under Rule 56(e)[5] to set forth by affidavit specific facts establishing that fraud is a genuine issue of material fact.

Further, the government's Rule 56(f) motion is woefully insufficient on its face. The motion and accompanying government attorney declaration fail to state with specificity: (1) what information the government possesses; (2) when that information was acquired and from whom; (3) given the information available to it, why the government was unable to comply with Rule 56(e); (4) what specific additional discovery is required to develop facts in support of the potential fraud allegations; and (5) what specific "probable facts" it believes this additional discovery will elicit, and how those facts will prove its suggestions of fraud by Plaintiff.

## II.    <u>PROCEDURAL FACTS</u>

Plaintiff timely filed his 2000 federal income tax return, claiming a loss related to an investment program (Deerhurst) involving trading in contracts and options to buy and sell foreign currencies. Declaration of Carlos E. Sala ("Sala Dec."), ¶ 1. Thereafter, in 2003,

---

[5] FED.R.CIV.P. 56(e).

Plaintiff filed an amended income tax return for 2000, eliminating the claimed loss, and reflecting the resulting tax due. The tax, together with interest through 18 months after the date that the return was filed, was paid. Sala Dec., ¶ 2.

In February 2004, the IRS commenced an examination of Plaintiff's 2000 tax return, and of his wholly-owned S corporation, Solid Currencies, Inc. ("Solid Currencies"). Sala Dec., ¶ 5. In connection with the audit, the IRS requested a huge volume of documents and information pertaining to the details and substantiation of Plaintiff's claimed loss, and all transactions and events related to it. Sala Dec. ¶ 5, Exh. E. In response, approximately 1,800 pages of documents were produced, including contemporaneous documents evidencing transactions involving contracts controlling options on hundreds of millions of dollars in foreign currencies undertaken on Plaintiff's behalf. Sala Dec., ¶ 7. Plaintiff further provided information regarding, among other things: (1) legal and tax opinions provided to him, including the dates of the opinions, the identity of the firms responsible for the opinions, and the nature of legal services provided and the charges and payment therefore (Sala Dec., ¶ 8(g)); (2) the identity of investment managers involved (Sala Dec., ¶ 8(c)-(e)); and (3) a detailed explanation as to how the loss claimed on Plaintiff's return was calculated, and upon what transactions it was based. Sala Dec., ¶ 8(h)-(i)). The IRS also commenced an audit of the Deerhurst Investors General Partnership, as well as audits of some or all of the other partners in the partnership. Sala Dec., ¶ 6.

At the conclusion of the examination, on June 18, 2004, the IRS issued a Notice of Deficiency, disallowing approximately $56,000 in investment management fees paid in 2000 and deducted on the return, but not eliminated on the amended return, and asserting additional tax of $22,204.  The IRS also asserted an accuracy-related penalty of $4,440 (20% of the deficiency) pursuant to § 6662 of the Code. Sala Dec., ¶ 10.   Had the IRS determined the disallowed deductions were due to Plaintiff's fraud, it could have asserted a civil fraud penalty equal to 75% of the tax deficiency pursuant to § 6663 of the Code.  Its failure to do so precluded it from later asserting a fraud penalty.

In September 2004, Plaintiff filed a Claim for Refund of the approximately $26 million in tax and interest paid with the filing of his 2000 amended return.  A six page detailed explanation of the facts and legal authorities relied upon by Plaintiff in support of his Claim was included.  Sala Dec., ¶ 4, Exh. C.  Another Claim for Refund was filed on September 27, 2004 seeking a refund of the excess interest.  A detailed explanation of the grounds for this Claim was likewise provided. Sala Dec., ¶ 3, Exh. A.

Plaintiff's Claims were assigned for examination.  Sala Dec., ¶ 3, Exh. B.  The IRS did not deny Plaintiff's excess interest claim on the grounds of the fraud exception.

The Complaint in this action was filed on April 3, 2005.  On June 3, 2005, the government requested an unopposed 45 day extension of time to file its Answer, asserting as grounds that "it had only recently obtained the relevant administrative files," and that "the extension would provide an adequate time to review the administrative file and determine its

position on the issues raised in this case."[6]  On July, 27, 2005, the government filed its

Answer.  It did not assert fraud as a defense to Plaintiff's excess interest claim.

On June 30, 2005, Plaintiff filed his Motion for Partial Summary Judgment regarding

the excess interest issue.  The government filed three unopposed motions to extend the time

within which to respond, and ultimately responded over 90 days later.  In support of its first

extension request, the government stated that additional time was being sought so that it may

"review the necessary administrative files and obtain the government's position on [the excess

interest] issue."  In its second extension request, the government stated that significant

additional time was necessary because the government's trial attorneys were recommending "a

complete resolution" (i.e., a concession of all but approximately $9,000 – an unresolved

computational difference - of the excess interest claimed), but that their recommendation was

subject to several stages of review and approval by the Department of Justice.

