IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| CARLOS E. SALA and | ) | |
| TINA ZANOLINI SALA, | ) | |
| | ) | 05-cv-00636-LTB-OES |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

_____

### UNITED STATES' MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO AMEND ANSWER TO ASSERT ADDITONAL DEFENSES

_____

The United States of America, by its undersigned counsel, submits the following

memorandum in support of its Motion to Amend Answer to Assert Additional Defenses.  This

motion is made within the time agreed to by the parties for amending pleadings, no party has yet

engaged in formal discovery and the deadline for doing so is October 27, 2006.  For these

reasons and the reasons set out below, and because leave is to be freely given, the Government's

motion should be granted.

### INTRODUCTION AND SUMMARY

Plaintiffs Carlos and Tina Salas' ("Salas" or "Plaintiffs") seek a refund of federal taxes.

At the center of this dispute is the lawfulness of a **$60,449,984** tax shelter related deduction

claimed on their 2000 federal income tax return.  Tellingly, the substantial deduction offsets a

nearly identical amount of income (**$60,476,388**); the Salas reported owing **$0** in federal taxes in

2000.  Also at issue, is the Salas' request that a portion of the interest paid on their $23,727,830

1443746.2

tax deficiency be abated now, and in advance of any discovery on the merits of their claimed

deduction.  (Complaint at ¶¶ 12-17; Plaintiffs' Motion for Partial Summary Judgment.)

        This litigation is at its nascent stage; formal discovery has only recently commenced.

According to the Plaintiffs, even if the Government were ultimately to prevail on the merits of

the deduction, they have overpaid the accompanying interest due.  Plaintiffs are not entitled to a

refund of interest for at least two reasons.  First, because the United States believes from the

records provided by Plaintiffs' accountants, KPMG, that this is "a case involving fraud" and,

therefore, Plaintiffs do not qualify to have interest accruals on their tax deficiency abated or

suspended.  26 U.S.C. § 6404(g)(2)(B) (hereinafter "IRC § ___.")   Plaintiffs' were advised that

the United States intended to raise this as a defense in a telephone call with counsel on

September 22, 2005.  This issue was specifically identified in the parties' proposed scheduling

order submitted to the Court on October 21, 2005.  Second, to the extent that section

6404(g)(2)(B) is determined not to apply here, the United States is nevertheless entitled to an

offset.  Because the IRS under-assessed an accuracy related penalty (IRC § 6662), the full and

proper amount of the penalty can be applied as an offset against any interest ultimately

determined to be due the Plaintiffs.  The accuracy related penalty should have been imposed

upon Plaintiff's entire tax deficiency, exclusive of interests and penalties ($23,727,830), and not

just the additional tax assessment ($22,204) reflected on the IRS' Notice of Deficiency.  A copy

of the Notice of Deficiency is annexed as Exhibit A to plaintiffs' complaint. The amount of the

underassessment of the accuracy related penalty, which underassessment is in excess of

$9,490,000, is more than sufficient to eliminate by setoff any interest, if any, determined to be

due plaintiffs.

The United States seeks to amend its complaint to add two defenses: (1) that this is a "case involving fraud" that precludes a refund of interest under section 6404 and (2) that any refund found to be owing can be offset by the amount of the underassessed accuracy related penalty.

## **PROCEDURAL HISTORY**

Plaintiffs filed their civil complaint on April 5, 2005.  On July 27, 2005 the Government answered.  A Rule 26(f) meeting was conducted on September 19, 2005 and the parties' initial Rule 26 disclosures were provided on October 11, 2005.  A Scheduling Order was entered on October 24, 2005 and established the following deadlines relevant to this motion:

Amendment of Pleadings:     December 12, 2005

Completion of Discovery:     October 27, 2006

Dispositive Motions:     November 28, 2006

On June 30, 2005, several months *before* the commencement of discovery[1], Plaintiffs filed a Motion for Partial Summary Judgment demanding that the Court order the IRS to abate (refund) certain interest payments.  The issue raised in that motion is whether any interest accrued on the plaintiffs' $23,705,626 tax deficiency *after* 18 months from the filing of their initial tax return.  Plaintiffs' initial tax return reported $ 0 in taxes and it was not until approximately thirty-two months later, when the plaintiffs submitted an amended return, that plaintiffs reported the $23 million tax liability.

