# EXHIBIT

## A

**3 of 3**

conspirators not named as defendants herein KPMG and Dominick DeGiorgio, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

      a.     On or about January 30, 1997, defendants JEFFREY EISCHEID and JOHN LARSON advised a FLIP client and his return preparer to create a grantor trust for the purposes of concealing on the client's tax return the FLIP tax loss to be generated and the client's gain from other sources. [/]

      b.     On or about July 18, 1997, the defendant ROBERT PFAFF prepared a memorandum to the defendants JOHN LANNING and JEFFREY STEIN discussing how KPMG and the Larson/Pfaff Entities should jointly devise, market, and implement tax shelter transactions and how their fees should be divided.

      c.     On or about August 16, 1997, the defendant JOHN LANNING sent an email to the defendants JEFFREY STEIN, JEFFREY EISCHEID, JOHN LARSON, ROBERT PFAFF, GREGG RITCHIE, and others regarding a meeting focusing on successfully completing LARSON and PFAFF engagements, continuing to grow and expand the "Tax Advantaged Transactions" practice that LARSON and PFAFF had been overseeing, and endeavoring to forge an ongoing and successful relationship with the "Pfaff/Larson firm."

      d.     In or about September 1997, the defendant GREGG RITCHIE on

51

behalf of KPMG and the defendant JOHN LARSON on behalf of the Larson/Pfaff Entities signed an "operating agreement" regarding joint marketing and implementation of FLIP transactions.

e.     On or about December 15, 1997, the defendant RAYMOND J. RUBLE, also known as "R.J. Ruble," told the defendant RANDY BICKHAM, who in turn told the defendant GREGG RITCHIE that RUBLE's managing partner had approved his working with KPMG on a joint basis to develop and market tax products and jointly to share in the fees.

f.     On or about March 14, 1998, the defendant JEFFREY STEIN sent an email to the defendant JOHN LANNING and others recommending, in substance and in part, that revenue credit for OPIS transactions be divided among KPMG practice groups in a particular manner based on the similarities between FLIP and OPIS.

g.     On or about May 26, 1998, the defendant GREGG RITCHIE advised the defendant JEFFREY STEIN and others that KPMG should not register OPIS because to do so would put KPMG at a severe competitive disadvantage in marketing tax shelters.

h.     On or about June 8, 1998, the defendant GREGG RITCHIE advised the KPMG team marketing OPIS not to leave the OPIS PowerPoint presentation "with clients or targets under any circumstances" because doing so "will

DESTROY any chance the client may have to avoid the step transaction doctrine."

　　　i.　　　On or about September 10, 1998, the defendant JEFFREY EISCHEID sent an email to defendant JOHN LANNING and others proposing an "alliance" with a competitor of the Larson/Pfaff Entities to implement OPIS transactions and noting that "we have very little time to work with if we are going to execute trades such that our clients can generate the desired benefits in calendar 1998."

　　　j.　　　On or about December 3, 1998, the defendant RAYMOND J. RUBLE, also known as "R.J. Ruble," prepared a memorandum to the defendant RANDY BICKHAM and another co-conspirator not named as a defendant herein proposing structuring BLIPS with a fixed-rate loan for purposes of avoiding a rule that would block the generation of BLIPS phony tax losses.

　　　k.　　　On or about December 15, 1998, the defendant RAYMOND J. RUBLE, also known as "R.J. Ruble," sent an email to his management stating that he had worked closely with KPMG in developing tax products and had agreed to issue "concurring" "more likely than not" opinion letters for those products in return for a fee from KPMG of $50,000 per deal for 1997, and a fee for 1998 based on deal size.

　　　l.　　　On or about January 22, 1999, the defendant JEFFREY EISCHEID instructed KPMG partners that each partner should decide for himself or herself

whether to attempt to conceal losses from the IRS using a grantor trust.

m.     On or about April 30, 1999 and May 1, 1999, the defendants JEFFREY EISCHEID, MARK WATSON, JOHN LARSON, DAVID AMIR MAKOV, RANDY BICKHAM, CAROL WARLEY, DAVID RIVKIN, and CARL HASTING, and certain co-conspirators met in Dallas, Texas for a BLIPS task force meeting.

n.     On or about May 9, 1999, the defendant MARK WATSON sent an email to the defendants JEFFREY EISCHEID, PHILIP WIESNER, LARRY DELAP, and RANDY BICKHAM proposing false representations to be included in the BLIPS opinion letter.

