# EXHIBIT K

**To:** DeLap, Larry
**CC:** Eischeid, Jeffrey A; Henderson, Tracie K
**BCC:**
**Date:** 06/30/2000 06:28:14 PM
**From:** Elgin, Evelyn
**Folder:** Carlos Sala
**Subject:** FW: BLIPS Final Engagement Letter.doc
**Attachments:** BLIPS Final Engagement Letter.doc

Larry,

Jeff Eischeid and Tracy Henderson just called asking for certain changes to the BLIPs engagement letter for a deal on which a 6/30 $ 2 million fee was riding. The PPP-Tax, Bill Alsbaugh and you were not reachable. So, I was kind of on the line and said the following (note, that the attached engagement letter was not quite the version they were using, but pretty close):

1. Re: current provision in the engagement letter saying they agree to indemnify us except for damages immediately and directly resulting from our gross negligence or bad faith – client wanted to delete "immediately and directly." I said no, if carve out relates to gross negligence and "bad faith" instead of to gross negligence and "intentional misconduct," as "bad faith" is potentially a broader term than "intentional misconduct." (I believe PPP-Tax already had approved substitution of 'bad faith" for "intentional misconduct.") I said they didn't need "immediately and directly' if carve-out was for gross negligence and intentional misconduct.

2. Re: provision saying Client further acknowledges that the Investment Program is aggressive in nature and that the Internal Revenue Service might challenge the intended results of the Investment Program and could prevail under any of various tax authorities. -- Client wanted to delete entire sentence. I agreed to delete the words bracketed below:

> Client acknowledges that any tax opinion issued by KPMG would not guarantee tax results, but would provide that with respect to the tax consequences described in the opinion, there is a greater than 50 percent likelihood (i.e., it is "more likely than not") that those consequences will be upheld if challenged by the Internal Revenue Service. Client further acknowledges that the [Investment Program is aggressive in nature and that the] Internal Revenue Service might challenge the intended results of the Investment Program and could prevail under any of various tax authorities. Client also acknowledges receipt of a memorandum that discusses certain penalties that might be asserted by the Internal Revenue Service should it challenge any tax deductions or tax losses that might be claimed by Client with respect to participation in the Investment Program.

3. Re: provision requiring Client to pay our costs of producing documents, including related attorneys' fees in a lawsuit: -- They wanted paragraph out. I said okay, as it seemed much narrower than, for example, the indemnification and limitation of liability language and I suppose arguably (at least given 6/30 context) more of a business decision.

> In the event any Indemnified Party is requested pursuant to subpoena or other legal process to produce documents relating to this engagement in judicial or administrative proceedings to which such Indemnified Party is not a party, Client shall reimburse the Indemnified Party at

standard billing rates for the Indemnified Party's professional time and expenses, including reasonable attorney's fees, incurred in responding to such requests.

Eve

-----Original Message-----
**From:** Henderson, Tracie K
**Sent:** Friday, June 30, 2000 5:26 PM
**To:** Elgin, Evelyn
**Subject:** FW: BLIPS Final Engagement Letter.doc

KPMGZ12060480