# EXHIBIT Y

**To:** tkhenderson@kpmg.com  
**CC:**  
**BCC:**  
**Date:** 10/06/2000 12:54:06 PM  
**From:** Salaini@aol.com  
**Folder:** Carlos Sala  
**Subject:** (no subject)  
**Attachments:** call spread memorandum (S corp.).doc



Page: 1 of 1

KPMGZ12060506

**BROWN & WOOD** LLP

September 15, 2000

Re: <u>**Investments in Foreign Currency**</u>

This Memorandum addresses certain U.S. federal income tax consequences of investment transactions ("Transactions"), described more fully below, that an individual investor ("Investor") 1 would make directly and through a wholly-owned S corporation ("Corp") that invests in a professionally managed pooled investment vehicle that invests in foreign currency and related derivative instruments. This Memorandum addresses certain U.S. federal income tax issues solely for the purpose of facilitating an analysis of the issues based upon the hypothetical fact pattern set forth below. This Memorandum does not address the facts of any particular transaction. The actual facts and circumstances of a particular transaction or a particular investor cannot be known in advance and may substantially alter the analysis set forth herein.

**I.   Summary of the Transactions**

   **A.   Fund**

Fund, is a domestic limited liability company that we have assumed has not and will not elect to be treated as a corporation for U.S. federal income tax purposes. Fund was formed for the purpose of acquiring financial investments, buying and selling options on foreign currency, and conducting other investment activities. Fund initially had at least two members, Member X and Member Y (collectively "Members"). The Members each contributed $10x for a 50% membership interest in Fund. Fund was managed by Manager, an investment advisory firm with significant experience in managing similar portfolios. Manager has provided an analysis showing the probability of earning a profit from the investments described below based upon historic data.

   **B.   Investment in Foreign Currency Options**

Investor either directly or through SMLLC, a domestic limited liability company of which Investor is the sole member, entered into two over-the-counter, non-publicly traded

---

[1] This Memorandum assumes that Investor is an individual. Investor could also be an S corporation or a partnership, to which the Options as described herein were contributed by a shareholder or partner prior to such S corporation or partnership becoming a member of Fund.

NYLIB1/752274/1

1

KPMGZ12060507

**BROWN & WOOD LLP**

foreign currency option transactions with an independent financial institution ("Bank").[2] The first was the purchase of a European-style cash-settled digital put option having a 90 day term, for a premium of $100x ("Long Option"). The second was the sale of a European-style cash-settled digital put option, having a 90 day term, for a premium of $97x ("Short Option"). (The Long Option and the Short Option are hereinafter individually referred as an "Option" and collectively as the "Options".) The aggregate net cost to Investor from entering into the Options was $3x. Each Option was out of the money on the date that it was entered into.

Manager have advised us that although the Options by their terms did not provide for transferability, it was and is common market practice for options such as the Options to be sold or otherwise transferred separately from each other (subject to satisfying Bank's credit requirements).

### C.  Contribution to Corp

Within 30 days of acquiring the Options, Investor contributed all of Investor's membership interest in SMLLC to Corp. At the time of such contribution the Short Option was out of the money.

### D.  Contribution to Fund

Within 30 days of acquiring the Options, Corp contributed the entire membership interest in SMLLC to Fund in exchange for a 98% interest in Fund. We have been advised by the Manager that at the time of such contribution the Short Option was out of the money.

### E.  Fund Investments

In addition to the contributed Options, based on the advice of Manager, Fund entered into a series of similar foreign currency options involving additional foreign currencies.

### F.  Withdrawal from Fund

---

[2] As discussed in the text below, it is more likely than not that SMLLC would be disregarded as an entity separate from Investor or, after its transfer to Fund, Fund for U.S. federal income tax purposes. Consequently, except to the extent SMLLC is specifically referred to herein, all references to Investor prior to the transfer of SMLLC to S Corp or S Corp prior to contribution of SMLLC to Fund, or to Fund following the transfer SMLLC to Fund will encompass SMLLC.

NYLIB1/752274/1

**BROWN & WOOD** LLP

In December 2000, Corp withdrew from Fund. In exchange for Corp's membership interest Investor received x units of foreign currency ("Foreign Currency"). We have been advised by Manager that such amounts equaled the fair market value of Investor's membership interest in Fund and capital account in Fund at that time. Corp continued to make similar investments

Manager has advised that following the withdrawal of Investor, Fund remained in existence and continued its investment activities.

