# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| CARLOS SALA AND<br>TINA ZANOLINI SALA, | )<br>) | |
| Plaintiffs, | ) | 05-cv-00636-LTB-OES |
| | | |
| UNITED STATES OF AMERICA,<br>Defendant. | )<br>) | |

### DECLARATION OF SHIRAH NEIMAN

1.     I am an Assistant United States Attorney and Chief Counsel to the United States Attorney for the Southern District of New York. I am supervising a team of attorneys and law enforcement personnel who are conducting a grand jury investigation of individuals and entities involved in devising, marketing, and implementing tax shelters and otherwise participating in them. The tax shelter transactions include BLIPS, OPIS and SOS, among others. The team is prosecuting the case *United States v. Stein, et al.*, Indictment No. S1 05 Cr. 888 (LAK) (SDNY), which I believe is the largest criminal tax prosecution the United States has ever filed. I submit this declaration in support of the motion of the United States for a stay of the civil case of *Carlos and Tina Sala, v. United States* (hereinafter "Sala") until after the conclusion of the trial of *United States v. Stein*. The *Stein* trial was originally scheduled to begin on May 1, 2006, but was rescheduled for September 11, 2006 to accommodate the schedule of one defendant's attorney.

2.     A Superseding Indictment was filed in *United States v. Stein* on October 17, 2005 ("the Indictment"). Among other things, the Indictment alleges that the BLIPS and OPIS tax shelters devised by KPMG, the Presidio entities, criminal defendant R.J. Ruble and others are fraudulent and generated billions of dollars in tax losses. The Indictment also alleges that after

KPMG and certain of the KPMG defendants determined that SOS shelters (referred to by various names set forth in the Indictment) were also fraudulent, KPMG and certain of the KPMG defendants, including Jeffrey Eischeid and Larry DeLap, and defendant R.J. Ruble and other co-conspirators nonetheless participated in the marketing and implementation of numerous SOS shelters, for which KPMG also prepared fraudulent tax returns, and for which defendant Ruble frequently provided "more likely than not" opinion letters. In addition, one KPMG partner who sold SOS shelters on the West Coast issued KMPG opinion letters for SOS shelters. The Carlos Sala SOS shelter that is the subject of this civil lawsuit, is one of the SOS shelter transactions encompassed by the charges in the Indictment.

3. On August 26, 2005, KPMG entered into a Deferred Prosecution Agreement with the United States, in which KPMG agreed to an attached Statement of Facts admitting, among other things, that BLIPS and SOS were fraudulent shelters.

4. My office will not disclose to the attorneys for the Government in this civil lawsuit the documents we and the grand jury have gathered for purposes of prosecuting the criminal case, because of Rule 6(e), and because to do so at this time would compromise the criminal trial and the ongoing criminal investigation.

5. It is the practice of the Office of the United States Attorney for the Southern District of New York not to identify the witnesses who may testify for the prosecution until the time of trial, and not to produce under 18 U.S.C. §3500 the statement of any witness who testifies for the prosecution, until shortly before that witness testifies at the criminal trial. Accordingly, my office will not disclose to the attorneys for the criminal defendants in *United States v. Stein* the identities of witnesses who the United States may call at the criminal trial, or their statements, until the appropriate time shortly before or during the criminal trial. We will

also not disclose the identities of witnesses, witness grand jury testimony, interview notes, or the substance of what witnesses have said, to the attorneys for the Government in this civil lawsuit, because they are covered by Rule 6(e), and because to do so at this time would compromise the criminal.

