# APPENDIX

**<u>Russell v. United States</u>, 76-1 USTC ¶ 9377 (10th Cir.)**

2 of 3 DOCUMENTS

**Stuart H. Russell and Helen G. Russell, Plaintiffs-Appellants v. United States of America, Defendants-Appellees.**

**No. 75-1754**

**United States Court of Appeals, Tenth Circuit**

*1976 U.S. App. LEXIS 11996; 76-1 U.S. Tax Cas. (CCH) P9377; 37 A.F.T.R.2d (RIA) 1371*

**4/5/76.**

**LexisNexis(R) Headnotes**

**OPINION: [*1]**

Before Honorable Oliver SETH, Honorable Robert H. McWILLIAMS, and Honorable James E. BARRETT, United States Circuit Judges.

PER CURIAM: This is an appeal from an order of the United States District Court for the Western District of Oklahoma which granted the Government's motion to stay proceedings in an income tax refund action pending final determination, including appeal, of Russell's prosecution for conspiring to violate Section 610 of Title 18, United States Code, and for two substantive counts of aiding and abetting the making of illegal campaign contributions. The trial of the criminal case against Russell resulted in his conviction on all three counts and his appeal therefrom is set for oral argument before the United States Court of Appeals for the Fifth Circuit on April 8, 1976.

In December of 1974, Stuart Russell, an attorney retained by the Associated Milk Producers, Inc. ("AMPI"), was indicted for assisting AMPI in making illegal campaign contributions by providing funds from his accounts to AMPI officers or employees which were subsequently paid to several election committees. At approximately the same time Russell provided the cash or checks, he would submit [*2] an invoice to AMPI ostensibly billing them for legal services but actually representing a claim for reimbursement of the campaign contribution and an incremental amount to compensate him for additional income tax liability. On March 10, 1975, appellant filed a tax refund action seeking return of income taxes which he contends were overpaid due to erroneously including these legal fees/reimbursements in income. In conjunction with this refund suit, appellant served the Government with a Request for Admissions including that the bills for legal services actually represented claims for reimbursement of the funds advanced for the campaign contributions. The government responded to this civil suit by moving to stay the proceeding until final disposition of the criminal case.

In support of its motion, the government argued that priority should be given to the criminal proceeding to avoid several potential interferences. First, the movant argued that necessary civil discovery, particularly with regard to the Request for Admissions dealing with the characterization of the legal fee/reimbursement from AMPI, risked violating Russell's Fifth Amendment privilege against compulsory self-incrimination. [*3] Second, the Department of Justice's Tax Refund Trial Section was limiting its investigation and discovery relating to the refund action in order not to taint the prosecution of the interrelated illegal campaign contribution charges. Not being able to vigorously defend the tax refund suit could result in conceding it in order to preserve the integrity of the criminal case. Third, the civil discovery rules potentially could be abused to divulge the government's criminal case. Further, the government contended that the legality of the campaign contributions, at issue in the criminal case, might be pertinent to the refund suit's merits and should be resolved first.

Appellant's position was that the criminal trial was over and the stay moot, that he had not invoked his Fifth Amendment privilege at any stage of the proceedings, and that is civil discovery was essentially completed. Also, Russell contended that the real reason the government requested the stay was to give it time to prepare a defense to the refund suit which would not be entirely inconsistent with its theory in the criminal action that the funds Russell received were reimbursements and not taxable income.

At the [*4] outset we are confronted with the question of whether the order is appealable. Although the order granting the stay is interlocutory, not a final decision under *28 U.S.C. § 1291,* it may have elements of finality or other special factors bringing it within this court's jurisdiction. *Hart v. Orion Insurance Company, 427 F. 2d 528 (1970);*

1976 U.S. App. LEXIS 11996, *4; 76-1 U.S. Tax Cas. (CCH) P9377;
37 A.F.T.R.2d (RIA) 1371

see, *Ephraim Freightways, Inc. v. Red Ball Motor Freight, Inc., 376 F. 2d 40 (10th Cir. 1967);* see also, *Dellinger v. Mitchell, 442 F. 2d 782 (D.C. Cir. 1971);* 9 Moore, Federal Practice, [*] 110.20[4–2], (2d. ed. 1948). On the facts of the case before us, however, we conclude that we are without jurisdiction to review the district court's order staying the tax refund suit.

It is clearly established that a district court has inherent power to stay proceedings pending before it and to control its docket. In exercising this discretion the district court judge must, as was done in the present case, balance the competing interests of the parties. *Landis v. North American Company, 299 U.S. 248, 254–255 (1936);* see, *Pet Milk Company v. Ritter, 323 F. 2d 586, 588 (10th Cir. 1963).* [*5] The trial judge gave substantial weight to the government's demonstrated concern for the interference with the criminal proceeding which would accompany investigation and use of the more liberal discovery proce-

dures available in the civil case, as well as to the potential for violation of Russell's Fifth Amendment rights.See, *Campbell v. Eastland, 307 F. 2d 478, 487 (5th Cir. 1962);* cf., *U.S. v. Kordel, 397 U.S. 1 (1970).*

Notwithstanding that jurisdiction under the All Writs Act, *28 U.S.C. § 1651*(a), could be exercised by this court to rectify an abuse of discretion, *Dellinger v. Mitchell, supra, pp. 788–789,* the district court's stay order, subordinating Russell's right to a reasonably prompt determination of his tax refund claim to the uncompromised prosecution of the criminal case, was neither unreasonable nor immoderate. See, *Campbell v. Eastland, supra;* cf., *Dellinger v. Mitchell, supra; McSurely v. McClellan, 427 F. 2d 664 (D.C. Cir. 1970); Ellsberg v. Mitchell, 353 F. Supp. 513 (D.D.C. 1970).*

Accordingly, the appeal is dismissed.

The mandate shall [*6] issue forthwith.

**<u>S.E.C. v. Rivelli</u>, 2005 WL 2789317 (D. Colo.)**

Westlaw.

Slip Copy                                                                                         Page 1
Slip Copy, 2005 WL 2789317 (D.Colo.)
**(Cite as: 2005 WL 2789317 (D.Colo.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Colorado.
SECURITIES AND EXCHANGE
COMMISSION, Plaintiff,
v.
Louis E. RIVELLI, Rodney B. Johnson,
Stephen G. Burke, Teresa W. Ayers, Craig
L. Stevenson, Robert T. Hoffman,
Defendants
**No. Civ.A. 05CV1039RPM.**

Oct. 26, 2005.

Julie K. Lutz, U.S. Securities & Exchange Commission-Colorado Denver Regional Office, Denver, CO, for Plaintiff.

Charles B. Hecht, Cara F. Thornton, Hamil/Hecht, LLC, Josiah Oakes Hatch, III, Francis Stephen Collins, Ducker, Montgomery, Aronstein & Bess, P.C., David A. Zisser, Isaacson Rosenbaum, P.C., Sven C. Collins, Holme, Roberts & Owen, LLP, Denver, CO, David B. Bayless, Tammy Albarran, Morrison & Foerster, LLP, San Francisco, CA, Martin Melville Berliner, Berliner McDonald, P.C., Greenwood Village, CO, for Defendants.

ORDER DENYING MOTION FOR **STAY**

MATSCH, Senior J.

*1 On June 7, 2005, the Securities and Exchange Commission (SEC) brought this **civil** action against six individuals formerly associated with Fischer Imaging Corporation, alleging that the defendants violated provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934. The SEC seeks injunctive relief, disgorgement, **civil** penalties, and an order permanently barring four of the defendants from serving as an officer or director of any public company.

On August 18, 2005, Defendant Louis Rivelli moved for a four-month **stay** and a status conference at the end of that period to evaluate the impact of an ongoing **criminal** investigation on this **civil** action. Rivelli argues that a **stay** is appropriate because his Fifth Amendment rights are implicated by the parallel **criminal** investigation.

Defendant Rodney Johnson joined in the motion to **stay**, stating that Rivelli's testimony is crucial to his own defense. Defendants Craig Stevenson, Robert Hoffman, and Stephen Burke did not file a response, but Rivelli's motion states that they do not oppose a **stay**. Defendant Teresa Ayers opposed the motion, arguing that a **stay** would prejudice her opportunity to show that the SEC's claims

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 2
Slip Copy, 2005 WL 2789317 (D.Colo.)
**(Cite as: 2005 WL 2789317 (D.Colo.))**

against her are meritless. The SEC opposed the motion.

The Constitution does not require that a **civil proceeding** be **stayed pending** the outcome of parallel **criminal proceedings**. *See Sec. & Exch. Comm'n v. Dresser Indus.,* 628 F.2d 1368, 1375 (D.C.Cir.1980). Relevant factors include the extent to which a defendant's Fifth Amendment rights are implicated; the extent to which the **criminal** and **civil cases** overlap; the status of the case; whether the defendant has been indicted; the interest of the plaintiff in **proceeding** expeditiously with the **civil** litigation; the potential prejudice to the plaintiff of a delay; the efficient use of judicial resources; the interests of persons not parties to the **civil** litigation, and the interest of the public in the **pending civil** and **criminal** litigation. *See Fed. Sav. & Loan Ins. Corp. v. Molinaro,* 889 F.2d 899, 903 (9th Cir.1989); *Sec. & Exch. Comm'n v. HealthSouth Corp.,* 261 F.Supp.2d 1298, 1316 (N.D.Ala.2003). The movant bears the burden of showing that the requested postponement is necessary. *Dawn v. Mecom,* 520 F.Supp. 1194, 1197 (D.Colo.1981).

Defendant Rivelli has not met his burden of showing that a **stay** is warranted in this case. The fact that no indictment has been issued weighs against delaying the progress of this action, and under these circumstances Defendant Rivelli's dilemma does not justify a postponement. The plaintiff has a strong interest in having this action proceed expeditiously, and Defendant Ayers has

expressed a similar interest. Resolution of these claims would be in the best interest of Fischer Imaging Corporation, its shareholders, and the public. The court's interest in the efficient use of its resources favors **proceeding** on the plaintiff's claims against all the defendants. Accordingly, it is

**\*2** ORDERED that Defendant Rivelli's motion for **stay** is denied.

Slip Copy, 2005 WL 2789317 (D.Colo.)