On September 26, 2005, in its third extension request, the government, without

providing any supporting evidence or specificity, for the first time indicated that fraud might

be involved in this case.  On the final due date of its Response (October 3, 2005), the

government filed a motion for relief under Rule 56(f).

In support of its motion, the government filed a declaration of one of its attorneys,

Anton L. Janik, Jr. ("Janik").  Janik is one of the two trial attorneys who had previously stated

---

[6]  The administrative file in a tax refund case includes all of the documents and information gathered by the IRS during the examination of a tax return and/or Claim for Refund.

that the IRS administrative file would enable the government to determine its position on the issue, and thereafter recommended concession of the Plaintiff's excess interest claim.

In his declaration, Janik stated "I have received information from various persons and entities with regard to the underlying transaction." He then set forth his own allegations regarding KPMG, the law firm of Brown & Wood and its attorney R. J. Ruble ("Ruble"), Plaintiff, and others. He did not state when he obtained the information underlying the allegations, nor from whom. He did not state why he could not obtain affidavits from persons with first hand knowledge about the information discussed in his allegations in accordance with Rule 56(e). He did not even acknowledge the vast amount of information the government had possessed for a long period of time regarding Plaintiff's "underlying transactions." Although he made general allegations regarding Plaintiff's alleged dealings with KPMG and certain attorneys, he provided no specifics as to what might be fraudulent about Plaintiff's transactions and the loss claimed on his return.

## III. THE GOVERNMENT HAS NOT MET THE REQUIREMENTS OF RULES 56(e) AND 56(f)

Rule 56(e) requires that, when a motion for summary judgment is made, the adverse party:

> [M]ay not rest upon mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Under Rule 56(e), the party opposing summary judgment must provide competent evidence in its favor which is more than "merely colorable" and at least "significantly probative;" the nonmoving party must produce facts which, viewed in a light most favorable to it, would permit a reasonable jury to return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 248-250 (1986). The government did not attempt to produce evidence showing that there was a genuine issue of material fact with respect to the issue of fraud.

When a party cannot produce affidavits from persons with firsthand knowledge, in compliance with Rule 56(e), and seeks to avoid summary judgment pending discovery of additional information, the standards of Rule 56(f) must be met. While 56(f) discovery is designed to enable a nonmoving party to fill material evidentiary gaps in its case, it does not permit a party raising claims to engage in a "fishing expedition." *Capital Imagining Assoc. v. Mohawk Valley Medical Associates*, 725 F. Supp. 669, 680 (N.D. N.Y. 1989), *aff'd* 996 F.2d 537(2d Cir.), *cert. denied*, 510 U.S. 947 (1993); *Also see Simas v. First Citizen's Federal Credit Union*, 170 F.3d 37, 46 (1ˢᵗ Cir. 1999); *Committee for the First Amendment v. Campbell*, 962 F.2d 1517, 1523 (10ᵗʰ Cir. 1992) (nonmovant's submissions inadequate; "no more than a fishing expedition in progress.")

Plaintiff agrees with the government's discussion of the standards a nonmoving party must meet in order to obtain relief under Rule 56(f).[7] Specifically, the party requesting relief

---

[7] Citing *Committee for the First Amendment v. Campbell*, 962 F.2d 1517 (10ᵗʰ Cir. 1992), the government set out the standards at page 4 of its Memorandum in Support.

must make a proffer that: (1) is authoritative and timely; (2) explains why facts precluding summary judgment cannot be presented, including whether the nonmovant has had an inadequate opportunity to conduct discovery; (3) identifies the probable facts not available and what steps have been taken to obtain these facts; and (4) explains how additional steps will enable the nonmovant to rebut the allegations of no genuine issue of fact. The government totally ignores the above standards when it argues it has met them.

(1)     The Government's Motion is Not "Authoritative or Timely." Unlike the attorney declaration involved in the case cited by the government (*RTC v. Northbridge Assoc., Inc.*, 22 F.3d 1198, 1204-1205 (1st Cir. 1994), Janik's declaration is not one signed by "a person who possesses first hand knowledge and who is competent to discuss the specifics of the matters discussed." Janik's declaration does not even purport to establish that he has "first hand knowledge" of the matters supporting his allegations. Janik states (Janik Dec., page 8), "I have received information from various persons and entities with regard to the underlying transaction." He does not identify those persons or entities, let alone establish that they have firsthand knowledge. Janik's declaration is not authoritative on its face. The motion is also not timely because, as set out in detail in Section IV below, the government has not raised its prospective affirmative defense in compliance with FED.R.CIV.P. 8(c) and 9(b).