---

[1]     Discovery commenced on September 19, 2005 with the parties Rule 26 conference.  See Rule 26(d), Fed. R. Civ. P.

1443746.2

Plaintiffs argue that interest ceased to accrue after 18 months.  The United States disagrees.  The Plaintiffs' dispositive motion is pending and the Government has filed a Rule 56(f) request to conduct discovery.

## RELEVANT BACKGROUND

The Salas timely filed a joint federal income tax return for 2000 on or before April 16, 2001.  The initial return reported income (**$60,476,388**) and deductions (**$60,449,984** ) of nearly offsetting amounts.  Plaintiffs' tax return reported **$0** in tax due.  Approximately 32 months later, on or about November 18, 2003, Plaintiffs' filed an amended return.  The amended return reported a tax liability of **$23,705,626**.  Plaintiffs' represent that they have paid the tax together with 18 months of accrued interest running from April 16, 2001 (the due date of the return) through October 16, 2002.  Plaintiffs initially did not pay the gap interest; that is, the approximately $1,571,088 of interest that has accrued since October 16, 2002 and through the date of payment of the tax (in November 2003).  Eventually, on or about September 23, 2004, Plaintiffs paid the gap interest.

Plaintiffs deny that they owe gap interest.  In their own words, "where the taxpayer files an amended return after 18 months has expired since the filing of the original return [and the IRS has not sent a notice of additional tax due in the interim] and pays the fill tax shown with the amended return, the taxpayer's liability for interest is limited to that accruing between the filing of the original return and the expiration of the 18 month period."  Plaintiffs' Opening Brief in support of Motion for Partial Summary Judgment at 3.

1443746.2

**ARGUMENT**

**A.      Legal Standard**

In *Foman v. Davis*, 371 U.S. 178 (1962), the U.S. Supreme Court set forth the general

standard in determining whether trial courts should grant leave to amend:

> If the underlying facts or circumstances relied upon by a plaintiff may be a
> proper subject of relief, he ought to be afforded an opportunity to test his
> claim on the merits.  In the absence of any apparent or declared reason, -
> such as undue delay, bad faith or dilatory motives on the part of the
> movant, repeated failure to cure deficiencies by amendments previously
> allowed, undue prejudice to the possessing party by virtue of the
> allowance of the amendment, futility of the amendment, etc. – the leave
> should, as the rules require, be "freely given."

*Id*. at 182.  The Court explained,

A trial court has discretion to grant or deny such relief.  *Id*. at 182.  However, the denial

of a motion to amend is warranted where the facts are egregious and not, as is the case here,

where the amendment is timely filed and well within the discovery period established by the

Court.  *See Las Vegas Ice and Cold Storage Co., v. Far West Bank*, 893 F.2d 1182 (10 Cir. 1990)

(trial court's decision to deny relief affirmed where movant failed to assert defense until

approximately 18 months after complaint was filed, nine months after the entry of partial

summary judgment and only a few months prior to the scheduled trial); *A.E. and R.R. v. Mitchell*,

724 F.2d 864 (10th Cir. 1983) (trial court did not abuse its discretion in denying motion to amend

where plaintiffs had already amended their complaint three times and the fourth request was

nearly one year later and which request purported to added new claims and new parties);

*Creamer v. Laidlaw Transit, Inc.*, 86 F.3d 167 (10th Cir. 1996) (trial court did not abuse its

discretion where motion was filed after close of discovery);

That the defenses the Government intends to assert are being formally raised during the pendancy of summary judgment motion is not legally significant.  In *Atiya, M.D. v. Salt Lake County*, 988 F.2d 1013 (10th Cir. 1993), the Tenth Circuit affirmed the trial court's decision to permit a defendant to amend its answer to assert defenses first raised in a motion for summary judgment.  The motion had been attacked on the grounds that the defenses had not previously raised.