o.     On or about May 10, 1999, the defendant MARK WATSON sent an email to the defendants RICHARD SMITH, JEFFREY EISCHEID, PHILIP WIESNER, LARRY DELAP, and RANDY BICKHAM proposing a false representation to be included in the BLIPS opinion letter.

p.     On or about May 10, 1999, the defendant JEFFREY STEIN sent an email to others in which he recommended that KPMG market and implement BLIPS.

q.     On or about May 18, 1999, the defendant LARRY DELAP sent an email stating that marketing of BLIPS was approved.

r.     On or about August 4, 1999, the defendant PHILIP WIESNER

54

announced that BLIPS was approved for marketing by KPMG personnel.

s.     On or about August 5, 1999, the defendant RANDY BICKHAM sent an email to the defendant RAYMOND J. RUBLE, also known as "R.J. Ruble," in the Southern District of New York stating that he and the attorney had received a "get out of jail free card" as a result of obtaining permission from Washington National Tax to proceed with BLIPS.

t.     On or about August 30, 1999, the defendant RANDY BICKHAM sent the defendant GREGG RITCHIE a BLIPS powerpoint presentation for the Beverly Hills Businessman.

u.     In or about September or October 1999, Domenick DeGiorgio, a co-conspirator not named as a defendant herein, met at the offices of Bank B in the Southern District of New York with the defendant ROBERT PFAFF, and on another occasion, with JOHN LARSON and DAVID AMIR MAKOV and others.

v.     In or about 1999, in the Southern District of New York and elsewhere, Banks A, B and C, prepared and caused to be prepared transactional documents relating to BLIPS tax shelter transactions.

w.     On or about September 24, 1999, a co-conspirator not named as a defendant herein ("KPMG Partner 1") instructed the Innovative Strategies group that because banks were unwilling to execute as many BLIPS deals as had been sold to clients, the Innovative Strategies group should consult with DAVID

55

GREENBERG regarding a tax shelter transaction that BLIPS clients could use instead of BLIPS to shelter their income and gain.

x. On or about September 24, 1999, the defendant RICHARD ROSENTHAL advised defendant DAVID GREENBERG that defendant MARK WATSON would contact GREENBERG to arrange tax shelter transactions for clients to whom KPMG had offered BLIPS, but for whom KPMG could not arrange BLIPS transactions.

y. On or about September 27, 1999, the defendant DAVID AMIR MAKOV prepared a "loan premium rationale" designed to falsely make it appear that there were legitimate business and economic purposes for structuring the BLIPS purported loan in the manner it was structured.

z. On or about October 1, 1999, the defendant LARRY DELAP approved the sale of OPIS transactions to clients who were promised BLIPS but for whom KPMG could not arrange BLIPS transactions.

aa. In or about October 1999, the defendant DAVID AMIR MAKOV requested a treasury official of Bank B in the Southern District of New York to execute a swap transaction involving a BLIPS "loan" by employing two separate trade tickets rather than a single swap transaction ticket.

bb. In or about mid-October 1999, a co-conspirator not named as a defendant herein, caused KPMG professionals to be deployed to the New York,

New York offices of Bank B to aid in processing various BLIPS transactions in order to allow the transactions to be initiated and terminated by the end of the calendar year.

cc.    On or about October 18, 1999, the defendant RICHARD ROSENTHAL instructed a co-conspirator not named as a defendant herein ("KPMG Partner 2") to send no further emails regarding a tax shelter client who had been pitched BLIPS, but then had been sold an SOS tax shelter transaction by DAVID GREENBERG ("DAVID GREENBERG Client 1"), resulting in a fee triple the fee that would have resulted from BLIPS.

dd.    On or about December 1999, the defendant CARL HASTING sent an email to the defendant RICHARD ROSENTHAL reporting $437,500 revenue from a BLIPS transaction arranged for the husband of a KPMG partner and assigning to the KPMG partner "Teamwork Revenue" credit for this transaction.

ee.    On or about November 30, 1999, the defendant CAROL WARLEY advised a BLIPS client to divide the phony tax shelter losses among 10 stocks that have been losers.