### G.     Sale of Foreign Currency

In December 2000, Corp sold the Foreign Currency it had received upon its withdrawal from Fund for an aggregate consideration of U.S. $x, based on then current spot rates. The sale also settled in December 2000.

### H.     Investment in New Fund

Corp used the proceeds from the sale of the Foreign Currency to invest in a new pooled investment vehicle managed by Manager "New Fund". New Fund had similar investment guidelines to Fund, but used different amounts of leverage thereby creating a different risk/reward analysis from Fund. Manager has provided an analysis showing the probability of earning a profit from its investments based upon historic data. Pursuant to the New Fund Subscription Agreement, Corp and all of the other members of New Fund committed to remain in New Fund for a period of at least 36 months. Were a member of New Fund to withdraw prior to the end of such period, such withdrawing member would be subject to financial penalties.

## II.    Representations:

### A.     Investor Representations:

Were our analysis directed at a specific transaction we assume that Investor would make the following representations in connection with such transaction:

1. Investor entered into the Options for substantial non-tax business reasons, including to produce an overall economic profit from the movement of foreign currency against the U.S. dollar.

NYLIB1/752274/1

3

KPMGZ12060509

**BROWN & WOOD** LLP

2. Based upon Investor's own independent evaluation and upon the advice of Manager, Investor believed that by entering into the Options Investor could significantly leverage Investor's investment in such currencies.

3. Based upon advice of the Manager as to the probability of the foreign currency reaching certain levels at which the Options would be profitable, and upon Investor's own independent evaluation, Investor believed that Investor had a reasonable opportunity to earn a reasonable profit, in excess of all fees and transaction costs, from the Transactions, without regard to tax benefits.

4. Based on the advice of Manager, and upon Investor's own independent evaluation, Investor had an opportunity to make an aggregate gross return in excess of the sum of Investor's net investment in the Options and the Advisory Fee paid by Investor.

5. Corp contributed the membership interest in SMLLC to Fund for substantial non-tax business reasons, including diversification of its portfolio without the need for additional investment, the professional management provided by the Manager, and the desire to create larger pool of capital through the involvement of other investors such as the Manager.

6. SMLLC has not elected, and will not elect, under Treas. Reg. §301.7701-3 to be classified as a corporation.

   Investor and Corp will not hedge their risks with respect to the Options with Bank.

8. Neither Corp and Investor have not identified, and will not identify, any of the Options as being part of a hedging transaction under Treas. Reg. §1.446-4.

9. Investor, Corp, and SMLLC each uses the U.S. dollar as Investor's functional currency.

10. Neither Corp nor Investor is related to the other members of Fund.

11. Whether and when Corp terminated Corp's investment in Fund was within Corp's sole discretion and control.

12. There existed no understanding, agreement, obligation, or arrangement pursuant to which any of the parties described herein committed to undertake all or any of the transactions described herein upon the happening of any other transaction, except to the extent that Investor/SMLLC (and Fund as transferee of Investor) and

NYLIB1/752274/1

4

KPMGZ12060510

**BROWN & WOOD** LLP

Bank were contractually obligated to perform under the Options in accordance with their stated terms.

13. Investor has not entered into a confidentiality agreement or otherwise agreed (orally or in writing) to any obligations of confidentiality with respect to the Transactions.

14. Investor is an individual whose "tax home" as defined in Section 911(d)(3) of the Internal Revenue Code of 1986, as amended ("Code") is the United States.

15. Investor has reviewed the description of the Transactions as set forth herein and such description is accurate and complete, and there are no pertinent facts relating to the Transactions that have not been set forth in such description.

**B.    Fund Representations:**

Were our analysis directed at a specific transaction we assume that Fund would make the following representations in connection with such transaction:

1. Fund will not hedge its risks with respect to the Options with Bank

2. Fund has not identified, and will not identify, any of the Options as being part of a hedging transaction under Treas. Reg. §1.446-4.

3. Fund will determine its members' distributive shares income, gain, loss, deduction, or credit and will maintain its members' capital accounts in accordance with Code Section 704 and the Treasury Regulations promulgated thereunder.