6. Based on my review of information provided to me by Government civil counsel, and my knowledge of facts surrounding Carlos Sala as a KPMG client, and my knowledge of the grand jury investigation and the shelter transactions that are the subject of the Indictment, I believe there are witnesses who are cooperating with the Government in the criminal case who Government civil counsel would need to depose in order to mount a full and fair defense of this civil case. I also believe that Government counsel in the civil case is not even aware of the identity of some of these witnesses. However, to permit depositions to be taken of these witnesses now, in advance of the criminal trial in *Stein*, would unfairly provide the criminal defendants with a preview of the Government's criminal case and also prejudice the ongoing criminal investigation. Moreover, if these witnesses were to be deposed now, in order for Government civil counsel to conduct an effective direct and redirect examination and ask clarifying questions, they would need access to information developed in the criminal case, which I cannot share with them under Rule 6(e), and because to do so would compromise the criminal case, and thus any resulting examinations would of necessity be incomplete and distorted. This would prejudice the Government in the civil case, and in the criminal case, defendants would take every opportunity to impeach witnesses with testimony elicited by attorneys who had incomplete information. Similarly, taking depositions of witnesses who are not cooperating with the Government's criminal investigation or who are hostile, would also result in incomplete deposition testimony severely handicapped by the Government civil

attorneys' lack of access to all the facts developed in the criminal investigation. The Government in both the civil and criminal cases would be prejudiced by the taking of depositions under these circumstances.

7. Without a stay in *Sala*, the only way the Government could avoid the prejudice described in paragraph 6, would be to disclose to the Government civil attorneys, under appropriate Rule 6(e) orders, the information developed in the criminal investigation, which would then have to made available to the Plaintiffs in civil discovery, and would also be disclosed during deposition testimony and ultimately at the civil trial. To disclose the identities of the witnesses who may testify at the criminal trial, and their prior statements and testimony, will interfere with the prosecution of the criminal case by inevitably providing the defendants in the criminal case earlier and greater access than they are entitled to under the rules, statutes and case law that govern the prosecution of the criminal case.

8. In addition, to allow deposition discovery of witnesses who may testify in the criminal case to go forward now, will give the criminal defendants an unwarranted and premature view of the witnesses' testimony which forms part of the evidence we intend to offer at the criminal trial, thereby interfering with the prosecution of the criminal case. Even if the court entered protective orders, this information would be used during depositions of witnesses with ties to the criminal defendants and will thus make its way into their hands. Moreover, as a matter of fairness, any deposition or civil trial testimony would have to made available to the *Stein* defendants prior to the criminal trial. Similarly, disclosure of impeachment information with respect to witnesses who may be hostile to the Government, would also result in unwarranted and premature disclosure of evidence the Government would use in the criminal trial, provide those witnesses with the opportunity to tailor their testimony in advance of the

criminal trial, and thereby interfere with the prosecution of the criminal case.

9. In order to protect the ongoing criminal investigation and the *Stein* trial, I have requested that the Tax Division and the IRS seek stays, continuances, and where appropriate dismissals in all civil cases which could impact the *Stein* trial and in which the United States is a party. My office has also moved to intervene in private civil litigation to protect the *Stein* trial. This relief has been variously granted, including sua sponte, based on Plaintiff motions with no opposition by the Tax Division or the IRS, based on motions jointly filed by Plaintiffs and the Tax Division, as well as based on stipulations. I expect that other motions for stays and suspensions will be filed at appropriate times in cases impacting the *Stein* trial and the ongoing criminal investigation. To date, all the relief requested has been granted, or motions are otherwise pending.

10. It is my firm belief that a failure to stay *Sala* will severely prejudice the criminal prosecution of *Stein* and the ongoing criminal investigation, and also create a substantial danger that the stays granted by the Court in the Northern District of California, the Tax Court and other courts will be circumvented and frustrated.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at New York, New York on December 9, 2005.

　　　　　　　　　　　　　　　　　　　　　　　　　／s／ Shirah Neiman
　　　　　　　　　　　　　　　　　　　　　　　　SHIRAH NEIMAN
　　　　　　　　　　　　　　　　　　　　　　　　Assistant United States Attorney
　　　　　　　　　　　　　　　　　　　　　　　　Chief Counsel to the United States Attorney
　　　　　　　　　　　　　　　　　　　　　　　　Southern District of New York