**Motions, Pleadings and Filings (Back to top)**

• 1:05cv01039 (Docket)                         (Jun. 07, 2005)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**<u>S.E.C. v. Nacchio</u>, 2005 WL 1799372 (D.Colo.)**

Westlaw.

Slip Copy
Slip Copy, 2005 WL 1799372 (D.Colo.)
**(Cite as: 2005 WL 1799372 (D.Colo.))**

Page 1

**c**
Only the Westlaw citation is currently available.

United States District Court,
D. Colorado.
SECURITIES AND EXCHANGE
COMMISSION, Plaintiff,
and
UNITED STATES ATTORNEY'S OFFICE,
District of Colorado, Intervenor,
v.
Joseph P. NACCHIO, Robert Woodruff,
Robin Szeliga, Afshin Mohebbi, Greg
Casey,
James Kozlowski, and Frank Noyes,
Defendants.
. **No. Civ.A05CV00480MSKCBS.**

July 28, 2005.

Patricia E. Foley, Polly Arlene Atkinson,
Robert M. Fusfeld, Thomas J. Krysa, Mary S.
Brady, U.S. Securities & Exchange
Commission-Colorado Denver Regional
Office, Denver, CO, for Plaintiff.

Charles A. Stillman, Diane J. Nehro, Michael
J. Grudberg, Scott M. Himes, Stillman &
Friedman, PC, David Meister, James D.
Miller, Wesley Railey Powell, Clifford
Chance, US LLP, Noah D. Genel, Paul R.
Grand, Morvillo, Abramowitz, Grand, Iason &
Silberberg, PC, New York, NY, James D.
Kilroy, Neil Peck, Snell & Wilmer, LLP,
Richard B. Caschette, Starrs, Mihm &
Caschette, LLP, Patrick John Kanouff, Davis
& Ceriani, P.C., Dean Steven Neuwirth,
Patrick J. Burke, Burke & Neuwirth, PC,
David Richard Fine, Walter W. Garnsey, Jr.,
Kelly/Haglund/Garnsey & Kahn LLC, Kevin
D. Evans, Phillip L. Douglass, Steese &
Evans, PC, Forrest W. Lewis, Forrest W.
Lewis, P.C., Denver, CO, Terry W. Bird,
Thomas Vincent Reichert, Bird, Marella,
Boxer, Wolpert, Nessim, Drooks &
Lincenberg, Los Angeles, CA, Michael D.
Trager, Richard L. Jacobson, Arnold & Porter,
Washington, DC, for Defendants.

William J. Leone, U.S. Attorney's Office,
Denver, CO, for Intervenor.

MEMORANDUM ORDER REGARDING
MOTION TO INTERVENE AND TO
STAY PROCEEDINGS

SHAFFER, Magistrate J.

**\*1** THIS MATTER came before the court on
a Motion to Intervene for the Limited Purpose
of Seeking a Stay of Discovery (Document #
114), filed by the United States Attorney's
Office for the District of Colorado (hereinafter
the "United States Attorney") on July 26,
2005. In its motion, the United States
Attorney's Office requests leave to intervene
in this action, either as a matter of right under
Fed.R.Civ.P 24(a)(2) or through permissive
intervention under Fed.R.Civ.P. 24(b)(2). The
United States Attorney also seeks an Order

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 1799372 (D.Colo.)
(Cite as: 2005 WL 1799372 (D.Colo.))

Page 2

staying all discovery, save for limited exceptions, for 150 days or more "depending on the procedural posture of its investigation at the conclusion of the 150 day period." *See* Motion of Proposed Intervenor, at 2.

The District Court's Order of Reference, dated April 11, 2005, referred this action to the Magistrate Judge with instructions to, *inter alia,* "hear and determine motions relating to discovery" and "hear and determine such other non-dispositive motions as may be specifically referred." The instant motion was referred to this Magistrate Judge on July 26, 2005. This court held a hearing on July 27, 2005, during which it heard argument from counsel for Intervenor United States Attorney's Office, Plaintiff Securities and Exchange Commission (SEC) and Defendant James Kozlowski. The court has carefully considered the arguments presented in the pending motion and during the July 27 th hearing the entire court file, and the applicable case law. At the conclusion of that hearing the court granted in part and denied in part the relief sought by the United States Attorney. This Memorandum Order more fully explains the reasons for that decision.

### FACTUAL BACKGROUND

On March 15, 2005, the SEC filed its Complaint in the instant case. That Complaint alleges generally that during the period from April 1, 1999 through March 31, 2002, certain "senior executives and others at Qwest Communications International, Inc. engaged in a massive financial fraud that hid from the investing public the true source of the company's revenue and earnings growth, [and] caused the company to fraudulently report approximately \$3 billion of revenue." *See* Complaint, at ¶ 1. The SEC further contends that "during the fraudulent scheme, the defendants profited by approximately \$300,000,000 through salary, bonuses, stock sales, and other compensation." *Id.* at ¶ 10. The Complaint asserts seven claims for relief under 15 U.S.C. § 77q(a)(1); 15 U.S.C. § 77q(a)(2) and (3); 15 U.S.C. § 78j(b) and 17 C.R.R. § 240.10b-5; 15 U.S.C. § 78m(b)(5) and 17 C.F.R. § 240.13b2-1; 15 U.S.C. § 87m(a) and 17 C.F.R. §§ 240.12b-20, 240-13a-1, 240.13a-11, and 240.13a-13; and 15 U.S.C. § 78m(b)(2).

On May 17, 2005, Defendant Kozlowski filed a Motion to Dismiss the First, Third, Sixth and Seventh Claims for Relief asserted against him, and filed an Answer as to the Second and Fourth Claims for Relief. Defendant Mohebbi filed a Motion to Dismiss Complaint on June 1, 2005, as did Defendants Nacchio and Woodruff. Defendant Szeliga filed a Motion to Dismiss or, in the alternative, Motion for More Definite Statement on June 1, 2005. Defendant Noyes filed an Answer on June 1, 2005. On July 26, 2005, Plaintiff SEC filed a Motion for Entry of Final Judgment Against Defendant Casey.

**\*2** On April 12, 2005, this court held a status conference to tentatively address scheduling matters in this case. At that status conference, I acknowledged the June 1, 2005 deadline for filing motions to dismiss set by the District Court and the potential effect such motions

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

might have on the scope of discovery. I also noted the factual similarities between this case and other pending litigation relating to Qwest Communications, International, Inc. This court expressed the hope that ongoing discovery in those other cases might be of some assistance in facilitating discovery in this action. Given the evolving status of the litigation, the court set this matter for a further status conference on September 28, 2005. It was my hope to establish pretrial deadlines at that time.

It also bears noting that this Magistrate Judge has been assigned responsibility for managing pretrial scheduling and discovery in other pending civil actions alleging fraudulent or improper conduct relating to Qwest Communications International, Inc. Several cases have been consolidated in *In re Qwest Communications International, Inc. Securities Litigation,* Civil Action No. 01-cv-01451-REB-CBS (hereinafter "the Consolidated Securities Actions"). Class Plaintiffs' Fifth Consolidated Amended Class Action Complaint generally alleges that Qwest Communications, International, Inc. and other defendants issued false and misleading statements about Qwest's financial performance in the period from May 24, 1999 to July 28, 2002. Class Plaintiffs insist that these statements caused a factitious inflation in Qwest's stock price. The Fifth Consolidated Amended Class Action Complaint further alleges that the defendants engaged in various improper accounting manipulations to make Qwest appear mor profitable and more valuable that it really was during the class

period. Class Plaintiffs are asserting claims under 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5; 15 U.S.C. § 78t(a); 15 U.S.C. § 77k; and 15 U.S.C. § 77o. As of the date of this Memorandum Order, Defendants Nacchio, Woodruff, Casey and Szeliga remain parties in both the instant case and the Consolidated Securities Actions.

The court also has case management responsibilities in *In re Qwest Savings and Investment Plan ERISA Litigation,* Civil Action No. 02-cv-00464-REB-CBS. This action, and the cases consolidated with it, generally allege that the defendants breached their fiduciary duties under the Employee Retirement Income and Security Act (ERISA), 29 U.S.C. §§ 1001-1461. In part, the ERISA plaintiffs allege that various defendants repeatedly communicated false and misleading material information relevant to the value of Qwest stock to Savings Plan participants, in violation of the defendants' duties. Defendants Nacchio, Szeliga and Woodruff are also parties in the consolidated ERISA actions, which is coordinating discovery with the Consolidated Securities Actions.

The parties in the Consolidated Securities Actions have been directed to complete fact depositions by September 16, 2005. This court anticipates that expert discovery in the Consolidated Securities Actions would proceed after fact discovery has been completed. As of July 15, 2005, Lead Plaintiffs in the Consolidated Securities Actions had taken 30 depositions, mostly involving current or former Qwest employees,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 4
Slip Copy, 2005 WL 1799372 (D.Colo.)
**(Cite as: 2005 WL 1799372 (D.Colo.))**

and Defendants had taken six depositions. In a joint Status Report filed on July 15, 2005, the parties in the Consolidated Securities Actions advised this court that they had scheduled an additional 19 depositions, including depositions of Defendants Woodruff and Nacchio on September 14 and 15, 2005, respectively. Another 21 depositions are anticipated, but had not been scheduled as of July 15, 2005. The Joint Status Report also indicates that 15 depositions purposely have not been scheduled and have been delayed at the request of the United States Attorney. Included within that list are depositions of Robin Szeliga and Greg Casey.

ANALYSIS

*I. Motion to Intervene*

**\*3** I find that the United States Attorney's motion to intervene is proper under either Rule 24(a)(2) or Rule 24(b)(2). "Intervention" contemplates that a non-original party may participate as a party in order to protect some right or interest alleged to be affected by that litigation. *See American Bowling Supply Co. v. Al Martin, Inc., 96 F.Supp. 35, 36 (D.Kan.1951)*. To that end, Rule 24(a)(2) provides that anyone "shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter, impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." *See* Fed.R.Civ.P. 24(a)(2).