(2) Opportunity. The government does not even acknowledge the information it has obtained over the past two years, nor the opportunity on the part of the IRS to inquire even deeper into the circumstances of this case, and determine if Plaintiff committed tax fraud.

Page 9
PLS' OPP. TO DEF'S MOT. FOR RELIEF

Whether the government has had the opportunity to discover the information is addressed in detail in Section III.A of this brief below.

(3) Identification of "Probable Facts" Not Currently Available. The government points to no "probable facts," not available to it, that would support its fraud suggestions. It instead suggests that Plaintiff may have committed tax fraud based upon KPMG's deferred prosecution agreement, and the pending indictment of Ruble and others. Neither Plaintiff nor Deerhurst is even mentioned in those documents.[8] The documents on their face provide no support for the proposition that Plaintiff committed tax fraud by his reliance upon KPMG's return preparation services and Ruble's tax opinion. Whether the government has properly identified the "probable facts" it seeks to discover is addressed more fully in Section III.B of this brief below.

(4) Failure to State with Precision How "Probable Facts" Will Allow the Government to Support Fraud Claims. The government does not set forth with precision the material facts it hopes to obtain through future discovery (that it does not already possess) and how those facts will enable it to establish that there is a genuine issue of material fact as to whether it could prove with clear and convincing evidence that Plaintiff committed fraud. Whether the government has explained with precision how the "probable facts" it seeks to discover will permit it to resist summary judgment is addressed in detail in Section III.C of this brief below.

---

[8]  The indictment can be found at S.D.N.Y. Docket No. 1:05-cr-00888-LAK-8.

PLS' OPP. TO DEF'S MOT. FOR RELIEF

**A.  The Government Had Adequate Opportunity To Discover The Facts Relevant To Its Recently Alleged Issue Of Fraud.  It Had The Facts Which Led It To Previously Determine There Is No Fraud.  Its Present Claim That There "May" Be Fraud Is Not Made In Good Faith.**

In order to establish fraud, the government has the burden of proving by clear and convincing evidence that Plaintiff filed his return with the specific knowledge that there was no arguable basis for the loss claimed. *United States v. Critzer*, 498 F.2d 1160, 1162 (4th Cir. 1974). One of the issues here is whether the assertions made by trial attorney Janik that fraud may be involved are being made in good faith and are sufficient to meet the requirements of Rule 56(f). They clearly are not.

Janik asserts that the government needs to conduct discovery to determine whether it can find evidence of fraud. However, he completely fails to disclose the substantial information that the government has had in its possession regarding the transactions at issue, as well as the opportunity it had to obtain detailed, specific facts sufficient to respond to Plaintiff's motion with affidavits from persons with firsthand knowledge as required by Rule 56(e).

In its Memorandum in Support (page 7), the government states "the United States has a good faith belief that this is a case which may involve fraud." To the contrary, the IRS' failure to assert fraud, despite the large volume of information and documents it had, and the Justice Department trial attorneys' proposal to concede the excess interest issue following their review of the administrative file, is consistent with their having determined that there was no

good faith basis for asserting fraud.  This is particularly evident when it is recognized that the

administrative files of the IRS included the following information:

(1)     Plaintiff invested approximately $8.9 million in a five year program involving contracts and options to buy and sell hundreds of millions of dollars worth of foreign currencies.  Plaintiff's investments were pooled in funds which included millions of dollars invested by other individuals (Sala Dec., ¶ 8(a));

(2)     Monthly statements and contemporaneous transaction documents confirmed that these transactions actually occurred, and were conducted through a large independent broker which routinely handled the purchase and sale of foreign currency contracts and options in the international foreign currency markets (Sala Dec., ¶ 8(b));

(3)     The investment manager of the fund was Deerhurst Managers, Inc., ("Deerhurst"), a New Jersey currency management firm whose principals had a long history of managing foreign currency investments, producing substantial profits for clients (Sala Dec., ¶ 8(c));

(4)     Deerhurst had no relationship or dealings with KPMG (Sala Dec., ¶ 8(d));

(5)     Deerhurst was paid a fee by the fund, based upon a percentage of investments under management and a percentage of the profits generated (Sala Dec., ¶ 8(e));

(6)     KPMG was the preparer of Plaintiff's 2000 federal tax return.  No fees were paid to KPMG by Plaintiff for any tax opinion (Sala Dec., ¶ 8(f));

(7)     In connection with the transactions that are at issue in this case, Plaintiff paid fees to: (a) Deerhurst; (b) Brown & Wood (tax opinion); (c) Davis Graham & Stubbs - Denver (review of tax opinion and legal services in connection with structure of underlying investments); (d) Rosenmann & Collin – New York (legal opinion on personal liability arising out of the underlying transactions); and (e) Holland & Hart – Salt Lake City (incidental legal services) (Sala Dec., ¶ 8(g));