**B.**     **The United States Should be Permitted to Test Its Defenses on the Merits**

At this early stage of this litigation, the United States has timely presented two defenses which, if proven, would each constitute a valid defense or offset to the Plaintiffs' claim for interest abatement.  Because this motion is made within the time established by the Court for amending pleadings and because the United States has not engaged in any conduct which would justify the denial of this motion, under the liberal mandate of Rule 15, Fed. R. Civ. P., this motion should be granted and the United States permitted to amend its answer as reflected in Exhibit A, annexed hereto.

1.     *The United States may amend its answer to allege that this is "a case involving fraud."*

To the extent that this is "a case involving fraud," Plaintiffs are not entitled to the abatement of interest.  IRC § 6404(g)(2)(B).  As set out in some detail in its Reply to Plaintiffs' Response to Motion for Relief under Fed. R.Civ. P. 56(f) with Respect to Plaintiffs' Motion for Partial Summary Judgment (hereinafter "Reply"), filed contemporaneously herewith, the United States explained that, with the help of his accountant, KPMG, Plaintiff Carlos Sala spent part of 1999 and most of 2000 considering at least seven separate transactions to shelter his income; six of the seven were later invalidated as abusive tax shelters.  Sala eventually entered into a shelter

1443746.2

transaction that is at issue here.  Within two months of funding that transaction, Sala liquidated his holdings and claimed a $60 million artificial tax loss, which he then used to offset $60 million of income.  KPMG has since conceded that that the shelter transactions of the kind Mr. Sala entered were "fraudulent" and "bogus."  The United States Attorney's office for the Southern District of New York has represented that the tax shelter that is the subject of this civil lawsuit is one of the shelter transactions encompassed by charges in a criminal indictment filed in *United States v. Stein, et al.*, (N0. S1 05 Cr. 888 S.D. N.Y.).  Five individuals who participated in communications with or about Carlos Sala and his shelter transactions have been indicted and are awaiting trial.  The KPMG partner who worked closely with Sala in his quest to find a shelter to offset his enormous income for 2000 is refusing to testify in this case based upon her Fifth Amendment rights.

Leave is therefore requested to assert this defense.

2.       *An amendment to assert a setoff is appropriate here.*

Plaintiffs are not entitled to a tax refund unless they have actually overpaid their 2000 tax liability, regardless of the amount of liability that has been assessed.  *See Lewis v. Reynolds*, 284 U.S. 281, 283 (1932) ("While the statutes authorizing refunds do not specifically empower the Commissioner to re-audit a return whenever repayment is claimed, authority therefo is necessarily implied.")  This is the case even if a statute of limitations acts as a bar to an additional assessment, and even if the additional amounts due are penalties as is the case here. *Id.*; *Allen v. United States*, 51 F.3d 1012 (11th Cir. 1995).

As explained generally above, the United States assessed an accuracy related penalty (IRC § 6662) against plaintiffs, but only upon on the IRS' assessment of additional taxes

1443746.2

($22,204) and not on the entire tax liability that Plaintiffs failed to report ($23,705,626).  Thirty –

two months after filing their initial return reporting they owed $0 taxes, Plaintiffs filed an

amended tax return reporting a $23,705,626 tax liability.

The accuracy related penalty applies to an "underpayment of tax required to be shown on

a return."  The penalty is a percentage (either 20% or 40% ) of the tax required to be shown on a

tax return.  IRC § 6662(h).     In this case the penalty is properly $9,491,132 or 40% of

23,727,830).[2]  IRC § 6662(a),(e) and (h).  While Plaintiffs may dispute the fact of the penalty,

such a dispute does not operate to deny the Government's Motion to Amend.  The assessment of

the penalty on the entire tax liability reflected on the amended return (as opposed to the only the

amount reflected on the Notice of Deficiency) is appropriate here because the amended return

does not appear to constitute a qualified amended return under Treasury Regulation, 1.6664-

2T(c)(3)(i).  This is significant here, because if the return is not a qualified amended return, the

penalty is applied against the underpayment of tax calculated with reference to the initial tax

return which, as explained, reported a $0 tax liability, and not with reference to the liability

reflected on the amended return.