ff.    On or about December 3, 1999, the defendant CARL HASTING sent an email to the defendant JEFFREY EISCHEID in which he itemized SOS transactions and $700,000 in fees due to KPMG. EISCHEID wrote "just a word of caution . . . DPP has mandated that we receive no value added fees from the

client and no payment from [CC 10]. At $350 per hour, your $700,000 is 2,000 hours."

gg.     On or about December 8, 1999, the defendant MARK WATSON advised others involved in marketing and implementing BLIPS that a document on which the client selected how much of the BLIPS loss should be ordinary and how much should be capital should not be kept in the file because "if the IRS were to discover such a document it could look very bad for the client."

hh.     On or about January 9, 2000, the defendant CARL HASTING sent an email to the defendant RICHARD ROSENTHAL reporting $470,000 revenue from two SOS transactions arranged by HASTING and assigning to ROSENTHAL "Teamwork Revenue" credit for these transactions.

ii.      On or about March 7, 2000, the defendants JEFFREY STEIN, JOHN LANNING, RICHARD SMITH, JEFFREY EISCHEID, LARRY DELAP, and STEVEN GREMMINGER, and others met in the Southern District of New York to discuss the risks of civil penalties and criminal investigation associated with completing the implementation of 1999 OPIS and BLIPS transactions.

jj.      On or about March 21, 2000, a co-conspirator not named as a defendant herein advised others involved in marketing BLIPS that they should "NOT put a copy of" an email in their BLIPS file because "it is a roadmap for the taxing authorities to all the other listed transactions."

kk.     In or about March 2000, the defendant STEVEN GREMMINGER called KPMG's relationship partner at Law Firm 2 about the Law Firm 2 Memo and stated that Law Firm 2 was interfering with a KPMG tax transaction and that senior tax partners at KPMG were irate. BLIPS was the KPMG tax transaction referred to by GREMMINGER.

ll.     On or about March 29, 2000, the defendant DAVID GREENBERG issued to defendant RICHARD ROSENTHAL an opinion letter relating to ROSENTHAL's SOS tax shelter transaction. GREENBERG issued the opinion letter with the name of a nominee as the purported author in order to conceal GREENBERG's involvement in implementing the transaction, and with CC 11 as the purported addressee in order falsely to make it appear that the opinion letter was covered by the attorney-client privilege.

mm.    In or about March and April 2000, in the Southern District of New York, the defendant RAYMOND J. RUBLE, also known as "R.J. Ruble," prepared and caused to be prepared dozens of BLIPS opinion letters.

nn.     On or about November 9, 2000, defendant DAVID GREENBERG sent an email to CC 11 instructing CC 11 to establish entities and bank accounts to be used to execute SOS transactions for five KPMG partners and one KPMG former partner.

oo.     In or about 1998, 1999, and 2000, the defendant RAYMOND J.

RUBLE, also known as "R.J. Ruble," caused dozens of invoices and opinion letters relating to fraudulent tax shelter transactions to be sent by overnight carrier from the RUBLE Law Firm in New York, New York to KPMG's Atlanta office.

      pp.    In or about 1998, 1999, and 2000, in the Southern District of New York and elsewhere, certain conspirators, including KPMG personnel and clients, and others involved in FLIP and OPIS tax shelter transactions prepared, signed and filed tax returns that falsely and fraudulently claimed over $4.2 billion in phony tax losses generated by FLIP and OPIS transactions.

      qq.    In or about 2000 and 2001, in the Southern District of New York and elsewhere, certain conspirators, including KPMG personnel and clients, and others involved in BLIPS tax shelter transactions prepared, signed and filed tax returns that falsely and fraudulently claimed over $5.1 billion in phony tax losses generated by BLIPS transactions.

      rr.    In or about 1999, 2000, and 2001, in the Southern District of New York and elsewhere, certain conspirators, including KPMG personnel and clients, and others involved in SOS tax shelter transactions prepared, signed and filed tax returns that falsely and fraudulently claimed over $1.9 billion in phony tax losses generated by SOS.

      ss.    In or about March 2001, defendants JEFFREY EISCHEID and STEVEN GREMMINGER attempted to procure an additional law firm to author

a favorable opinion letter for a BLIPS client who had previously demanded that KPMG return all of his fees to him.

tt.    On or about February 12 and 27, 2002, the defendant JEFFREY EISCHEID provided false and misleading testimony under oath to the IRS.