4. Fund has not made an election under Code Section 754 and will not do so for the taxable year or years in which the Transactions occur.

5. Fund has not elected, and will not elect, under Treas. Reg. §301.7701-3 to be classified as a corporation.

6. Fund entered into the Transactions for substantial non-tax business reasons, including to produce an overall profit from investments in foreign currency and foreign currency options.

7. Based upon the advice of Manager, (x) the Options are not listed on or subject to the rules of a qualified board or exchange as those terms are used in Code Section 1256(g)(5) and (y) the price of the Options was not determined by reference to prices in the interbank market.

NYLIB1/752274/1

5

KPMGZ12060511

**BROWN & WOOD** LLP

8. Fund has not elected, and will not elect, under Treas. Reg. §1.988-3(b) to treat exchange gain or loss on any forward contracts, futures contracts or option contracts as capital gain or loss.

9. Fund uses the U.S. dollar as its functional currency.

## III. Analysis

The following analysis is based upon the applicable provisions of the Internal Revenue Code of 1986, as amended, ("Code") and of the final, temporary, and proposed Treasury Regulations ("Treas. Reg." or "Regulation") promulgated thereunder; relevant decisions of the U.S. Federal courts; published Revenue Rulings ("Rev. Rul." or "Ruling") and Revenue Procedures ("Rev. Proc.") of the Internal Revenue Service ("IRS"); decisions of relevant Federal courts, and such other materials as we have considered relevant.

### A. SMLLC Disregarded

Treas. Reg. §301.7701-2(b)(1)-(8) describes certain entities that are classified as corporations for U.S. federal income tax purposes. Treas. Reg. §301.7701-3 provides that an entity not described in Teas. Reg. §301.7701-2(b)(1), (3), (4), (5), (6), (7), or (8) is considered to be an "eligible entity", which may elect to be classified as a corporation or, if it has a single owner, be disregarded as an entity separate from its owner. Treas. Reg. §301.7701-(3)(b)(1) provides that a domestic eligible entity that has a single owner and does not elect to be classified as a corporation would be disregarded as an entity separate from its own for U.S. federal income tax purposes.

Based on the facts set forth above, SMLLC will constitute a domestic eligible entity. Consequently, if, SMLLC does not elect to be classified as a corporation, it is more likely than not that SMLLC will be disregarded as an entity separate from Investor for U.S. federal income tax purposes.

### B. Fund is Treated as a Partnership

Treas. Reg. §301.7701-2(b)(1)-(8) describes certain entities that are classified as corporations for U.S. Federal tax purposes. Treas. Reg. §301.7701-3 provides that an entity not described in Treas. Reg. §301.7701-2(b)(1), (3), (4), (5), (6), (7), or (8) is considered to be an "eligible entity", which may elect to be classified as either a corporation or, if it has 2 or more

NYLIB1/752274/1

6

KPMGZ12060512

**BROWN & WOOD** LLP

owners, a partnership. Treas. Reg. §301.7701-(3)(b)(1) provides that a domestic eligible entity that has two or more members and does not elect to be classified as a corporation will be classified as a partnership for U.S. federal income tax purposes.

Based on the facts set forth above, it is more likely than not that Fund would constitute a domestic eligible entity. Consequently, if Fund, as represented, has not elected and does not elect to be classified as a corporation, it is more likely than not that Fund would be treated as a partnership for U.S. federal income tax purposes.[3]

Under common law the courts have held that a partnership is respected for tax purposes if the parties join together to jointly conduct a business and share the profits. See, e.g., Comm'r v. Culbertson, 337 U.S. 733 (1949). . In Comm'r v. Culbertson, supra, 741, the Court stated that

---

[3] Fund has represented that Fund will determine its members' distributive shares income, gain, loss, deduction, or credit and will maintain its members' capital accountants in accordance with Code Section 704 and the Treasury Regulations promulgated thereunder. As a result, on liquidation of Fund or a member's interest therein, such capital account will affect the amount such member will receive. It should be noted that a partner's basis in his or her partnership interest and the partner's capital account in the partnership are not necessarily the same. See, Willis, Pennel, Postlewaite, Partnership Taxation, Vol. 1, ¶5.02 (6th Ed. 1997). See also, Treas. Reg. §1.704-1(b)(2)(iv)(g)(1), which reflects this rationale.