Alternatively, Rule 24(b)(2) states that upon timely application, permissive intervention may be appropriate "when an applicant's claim or defense and the main action have a question of law or fact in common." *See* Fed.R.Civ.P. 24(b)(2). In deciding a question of permissive intervention, the court "shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.*

I am aware that a number of courts have permitted intervention under circumstances analogous to those in this case. *See, e .g., S.E.C. v. Chestman,* 861 F.2d 49, 50 (2d Cir.1988) (holding that the government "had a discernible interest in intervening in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal matter"); *Securities and Exchange Commission v. Mutuals.com, Inc.,* 2004 WL 1629929, *2 (N.D.Tex.2004) (in case where government prosecutors sought to intervene in a parallel civil lawsuit, the court held that it was unnecessary to address the issue of permissive intervention because the government's motion satisfied the higher standard under Rule 24(a)(2)); *Pfizer Ireland Pharmaceuticals v. Albers Medical, Inc.,* 225 F.R.D. 591, 592 (W.D.Mo.2004) (holding that the government was entitled to intervene in a **civil** action for the limited purpose of seeking a **stay** of discovery, where the government's **criminal case** and the **civil** action overlapped in large measure); *S.E.C. v. Downe,* 1993 WL 22126, *11 (S.D.N.Y.1993) (noting that "it is well-established that the United States Attorney may intervene in a federal **civil**

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

action to seek a **stay** of discovery when there is a parallel **criminal proceeding** ... that involves common questions of law or fact").

Relying upon the analysis set forth in the above decisions, I find that the United States Attorney has an interest relating to the transactions which form the bases for the parallel civil and criminal proceedings, and is uniquely situated such that unfettered discovery in the civil actions could, as a practical matter, impair or impede the government's ability to protect its interests in the criminal arena. Given the Securities and Exchange Commission's decidedly different mandate and objectives, I conclude that the interests articulated by the United States Attorney cannot be adequately protected by the Commission. Accordingly, pursuant to Rule 26(a)(2), the court will grant the motion to intervene.

## II. Motion to **Stay** Proceedings

**\*4** The United States Attorney's motion to **stay** discovery generally in this case is more problematic. The Intervenor argues that the requested **stay** is necessary

> because the subject matter of the **civil** case now before this Court is directly related to the facts underlying an ongoing **criminal** investigation. In addition, the subject matter of this **civil** case is directly related to the facts underlying two **pending criminal** matters and three **pending** plea agreements. *See* Motion of Proposed Intervenor, at 1. Given the **pendency** of this **criminal**

investigation [FN1] and the ongoing **criminal cases**, the United States Attorney insists that

> FN1. Not surprisingly, the **pending** motion provides no further details on the scope of this "ongoing **criminal** investigation." The court is left to guess at the parameters of this "ongoing **criminal** investigation" and when the investigation might be concluded. *Compare Securities and Exchange Commission v. Doody,* 186 F. Supp.2d 379, 382 (S.D.N.Y.2002) (refusing the blanket **stay** of all discovery requested by the government, after observing that the court was "left guessing as to just what protection the government legitimately requires").

it is simply unmanageable to try to conduct full-scale **civil** discovery at the same time the government is trying to complete its **criminal** investigation. As the **civil** litigants notice depositions, answer interrogatories and face disclosure deadlines, witnesses and parties will legitimately be inquiring of the government as to their status in the investigation before all the work necessary to accurately advise them has been completed. Witnesses will face difficult, and perhaps unnecessary, choices between asserting their fifth amendment rights and testifying in the **civil** case. *Id.* at 12-13. The Intervenor also suggests that it will suffer irreparable prejudice if **civil** discovery tools are used to circumvent the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                    Page 6
Slip Copy, 2005 WL 1799372 (D.Colo.)
(Cite as: 2005 WL 1799372 (D.Colo.))

limitations on discovery imposed by the Federal Rules of **Criminal** Procedure and applicable statutes. During the July 27th hearing, the United States Attorney's Office indicated that it would be moving in the very near future for a **stay** of discovery in the Consolidated Securities Actions, as well as related state court litigation. Presumably, that request will be predicated on the same arguments advanced in the instant motion.

It bears noting that Rule 26(b)(1) permits discovery "regarding any matter ... that is relevant to the claim or defense of any party." *See* Fed.R.Civ.P. 26(b)(1). Moreover, Rule 26(b)(2) provides that the court may limit the use of available discovery methods if the court determines that "the discovery sought is ... obtainable from some other source that is more convenient, less burdensome, or less expensive," or where "the burden ... of the proposed discovery outweighs its likely benefit, taking into account the needs of the case ... the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *See* Fed.R.Civ.P. 26(b)(2). The court can impose these discovery limitations on its own initiative after reasonable notice or pursuant to a motion for protective order under Rule 26(c). *Id. See also Scott v. Leavenworth Unified School District,* 190 F.R.D. 583, 585 (D.Kan.1999) (holding that objections on grounds of relevance may be sustained where the requested discovery is of such marginal relevance that the potential harm occasioned by the discovery outweighs the presumption in favor of expansive discovery); *Doubleday v.*

*Ruh,* 149 F.R.D. 601, 614 (E.D.Cal.1993) (refusing to allow a deposition where the desired information could be obtained from another source that might be more accurate and complete).

**\*5** I believe that a **stay** of **civil** discovery in this case may be appropriate. In the absence of a **stay,** there is the possibility that some defendants in this action might be able to obtain discovery and disclosure of documents that they would not otherwise be entitled to receive through **criminal** discovery. Moreover, discovery requests directed to government personnel potentially would divert prosecutorial resources that would otherwise be devoted to preparing for trial or concluding any ongoing **criminal** investigation. These are legitimate interests that are entitled to protection. As one court has noted, "the public has an interest in ensuring the **criminal** process is not subverted." *Bridgeport Harbour Place I, LLC v. Ganim,* 269 F.Supp.2d 6, 10 (D.Conn.2002). *See also S.E.C. v. Treadway,* 2005 WL 713826, \*4 (S.D.N.Y.2005) (noting that "judicial discretion and procedural flexibility should be utilized to prevent the rules and policies applicable to one suit from doing violence to those pertaining to another").

However, the United States Attorney has not a sought a complete stay of discovery in this case. Rather, the United States Attorney proposes that the parties in this action "be given access to the documents obtained by the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 1799372 (D.Colo.)
(Cite as: 2005 WL 1799372 (D.Colo.))

Page 7

SEC, pursuant to subpoena, from Qwest, witnesses before the SEC or from other third parties." *See* Motion of Proposed Intervener, at 3. The government also announced its' intention to seek access to "the discovery product" developed in *In re Qwest Communications International, Inc. Securities Litigation. Id.* It may well be that the parties in the Consolidated Securities Actions no objection to the proposed "sharing arrangement." I am reluctant, however, to enter such an order without first hearing from the parties in those other cases.

A court is vested with considerable discretion to stay proceedings where required in the interests of justice. *See, e.g., Clinton v. Jones, 520 U.S. 681, 707, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997)* (recognizing that a trial court has broad discretion to stay proceedings as incident to its power to control its own docket). "In granting such relief, courts must weigh competing interests, including 'the interests of the defendants, the interests of the plaintiffs in proceeding with the litigation, the public interest, and the interests of the courts and of third parties.' " *Securities and Exchange Commission v. Doody, 186 F.Supp.2d 379, 381 (S.D.N.Y.2002).* In exercising its discretion in this case, the court must be take into consideration the fact that some of the civil defendants currently are not charged in related criminal proceedings and may not be targets of an "ongoing criminal investigation." Those civil defendants have a legitimate interest in proceeding to trial or disposition without undue delay, a goal that is presumably shared by the plaintiffs in the

various actions. [FN2] That goal, however, must be reconciled with the public interest in ensuring that the criminal process is not subverted. "Especially in cases of extraordinary public moment, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby by promoted." *Landis v. North American Co., 299 U.S. 248, 256, 57 S.Ct. 163, 81 L.Ed. 153 (1936).* While it would be my hope that the court could reconcile these competing interests, at this juncture, I lack sufficient information to achieve that goal.

> FN2. As a practical matter, an interim stay of discovery may not materially prejudice the interests of the parties in this case. The resolution of pending motions to dismiss could reduce the number of parties or could potentially narrow or completely eliminate the need for some discovery.

## CONCLUSION

**\*6** Based upon the foregoing analysis, the United States Attorney's motion for leave to intervene is GRANTED. The United States Attorney's motion to **stay proceedings** is GRANTED IN PART and DENIED IN PART. The court will preliminarily **stay** discovery in this case **pending** a status conference at 9:30 a.m. on September 28, 2005. The court will address the necessity for or the parameters of any additional **stay** of discovery at the September 28th status

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2005 WL 1799372 (D.Colo.)
**(Cite as: 2005 WL 1799372 (D.Colo.))**

conference. The parties are hereby directed to file, on or before September 12, 2005, a joint discovery plan, or if necessary separate discovery plans, addressing to what extent, if any, discovery in this action shall proceed after September 28, 2005 and during the pendency of related criminal proceedings. The parties' submission should address to what extent discovery or depositions in the Consolidated Securities Actions might be utilized to expedite the pretrial process in this case.

The parties also are directed to submit confidential settlement statements on or before September 12, 2005. The court will set one or more settlement conferences in this case if it appears from the parties' confidential settlement statements that such sessions would be helpful.

Slip Copy, 2005 WL 1799372 (D.Colo.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**<u>S.E.C. v. Downe</u>, 1993 WL 22126 (S.D.N.Y.)**

Westlaw.

Not Reported in F.Supp.                                                    Page 1

Not Reported in F.Supp., 1993 WL 22126 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

▷
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
SECURITIES AND EXCHANGE COMMISSION
Plaintiff,
v.
Edward R. DOWNE, Jr., Steven A. Greenberg,
Martin Revson, David Salamone, Fred R. Sullivan,
Thomas Warde, Milton Weinger, and Broadsword,
Ltd., Defendants.
No. 92 Civ 4092 (PKL).

Jan. 26, 1993.

(Richard H. Walker, Regional Administrator, for
Securities and Exchange Commission, New York
CityRichard S. Biegen, Carmen J. Lawrence, Robert
B. Blackburn, Daniel R. Schnipper, David A.
Barnett, Janet A. Broeckel, of counsel), for the
Securities and Exchange Commission.
Fried, Frank, Harris, Shriver & Jacobson, New
York City, (Harvey L. Pitt, Michael H. Rauch, John
C. Sullivan, of counsel), for defendant Steven A.
Greenberg.
Roger B. Hayes, Acting U.S. Atty. for the Southern
District of New York City, (Scott A. Edelman, of
counsel), for the U.S.