(8)     Plaintiff purchased long options and sold short options on foreign currencies, transferred the options to Solid Currencies, which in turn transferred them to a partnership formed to pool the foreign currency investment of many individuals. Prior to December 31, 2000, the partnership liquidated, and Solid Currencies

received foreign currencies, which it subsequently sold for dollars. The dollars then were transferred to a long term pooled investment fund, which continued to trade in currency positions on behalf of Plaintiff and others in subsequent years (Sala Dec., ¶ 8(h)); and

(9)    Plaintiff's tax loss resulted from his basis in the foreign currency sold by Solid Currencies. It was calculated in accordance with a long-standing IRS ruling, and was derived largely from the cost of the long options. Short options contributed to the partnership were not taken into account as liabilities to reduce basis based upon the IRS' *prevailing* position in a Tax Court case, *Helmer v. Commissioner*, T.C. Memo 1975-160 (Sala Dec., ¶ 8(i)).

All of the above information was voluntarily provided to the IRS by Plaintiff in response to the IRS' Information Documents Requests ("IDRs"), and/or in his Claims for Refund. Moreover, the IRS had the opportunity to go beyond this "informal discovery" and issue summonses under § 7602 of the Code, compelling any person to testify and/or produce documents that "might" be relevant to the issues related to Plaintiff's claimed losses, including whether the positions taken were fraudulent. For example, the IRS could have taken sworn testimony of Plaintiff concerning all the details of the relevant transactions, and tested his good faith objective to make a profit and reliance upon the tax opinions of lawyers. It could have taken testimony of individuals associated with Deerhurst and/or the broker clearing the trades, and demanded production of all of their documents, to determine whether actual transactions took place (as Plaintiff claimed) and whether they reflected a genuine objective to make a profit.

The ability of the IRS and its lawyers[9] to obtain documents and testimony pursuant to administrative summonses was at least as great, if not greater, as the government's ability to obtain documents and testimony under the Federal Rules of Civil Procedure, and has been likened to the government's ability to obtain information through the grand jury. *United States v. Morton Salt Co.*, 338 U.S. 632, 642-643 (1950). In response to a taxpayer's argument that the IRS sought to conduct a "fishing expedition" under the guise of its administrative summonses authority, one court described § 7602 of the Code as giving the IRS a "license to fish." *United States v. Giordano,* 419 F.2d 564, 568 (8th Cir. 1969), *cert. denied* 397 U.S. 1037 (1969).

Far from being a case where all of the relevant facts are in the hands of one party (which the government alleges this is), prior to the commencement of this case, the IRS has already obtained virtually every document held by Plaintiff and related to the transaction. The IRS audited the general partnership which was involved in certain of the transactions. It had the identity of Plaintiff's return preparer (KPMG), the lawyers giving opinions and/or legal advice to Plaintiff (Ruble, Nemirow, Rosenmann & Collin and Holland & Hart), and information regarding the firm (Deerhurst) and individuals associated with it involved in the investments and transactions that gave rise to Plaintiff's tax loss. The IRS also had the opportunity to expand on the documents and information it had through administrative

---

[9] Although the examination of tax returns and Claims for Refund are primarily the responsibility of IRS Revenue Agents, IRS lawyers have the authority to and do in fact draft IDRs and administrative summonses and conduct the examination of witnesses. Treas Reg. § 301.7602-1(b)(2).

Page 14
PLS' OPP. TO DEF'S MOT. FOR RELIEF

summonses compelling the production of documents and testimony from any person who might have knowledge.

In situations where, as in this case, there has been significant pre-litigation administrative factual development, the facts which could or should have been developed in those proceedings must be taken into account in determining whether there has been adequate opportunity to develop the facts. *See, e.g., Ezekwo v. American Bd. Of Internal Medicine*, 18 F. Supp.2d 271 (S.D.N.Y. 1998), which rejected a plaintiff's 56(f) request for further discovery, and stated:

> [I]n light of the extensive review her case has received on administrative levels, greater discovery would be abusive ...

*Ezekwo*, 18 F. Supp.2d at 279 n.28.

### B.   The Government Failed To Identify "Probable Facts" Which May Be Uncovered In Future Discovery.

Rather than setting out any facts suggesting that Plaintiff may have engaged in any conduct amounting to tax fraud, the government instead chose to attempt to tar Plaintiff by characterizing his transactions with the meaningless label "abusive tax shelter" and making allegations concerning KPMG and Ruble.