A qualified amended return is defined as an amended return filed *after* the *due date* of the

return for the taxable year and *before* the *earliest* of -

(A)  The date the taxpayer is first contacted by the Internal Revenue Service concerning

any examination (including a criminal investigation) with respect to the return;

---

[2]       In this case, the penalty should be as follows:

| | |
|---|---:|
| Total Tax Liability: | $23,727,830 |
| Accuracy related penalty (IRC § 6662(e)) | 9,491,132 |
| Less penalty prev. assessed and paid | 4,441 |
| Setoff Amount | 9,486,691 |

(B)  The date any person is first contacted by the Internal Revenue Service concerning an examination of that person under section 6700 (relating to the penalty for promoting abusive tax shelters) of an activity with respect to which the taxpayer claimed any tax benefit on the return directly or *indirectly* through the entity, plan or arrangement described in section 6700(a)(1)(A). *Id.*

Paragraph (B) above is critical here.  If permitted to amend its answer, the Government intends to show that the IRS' Examination Division first contacted KPMG on or about March 19, 2003 concerning an examination relating to the promotion of an abusive tax shelter (IRC § 6700.)  As set out in the Government's Reply, KPMG's shelter activity was an activity with respect to which plaintiffs claimed a tax benefit (an artificial tax loss) on their 2000 income tax return, directly or indirectly through KPMG.  Because notice was given to KPMG (March 19, 2003) months in advance of Plaintiffs filing their amended return (November 2003) which finally reported the liability, Plaintiffs' return is not a qualified amended return.  Therefore, the assessment of the accuracy related penalty on the entire tax deficiency is appropriate in this case and, at a minimum, constitutes a setoff against any interest payments otherwise determined to be due plaintiffs.

## CONCLUSION

Because the relief sought herein is requested timely within the period agreed to by the parties, because discovery has only recently begun and Plaintiffs have not yet initiated formal discovery, and because leave to amend should be "freely given," the United States should be permitted to amend its answer as set forth herein.  A proposed amended answer is annexed hereto as Exhibit A.

1443746.2

WHEREFORE, United States prays that its motion be granted and that the Court direct the Clerk of Court to deem the proposed amended answer annexed hereto, as filed.

Dated this 12th day of December, 2005.

WILLIAM J. LEONE
Acting United States Attorney
MARK S. PESTAL
Assistant United States Attorney

s/ David N. Geier
DAVID N. GEIER
PHILIP E. BLONDIN
ANTON L. JANIK, JR.  CO#35164
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 683
Ben Franklin Station
Washington, D.C. 20044-0683
Telephone:     (202) 616-3448
                      (202) 307-6322
                      (202) 305-2558
Facsimile:     (202) 307-0054
Email:David.N.Geier@usdoj.gov

Street Address:

Judiciary Center Building
555 Fourth Street, N.W.
Washington, D.C. 20001

1443746.2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on December 12, 2005, I electronically filed the foregoing Motion to

Amend Answer and Memorandum in support thereof, together with a proposed order, with the

Clerk of Court using the ECF system which will send notification of such filing to Plaintiffs'

counsel at the following e-mail addresses:

dhallett@chicoine-hallett.com

jcolvin@chicoine-hallett.com

s/ David N. Geier
DAVID N. GEIER
Attorney for Defendant
United States of America
Trial Attorney, Tax Division
United States Department of Justice
Ben Franklin Station
P.O. Box 683
Washington, D.C. 20044-0683
Telephone:      (202) 616-3448
Facsimile:      (202) 307-0054
Email:David.N.Geier@usdoj.gov

Street Address:          Judiciary Center Building
555 Fourth Street, N.W.
Washington, D.C. 20001

1443746.2