uu.    On or about October 2, 2002, the defendant RICHARD SMITH sent a letter to the IRS in the Southern District of New York falsely claiming that "KPMG has at this time virtually completed its compliance with the summonses" although as SMITH well knew, KPMG had produced no documents or information regarding its involvement in marketing and implementing SOS transactions.

vv.    On or about February 19, 2003, the defendants RICHARD SMITH and STEVEN GREMMINGER and others caused KPMG's outside counsel to falsely represent to the Senate that "after reasonable inquiry to date, the firm has not yet identified any documents" relating to shelter transactions used by KPMG partners to shelter their own income or gains, although SMITH and GREMMINGER well knew that KPMG had various documents responsive to this subpoena request.

ww.    On or about November 18, 2003, the defendant JEFFREY EISCHEID provided false and misleading testimony under oath to a Subcommittee of the United States Senate.

xx.    On or about November 18, 2003, the defendant RICHARD SMITH

provided evasive testimony under oath to a Subcommittee of the United States

Senate.

yy.    On or about November 20, 2003, the defendant JOHN LARSON

provided false and misleading testimony under oath to a Subcommittee of the

United States Senate.

zz.    On or about January 22, 2004, a BLIPS client ("CAROL WARLEY

Client 2") provided false and misleading testimony under oath to the IRS.

(Title 18, United States Code, Section 371.)

## COUNTS TWO THROUGH FORTY
### (Tax Evasion)

The Grand Jury further charges:

79.    The allegations set forth in paragraphs 1-71 are repeated and

realleged as if fully set forth herein.

80.    From on or about January 1 of each of the calendar years set forth

below, through at least on or about the filing dates set forth below for each said calendar

year, in the Southern District of New York and elsewhere, JEFFREY STEIN, JOHN

LANNING, RICHARD SMITH, JEFFREY EISCHEID, PHILIP WIESNER, JOHN

LARSON, ROBERT PFAFF, DAVID AMIR MAKOV, LARRY DELAP, STEVEN

GREMMINGER, RAYMOND J. RUBLE, also known as "R.J. Ruble," GREGG

RITCHIE, RANDY BICKHAM, MARK WATSON, CAROL WARLEY, DAVID

RIVKIN, CARL HASTING, RICHARD ROSENTHAL, and DAVID GREENBERG,

the defendants, along with their co-conspirators, unlawfully, wilfully and knowingly did

attempt to evade and defeat a substantial part of the income tax due and owing by the tax

shelter clients and by certain defendants and entities controlled by defendants set forth

below to the United States of America for the calendar years set forth below, by

committing and causing to be committed the following acts, among others:

     a.     preparing and executing false and fraudulent documents to deceive

the IRS, including but not limited to, engagement letters, transactional documents,

representation letters, and opinion letters;

     b.     creating entities to be used in executing tax shelter transactions;

     c.     executing financial transactions to implement the fraudulent tax

shelters;

     d.     preparing and filing false and fraudulent tax returns; and

     e.     taking various steps to conceal from the IRS the existence of the

shelters, their true facts, and certain conspirators' role in designing, marketing,

and implementing the shelters, including, but not limited to, failing to register the

shelters, using sham attorney-client privilege claims, and concealing documents

and providing false and misleading information in response to IRS and Senate

investigations.

| Count | Client, Defendant, or Entity Controlled by Defendant | Tax Return(s) | Approx. Amount of Fraudulent Tax Shelter Loss | Approx. Date of Filing |
|---|---|---|---|---|
| 2 | Beverly Hills Businessman | 1999 1040 | $120 million | 08/23/2000 |
| 3 | Beverly Hills Businessman | 2000 1040 | $41 million | 10/15/2001 |
| 4 | GREGG RITCHIE | 1999 1040 | $2.7 million | 10/14/2000 |
| 5 | GREGG RITCHIE | 2000 1040 | $2.3 million   *I* | 10/01/2001 |
| 6 | RICHARD ROSENTHAL | 1999 1040 | $248,000 | 10/15/2000 |
| 7 | RICHARD ROSENTHAL | 2000 1040 | $248,000 | 10/15/2001 |
| 8 | CAROL WARLEY Client 1 | 1999 1040 | $136 million | 04/15/2000 |
| 9 | CAROL WARLEY Client 1 | 2000 1040 | $74 million | 10/09/2001 |
| 10 | CAROL WARLEY Client 1 | 2001 1040 | $76 million | 10/15/2001 |
| 11 | CAROL WARLEY Client 2 | 1999 1040 | $36 million | 04/15/2000 |
| 12 | CAROL WARLEY Client 3 | 1999 1040 | $10 million | 04/15/2000 |
| 13 | CAROL WARLEY Client 4 | 1999 1040 | $6 million | 04/15/2000 |
| 14 | JOHN LARSON Client 1 | 1999 1040 | $10 million | 05/10/2000 |
| 15 | JOHN LARSON Client 1 | 2000 1040 | $47 million | 04/15/2001 |