Establishment and maintenance of a partnership's capital accounts is governed by the rules of Treas. Reg. §1.704-1(b)(2)(iv). Treas. Reg. §1.704-1(b)(2)(iv)(b)(2) provides that a partner's capital account is increased by ' the fair market value of property contributed by him to the partnership (net of liabilities secured by such contributed property that the partnership is considered to assume or take subject to under section 752)". Treas. Reg. §1.704-1(b)(2)(iv)(h) provides:

> For purposes of this paragraph (b)(2)(iv), the fair market value assigned to property contributed to a partnership.... will be regarded as correct, provided that (1) such value is reasonably agreed to among the partners in arm's-length negotiations, and (2) the partners have sufficiently adverse interests. Valuation of property contributed to the partnership... shall be on a property-by-property basis....

Consequently, we have been advised that Investor's initial capital account in Fund equaled the net value of the Options contributed to Fund and this fully reflected the amount that Investor receives on liquidation of Fund or his interest therein.

Although the Short Option is not a liability, its acceptance by Fund represents the assumption by Fund of an economic undertaking. In that regard it is analogous to assuming a Code Section 752 liability and treating it in the same manner as such a liability for capital account purposes is consistent with establishing a capital account for Investor that reflects Investor's economic interest in the partnership. Lastly, nothing in Treas. Reg. §1.704-1(b)(2)(iv)(h) would appear to prevent the partners from agreeing to a negative value for such an undertaking if in fact that item reflects a potential economic cost to the partnership. Such an approach appears to be consistent with the revaluation rules of Treas. Reg. §1.704-1(b)(2)(iv)(f) and the book value adjustment rules of Treas. Reg. §1.704-1(b)(2)(iv)(g)

NYLIB1/752274/1

7

KPMGZ12060513

**BROWN & WOOD LLP**

whether a partnership existed for tax purposes depends on "whether the partners really and truly intended to join together for the purpose of carrying on the business and sharing in the profits and losses or both."

In PLR 9914006 (12/23/98), a limited liability company ("LLC") was owned by a partnership and a corporation all of the stock of which was owned by the partnership. Under the LLC agreement, the corporation was not entitled to receive any distributions, and did not receive any allocations of income, gain, profit, loss, deduction, credit, or other amount from the LLC. One of the issues in the ruling was whether the LLC was a partnership for tax purposes. The IRS cited Culbertson, supra, and Comm'r v. Tower, 327 U.S. 280 (1946) for the general principles applicable to determine whether a partnership exists. The ruling states that "The primary inquiry is whether the parties intended to join together to operate a business and share in its profits and losses." Because the corporation in the ruling had no interest in the profits and losses of the LLC, the IRS concluded that the corporation was not a partner, and that therefore the partnership was the sole owner of the LLC. Thus, the critical issue in this ruling was whether the purported partners joined together to conduct a business and share the profits and losses. In the present situation, Investor and the other members invested in Fund with the intent of jointly conducting an activity (investing) and sharing the profits and losses therefrom, and this is reflected in the terms of the Fund's organizational documents.

In ASA Investerings Partnership v. Comm'r, T.C. Memo. 1998-305, aff'd 201 F.3d 505 (D.C. Cir. 2000), the court found that a partnership formed by Allied Signal and ABN, a foreign partner, was not a valid partnership arrangement for U.S. federal income tax purposes. The court based its holding, in part, on what it viewed as the two party's different investment objectives. In the court's view, Allied Signal only wanted the capital losses while ABN was only interested in earning a specified rate of return on its investment. ABN did not want to share in any losses. The court found that Allied Signal was obligated to pay all expenses and guarantee ABN a minimum profit and made all the critical management decisions. As a result, the court concluded that ABN was not a partner in a partnership, but rather was a mere lender. The court noted that Allied Signal agreed to enter into the transaction before it even knew that ABN would be involved.

The Allied Signal case is distinguishable from the Transactions in several key respects Each member invested in Fund in anticipation of realizing profits from Fund's investment activities. Investor and the other members all have the potential for profit or loss in respect of

NYLIB1/752274/1

KPMGZ12060514