OPINION AND ORDER

LEISURE, District Judge,
*1 This is an action arising out of alleged insider
trading activity involving the defendants in
connection with various securities transactions
executed between 1987 and 1989. Defendant
Steven A. Greenberg ("Greenberg") has now
moved, pursuant to Rule 12(c) of the Federal Rules
of Civil Procedure, for judgment on the pleadings
with respect to the alleged violations of Section
10(b) of the Securities Exchange Act of 1934, 15
U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17
C.F.R. § 240.10b-5, relating to alleged transactions

in the securities of Bally Manufacturing
Corporation ("Bally"). It is alleged that Greenberg
violated the federal securities laws by conveying to
defendant Edward R. Downe, Jr. ("Downe")
material, nonpublic information, in connection with
the purchase and sale of securities, in breach of
duties owed to Bally, its shareholders, and/or an
investor group interested in making an offer to
acquire Bally (the "investor group"). For the
reasons stated below, defendant Greenberg's motion
is denied in its entirety.

In addition, the United States of America, through
the United States Attorney for the Southern District
of New York, has made an application to intervene,
pursuant to Rule 24, for the purpose of staying
discovery in this action with respect to the
testimony and production of documents relating to
defendant Downe. The Court, for the reasons
stated below, will stay *all* discovery in this action
until March 17, 1992 (*i.e.* three months from the
date of the U.S. Attorney's application). However,
if an indictment is pending at that time, the Court
will extend the stay of discovery until the
conclusion of a trial of any prosecution brought as a
result of the Grand Jury investigation.[FN1]

BACKGROUND

On June 4, 1992, the Securities and Exchange
Commission (the "SEC"), filed the complaint in this
action alleging insider trading by defendants
Greenberg, Downe, Martin Revson, David
Salamone, Fred R. Sullivan ("Sullivan"), Thomas
Warde ("Warde"), Milton Weinger ("Weinger"),
and Broadsword, Ltd. The complaint seeks the
following relief: an order enjoining defendants
from future violations of certain provisions of the
federal securities laws and barring defendant
Downe from serving as a director of a public
company; disgorgement, including prejudgment
interest; penalties under the Insider Trading
Sanctions Act of 1984, 15 U.S.C. § 78u-1; and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                      Page 2

Not Reported in F.Supp., 1993 WL 22126 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

such other relief as the Court may deem necessary and appropriate. [FN2]

Defendant Greenberg's motion for judgment on the pleadings is directed only to the allegations concerning Bally. According to the complaint, Greenberg breached his fiduciary duty or other duty of trust and confidence to Bally, Bally's shareholders and investor group by conveying material, nonpublic information to Downe relating to the consideration given by Bally and the investor group, between approximately March 1987 and June 1987, to effectuating a corporate restructuring of the company. Complaint, dated June 4, 1992 (" complaint"), at ¶¶ 92-94, 96. Defendant Greenberg allegedly headed this investment group which considered several possible restructurings of Bally including a leveraged buyout (LBO), a recapitalization plan, and other financial options such as the issuance of a cash dividend without reducing the shareholder's percentage ownership in Bally. Complaint, at ¶¶ 92-94. It is alleged that Greenberg then communicated this material, nonpublic information to Downe knowing or having reason to know that Downe would effect transactions in Bally securities. Complaint, at ¶ 96. After receiving this information from Greenberg, Downe allegedly directed purchases in Bally securities for his personal securities account, the accounts of two nominee companies, and the accounts of his family and friends. Complaint, at ¶¶ 98-105. Defendant Downe also allegedly conveyed information to defendants Warde and Weinger, who then purchased Bally securities for their personal accounts. Complaint, at ¶¶ 103-104, 106-109. These securities were allegedly sold from approximately July 10, 1987 to August 20, 1987 and resulted in the realization of illegal profits of approximately $4,901,195. Complaint, at ¶¶ 100-115, IV. The Complaint does not allege that Greenberg is liable for the profits derived by defendants Warde and Weinger and, thus, Greenberg's alleged liability with respect to the Bally transactions is approximately $4,825,197. Complaint, at IV(2).

DISCUSSION

## I. MOTION FOR JUDGMENT ON THE PLEADINGS

*2 Defendant Greenberg has moved to dismiss the 10b-5 claim alleged in the complaint with respect to the Bally transactions on the grounds that the complaint: (1) fails to allege fraud; (2) fails to allege the violation of any duty requiring him to abstain from using his own or Bally's ideas; (3) fails to identify the use any material, nonpublic information; and (4) would expand the definition of insider trading beyond the limits imposed by the Supreme Court.

Under Rule 8(a) of the Federal Rules of Civil Procedure, a complaint should contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The Court finds that the complaint in the instant case adequately alleges facts which, if proven, would establish a claim upon which relief can be granted against Greenberg for violating Section 10(b) and Rule 10b-5 by improperly disclosing material, nonpublic information to Downe concerning Bally, in connection with the purchase and sale of Bally's securities.

### A. Standard for Motion for Judgment on the Pleadings

Rule 12(h)(2) of the Federal Rules of Civil Procedure provides that a defense of failure to state a claim upon which relief can be granted, typically raised pursuant to 12(b)(6), can be made after an answer has been filed by a motion for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c). Therefore, defendant Greenberg has brought his motion to dismiss the complaint under Rule 12(c). Nevertheless, in considering this 12(c) motion, the Court will apply the same standards that are used for a motion to dismiss a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6). *See Juster Associates v. City of Rutland,* 901 F.2d 266, 269 (2d Cir.1990); *Ad-Hoc Committee of the Baruch Black and Hispanic Alumni Assoc. v. Bernard M. Baruch College,* 835 F.2d 980, 982 (2d Cir.1987). Accordingly, "[i]n reviewing a motion

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1993 WL 22126 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

to dismiss on the pleadings, 'the factual allegations in the complaint must be accepted as true, and all reasonable inferences must be drawn in favor of the plaintiff.' " *Walker v. City of New York,* 974 F.2d 293, 298 (2d Cir.1992) (*quoting Frazier v. Coughlin,* 850 F.2d 129, 129 (2d Cir.1988)), *petition for cert. filed,* 61 U.S.L.W. 3446 (U.S. December 2, 1992) (No. 92-956). "The district court should grant such a motion only if, after viewing plaintiff's allegations in this favorable light, 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Walker,* 974 F.2d at 298 ( *quoting Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 123 (2d Cir.1991)). [FN3]

### B. Insider Trading Liability under 10b-5

It is well-established under the traditional theory of insider trading, pursuant to Section 10(b) and Rule 10b-5 promulgated thereunder (collectively referred to as "10b-5"), that liability may be imposed on a corporate insider who discloses material, nonpublic information to an outsider in breach of his fiduciary duty to the corporation's shareholders. *See Chiarella v. United States,* 445 U.S. 222, 227-235 (1980). A corporate insider breaches his fiduciary duty if he improperly discloses material, nonpublic information for personal benefit. *See Dirks v. SEC,* 463 U.S. 646, 662 (1983). The Supreme Court has held that the insider's conveying of a gift of material, nonpublic information to a personal friend or relative, who trades with the information, may constitute a personal benefit to the insider for purposes of 10b-5 liability. *See Dirks,* 445 U.S. at 663-64.

*3 The Second Circuit has also adopted a second general theory of liability, the misappropriation theory, which states that "a person violates Rule 10b-5 when he misappropriates material nonpublic information in breach of a fiduciary duty or similar relationship of trust and confidence and uses that information in a securities transaction." *United States v. Chestman,* 947 F.2d 551, 566 (2d Cir.1991), *cert. denied,* 112 S.Ct. 1759 (1992); *see also United States v. Carpenter,* 791 F.2d 1024, 1028-29 (2d Cir.1986), *aff'd by an equally divided*

*Court,* 484 U.S. 19 (1987); *SEC v. Materia,* 745 F.2d 197, 201 (2d Cir.1984), *cert. denied,* 471 U.S. 1053 (1985); *United States v. Newman,* 664 F.2d 12, 17-18 (2d Cir.1981), *cert. denied,* 464 U.S. 863 (1983). [FN4] The critical distinction between these two theories of liability is that the traditional theory of insider trading liability involves a breach of a duty to the shareholders and issuer of the securities purchased or sold, whereas liability under the misappropriation theory does not require that the buyer or seller of securities be defrauded. Instead, under the misappropriation theory, the predicate act of fraud can be perpetrated on the source of the nonpublic information with whom the individual had a relationship of trust and confidence, even though the source may be unaffiliated with any buyer or seller of the securities at issue. For instance, the Second Circuit has found 10b-5 liability in situations where an employee breached a duty to his employer by misappropriating material, nonpublic information from his employer and using that information in a securities transaction. *See, e.g., Carpenter,* 791 F.2d at 1032 (financial columnist breached duty to his newspaper); *Newman,* 664 F.2d at 17 (investment banker breached duty to his firm).

In order to sustain liability under either theory, the defendant must have acted with scienter. *See Aaron v. SEC,* 446 U.S. 680, 701-02 (1980). Moreover, the nonpublic information disclosed must be material, *i.e.,* there must be a substantial likelihood that a reasonable investor would consider it important in making an investment decision. *See Basic Inc. v. Levinson,* 485 U.S. 224, 232 (1988) (adopting the materiality standard set forth in *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449-450 (1976)); *United States v. Bilzerian,* 926 F.2d 1285, 1298 (2d Cir.), *cert. denied,* 112 S.Ct. 63 (1991).