The allegations concerning KPMG, set out in paragraph 8 of Trial Attorney Janik's declaration, are irrelevant. While KPMG did prepare Plaintiff's tax returns for the years 2000 through 2003 and Plaintiff did investigate (and reject) one of the investments that firm offered (BLIPS), KPMG played no role in the transactions at issue in this case, other than as return

preparer, compensated on an hourly basis. Whether the attorney who provided an opinion to

Plaintiff on his transactions (Ruble) was independent of KPMG (Janik asserts he is not), is

irrelevant to the suggestion of possible taxpayer fraud in this case, because this taxpayer's

transactions were not "KPMG transactions." More significantly, none of these facts suggest

even the possibility of any "intent to mislead or conceal" on the part of Plaintiff.

Senior IRS officials connected with the KPMG indictment have publicly emphasized

those taxpayers who take positions on their returns, which the IRS believes are not valid, or

even considers abusive, does not amount to taxpayer fraud. They have further narrowed the

conduct the government believes to be illegal to specific conduct on the part of certain KPMG-

affiliated individuals:

> Contrary to some published reports, the government's tax fraud
> conspiracy case against KPMG and the resulting deferred
> prosecution agreement is not about the IRS and the Justice
> Department criminalizing the tax practice of technical tax
> shelters, said John Klotsche[10], a senior adviser to IRS
> Commissioner Mark Everson. 'Nor is it a case about
> criminalizing aggressive tax planning or tax advice,' or about tax
> opinions on abusive tax shelters with which the IRS disagrees or
> which turn out to be wrong, he said.
>
> ... .
>
> And, Klotsche pointed out, neither the deferred prosecution
> agreement between KPMG and the Justice Department, nor the
> firm's admissions conclude that the four transactions as originally

---

[10] Mr. Klotsche is a senior advisor to IRS Commissioner Everson and one of the individuals publicly thanked by
Mr. Everson for his work on the KPMG case in a statement by Mr. Everson concerning the KPMG indictments
and deferred prosecution agreement, released on August 29, 2005. A copy of Mr. Everson's statement is attached
as Exhibit A to this Opposition.

Page 16
PLS' OPP. TO DEF'S MOT. FOR RELIEF

proposed (which included BLIPS, SOS, and the FLIP/OPIS strategies) are criminally fraudulent tax shelters per se. Nor do the admissions conclude that KPMG is being penalized for its aggressive promotional activities of the shelters, per se. Rather, Klotsche emphasized, the public documents say KPMG 'crossed the Rubicon' from the civil to the criminal side when it:

- decided not to register tax shelters with the IRS even though the technical experts in the firm told senior management that the shelters should be registered and even that criminal implications might result from a failure to register;

- designed and advised its tax clients on a scheme using a separate grantor trust to net the gains and losses on the abusive transactions so the results that were reported on the Form 1040 effectively concealed the abusive transaction from the IRS. (The important point, Klotsche emphasized, is that the technical experts in the firm said the netting scheme might be criminal, as did the IRS when it declared the transaction abusive in Notice 2000-44.);

- drafted false representations in the underlying documentation (that were also included in its opinions regarding several different issues) stating that the transaction provided a reasonable opportunity for a profit -- a key fact from a tax standpoint and one KPMG knew was not true, according to Klotsche;

- withheld, under a claim of privilege, documents from the IRS that were covered by summonses that a federal court rejected; the court held that KPMG had misrepresented its unprivileged activities as privileged communications.

"IRS Defends Criminal Action Against KPMG Professional" by Sheryl Stratton, 2005 TNT 181-2 (reporting a speech by John Klotsche before the ABA Section on Taxation – Standards of Tax Practice Committee on September 17, 2005). A copy of this article is attached as Exhibit B to this Opposition.

The above explanation of the criminal indictment clarifies that the government does not assert that participation in transactions the government labels as "abusive tax shelters" is fraudulent. Rather it was only specific conduct on the part of certain individuals associated with KPMG to mislead the IRS that formed the basis for the indictment. The government points to nothing to even suggest that similar conduct on the part of Plaintiff might be a "probable fact." There is no suggestion in Plaintiff's tax return, Claims for Refund, the 1,800 pages of documents produced to the IRS, or in Janik's declaration that:

(1)     there was a failure to register Plaintiff's investment program as a tax shelter, or IRS officials or technical experts told anyone it should be registered;

(2)     Plaintiff used a grantor trust to conceal his claimed losses;

(3)     there were any false representations made by Plaintiff;

(4)     Plaintiff withheld, under a court rejected claim of privilege, any summonsed documents, and/or misrepresented any unprivileged activities as privileged communications.

In short, the government has completely failed to identify any "probable facts" that might prove fraud by clear and convincing evidence.