64

| Count | Client, Defendant, or Entity Controlled by Defendant | Tax Return(s) | Approx. Amount of Fraudulent Tax Shelter Loss | Approx. Date of Filing |
|---|---|---|---|---|
| 16 | JOHN LARSON Client 1 Trust | 1999 1041 | $20 million | 05/10/2000 |
| 17 | JOHN LARSON Client 1 Trust | 2000 1041 | $47 million | 04/15/2001 |
| 18 | Hedge Fund Manager 1 | 1999 1040 | $52 million | 08/01/2000 |
| 19 | DAVID RIVKIN Client 1 | 1999 1040 | $25 million | 04/15/2000 |
| 20 | DAVID RIVKIN Client 2 | 1999 1040 | $59 million | 04/15/2000 |
| 21 | DAVID RIVKIN Client 3 | 1999 1040 | $20 million | 04/15/2000 |
| 22 | DAVID RIVKIN Client 4 | 2000 1040 | $30 million | 10/15/2001 |
| 23 | DAVID RIVKIN Client 5 | 1999 1040 | $9 million | 10/19/2000 |
| 24 | DAVID RIVKIN Client 5 | 2000 1040 | $17 million | 06/18/2001 |
| 25 | CARL HASTING Client 1 | 1999 1040 | $36 million | 04/15/2000 |
| 26 | CARL HASTING Client 2 | 1999 1040 | $50 million | 10/15/2000 |
| 27 | CARL HASTING Client 3 | 1999 1040 | $7 million | 09/19/2000 |
| 28 | KPMG Partner 2 | 2000 1040 | $590,000 | 10/10/2001 |
| 29 | Venture Capital Fund Manager 1 | 1999 1040 | $68 million | 10/16/2000 |

| Count | Client, Defendant, or Entity Controlled by Defendant | Tax Return(s) | Approx. Amount of Fraudulent Tax Shelter Loss | Approx. Date of Filing |
|-------|------------------------------------------------------|---------------|-----------------------------------------------|------------------------|
| 30 | Other Client 1 | 1999 1040 | $81 million | 04/15/2000 |
| 31 | Other Client 2 | 1999 1040 | $8 million | 04/15/2000 |
| 32 | JOHN LARSON | 1999 1040 | $8 million | 10/13/2000 |
| 33 | ROBERT PFAFF | 1999 1040 | $8 million | 10/15/2000 |
| 34 | Larson/Pfaff entity 1 | 1999 1040 | $8 million ⁰ | 06/19/2000 |
| 35 | Larson/Pfaff entity 2 | 1999 1120 | $25 million | 02/21/2001 |
| 36 | Larson/Pfaff entity 2 | 2000 1120 | $25 million | 12/03/2001 |
| 37 | Larson/Pfaff entity 3 | 2000 1120 | $25 million | 09/27/2001 |
| 38 | DAVID GREENBERG Client 1 | 1999 1040 | $19 million | 10/15/2000 |
| 39 | DAVID GREENBERG Client 2 | 1999 1040 | $1.4 million | 10/15/2000 |
| 40 | DAVID GREENBERG Client 3 | 2000 1120 | $119 million | 09/30/2001 |

(Title 26, United States Code, Section 7201, Title 18, United States Code, Section 2.)

## COUNTS FORTY-ONE THROUGH FORTY-FOUR
### (Evasion of RUBLE's Income Taxes)

The Grand Jury further charges:

81.     The allegations set forth in paragraphs in 52-53 are repeated and

realleged as if fully set forth herein.

82.     For the tax years 1997-2001, RUBLE knowingly omitted from his

U.S. Individual Income Tax Returns over $1,482,000 in income in the form of side

payments paid to him by the CC-10-related entities and by the LARSON and PFAFF

nominee entities.