Applying these standards in the instant case, the Court finds that the SEC has adequately pled a 10b-5 claim against Greenberg under both theories of liability based upon his alleged tipping of defendant Downe about Bally's consideration of various restructuring options. First, with respect to the traditional theory of liability under 10b-5, the complaint alleges that Greenberg was a corporate

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 4

Not Reported in F.Supp., 1993 WL 22126 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

insider in that "[a]t all relevant times, Greenberg [was] retained by Bally ... as [a] financial public relations consultant [ ]." Complaint, at ¶ 11. The complaint, *inter alia*, alleges that "Greenberg, for his direct or indirect benefit and in breach of a fiduciary duty, or other duty of trust and confidence to Bally [and] its shareholders, ... knowingly and recklessly disclosed to Downe, in words or substance" the material, nonpublic information relating to Bally's consideration of proposed extraordinary corporate events. Complaint, at ¶ 96. More specifically, the complaint sets forth the description of several of these extraordinary corporate events such as an LBO, a recapitalization, and the "exploring [of] other financial options for the company, including the issuance of a more modest cash dividend." Complaint, at ¶¶ 92-94. It is also alleged that Greenberg communicated this information to Downe knowing or having reason to know that Downe would effect transactions in Bally securities. Complaint, at ¶ 96. Accordingly, the complaint alleges that: (1) Greenberg, as Bally's financial public consultant, breached his duty to Bally and its shareholders by disclosing material, nonpublic information to defendant Downe in connection with sale or purchase of securities; (2) Greenberg derived a personal benefit from this breach; and (3) Greenberg acted with scienter in tipping Downe. Finally, the complaint alleges that as a result of Greenberg's tipping Downe as to this information, several defendants-including Downe, Weinger and Warde-purchased Bally securities and realized illegal profits from the eventual sale of such securities. Complaint, at ¶¶ 98-115. Based upon the allegations in the complaint, the Court finds that the SEC has sufficiently stated a cause of action under 10b-5 for traditional insider trading liability with respect to the Bally transactions.

*4 The Court also finds that the 10b-5 claim survives a motion to dismiss under the misappropriation theory based on Greenberg's tipping Downe in breach of his duty to the investor group. The complaint alleges that defendant Greenberg, as well as an individual named Michael Scharf, headed an investor group interested in effectuating a Bally restructuring, and that Greenberg, acting with scienter, misappropriated

material, nonpublic information concerning these proposals by communicating such information to Downe in breach of his duty to the investor group, in connection with sale or purchase of Bally's securities. Thus, the allegations in the complaint adequately sets forth all of the requisite elements under the misappropriation theory of liability. *See Carpenter,* 791 F.2d at 1028-29; *SEC v. Willis,* 777 F.Supp. 1165, 1169 (S.D.N.Y.1991); *United States v. Willis,* 737 F.Supp. 269, 272-273 (S.D.N.Y.1990) ; *SEC v. Musella,* 748 F.Supp. 1028, 1036-38 (S.D.N.Y.1989), *aff'd,* 898 F.2d 138 (2d Cir.), *cert. denied,* 111 S.Ct. 57 (1990).

### (1) *Public Announcements*

Defendant Greenberg argues that the 10b-5 claim should be dismissed because "the subsequent public disclosure of the previously nonpublic material facts " is an essential element of 10b-5 liability that has not been alleged in the complaint. *See* Defendant Greenberg's Memorandum, at 7. The Court finds this contention to be without merit.

Insider trading liability is based on the use of material, nonpublic information in connection with the sale or purchase of securities in breach of a duty. While the public announcement of such information may bear on the issue of damages, the public announcement certainly is not an element of insider trading liability itself. In *Basic,* the Supreme Court noted that when addressing contingent or speculative information or events " materiality 'will depend at any given time upon a balancing of both the indicated probability that the event will occur and the anticipated magnitude of the event in light of the totality of the company activity.' " *Basic,* 485 U.S. at 238 (*quoting SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 849 (2d Cir.1968), *cert. denied,* 394 U.S. 976 (1969)). Nonpublic information concerning a company's consideration of extraordinary corporate events may be material, even though it is never formally announced to the public.

Courts have repeatedly held that public disclosure is not a requisite element of insider trading liability. In *United States v. Victor Teicher & Co.,* 1990 WL

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1993 WL 22126 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

29697, at *4 [Transfer Binder 1989-90] Fed.Sec.L.Rep. ¶ 94,975 (S.D.N.Y. March 9, 1990), *motion to vacate denied,* 88 Cr. 796 (CSH) (S.D.N.Y. February 25, 1992), *appeal pending,* No. 92-1301 (2d Cir.) (notice of appeal filed May 8, 1992), the defendants were charged with violating Section 10(b) for, *inter alia,* purchasing securities in American Brands, Inc. while in possession of material, nonpublic information. The Court denied defendants' Rule 29(a) motion for judgment of acquittal even though the proposed acquisition of American Brands by B.A.T. Industries never took place and was never publicly disclosed by either party. *See also Rothberg v. Rosenbloom,* 771 F.2d 818, 821-22 (3d Cir.1985) (finding 10b-5 liability even though there was no public announcement of the information concerning insider's control over the company's board of directors), *cert. denied,* 481 U.S. 1017 (1987); *State Teachers Retirement Bd. v. Fluor Corp.,* 654 F.2d 843, 855 (2d Cir.1981) (finding information concerning the company's backlog, projections of increases in earnings per share, and likelihood of obtaining projects was material, even though the information never was publicly announced, and permitting plaintiffs to amend complaint to include insider trading liability relating to that information).

**\*5** Similarly, in *SEC v. Willis,* 777 F.Supp. 1165 (S.D.N.Y.1991), the Court denied the defendant's motion to dismiss for failure to state a claim even though the defendant's profits were not linked to a public announcement. In *Willis,* defendant Sloate allegedly purchased BankAmerica Corp. (" BankAmerica") securities while in possession of material, nonpublic information concerning Sanford Weill's interest in pursuing a change in BankAmerica's management. *Id.* at 1168. The motion to dismiss was denied even though the defendant had purchased and sold the BankAmerica securities *prior* to a public announcement. [FN5]

Defendant Greenberg's reliance on several cases which address the issue of public announcements in the 10b-5 context is misplaced. The cases cited by Greenberg did not find public disclosure to be an essential element of liability, but rather took into account public announcements of the information at issue only in an effort to determine damages. For

instance, in *SEC v. MacDonald,* 699 F.2d 47 (1st Cir.1983), the Second Circuit considered the timing of the public announcement for the purpose of determining whether the district court properly calculated the disgorgement remedy. The Second Circuit reversed the district court's disgorgement order and remanded the case so that the Court could determine a disgorgement figure based upon how long it took for the investing public to learn of and react to the disclosed facts. *Id.* at 52-55. Similarly, in *SEC v. Texas Gulf Sulphur Co.,* 446 F.2d 1301, 1388 (2d Cir.), *cert. denied,* 404 U.S. 1005 (1971), the Second Circuit only considered the subsequent public disclosure of the information at issue in determining whether the damages assessed by the district court with respect to profits gained from a 10b-5 violation were excessive.

Defendant Greenberg argues that "[g]iven plaintiff's concession that the Bally information in issue here was never made public in any fashion, and the complaint's failure to allege that any unfair advantage was gained by Mr. Downe, the allegations in the complaint concerning Bally fail to state a claim of fraud against Mr. Greenberg." Reply Memorandum in Support of Motion of Defendant Steven A. Greenberg for Judgment on the Pleadings, dated October 14, 1992 (" Greenberg's Reply Memorandum"), at 3. Greenberg claims that there is no allegation that the information had any market impact or that Mr. Downe or his partners made "secret profits" from such information. Under these circumstances, Greenberg contends that to hold otherwise would be to reach impermissibly beyond the limits of liability set forth in *Chiarella* and *Dirks.*

The Court finds this argument to be without merit. The complaint clearly alleges that Downe gained an unfair advantage by trading in Bally securities while he possessed material, nonpublic information, relating to Bally's restructuring considerations, which was supplied by Greenberg in breach of his duty to Bally, its shareholders, and/or the investor group. Moreover, the complaint alleges that the price in Bally's stock increased more than 45 percent in a six week period from June 10 to July 30, 1987 and that Downe realized illegal profits as a result of this trading activity. Complaint, at ¶ 95.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                      Page 6

Not Reported in F.Supp., 1993 WL 22126 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Thus, the complaint clearly alleges the type of activity-the reaping of an unfair advantage and secret profits from insider trading-which falls within the confines of 10b-5 and is consistent with the Court's teachings in *Chiarella* and *Dirks*. While defendant Greenberg seems to use the failure to allege a public announcement as a means to question the merits of these allegations and the SEC's ability to prove the existence of these alleged illegal profits or the proper calculation of any disgorgement remedy, such considerations are not appropriate on a motion to dismiss for failure to state a claim upon which relief can be granted, where all of the allegations are accepted as true and reasonable inferences are drawn in favor of the pleader. *See Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985) ("[t]he court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient"); *see also Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.,* 748 F.2d 774, 779 (2d Cir.1984) ("the district court should not be swayed into granting the motion because the possibility of ultimate recovery is remote").

*6 In sum, liability under 10b-5 is triggered when an individual, acting with scienter, uses material, nonpublic information in connection with the purchase or sale of securities in breach of a fiduciary duty or some other type of duty of trust or confidence. While a subsequent public disclosure of this information, or lack thereof, may be relevant for determining the amount of unrealized profits reaped by the defendants, it is not an essential element of 10b-5 insider trading liability itself. In the instant case, the complaint clearly sets forth all of the essential elements of liability under 10b-5 and, thus, the Court rejects Greenberg's claim that the complaint's failure to specifically allege that this material information concerning Bally was the subject of a public announcement requires dismissal of that claim as a matter of law.

**(2)** *Existence of a Duty*

Defendant Greenberg also argues that the complaint fails to allege that he had a duty not to tip the

Bally-related information. Insider trading liability under 10b-5 exists only if an individual " 'fails to disclose material information prior to the consummation of a transaction ... *when he is under a duty to do so.*' " *United States v. Chestman,* 947 F.2d 551, 564 (2d Cir.1991) (emphasis added) ( *quoting Chiarella,* 445 U.S. at 228), *cert. denied,* 112 S.Ct. 1759 (1992). The Court recognizes that this obligation to disclose or abstain from trading " ' does not arise from the mere possession of nonpublic market information.' " *Chestman,* 947 F.2d at 565 ( *quoting Chiarella,* 445 U.S. at 235). As the Supreme Court noted in *Chiarella,* "neither the Congress nor the Commission ever has adopted a parity-of-information rule." 445 U.S. at 233. Instead, it is well-established that "a duty to disclose or abstain arises only from 'a fiduciary or other similar relation of trust and confidence between [the parties to the transaction].' " *Chestman,* 947 F.2d at 565 ( *quoting Chiarella,* 445 U.S. at 228).