## C.   The Government Failed To Demonstrate How The Additional Discovery Will Assist In Presenting A Genuine Issue Of Material Fact

A party moving for a Rule 56(f) continuance, to permit additional discovery "must do more than simply assert that it may discover additional facts, and must do even more than speculate about what those facts might be." *EEOC v. American Home Products Corp.*, 199 F.R.D. 620, 631 (N.D. Iowa 2003). The party requesting relief under Rule 56(f) is required

to state with precision the material he hopes to obtain with further discovery and exactly how

he expects those materials would help him resist summary judgment. *Krim v. BancTexas*

*Group, Inc.*, 989 F.2d 1435, 1443 (5th Cir. 1993). It is not enough to assert that "something

may turn up." *Simons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1144 (Fed. Cir.

1996).

"[It] is well settled that Rule 56(f) does not condone a fishing expedition where a

plaintiff merely hopes to uncover some possible evidence of [unlawful conduct.]" *EEOC v.*

*American Home Products Corp.*, 199 F.R.D. 620, 631-632 (N.D. Iowa 2001) (allegations that

future discovery would demonstrate employment terminations was retaliatory and that releases

were not knowing and voluntary were conclusory and did not show what specific facts further

discovery would uncover in support of those inferences). *Also see Valley National Bank v.*

*Greenwich Insur. Co.*, 254 F. Supp.2d 448, 460-463 (S.D. N.Y. 2003).

In *Ben Ezra, Weinstein, and Company, Inc. v. America Online, Inc.*, 206 F.3d 980

(10th Cir. 2000), the court refused to permit Rule 56(f) motion, noting that a nonmovant may

not obtain relief under Rule 56(f) solely by asserting that specific facts needed to oppose

summary judgment were unavailable, but rather "the party must demonstrate precisely how the

additional discovery will lead to a genuine issue of material fact." *Ben Ezra, Weinstein and*

*Company, supra*, 206 F.3d at 987. *Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d

1550, 1554-1555 (10th Cir. 1993), (Rule 56(f) affidavit did not "indicate what fact or facts the

[expected] testimony was expected to provide [and] how those facts related to the specific allegation regarding [the summary judgment] issue.").

In this case, the government does not even make an effort to describe with any precision the specific discovery contemplated, the specific facts the government will seek to uncover, or how such facts relate to the type of fraud it believes might exist in this case. With respect to what additional discovery is contemplated, Janik refuses to suggest any specific discovery, and baldly states, in paragraph 10 of his declaration, that:

> [T]he discovery necessary to rebut the plaintiffs' allegations that they are entitled to a refund of the interest claimed is concomitant with the discovery necessary to defend the United States' case in chief.

With respect to what specific facts proving fraud might be elicited in this additional discovery, the government is, if anything, more vague: "The United States cannot say with authority what facts will come in discovery until all discovery is completed." U.S. Memo. in Support, p. 13.

The reason that the government is unable to articulate any narrowly-tailored discovery that it will pursue, or state with any specificity the additional facts which might be sought, is because the Motion for Relief is predicated on nothing more than base speculation.

## IV.   THIS IS NOT A CASE INVOLVING FRAUD WITHIN THE MEANING OF THE STATUTE

Section 6404(g)(2)(B) provides that the interest suspension provisions set out in § 6404(g)(1) do not apply to "any interest ... in a case involving fraud." This is not a case

involving fraud. The facts in this case, known to the government, show that the government has no realistic expectation of proving Plaintiff committed civil tax fraud. The government in its motion has provided no additional facts to show the contrary.

The longstanding definition of civil tax fraud is as follows:

> Negligence, whether slight or great, is not equivalent to fraud with intent to evade tax under the statute. The fraud meant is actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing.

*Mitchell v. Commissioner*, 118 F.2d 308, 310 (5th Cir. 1941).

In civil fraud cases, the government must prove by clear and convincing evidence that the taxpayer had the requisite fraudulent intent, i.e., the intent to mislead or conceal. *Parks v. Commissioner*, 94 T.C. 654, 664 (1990). Fraud may not be found under "circumstances which at most create only suspicion." *Davis v. Commissioner*, 184 F.2d 86, 87 ((10th Cir. 1950). While the intent to conceal or mislead is ordinarily inferred from a pattern of conduct, the types of conduct ("badges of fraud") taken into account by courts in concluding the existence of fraud on the part of taxpayers include: the making of false statements to revenue agents, the filing of false documents, understatements of income, inadequate records, implausible or inconsistent explanations of behavior, concealment of assets, and failure to cooperate with tax authorities. *Parks v. Commissioner, supra,* 94 T.C. at 664-665. Good faith reliance on apparently qualified counsel regarding the legal basis for positions taken on a

tax return negates taxpayer fraud. *Ineson v. Commissioner* 14 T.C. 1151 (1950); 26 C.F.R. § 1.6664-4(b)(2)(Example 1).