83.     From on or about January 1 of each of the calendar years set forth

below, through at least on or about the filing dates set forth below for each said calendar

year, in the Southern District of New York and elsewhere, the defendants listed below,

unlawfully, wilfully, and knowingly, did attempt to evade and defeat a substantial part of

the income taxes due and owing by RUBLE to the United States of America for the

calendar years 1998-2001 by various means, including, among others (a) opening and

causing to be opened in New York, New York a bank account in the name of a trust

controlled by RUBLE; (b) depositing and causing to be deposited in this trust bank

account in New York, New York and another bank account certain side payments he

received from tax shelter promoters; (c) falsely informing the RUBLE Law Firm that he

had no outside income; (d) causing the issuance by the RUBLE Law Firm of IRS Forms

K-1 that under-reported RUBLE's income for the calendar years 1998-2001; and (e)

preparing and causing to be prepared, signing and causing to be signed, and filing and

causing to be filed with the IRS, false and fraudulent U. S. Individual Income Tax

Returns, Forms 1040, for the calendar years 1998-2001, which returns falsely omitted

income in the amounts set forth below, which falsities caused RAYMOND J. RUBLE to

substantially understate his taxable income and tax due and owing each year, as set forth

below:

| Count | Defendants | Tax Year | Approx. Filing Date | Approx. Omitted Fee Income | Approx. Additional Tax Due and Owing |
|-------|-----------|----------|---------------------|---------------------------|--------------------------------------|
| 41 | RAYMOND J. RUBLE, JOHN LARSON, ROBERT PFAFF | 1998 | 10/15/99 | $350,000 | $148,089 |
| 42 | RAYMOND J. RUBLE | 1999 | 09/30/00 | $175,000 | $71,379 |
| 43 | RAYMOND J. RUBLE, JOHN LARSON, ROBERT PFAFF | 2000 | 10/15/01 | $250,000 | $107,299 |
| 44 | RAYMOND J. RUBLE | 2001 | 10/15/02 | $500,000 | $201,365 |

(Title 26, United States Code, Section 7201, Title 18, United States Code, Section 2.)

## COUNTS FORTY-FIVE AND FORTY-SIX
### (Obstruction of the IRS)

The Grand Jury further charges:

84. The allegations set forth in paragraphs 1-71 are repeated and

realleged as if fully set forth herein.

85. On or about the dates set forth below, in the Southern District of

New York and elsewhere, the defendants listed below unlawfully, wilfully, and

knowingly did corruptly obstruct and impede and endeavor to obstruct and impede the

due administration of the Internal Revenue laws by committing or causing to be

committed the acts set forth below:

68

| Count | Approx. Date | Defendants | Description |
|-------|--------------|------------|-------------|
| 45 | 10/02/2002 | RICHARD SMITH, STEVEN GREMMINGER | False statement to the IRS in the SDNY that "KPMG has at this time virtually completed its compliance with the summonses" |
| 46 | 05/28/2003 | JEFFREY EISCHEID, STEVEN GREMMINGER | Telephone call by KPMG representative to IRS representatives in the SDNY and Washington, D.C. falsely claiming that KPMG did not promote or market SOS, but KPMG prepared at least 2 tax returns relating to SOS. |

(Title 26, United States Code, Section 7212, Title 18, United States Code, Section 2.)

FOREPERSON

Michael J. Garcia

MICHAEL J. GARCIA
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**UNITED STATES OF AMERICA**

- v -

**JEFFREY STEIN,
JOHN LANNING,
RICHARD SMITH,
JEFFREY EISCHEID,
PHILIP WIESNER,
JOHN LARSON,
ROBERT PFAFF,
DAVID AMIR MAKOV,
LARRY DELAP,
STEVEN GREMMINGER,
RAYMOND J. RUBLE,**
        also known as "R.J. Ruble,"
**GREGG RITCHIE,
RANDY BICKHAM,
MARK WATSON,
CAROL WARLEY,
DAVID RIVKIN,
CARL HASTING,
RICHARD ROSENTHAL, and
DAVID GREENBERG,**

                **Defendants.**

### SUPERSEDING INDICTMENT

S1 05 Cr. 888 (LAK)

18 U.S.C. § 371, 26 U.S.C. §§ 7201, 7212,
18 U.S.C. § 2

                        <u>MICHAEL J. GARCIA</u>
                     United States Attorney.

A TRUE BILL

                                    <u>Foreperson.</u>