In the instant case, the Court finds that the complaint sufficiently sets forth allegations of Greenberg's breach of duty under both the traditional theory of liability and the misappropriation theory and, thus, survives a motion to dismiss. First, with respect to Bally's own restructuring plans, the complaint alleges that Greenberg acted as a "financial public relations consultant" and "a confidential adviser" to Bally and Bally's CEO. It is alleged that Greenberg, as a result of this relationship with Bally, owed a " fiduciary duty" to Bally and its shareholders.

It is well-established that financial consultants of a corporation may become "temporary insiders" of that corporation and, thus, have a fiduciary duty to the corporation's shareholders. As the Supreme Court stated, in dictum, in *Dirks:*

Under certain circumstances, such as where corporate information is revealed legitimately to an underwriter, accountant, lawyer, or consultant working for the corporation, these outsiders may become fiduciaries of the shareholders. The basis for recognizing this fiduciary duty is not simply that such persons acquired nonpublic corporate information, but rather that they have entered into a special confidential relationship in the conduct of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1993 WL 22126 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

the business of the enterprise and are given access to information solely for corporate purposes.... For such a duty to be imposed, however, the corporation must expect the outsider to keep the disclosed nonpublic information confidential, and the relationship at least must imply such a duty.

*7 *Dirks,* 463 U.S. at 655 n. 14. The Second Circuit has noted that "[t]his theory clothes an outsider with temporary insider status when the outsider obtains access to confidential information solely for corporate purposes in the context of 'a special confidential relationship' " and, thus, "[t]he temporary insider thereby acquires a correlative fiduciary duty to the corporation's shareholders." *Chestman,* 947 F.2d at 565; *see also SEC v. Tome,* 638 F.Supp. 596, 621 (S.D.N.Y.1986) ("persons ... given access to confidential corporate information solely for corporate purpose become temporary insiders of that corporation, thereby acquiring the same fiduciary duties to the corporation as other insiders").

In *Tome,* Giuseppe Tome was an informal financial consultant to Joseph E. Seagram & Co. ("Seagram" ) and a close personal friend with the Chief Executive Officer (CEO) of Seagram. As a result of his professional and personal contacts with the CEO, Tome learned that Seagram intended to announce a hostile tender offer for St. Joe Minerals Corporation. The Court noted that "[t]he relationship between the management of a corporation and its financial advisors and consultants regarding prospective hostile tender offers is inherently one which implies a duty of confidentiality." *Tome,* 638 F.Supp. at 621. Thus, even though Tome was not a corporate officer or director, he was found to have owed a fiduciary duty to Seagram with respect to this information. Applying this standard, the Court held that Tome breached this duty and violated 10b-5 when he purchased St. Joe Minerals Corp. securities while in possession of material, nonpublic information which he obtained as a confidential consultant to Seagram and its CEO. *Id.* at 621-22.

The allegations in the instant case allege the same type of breach of duty as set forth in *Tome.* Greenberg is alleged to have been a financial

consultant to Bally, as well as a confidential adviser to Bally's CEO. Complaint, at ¶ 11, 94. Moreover, it is alleged that Greenberg, as this temporary insider, breached his fiduciary duty to Bally and violated Rule 10b-5. Under these circumstances, the complaint adequately alleges that Greenberg had a duty not to use this information and breached that duty by tipping defendant Downe.

In addition to the alleged breach of his fiduciary duty to Bally and its shareholders, the Court also finds that the complaint adequately sets forth a 10b-5 claim under the misappropriation theory based upon Greenberg's alleged breach of duty to the investor group which was interested in effectuating a corporate restructuring of Bally and considered several possible options. The complaint alleges that the investor group was headed by defendants Greenberg and Scharf and that Greenberg tipped defendant Downe as to these considerations in breach of a fiduciary duty or other duty of trust and confidence to the investor group.

Defendant Greenberg, relying on *United States v. Chestman, supra,* contends that these allegations are insufficient. In *Chestman,* the Second Circuit held that a breach of either a common law fiduciary relationship or the breach of another type of relationship of trust and confidence could provide the basis of a 10b-5 claim under the misappropriation theory. However, the Court also noted that the "similar relationship of trust and confidence" must be the "functional equivalent" of a fiduciary relationship in that it contains certain characteristics such as "reliance" and "de facto control and dominance." *Chestman,* 947 F.2d at 568. Defendant Greenberg argues that the SEC has failed to allege facts in the complaint setting forth the "control" exercised by Greenberg over the investor group or the reliance that Mr. Scharf or any other members of the investor group placed on the exercise of control.

*8 A motion for judgment on the pleadings for failure to state a claim is granted only when " plaintiff can prove no set of facts in support of his claim which would entitle him to belief." *Walker, supra,* 974 F.2d at 298. The allegations set forth in the complaint relating to Greenberg's participation

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                     Page 8

Not Reported in F.Supp., 1993 WL 22126 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

in the investment group, the considerations made by the investor group, and the specific conduct by Greenberg which allegedly breach his duty to the investor group are sufficient to survive a motion for failure to state a claim under Rule 12. Of course, at trial, the SEC will have to present sufficient evidence to satisfy the fact intensive standards set forth in *Chestman* in proving that a fiduciary relationship or similar relationship of trust and confidence existed between Greenberg and the investor group.

### (3) Materiality

Defendant Greenberg also argues that the complaint fails to state a claim as to Bally because it does not identify any material, nonpublic information. The complaint alleges that the "material, nonpublic information" conveyed by Greenberg to defendant Downe in violation of 10b-5 consisted of consideration by Bally and an investor group of corporate restructuring plans such as the " recapitalization plan involving the placement of debt ... to pay a cash dividend of $18 to $20 per share to Bally shareholders" and "the issuance of a more modest cash dividend." Complaint, ¶¶ 93-94. FN6

Defendant Greenberg contends that this alleged information is not material because: (1) there is no allegation that these proposals were given consideration at Bally's highest corporate level; (2) the alleged recapitalization proposal was contingent upon approval by the New Jersey Casino Control Commission (NJCCC); and (3) Bally concedes it " did not effect or announce its restructuring considerations."

*9 In *Basic*, the Supreme Court held that information is considered material " 'if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote. ' " *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988) (*quoting TSC Indus., Inc. v. Northway*, 426 U.S. 438, 449 (1976)). The Court further explained that " 'there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor

as having significantly altered the "total mix" of information made available.' " *Basic*, 485 U.S. at 231-32 (*quoting TSC Indus.*, 426 U.S. at 449); *see generally Glazer v. Formica Corp.*, 964 F.2d 149, 154-55 (2d Cir.1992) (applying the *Basic* test for materiality). As noted earlier, the Court also stated that the materiality of "contingent or speculative" occurrences should be assessed by balancing " 'both the indicated probability that the event will occur and the anticipated magnitude of the event in light of the totality of the company activity.' " *Basic*, 485 U.S. at 238 (*quoting SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 849 (2d Cir.1968), *cert. denied*, 394 U.S. 976 (1969)).

One factor which the Court should consider in assessing probability that the event will occur is to look to "indicia of interest in the transaction at the highest corporation levels" such as "board resolutions, instructions to investment bankers, and actual negotiations between principals or their intermediaries." *Basic*, 485 U.S. at 239. Defendant Greenberg argues that the alleged consideration of the corporate restructuring in Bally is not material because "[t]he complaint is devoid of allegations that Bally's board of directors adopted any resolutions regarding these matters, or that any Bally representative gave instructions to investment bankers to implement various course of action, or attempted to arrange financing, or otherwise took any steps to implement either Mr. Greenberg's thoughts or Bally's exploration." Defendant Greenberg's Memorandum, at 20-21.

The Supreme Court did not intend the list of factors enumerated in *Basic* to be exhaustive, *see Basic*, 485 U.S. at 239, but rather the Court may consider other factors which demonstrate the probability that a corporate event will occur. The complaint alleges that, when it appeared that the LBO was not feasible, the investor group began considering a leveraged recapitalization plan involving the placement of debt to raise money that would be used to pay a cash dividend of $18 to $20 per share to Bally shareholders. Moreover, it is alleged, under this plan, the equity interest of those shareholders that received the dividend would be reduced and members of the investor group would obtain a significant equity stake in Bally. Finally,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 9

Not Reported in F.Supp., 1993 WL 22126 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

the complaint alleges that, when Bally became concerned about the New Jersey Casino Control Commission might not approve the proposed recapitalization, the investor group explored other financial options for Bally, including issuing a more modest cash dividend without reducing the shareholders' percentage ownership. At all relevant times during these various considerations, defendant Greenberg, in addition to heading the investor group, is alleged to have been retained by Bally as a financial public relations consultant.

Thus, the complaint clearly alleges that an investor group was formed, specific restructuring plans were being given serious consideration by an investor group headed by Greenberg, a financial consultant to Bally. Based upon the allegations in the complaint, the Court finds that the alleged information is not, as a matter of law, too inchoate to be considered material.

Defendant also argues that, since the alleged recapitalization proposal was contingent upon approval by the NJCCC, these events were less probable and thus less likely to be material. The fact that the corporate occurrence may be contingent upon factors beyond defendant's control is relevant in assessing probability. *See Taylor v. First Union Corp. of South Carolina,* 857 F.2d 240, 244 (4th Cir.1988), *cert. denied,* 489 U.S. 1080 (1989); *Hartford Fire Ins. Co. v. Federated Dept. Stores, Inc.,* 723 F.Supp. 976, 985 (S.D.N.Y.1989). However, the Court notes that at least some of the alleged tips from Greenberg to Downe concerned proposals which were being considered in order to avoid any conflict with the NJCCC and, thus, approval was not a factor. In any event, the contingency of the event is only one factor in the consideration. Information can be material even though it is contingent upon certain factors beyond the defendant's control. *See Teicher, supra,* 1990 WL 29697, at *4 (found information concerning the possible B.A.T. acquisition of American Brands to be material even though subject to antitrust restrictions). The Court finds that, despite this potential regulatory obstacle posed by the NJCCC, the information, at the time it was considered, cannot be found immaterial as a matter of law based upon the allegations in the complaint.