The facts provided to the IRS (more fully described in sections II and III.A of this Opposition) show no good faith basis for asserting fraud exists in this case. The government does not even assert that any of the traditional "badges of fraud" that courts have relied upon to find taxpayer fraud might be present in this case. Janik's declaration lends support to the conclusion that Plaintiff relied in good faith on apparently qualified counsel where it acknowledges that Plaintiff obtained opinions and advice of attorneys. It further acknowledges that Plaintiff, not KPMG, paid for the Brown & Wood tax opinion. Rather than set forth specific facts it believes might show a lack of good faith reliance, the government simply refers to Brown & Wood attorney Ruble's 2005 indictment, and unsupported allegations that Denver attorney Larry Nemirow "facilitated [the Plaintiff's] participation in this abusive tax shelter." While the government attempts to demonstrate that this case is somehow connected to conduct with respect to which KPMG entered into a deferred prosecution agreement and Ruble and other were indicted, the government has pointed to no conduct on the part of Plaintiff, or any of the persons connected to the Deerhurst transactions, which could be characterized as even potentially manifesting an intent to mislead or conceal.

### A.     The Prior Conduct Of The IRS Negates The Possibility Of This Being Characterized As "A Case Involving Fraud."

The IRS eliminated the possibility that a fraud penalty might be asserted in this case when it assessed an accuracy-related penalty. In this respect, § 6662(b) of the Code provides that the accuracy-related penalty set out in § 6662[11] "shall not apply to any portion of an underpayment on which a penalty is imposed under § 6663 [for fraud.]" The fraud penalty is thus coordinated with the accuracy-related penalties – both cannot be imposed on the same underpayment. In this case, the IRS elected to assert an accuracy-related penalty under § 6662. As the underpayment assessed by the IRS (including the accuracy-related penalty) has been paid, the IRS cannot now assert a fraud penalty. Further, the IRS did not disallow Plaintiff's excess interest claim on the grounds of fraud.

### B.     The Government Was Required To Raise The Fraud Exception To The Interest Suspension Statute In Its Answer, And To Set Forth The Basis For Its Claim Of Fraud With Particularity.

The government does not seek additional discovery to inquire into facts related to Plaintiff's entitlement to a refund under the general provisions of the interest suspension statute. Instead, the government seeks additional discovery solely to determine whether the fraud exception to the statute applies. But fraud cannot be pursued unless it is set forth as an affirmative defense in compliance with FED.R.CIV.P. 8(c) and 9(b).

---

[11] The accuracy-related penalty may be imposed if the taxpayer has been merely negligent, or where there is a substantial understatement of tax. The conduct needed to support the assertion of these penalties is significantly lower than that needed to support the assertion of a fraud penalty.

Rule 8(c)[12] provides that a party responding to a pleading must set forth affirmatively all matters which the pleading party intends to use as an avoidance or affirmative defense. Under Rule 8(c), fraud is one of the affirmative defenses that must be affirmatively raised by the defendant. *Ward Petroleum Corp. v. FDIC*, 903 F.2d 1297, 1301 (10th Cir. 1990).

FED.R.CIV.P. 9(b) sets out special rules governing what must be pled when fraud is raised:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

The particularity requirement of Rule 9(b) means that allegations of fraud must, at a minimum, include the place, time and nature of any fraudulent statements, including the reasons why the statements are false. *In re GlenFed.*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (*en banc*). The claims must include the "who, what, when, where, and how" of the allegedly fraudulent conduct so that the allegedly fraudulent party may adequately defend against the allegations. *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Seattle First National Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir. 1986).

The purpose underlying the heightened pleading requirement imposed by Rule 9(b) is to put defendants on notice of the specific fraudulent conduct alleged, in order to enable them to adequately defend against such allegations. *In re Stac Elec. Litig.*, 89 F.3d 1399, 1405 (9th

---

[12] FED.R.CIV.P. 8(c).

Page 24
PLS' OPP. TO DEF'S MOT. FOR RELIEF

Cir. 1996). The courts have consistently acknowledged the harm to a party of being subjected to fraud charges, and therefore refuse to permit discovery to try to establish fraud where fraud has not been plead in compliance with Rule 9(b). *In re Stac Elec. Litig.*, 89 F.3d at 1405 (9th Cir. 1996); *Also see Caprin v. Simon Transportation Svcs.*, 112 F. Supp. 2d 1251, 1255 (D. Utah 2000) (the purpose of Rule 9(b) is "to prevent the filing of a complaint as a pretext for the discovery of unknown wrongs.") (*quoting In re Silicon Graphics Inc. Sec. Litig.*, 970 F. Supp. 746, 752 (N.D. Cal. 1997).