**\*10** Defendant Greenberg also contends that since the complaint concedes that Bally "did not effect or announce its restructuring considerations," *see* Complaint, at ¶ 95, the information cannot be considered material. However, a Court in appraising probability must consider the facts as they existed at the time of the alleged insider trading, not with the hindsight knowledge that the transaction was or was not completed. *See, e.g., Reiss v. Pan American World Airways, Inc.,* 711 F.2d 11, 13 (2d Cir.1983) (a claim that disclosure was necessary to make another statement not misleading must be viewed " 'in light of the facts existing at the time of the release' ") (*quoting SEC v. Texas Gulf Sulphur Co.,* 401 F.2d at 863). Moreover, the fact that Bally did not announce its restructuring considerations does not render such information immaterial. *Accord Kronfeld v. Trans World Airlines, Inc.,* 832 F.2d 726, 732 (2d Cir.1987) ("[a]n insider may be liable for trading on the basis of, or 'tipping' third parties concerning, information at a time when the corporation to which the information pertains is not yet under any duty to disclose it"), *cert. denied,* 485 U.S. 1007 (1988); *SEC v. MacDonald,* 699 F.2d 47, 50 (1st Cir.1983) ( "if for valid reasons, a corporation does not deem material information ripe for public disclosure, so that disclosure by the insider would be a breach of fiduciary duty, the insider must refrain from dealing in the corporation's securities in the interim").

In addition to assessing the probability that the event will occur, the Court must also appraise the magnitude of the information at issue in the instant case. A recapitalization plan involving an $18 to $20 cash dividend, on a stock trading in the $18 to $26.125 range, would be an event of great magnitude in a corporation. *See, e.g., Holdsworth v. Strong,* 545 F.2d 687, 698 (10th Cir.1976) (the materiality of information concerning a corporation's ability to pay dividends "cannot be challenged"), *cert. denied,* 430 U.S. 955 (1977). Moreover, the dividend under consideration by Bally also would have altered Bally's corporate structure and, thus, would have the attributes of a sale of the company. Finally, the payment of the more modest cash dividend, though smaller in magnitude, cannot be considered immaterial as a matter of law in this context.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 10

Not Reported in F.Supp., 1993 WL 22126 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Therefore, a jury could reasonably find that the proposals allegedly under consideration by the investor group were extraordinary corporate activities which a reasonable investor would consider important in making investment decisions.

It is inappropriate to grant a motion to dismiss for failure to allege that the information was material unless the alleged information is "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985); *see also TSC Indus.,* 426 U.S. at 450 ("The determination [of materiality] requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts ... and these assessments are peculiarly ones for the trier of fact."); *United States v. Bilzerian,* 926 F.2d 1285, 1298 (2d Cir.) ("[d]etermination of materiality is a mixed question of law and fact that the Supreme Court has stated is especially well suited for jury determination"), *cert. denied,* 112 S.Ct. 63 (1991). Having considered both the probability and magnitude that the alleged considerations by the investor group with respect to Bally's restructuring would occur, the Court finds that the allegations set forth in the complaint cannot be deemed immaterial as a matter of law.

*11 In sum, the Court concludes that the complaint alleges all of the necessary elements of insider trading liability and survives a motion for judgment on the pleadings with respect to the Bally claims.

## II. APPLICATION FOR A STAY OF DISCOVERY

The United States of America, through the United States Attorney for the Southern District of New York (the "United States Attorney"), has made an application to intervene in this civil action, pursuant to Rule 24 of the Federal Rules of Civil Procedure, for the limited purpose of seeking a partial stay of discovery. [FN7] More specifically, the United States Attorney requests a stay of discovery relating to defendant Downe including, but not limited to, the taking of testimony from Downe, the production of documents relating to Downe from any party or

witness (including the Securities and Exchange Commission) which documents a defendant in a criminal action would only receive pursuant to 18 U.S.C. § 3500. The United States Attorney also requests that the partial stay, if granted, continue in effect until March 17, 1993 (three months from the date of its application) or the conclusion of a trial of any prosecution brought as a result of the Grand Jury investigation, whichever occurs later.

### A. *Application to Intervene by the United States Attorney*

The United States Attorney has moved to intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure which provides for permissive intervention when "an applicant's claim or defense and the main action have a question of law or fact in common." Fed.R.Civ.P. 24(b)(2). It is well-established that the United States Attorney may intervene in a federal civil action to seek a stay of discovery when there is a parallel criminal proceeding, which is anticipated or already underway, that involves common questions of law or fact. *See SEC v. Chestman,* 861 F.2d 49, 50 (2d Cir.1988). As the Second Circuit noted in *Chestman,* "[t]he government had a discernible interest in intervening in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal matter." *Chestman,* 861 F.2d at 50; *see also Board of Governors of the Federal Reserve System v. Pharaon,* 140 F.R.D. 634, 638 (S.D.N.Y.1991) (allowing District Attorney to intervene in civil action for purpose of seeking stay of discovery); *First Merchants Enterprise, Inc. v. Shannon,* 1989 WL 25214, Fed.Sec.L.Rep. ¶ 94,421 (S.D.N.Y. March 16, 1989) (allowing United States Attorney to intervene in civil action).

In the instant case, the United States Attorney seeks to intervene for purpose of staying certain discovery in this civil action while a criminal investigation takes place. The Court is satisfied that the civil action and corresponding criminal investigation arise out of common questions of law and fact and, thus, the United States Attorney has demonstrated a sufficient interest in the present action to permit

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

intervention under Rule 24(b)(2).

**\*12** Defendant Greenberg argues that the United States Attorney is not entitled to intervention because the interests of the United States of America are adequately represented in this case in the presence of the SEC as a plaintiff. Greenberg contends that the United States Attorney can take a position in this matter through the SEC and, thus, intervention is inappropriate. The Court finds this position to be without merit. The Court must recognize that various branches within the United States Government often have diverging interests. Thus, even though the SEC is involved in this action, the United States Attorney may have an interest in this litigation which is qualitatively different from the SEC's interest. Moreover, the United States Attorney is better equipped to explain its need for intervention in the instant case due to a parallel criminal investigation, rather than using the SEC as a conduit for such arguments. Courts have repeatedly allowed the United States Attorney to intervene in civil cases brought by the SEC where it is believed that the case would interfere with a criminal prosecution. *See, e.g., Chestman,* 861 F.2d at 50; *In re Ivan F. Boesky Securities Litigation,* 128 F.R.D. 47, 48-49 (S.D.N.Y.1989). Accordingly, the application of the United States Attorney's to intervene for the purpose of seeking a stay of discovery is granted. [FN8]

### *B. Application for a Partial Stay of Discovery*

The United States Attorney has made an application to have the Court stay discovery as it relates to defendant Downe in the instant case. The United States Attorney states that defendant Downe is presently cooperating with an ongoing Grand Jury investigation which is closely intertwined with the subject matter of this action. It is argued that, if discovery as to Downe is not stayed, the defendants in this case will be able to obtain testimony and documents through civil discovery, which could not be obtained at this time in a criminal proceeding. Thus, the United States Attorney contends that the Grand Jury investigation would be irreparably harmed if such testimony and document production with respect to defendant Downe were permitted to

proceed at this time.

The Court finds the argument presented by the United States Attorney to be compelling under the circumstances of the instant case. The power of this Court to issue a stay of discovery cannot be questioned. *See generally Landis v. North American Co.,* 299 U.S. 248, 255 (1936) ("the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"). In deciding whether a stay of discovery in a civil proceeding is appropriate, the Court must balance the competing interests at stake. *Id.* at 255. The Court recognizes that a stay of discovery is often necessary where liberal discovery rules will allow a litigant to undermine, or gain an unfair advantage in, a potential criminal prosecution which parallels the subject matter of the civil action. *See, e.g., Campbell v. Eastland,* 307 F.2d 478, 487 (5th Cir.1962) (Wisdom, J.) ("[i]n handling motions for a stay of a civil suit until the disposition of a criminal prosecution on related matters and in ruling on motions under the civil discovery procedures, a judge should be sensitive to the difference in the rules of discovery in civil and criminal cases"), *cert. denied,* 371 U.S. 955 (1963). As this Court has recently noted:

**\*13** "A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal trial. Judicial discretion and procedural flexibility should be utilized to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other."

*Pharaon,* 140 F.R.D. at 639 (*quoting Campbell v. Eastland,* 307 F.2d at 487). Thus, where a party or witness in a civil case is cooperating with a grand jury investigation relating to the subject matter of the civil suit, there is a compelling reason to stay discovery of the civil case pending resolution of the criminal investigation.

Defendant Greenberg argues that United States Attorney has failed to demonstrate good cause for

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                Page 12

Not Reported in F.Supp., 1993 WL 22126 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

the stay because an indictment has not been returned with respect to the subject matter of the instant case. Defendant Greenberg contends that, in the absence of an indictment, the purported disadvantage to the United States Attorney in allowing civil discovery is "purely speculative" at this juncture.

The Court finds this argument to be unpersuasive. Courts have granted stays of discovery in order to protect the integrity of the pending criminal investigations, even where an indictment has not yet been returned. *See, e.g., Pharaon,* 140 F.R.D. at 641 (stay granted pending grand jury investigation in New York involving defendant); *SEC v. Control Metals Corp.,* 57 F.R.D. 56, 57 (S.D.N.Y.1972) (staying civil action pending grand jury investigation); *see also United States v. Hugo Key and Son, Inc.,* 672 F.Supp. 656, 658-59 (D.R.I.1987) (staying civil action while Department of Justice considered bringing criminal proceeding based on certain allegations that were the subject matter of the civil claim); *Founding Church of Scientology of Washington, D.C., Inc. v. Kelley,* 77 F.R.D. 378, 381 (D.D.C.1977) (refusing to compel federal officials to answer interrogatories during pendency of federal criminal grand jury investigation).[FN9]

In the instant case, defendant Downe pled guilty (1) to securities trading through an off-shore account; and (ii) to failing to make public filings under section 16 of the Securities Exchange Act of 1934. Pursuant to a cooperation agreement, Downe is presently providing information against others in connection with the ongoing Grand Jury investigation. Under the circumstances of this case, the Court finds that the pendency of this Grand Jury investigation, and the prospect of an indictment resulting therefrom, demonstrates "good cause" for staying discovery with respect to defendant Downe in this case pending the outcome of the related criminal investigation.

Moreover, defendant Greenberg, as well as the other defendants, have failed to demonstrate that they will suffer any prejudice if all discovery is stayed in the civil action for a limited duration. As the Second Circuit has noted, "so far as preparation

for trial in the civil action is concerned, appropriate opportunities for discovery can be allowed when the stay is lifted." *Chestman,* 861 F.2d at 50.