Here, the government has not only failed to plead fraud, but is has not even attempted to put Plaintiff on notice as to what conduct it might consider fraudulent. Without any information as to the substance of the government's allegations, Plaintiff is unable to defend against the government's potential fraud allegations as this case moves forwards toward trial.

Plaintiff has a well-deserved reputation of integrity in the community. The undisputed facts provided to the IRS show that he was always above board, first in signing his tax return with the claimed loss, then in fully disclosing everything about the claimed loss and all relevant transactions in response to an IRS examination and in support of his Claims for Refund. The mere act of government lawyers attacking his reputation by raising unsupported allegations of fraud in depositions of those with whom Plaintiff has had business dealings is harmful to the plaintiff, is outrageous conduct on the part of the government, and should not be permitted by this Court.

C.   **Where A Party Has Not Met The Particularity Requirement Of Fed.R.Civ.P. 9(b), That Party Is Not Entitled To Conduct A Fishing Expedition Through Discovery.**

In *Optical Coating Laboratory, Inc. v. Applied Vision, Ltd.*, 1995 WL 150513 at *4

(N.D. Cal. 1995), in considering a 56(f) motion, the court held:

> Discovery permits a party to locate facts that support a sufficiently pled allegation and enable it to defeat summary judgment. Discovery cannot, however, serve as a substitute for an adequate pleading, and cannot be used to launch a fishing expedition that may or may not subsequently substantiate an allegation of fraud that lacks any basis at the time it is plead.

*Also see Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1238 (10th Cir. 2000).

Having failed to plead fraud as an affirmative defense, the government is now foreclosed from asserting that fraud "may be" involved and seeking to prove fraud in discovery. Nor could the government legitimately assert that Plaintiffs' Motion for Partial Summary Judgment should be denied pending completion of discovery, and that, if the government then determines there is evidence of fraud, it could move to amend its Answer and make the required affirmative allegations. The Scheduling Order requires any amendments to the pleadings to be filed by December 12, 2005. As discovery has only recently begun, it is apparent that the government will not be in a position to raise fraud as an issue in this case in compliance with the pleading rules and in accordance with the Scheduling Order.

V.   **CONCLUSION**

Plaintiff submits that the reason why the IRS and the Department of Justice have not previously asserted that fraud occurred is not because of a lack of information and/or

Page 26
PLS' OPP. TO DEF'S MOT. FOR RELIEF

opportunity to discover the facts. Instead, they recognized that the facts show that there is no good faith basis for asserting fraud. It was only an 11th hour decision by Justice Department officials (other than the trial attorneys in this case) to make a belated assertion that fraud might be provable that caused the government to oppose Plaintiff's motion, and further delay Plaintiff's refund of illegally collected interest for at least another year. This is not good faith.

In fact, Plaintiff believes that this Court should issue an order requiring Defendant to pay the cost that Plaintiff has incurred as a result of Defendant's response and motion. In this respect, FED.R.CIV.P. 56(g) provides that, should it appear to the satisfaction of the court that affidavits submitted under this rule were presented in bad faith or solely for the purposes of delay, the court shall order the party submitting such affidavits to pay the reasonable expenses of the moving party, including attorneys' fees and costs.

WHEREFORE, Plaintiff respectfully requests this Court deny Defendant's Motion for Relief and Grant Plaintiff's Motion for Partial Summary Judgment.

DATED this 14th day of November, 2005.

Attorneys for Plaintiffs Carlos E. Sala and
Tina Zanolini-Sala,

s/ John M. Colvin
John M. Colvin

s/ Darrell D. Hallett
Darrell D. Hallett
**Chicoine & Hallett, P.S.**
1011 Western Avenue, Suite 803
Seattle, WA  98104
Telephone (206) 223-0800
Facsimile  (206) 467-8170
Email: jcolvin@chicoine-hallett.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2005, I electronically filed PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RELIEF UNDER FED.R.CIV.P. 56(f) WITH RESPECT TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT and EXHIBITS A and B, using the CM/ECF system, which will send notification to the following:

Philip Blondin:          Philip.Blondin@usdoj.gov

Anton. L. Janik, Jr.     Anton.L.Janik@usdoj.gov

I declare under the penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

DATED this 14th of November, 2005.

CHICOINE & HALLETT, P.S.

s/ John M. Colvin
John M. Colvin
Darrell D. Hallett
Chicoine & Hallett, P.S.
Attorneys for the Plaintiffs Carlos E. Sala
and Tina Zandolini-Sala
1011 Western Ave. Suite 803
Seattle WA, 98104
Telephone: (206) 223-0800
Facsimile: (206) 223-0800
Email: jcolvin@chicoine-hallett.com
Email: dhallett@chicoine-hallett.com

Page 1