**\*14** Accordingly, having weighed the competing interests of the various parties, the Court finds that a stay of discovery relating to defendant Downe is warranted. While the United States Attorney has only requested this partial stay of discovery, defendant Greenberg argues that, if the Court stays discovery relating to Downe, it should stay discovery of the entire action. Having carefully reviewed the positions of the parties, the Court, in the interest of fairness and avoidance of duplication of effort, will stay *all* discovery in this action.

Even a cursory review of the complaint reveals that defendant Downe is the central figure in this action and, thus, the taking of Mr. Downe's deposition will be critical for the other defendants in this civil action. It would be unfair and prejudicial to the defendants to require them to continue with discovery without first having an opportunity to depose Downe and receive any other information relating to Downe which might otherwise be available to them in the absence of a stay. [FN10] The SEC would be the beneficiary of an unfair litigation advantage if the Court instituted a limited stay, rather than a stay of the entire action.

Moreover, a partial stay would lead to duplicative depositions since, once the partial stay is lifted and Downe is deposed, the defendants would probably find it necessary to conduct a second deposition of individuals who were deposed prior to Downe's deposition. Thus, a partial stay would likely result in additional expenses for the parties without expediting the discovery process.

Finally, the SEC has not demonstrated any prejudice that will result from a stay of all discovery in this action. The Court is sensitive to the concerns of both sides that this litigation reach a final determination as expeditiously as possible. Thus, the Court is imposing a stay of a limited duration. The Court is staying discovery until March 17, 1993. However, if an indictment relating to the subject matter of the civil action is pending at that time, the Court will extend the stay

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                              Page 13

Not Reported in F.Supp., 1993 WL 22126 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

until the conclusion of the prosecution of that matter.

## CONCLUSION

For the reasons stated above, defendant Greenberg's
motion for judgment on the pleadings is denied in
its entirety. In addition, the Court hereby orders a
stay of all discovery until March 17, 1993.
However, if an indictment relating to the subject
matter of this civil suit is pending at that time, the
Court will extend the stay until the conclusion of a
trial of any prosecution brought as a result of the
Grand Jury investigation.

SO ORDERED

> FN1. Defendant Greenberg has also
> brought a motion to compel the SEC to
> produce certain documents and respond to
> interrogatories. Several other defendants
> have joined in this motion. The SEC
> opposes the motion on the grounds that the
> documents at issue are protected by the
> attorney work product doctrine and certain
> privileges (*i.e.*, attorney-client, deliberative
> process, and law enforcement privileges).
> In addition, the SEC argues that its
> response to Greenberg's interrogatories
> complied with the Local Rules and the
> Federal Rules of Civil Procedure. The
> Court will postpone consideration of that
> motion until the stay of discovery is lifted.

> FN2. Subsequent to the filing of the
> complaint, defendant Sullivan consented to
> the entry of a permanent injunction. In
> addition, both defendants Downe and
> Weinger pled guilty to criminal charges
> arising out of the SEC's investigation into
> these allegations, but remain parties to this
> civil action.

> FN3. In the Memorandum in Support of
> the Motion for Judgment on the Pleadings,
> dated September 16, 1992 ("Defendant
> Greenberg's Memorandum"), defendant
> Greenberg has made factual assertions

concerning matters outside the complaint
including newspaper articles (pp. 3 & 5),
the performance of securities of the
gaming industry companies generally (p.
14), and a portion of the SEC's response to
an interrogatory (p. 24). Reliance on
these extraneous materials by the Court is
improper on a motion to dismiss for failure
to state a claim. *See Fonte v. The Board
of Managers of Continental Towers
Condominium,* 848 F.2d 24, 25 (2d
Cir.1988) ("[f]actual allegations contained
in legal briefs or memoranda are also
treated as matters outside the pleading for
purposes of Rule 12(b)"); *see also Allen v.
WestPoint-Pepperell, Inc.,* 945 F.2d 40, 44
(2d Cir.1991). Thus, the Court has
excluded consideration of these factual
allegations contained in defendant's
memorandum of law on this 12(c) motion.
While the Court has the power to convert
this motion into one for summary
judgment, *see* Fed.R.Civ.P. 12(c), the
Court expressly declines to do so in the
instant case.

> FN4. In *Carpenter v. United States,* 484
> U.S. 19, 24 (1987), an "evenly divided"
> Court affirmed a securities fraud
> conviction brought under the
> misappropriation theory. Since an
> affirmance of an evenly divided court is "
> not entitled to precedential weight" *Neil v.
> Biggers,* 409 U.S. 188, 192 (1972), this
> theory has not been adopted by the
> Supreme Court. However, in addition to
> the Second Circuit, several other circuits
> have recognized the misappropriation
> theory under 10b-5. *See, e.g., SEC v.
> Cherif,* 933 F.2d 403, 410 (7th Cir.1991),
> *cert. denied,* 112 S.Ct. 966 (1992); *SEC v.
> Clark,* 915 F.2d 439, 449 (9th Cir.1990);
> *Rothberg v. Rosenbloom,* 771 F.2d 818,
> 822 (3d Cir.1985), *cert. denied,* 481 U.S.
> 1017 (1987).

> FN5. While a subsequent public
> announcement was eventually made, the
> announcement occurred after Sloate had

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                     Page 14

Not Reported in F.Supp., 1993 WL 22126 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

completed his trading in the securities and had no effect on defendant Sloate's status. The facts regarding the public announcement are set forth in *United States v. Willis,* 737 F.Supp. 269, 271 (S.D.N.Y.1990) (public announcement of Weill's efforts to become Chief Executive Officer of BankAmerica was made on February 21, 1986).

FN6. The Court recognizes that the other plan allegedly considered by the investor group-the LBO plan-appeared to be no longer feasible when Downe engaged in the initial Bally transactions, according to the complaint. Complaint, at ¶¶ 92-95. Nevertheless, this allegation is relevant to the determination of "materiality" because the deliberations of the investor group were allegedly ongoing and the fact that a specific LBO plan had already been considered, but rejected, provides support for the seriousness of the group's alleged later discussions concerning other options such as the recapitalization plan involving the payment of a cash dividend.

With respect to the LBO consideration, the complaint alleges that Greenberg and Scharf, who headed an investor group, met with Bally's CEO, proposed an LBO of Bally, and Bally's CEO authorized them to explore this concept with Bally's financial adviser, Drexel. More specifically, the investor group allegedly contemplated executing the LBO in the range of $28 per share and purchased at least 500,000 Bally shares to impress Bally's CEO with their commitment to the transaction. Complaint, at ¶ 92.

Thus, the consideration of this specific plan in the same time frame as the other restructuring options considered by the investor group is relevant in assessing the seriousness of these later proposals and the probability that such proposals would be implemented. In other words, the alleged serious consideration given to the specific LBO proposal undermines the argument that the later proposals, or the restructuring

plans as a whole, were too inchoate as a matter of law to be "material."

FN7. The United States Attorney relies in part on the Ex Parte Sealed Affidavit of Scott A. Edelman, Esq. submitted in support of its application. Defendant Greenberg has objected to the filing of this affidavit under seal and asks the Court to disregard it. *See* Greenberg's Reply Memorandum, at 5. However, it is well-established that the district court may read *in camera* submissions from the Government where an interest in grand jury secrecy is at issue. *See In re Doe,* 711 F.2d 1187, 1194 (2d Cir.1983) (noting that the Second Circuit has "approved the use of *in camera* submissions by the government in situations where an " ' ongoing interest in grand jury secrecy is at stake' ") (*citing In re John Doe Corp.,* 675 F.2d 482, 490 (2d Cir.1982)). Under the circumstances of the instant case, the Court finds the *ex parte* submission of the Edelman Affidavit to be appropriate. Moreover, even if the Court disregarded the contents of the Edelman Affidavit in its entirety, there is sufficient information within the Application itself, which is available to defendant Greenberg, to support a stay of discovery in the instant case.

FN8. Defendant Greenberg argues that the motion to intervene must be rejected because the motion does not contain "a pleading setting forth the claim or defense for which intervention is sought." Fed.R.Civ.P. 24(c). The Court finds that the papers filed by the United States Attorney have fulfilled the substance of the requirements of Rule 24(c) and provided adequate notice to the defendants as to the grounds for the motion to intervene. Under such circumstances, the failure to comply with the technical requirements of Rule 24(c) does not bar consideration of the motion on the merits. *See Belgian American Mercantile Corp. v. De*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1993 WL 22126 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

*Groeve-Marcotte & Fils,* 433 F.Supp. 1098, 1101 (S.D.N.Y.1977) (noting that " [t]he Second Circuit has held that in the face of strong circumstances the formal requirements of Rule 24 need not be insisted on") (*citing Kupferman v. Consolidated Research & Mfg. Corp.,* 459 F.2d 1072, 1074 n. 1 (2d Cir.1972)); *see also Nelson v. Greenspoon,* 103 F.R.D. 118, 121 (S.D.N.Y.1984) (finding that non-party seeking intervention had not met the formalities of Rule 24(c), but nevertheless considered the merits of the motion because "denying its motion on that ground would exalt form over substance").

FN9. The Court also rejects Greenberg's contention that the fact that the Government is a plaintiff in this action, rather than a defendant, makes a stay inappropriate. Courts have repeatedly granted stays in cases brought by the Government where discovery in the civil case would interfere with a parallel criminal proceeding or investigation. *See, e.g., SEC v. Control Metals Corp.,* 57 F.R.D. at 57-58; *United States v. Hugo Key and Son, Inc.,* 672 F.Supp. at 658; *In re Ivan F. Boesky Securities Litigation,* 128 F.R.D. at 51.

FN10. As noted earlier, defendant Greenberg has brought a motion to compel the SEC to produce documents and respond to interrogatories. The motion, to a large extent, involves documents relating to defendant Downe. Several other defendants have joined in this motion. The Court finds consideration of the motion to compel to be premature at this juncture in light of the decision to impose a stay of all discovery. When the stay is lifted, the Court will invite the parties to revise their arguments to the extent that developments during the pendency of the stay have altered their positions with respect to the motion to compel.

S.D.N.Y.,1993.

S.E.C. v. Downe
Not Reported in F.Supp., 1993 WL 22126 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:92cv04092 (Docket) (Jun. 04, 1992)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.