# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00636-LTB-OES

CARLOS E. SALA and
TINA ZANOLINI SALA,

         Plaintiffs,

    v.

UNITED STATES OF AMERICA,

         Defendant.

_____

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO AMEND ANSWER TO ASSERT ADDITIONAL DEFENSES

_____

      Two basic issues are presented by the government's attempt to amend its Answer and assert new defenses: 1) whether the government can legitimately assert this is a "case involving fraud" within the meaning of the interest suspension statute; and 2) whether the government can seek to impose an accuracy-related penalty as an offset to the refund of excessive interest erroneously assessed against and collected from Plaintiff.[1]  An examination of these issues will demonstrate that: 1) the fundamental requirements of pleading have not been satisfied; 2) the government's attempted affirmative assertion of fraud is squarely inconsistent with its own Motion for Relief Under Fed.R.Civ.P. 56(f) ("Rule 56(f)"), which is predicated upon its representation to

---

[1] Plaintiffs Carlos E. Sala and Tina Zanolini-Sala are husband and wife.  Plaintiff wife is a party to this suit solely by reason of having filed a joint federal income tax return.  Plaintiff husband will hereinafter be referred to as "Plaintiff."

this Court that it does not have the evidence to affirmatively allege fraud; and 3) the statutory requirements for asserting both the fraud exception to the interest suspension provisions and a setoff with respect to an accuracy-related penalty have not been met.

The government avoids directly addressing these matters and instead relies largely upon a criminal indictment of five individuals, which indictment does not involve Plaintiff or Plaintiff's transactions. The government further relies upon a deferred prosecution agreement between the government and Plaintiff's return preparer, KPMG, an agreement to which Plaintiff was not a party and which does not pertain to Plaintiff's transactions or his claimed loss.

When the specifics of Plaintiff's case and the issues raised by the government's Motion for Leave to Amend to Assert Additional Defenses ("Motion to Amend") are examined, it is apparent that the Motion to Amend should be denied.

## INTRODUCTION

Before addressing the specific issues raised by the government's Motion, some general principles, particularly applicable to tax litigation, should be recognized. Attempting to elevate this complex civil tax case involving the deductibility of losses incurred in connection with Plaintiff's acquisition and disposition of options in foreign currencies into "a case involving fraud," the government refers to the underlying transactions as part of an "abusive," "illegal," "tax shelter scheme," involving a "massive artificial loss," with no "actual economic loss." Yet nowhere does the government disclose that no court has <u>ever</u> held that the transactions Plaintiff entered into, or any substantially similar transactions entered into by other taxpayers, did not

result in a deductible loss under the Internal Revenue Code.

To be sure, the IRS takes the position that the loss is not deductible. But, under our system, it is the courts, not the IRS, that ultimately decide the validity of a tax reporting position. Even where the IRS has published a ruling stating its position that a particular tax strategy or reporting position is invalid, the Tax Court gives rulings no more deference than they give the arguments of the taxpayer. *Electronic Arts, Inc. v. Commissioner*, 118 T.C. 226, 263 n.13 (2002) (collecting cases); *McLaulin v. Commissioner*, 105 T.C. 255, 263 (2000).

The courts have long held that even aggressive tax planning does not invalidate a tax reporting position, let alone establish that it is fraudulent. Many years ago, the United States Supreme Court in *Atlantic Coastline v. Phillips,* 332 U.S. 168 (1947), quoting from a prior decision of Justice Holmes and Judge Leonard Hand, observed:

> As to the astuteness of taxpayers in ordering their affairs so as to minimize taxes we have said that 'the very meaning of a line in the law is that you intentionally may go as close to it as you can if you do not pass it.' This is so because [there is no] 'public duty to pay more than the law demands: taxes are enforced exactions, not voluntary contributions.'

More recently, the United States Court of Federal Claims quoted the government's description of a similarly complex civil tax refund case before the court[2] as follows:

> Hoping to avoid tax on its substantial capital gains, Coltec [Industries, Inc.] adopted an off-the-shelf corporate tax shelter scheme developed by Arthur Anderson LLP...,

---

[2] The taxpayer's transaction in *Coltec* is similar to the transaction at issue in this case in that both transactions have been characterized by the IRS as "abusive" in public notices. The *Coltec* contingent liability transaction was described by the IRS in Notice 2001-17, 2001-1 CB 730.

3

> which was designed to create an offsetting, artificial tax "loss"—without any corresponding economic loss-through a complex series of prearranged steps ... that were intended to have no other material impact upon Coltec.

*Coltec Industries Inc. v. United States,* 62 Fed.Cl. 716, 718 (2005).

Despite the government's overheated rhetoric, the Court in *Coltec* squarely rejected the government's position, holding for the taxpayer.  Likewise, the necessity for an "economic loss" equaling a claimed tax loss was squarely rejected by the United States Supreme Court in *Gitlitz v. Commissioner,* 531 U.S. 206 (2001).  There, the taxpayers were solvent shareholders of an insolvent S-corporation whose creditors forgave some $2 million of debt.  Before the debt relief, the corporation had incurred approximately $2 million in losses, but the shareholders were unable to deduct the losses because the losses exceeded the shareholders' basis in their stock.  The taxpayers claimed that, even though the income realized as a result of the debt relief was not taxable to them (because it was subject to the insolvency exclusion under section 108 of the Internal Revenue Code[3] ("the Code")), it could be added to their stock basis and thereby enable them to claim losses which had not been financed with their money. The government pointed to the fact that the taxpayers made "no economic outlay" in the amount of the debt relief income, and that the taxpayers sought a "double windfall." That is, the taxpayers sought to both exclude the debt relief from income taxation, and to use that income to increase their basis and claim the loss.

The Supreme Court rejected the government's argument that these "public

---

[3]  Unless otherwise specified, all statutory citations refer to the Title 26 of the U.S. Code, the Internal Revenue Code of 1986 ("the Code").

4

policy" concerns should control the tax consequences.  The Court noted that the claimed tax benefits resulted from provisions in the tax law that enabled a solvent shareholder to exclude from his gross income his S corporation's debt relief income, and to increase his basis by the excluded amount.  Because the law permitted the claimed tax benefits, the Court rejected the IRS' result-driven arguments about economics and "good tax policy" to deny those tax benefits.

Here, Plaintiff invested some $8.9 million in long and short positions on millions of dollars in foreign currencies.  He reported both an economic profit (which the government alleges never happens in a tax shelter) and a tax loss in the first year.  The tax loss occurred because of the legal position taken on the tax return that unexercised, unexpired short options are not liabilities properly taken into account in determining a taxpayer's basis (which is in turn used to determine taxpayer's gain or loss) in a partnership.  That position is based upon the IRS' *prevailing* argument in a 1975 Tax Court case, *Helmer v. Commissioner*, T.C. Memo 1975-160.

The government recognizes the significance of the legal issue in this case concerning the treatment of short options in determining basis.  *See United States' Memorandum in Support of Motion for Relief Under Fed.R.Civ.P. 56(f) with respect to Plaintiffs' Motion for Partial Summary Judgment* ("Memorandum in Support of Motion for Relief"), p. 2.  Yet, the government <u>never</u> in any of its pleadings states that the legal position is wrong, let alone explains why.

## I.     THIS IS NOT A CASE INVOLVING FRAUD.

For this to be a fraud case, there must be fraud.  As the government acknowledges in its Reply to Plaintiffs' Response to Motion for Relief under

Fed.R.Civ.P. 56(f) with Respect to Plaintiffs' Motion for Partial Summary Judgment

("Government's Reply"), (p. 5), "[o]rdinarily, for determinations of fraud, the

government must show that a taxpayer intended to evade tax believed to be owing..."

Thus, the government must show that: (1) under the Internal Revenue Code, the loss is

not allowable; and (2) plaintiff knew that was the case.  As this court held in *United

States v. Kilpatrick*:

> [I]t is not illegal to be innovative in putting an elaborate
> dress on prosaic transactions.  Leveraged financing and
> complex investment programs have been commonplace in
> our economy.  What divides a tax shelter from a tax fraud
> is the existence of some actual economic purpose and what
> divides civil from criminal liability is the intent of the
> actor.[4]

*Unites States v. Kilpatrick,* 726 F.Supp. 789, 794 (D.Colo. 1989).

    With these general principles in mind, three issues must be resolved in deciding

whether this Court should grant the government's Motion to Amend and allege that this

is "a case involving fraud": (1) Can this case be considered as "a case involving fraud"

within the meaning of section 6404(g)(2)(B) of the Code; (2) is the Motion to Amend

being made in good faith; and (3) has the government complied with the requirements

of Fed.R.Civ.P. 8(c) and 9(b) ("Rule 8(c)" and "Rule 9(b)") in its proffered Amended

Answer.

---

[4] *Kilpatrick* was a criminal tax fraud case.  However, the intent standard is identical for criminal and civil purposes, i.e., specific intent to evade tax and knowledge that a reporting position has no legal basis, such that collateral estoppel  prevents an individual who has been convicted of fraud under §7201 from denying the elements of the civil tax fraud penalty. *DiLeo v. Commissioner*  96 T.C. 858, 885-86 (1991).  The burden of proving that in a criminal case is beyond a reasonable doubt, as compared to clear and convincing evidence in a civil tax case.

**A.    This Is Not "A Case Involving Fraud" Within The Meaning Of Section 6404(g)(2)(B) Of The Code.**

Section 6404(g)(1) of the Code provides that interest on a tax liability, which generally begins from the due date of the tax return and continues until the liability is paid, shall be suspended by the IRS if it fails to give the taxpayer notice of the additional tax due within 18 months.  One exception to the suspension rule is "a case involving fraud." § 6404(g)(2)(B).  The Motion to Amend attempts to assert this exception solely to avoid the court granting Plaintiff's Motion for Partial Summary Judgment.  The attempted amendment should be denied because this is not, as a matter of law, "a case involving fraud" within the meaning of the statute.

The statute provides no definition of a "case involving fraud."  However, the meaning of that phrase can be determined by reference to the use of the phrase in the case law prior to enactment of the statute.   Where case law defines a term used by Congress when it enacts a statute, it is presumed that Congress intended the commonly accepted meaning used in the case law.  *Morissette v. United States*, 342 U.S. 246, 263 (1952); *Miller v. Commissioner*, 836 F.2d 1274, 1282 (10th Cir. 1986) ("Where Congress uses a term of art which received a consistent judicial interpretation, there is a heavy presumption that Congress and the President have incorporated the prior meaning.")

The precise phrase "a case involving fraud" has been used repeatedly in judicial decisions over the years to describe cases involving the fraud penalty.[5]  *See e.g., Goralski v. Commissioner*, 1952 WL 9672 (Tax Ct.); *Clayton v. Commissioner*, 1948

---

[5] The fraud penalty is currently codified at section 6663.  Provisions in the 1954 Code (§6653(b)) and the 1939 Code (§293(b)) likewise imposed a fraud penalty.

WL 7417 (Tax Ct.); *Easton v. Commissioner*, 1943 WL 8150 (Tax Ct.); *Reis v. Commissioner*, 1 T.C. 9 (1942).

In this case, there is no fraud penalty at issue.  Hence, this cannot be construed as "a case involving fraud."

The government argues in its Reply (pp. 5-6) that the fraud penalty need not be at issue in order for this to be considered as "a case involving fraud" because the fraud penalty provision (section 6663) is contained in chapter 68 of the Code, which is entitled "Additions to Tax, Additional Amounts, and Assessable Penalties," while the interest suspension provisions of section 6404 are in chapter 65 titled "Abatements, Credits and Refunds." That argument fails to address the issue as to what is the meaning of the phrase "a case involving fraud" as used in section 6404 of the Code. Moreover, section 7806 specifically provides that, when interpreting the Code, no inference is to be drawn from either the title of a section or its placement within the Code.

Further, despite its placement in Chapter 65, the subsection at issue here, section 6404(g), does not provide rules pertaining to refunds.  It provides that the IRS "shall suspend" the imposition of interest in specified circumstances. Interest, therefore, should not even be assessed or collected when the suspension provisions apply.  Plaintiff's Claim for Refund, and this refund suit, were filed because the IRS failed to comply with section 6404(g) and illegally assessed and collected the excess interest.

**B.   The Motion To Amend And Assert Fraud Is Not Made In Good Faith.**

We agree with the government that a trial court has discretion to grant or deny a motion to amend pleadings.  However, a motion to amend should only be granted "in the absence of bad faith or dilatory motives on the part of the movant." *Foman v. Davis,* 371 US 178 (1962); *See Memorandum in Support of Leave to Amend Answer and Assert Additional Defenses (*"Memorandum in Support of Motion to Amend"*),* p. 5.  The following shows bad faith and dilatory motives on the part of the government in this case, such that the court should exercise its discretion and deny the government's Motion to Amend.

First, 114 days after the Complaint was filed, the government filed its Answer.  It did not plead fraud.  The Complaint attaches a copy of the Claim for Refund, which contains a detailed explanation of all of the transactions and legal authorities supporting Plaintiff's claimed loss.   Before answering, the government obtained the IRS' administrative file, which contained not only the Claim for Refund, but all of the documents and information relating the IRS' examination of Plaintiff's claimed loss, including over 1800 pages of documents evidencing, among other things, the contracts regarding the relevant transactions that formed the basis for Plaintiff's claimed loss.  The government knew that the IRS maintains those transactions and the loss resulting from them constitute a transaction described by the IRS as "abusive" in a Notice issued in 2000.[6]

Thus, at the time of filing the Answer, the government knew the details of the

---

[6] Notice 2000-44, 2000-2 C.B. 255.

transactions and the legal authorities relied upon by Plaintiff in claiming his loss. It knew that the IRS viewed the loss as "abusive." It knew Plaintiff claimed a refund of excess interest assessed and that Plaintiff would not be entitled to the refund if this were "a case involving fraud." Yet, it did not assert that this is "a case involving fraud" as an affirmative defense.

On October 3, 2005, the last day to respond to Plaintiff's Motion for Partial Summary Judgment (after the government obtained three unopposed motions for extension), the government filed its Motion for Relief. In its Memorandum in Support of the Motion for Relief (p.2), the government described this case as involving a "scheme designed to generate artificial tax losses" and to generate "a massive artificial loss" without any "actual economic loss." Aside from these labels, the government in its Memorandum made allegations attempting to link Plaintiff to KPMG and to have inferences drawn that, because KPMG entered into a deferred prosecution agreement with the government, Plaintiff may have claimed his loss with fraudulent intent. It also sought to draw the same inference from the fact that attorney R.J. Ruble, who provided Plaintiff with a tax opinion has been indicted. Yet, the government nevertheless acknowledged that it did not have sufficient facts to affirmatively, and in good faith, assert Plaintiff committed fraud where it stated:

> Pursuant to Rule 56(e), the United States must oppose this motion for partial summary judgment with specific facts. Pursuant to Fed.R.Civ.P. 9, fraud must be pled with particularity, setting forth the specific facts and circumstances thereto. Without an opportunity for discovery, the United States cannot set forth specific facts by affidavit to oppose the motion for summary judgment. This is not to say that those facts may not exist.

*See Memorandum in Support of Motion for Relief,* p. 7.

Indeed, in its October 3, 2005 filing, the government recognized the distinct possibility that, if it were granted relief under Fed.R.Civ.P. 56(f), at the completion of discovery, it might be compelled to concede there is no fraud and stated:

> [I]f at the end of the discovery period the Court determines, or the United States concedes, that the case involving fraud exception does not apply, the plaintiffs will receive additional interest until the overpayment is refunded.

*Memorandum in Support of Motion for Relief,* p. 3. [Emphasis supplied and citations omitted].

The government's acknowledgement that it did not have sufficient evidence to assert fraud, and that such evidence may not exist, was not gratuitous. Indeed, although it describes Plaintiff's loss as artificially inflating its basis "by including only the value of contributed purchase call options in taxpayer's partnership share while disregarding the offsetting liability assumed by the partnership in the form of written call options" (*see Memorandum in Support of Motion for Relief,* p. 2), the IRS' Office of Chief Counsel Attorneys and Treasury Officials recognized in 1995 that "existing authority is contrary to a position that options create liabilities." *See* Tandon, Crystal, *IRS, Treasury Shared Views of Shelter Lawyers,* Tax Analysts, Oct. 17, 2005 (attached as Exhibit A). The "existing authority" was primarily the Tax Court's decision in *Helmer v. Commissioner*, *supra*. *Helmer* was still good law when Plaintiff entered into the transactions giving rise to his tax loss, and was one of the authorities relied upon by attorney R.J. Ruble in the tax opinion issued to Plaintiff. Claiming a tax loss based upon fairly debatable legal issues, let alone long-standing Tax Court authority, is not

the stuff upon which tax fraud can be based. *United States v Harris*, 942 F.2d 1125, 1132-34 (7th Cir. 1992).

Also, inconsistent with a claim of fraud is Plaintiff's investment of almost $9 million in transactions involving foreign currencies over a four year period through an investment management firm (Deerhurst Managers, Inc.) which had a long history of profitably investing in foreign currencies for its clients.  It is undoubtedly for these reasons that the government did not affirmatively assert fraud as a defense to Plaintiff's Motion but, instead, filed its Motion for Relief asking this Court to defer any decision until the government could determine whether to even assert fraud.

Notably, the government's Motion for Relief did not point out to the Court the necessity for pleading fraud as an affirmative defense before it could rely upon the fraud exception of section 6404(g) of the Code.  It hoped Plaintiff too would overlook this omission.  When that did not happen, and Plaintiff raised the failure to plead fraud in his Opposition to Plaintiff's Motion for Relief, the government, on the last day for doing so, filed its Motion to Amend.

The proposed Amended Answer filed with the government's Motion fails completely to make any specific, affirmative allegations supporting fraud.  It simply alleges "based on the information available to the government at this initial stage of the litigation this is a 'case involving fraud,'" and refers 'the reasons articulated more specifically in the [Government's Reply]'".  However, the Government's Reply was not filed until December 13, 2005 (the date that the Reply was due), the day <u>after</u> the due date for its Motion to Amend the pleadings.  Thus, when the document was filed, there

were no reasons set forth in the government's Amended Answer, or anywhere else, to support its conclusory allegation that this is "a case involving fraud."

When the government ultimately filed its Reply, it squarely contradicted the allegation in its Amended Answer filed the day before that this is "a case involving fraud." Instead of setting out facts which would demonstrate that fraud in fact had occurred with the requisite degree of particularity, the government waffled, stating that "The evidence adduced so far points to the conclusion that it is likely that fraud occurred," that additional discovery is necessary to determine "whether" this is "a case involving fraud," and that the government "lacks personal knowledge as to the facts and circumstances surrounding plaintiffs' entry into this transaction." Government's Reply, pp. 4-5.

The fact is the government's own pleadings admit that it does not have sufficient evidence to, in good faith, allege affirmatively and with the requisite particularity that Plaintiff acted fraudulently. Its Motion to Amend was made because it recognized that, in the absence of an Amended Answer, fraud would be eliminated as an issue and the government would have no basis to legitimately oppose Plaintiff's Motion as a matter of law. The government itself implicitly acknowledged the blatant insufficiency of its Motion and its Amended Answer when it sought place in the record a second Amended Answer well after the time to amend had expired.[7] Accordingly, the Motion to Amend seeks to accomplish nothing more than delay. This is not good faith and calls for the Court to exercise its discretion to deny the Motion.

---

[7] The circumstances surrounding the government's filing of a substitute amended answer are addressed in section I.C. of this brief.

**C.**     **The Government Has Not Complied With Fed.R.Civ.P. 8(c) And 9(b).**

Fraud is a matter which must be pled <u>affirmatively</u> under Fed.R.Civ.P. 8(c). Black's Law Dictionary, 82 (4th ed. Rev. 1968) defines "affirmative" as "that which declares positively; that which avers a fact to be true; that which establishes; the opposite of negative."

The government's proposed Amended Answer filed with its Motion to Amend does not, on its face, "declare positively" that this is a case involving fraud. Nor does it state that fraud <u>is</u> a "true fact." It qualifies the conclusory assertion that this is a case involving fraud as being "based on the information available to the government at this initial stage of litigation." In the government's next day filing (i.e., the Government's Reply) which the Amended Answer states "articulates more specifically" the reasons supporting its fraud assertion,  the government: (1) reiterates that it lacks personal knowledge as to the facts and circumstances surrounding Plaintiff's entry into these transactions; (2) states additional discovery will enable it to determine "whether" this is a case involving fraud; and, (3) says that the evidence adduced so far points to the conclusion that fraud "likely" occurred. *See Memorandum in Support of Reply,* pp. 3-4. Fraud has clearly not been pled affirmatively. The government has done no more than say there *might be* fraud which it *might be* able to establish at the conclusion of discovery.

The Amended Answer likewise fails to meet the particularity requirement of Fed.Rul.Civ.P. 9(b), i.e., setting out the who, what, when, where, and how of the allegedly fraudulent conduct. *Seattle First National Bank v. Carlstedt,* 800 F.2d 1008,

1011 (10th Cir. 1986); *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003). None of these specifics are set forth in the government's proposed Amended Answer. The Answer only asserts, in broad conclusory terms, this is "a case involving fraud" within the meaning of the Code.  The Answer purports to refer to the Government's Reply for the factual reasons supporting this assertion.  But the Government's Reply was not filed until after the time had expired for filing its Motion to Amend, and it should therefore be disregarded for purposes of determining the sufficiency of the Amended Answer.

Moreover, the government makes a complete mockery of the particularity rule for pleading fraud by seeking to satisfy that rule with a 36-page legal memorandum. Fed.R.Civ.P. 8(e) ("Rule 8(e)") provides that "each averment of a pleading shall be simple, concise and direct."  The lengthy 36 page Reply, replete with legal arguments and containing 43 exhibits, does not simply, concisely, and directly state the what, when, where, and why of fraud.  Indeed, it is totally inconsistent with the Amended Answer assertion that this is "a case involving fraud" in its representations that fraud "may have occurred," and that the government will not be in a position to assert the specifics showing that fraud did occur until the completion of discovery.

Even if reference can be made to the Government's Reply, for the following reasons, the particularity requirement of Rule 9(b) has clearly not been met:

(1)     The government does not allege that any of the transactions set forth in

Plaintiff's Claim for Refund did not occur, or occurred in a different

manner or order than Plaintiff contends, including (a) the investment in

foreign currency options, (b) the transfer of the option positions to an S-corporation and to a domestic pooled investment partnership, (c) the liquidation of the partnership and distribution of foreign currencies, and (d) the conversion of the foreign currencies into U.S. dollars and investment of those dollars in a long term fund managed by Deerhurst Managers;

(2)     The government does not even clearly allege that the loss claimed is not allowable under the Code.  It totally fails to state with any specificity why the loss is not allowable.  For example, it does not even allege that the legal position supporting the existence of the tax loss – disregard of short options as liabilities in determining basis – is an erroneous interpretation of the law;

(3)      While Rule 9(b) allows intent to be "averred generally" the government does not allege, even generally, that Plaintiff knew the loss claimed on his tax return was clearly not allowable under the tax laws.  The government alleges in its Reply that Plaintiff considered numerous tax strategies, but determined not to utilize them.  We firmly dispute the many government assertions in this regard, but, on their face, the assertion that Plaintiff investigated other tax strategies does not constitute an allegation that Plaintiff knew the transactions he did enter into and the loss he did claim were illegal;

(4)     The Government's Reply also refers to five persons who have been

indicted for "devising, marketing and implementing fraudulent tax shelters with the knowledge that they were fraudulent." We dispute the government's contention that any inference should be drawn from those indictments, and that the indictments involve Plaintiff's transactions and claimed loss. However, accepting the government's allegations on their face, they do not state that Plaintiff knew his losses were illegal. To the contrary, the Government's Reply states (p. 9), "[T]hese five persons may be able to establish that plaintiff's motive in entering into this transaction was only to create a tax loss sufficient to shelter a particular, defined amount of income" [Emphasis supplied]; and

(5)     The government acknowledges that attorney R.J. Ruble supplied a 113 page tax opinion to Plaintiff which supported the deductibility of his claimed loss. *See Exhibit EE to Government's Reply.* Yet it does not point to one fact set forth in the opinion that is erroneous, let alone fraudulently stated. Nor does it point to any discussion of a legal position or authorities which fraudulently misrepresent the law.

Plaintiff sets forth precisely the who, where, why, and how his loss arose by providing these details to the IRS long before this case was filed. The government has chosen to ignore these specifics all together in arguing that this is somehow "a case involving fraud." This it cannot do and meet the requirements of Fed.R.Civ.P. 9(b).

Recognizing that its Amended Answer filed with its Motion to Amend completely fails to plead fraud with any specificity, the government made a belated

attempt to "substitute" another proposed Amended Answer.  On December 21, 2005 (nine days after any motion to amend the pleadings was due), it filed a Notice of Filing Substitute Exhibit A (Proposed Amended Answer) to Motion by United States for Leave to Amend Answer ("Second Amended Answer").  This new purported Amended Answer again referred to the Government's Reply for reasons in support of its fraud allegations, but it added ten more purported reasons as well.

The Court should disregard this late filing.  It was not before this Court at the time the Motion to Amend was filed, and that time expired on December 12, 2005.  The Motion to Amend specifically requested that this Court sign an order directing that the Clerk of the Court "accept for filing the Amended Answer annexed as Exhibit A to this Motion."  In essence, the government seeks to make another amendment to its Answer, without filing a motion to do so.

Even if the Court were to consider the Second Amended Answer, it too fails to satisfy the requirements of Fed.R.Civ.P. 8(c) and 9(b).  Like the first Amended Answer, the Second qualifies the allegations that "this is a case involving fraud" with the statement "based upon the information available to the Government at this initial stage of this litigation."  Like the first Amended Answer, it incorporates by reference the assertions made in the Government's Reply, and thus continues to allege fraud "might" have occurred and that it needs to complete discovery to determine "whether" fraud occurred.

The Second Amended Answer, far from setting forth fraud affirmatively and with particularity, compounds the confusion as to just what the government is

contending where it states "Plaintiff knew or should have known, or acted in reckless disregard to the fact that the claimed loss was illegal." Second Amended Answer. ¶ B. "Should have known" and "reckless disregard" do not constitute fraud. Fraud requires a specific intent to evade tax believed to be due and owing. *United States v. Critzer*, 498 F.2d 1160, 1162 (4th Cir. 1974). Because of the specific intent requirement, negligence, or even reckless disregard, do not constitute fraud:

> Negligence, whether slight or great, is not equivalent to the fraud with intent to evade tax named in the statute. The fraud meant is actual, intentional wrongdoing, and the intent required is the specific intent to evade a tax believed to be owing.

*Mitchell v. Commissioner*, 118 F.2d 308, 310 (5th Cir. 1941). *Also see Parks v. Commissioner*, 94 T.C. 654 (1990); *Cheek v. United States*, 498 U.S. 192 (1991) (subjective belief that reporting position is permissible may not be qualified by a reasonableness standard in determining "willfulness").

## II.   THE MOTION TO AMEND THE ANSWER TO INCORPORATE A SETOFF DEFENSE SHOULD BE DENIED.

As shown below, the "setoff" defense, which the government seeks to add to its Answer, would have properly been subject to a motion to strike under Fed.R.Civ.P. 12(f) had it been included in the government's original Answer.[8] It therefore should not be permitted to raise this defense in an amended answer.

In this case, the government proposes to amend its Answer[9] to include the following affirmative defense:

---

[8]  The Advisory Committee Notes to the 1946 Amendments to Fed.R.Civ.P. 12 note that a motion to strike under Rule 12(f) affords a party a specific method of raising the insufficiency of a defense.

[9]  The proposed Amended Answer filed along with the Motion to Amend on December 12, 2005, and the replacement proposed Amended Answer (referred to herein as the Second Amended Answer) filed the following week are identical with respect to the language of the offset affirmative defense.

> To the extent that plaintiffs are determined to have overpaid interest due on their tax deficiency, the United States is entitled to setoff any amount due plaintiff against an accuracy related penalty owed, but not assessed.

### A.   The Affirmative Defense Fails To Provide Notice Of The Material Elements Of The Proposed Penalty Setoff.

The general rules of pleading that are applicable to a statement of a claim also govern the statement of affirmative defenses under Rule 8(c).  Wright & Miller, *Federal Practice & Procedure*, § 1274; *American Top English v Lexicon Marketing (USA), Inc.*, 2004 WL 2271838 (N.D. Ill. 2004).  At a minimum, notice pleading requires that a claim contain inferential allegations from which the opposing party can identify each of the material elements necessary to sustain a recovery under some viable legal theory.  *Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678, 684 (11th Cir. 2001).  Bare bones allegations, lacking information regarding the underlying elements of the defense, are not enough.  *Fleet Business Credit Corporation v. National City Truck Leasing*, 191 F.R.D. 568 (N.D. Ill. 1999).

For example, in *Shechter v. Comptroller of the City of New York*, 79 F.3d 265, 269-270 (2d Cir. 1996), the court considered the case of a purported affirmative defense which simply stated "the defendants were … government officials immune from suit under both the doctrines of absolute and qualified immunity."  The Second Circuit held that it was necessary for the defendants to allege that "the specific acts at issue were performed within the scope of their official duties."  *Shechter*, 79 F.3d at 270; *See also Coldest Engineering v. Hyatt International*, 954 F. Supp. 1224, 1230-31 (N.D. Ill. 1996) ("[T]he defendant in this case has not provided any, let alone enough, facts to put the plaintiff on notice of the events on which it bases its claim of failure to

mitigate damages.  Rule 8 obligates Hyatt to provide enough facts to put Coldest on notice of the course that Hyatt  contends Coldest was legally required, but failed, to pursue.").

This proposed affirmative defense of setoff does not provide Plaintiff with any information regarding the elements of the government's proposed affirmative defense. As an initial matter, the accuracy related penalty under section 6662 encompasses five (or eight if the 40% penalties are considered separate penalties) distinct types of taxpayer misconduct (negligence, substantial understatement, valuation misstatement, etc.) set out in sections 6662(b)(1) through (5) and 6662(h) of the Code.  Specific rules governing the application of each penalty are set out in subsections (c) through (h) of section 6662.  Depending upon which component of the penalty applies, the rate of the penalty is 20% or 40% of the taxpayer's "underpayment."  § 6662(a) and (h)(1).

The government does not set out any of the elements of the alleged penalty in its proposed Amended Answer.  It does not state the amount of the "understatement" subject to the accuracy-related penalty. It does not even specify *which component* or components of the accuracy-related penalty applies, i.e., whether it believes that the penalty is applicable because of the taxpayer's "negligence" or "disregard of rules and regulations" under § 6662(b)(1) and (c), whether it believes that there was a substantial understatement of income tax under § 6662(b)(2) and (d), or whether it believes that there was a substantial valuation misstatement under § 6662(b)(3) and (e).[10]

---

[10]  In the Notice of Deficiency (attached as Exhibit A to Plaintiffs' Complaint), the IRS asserted that a 20% negligence penalty under § 6662(c) was applicable.  In the government's Memorandum in Support of Motion to Amend (p. 8), the Department of Justice appears to take the position that the 40% gross valuation misstatement penalty under § 6662(e) and (h) was applicable.

Each of these penalties requires different proof at trial.  If the government is alleging negligence and/or disregard of rules and regulations, what was negligent about Plaintiff's tax reporting position?  What rules or regulations were disregarded?  If the government is alleging that there was a substantial valuation misstatement, what was the value or basis reported on the return, and what was the correct amount of value or basis that should have been reported?  In short, the most fundamental elements of an affirmative defense have not been pled.

**B.      The Government Failed To Plead Facts Which Would Establish That There Was An "Understatement" For Purposes Of The Accuracy Penalty On Plaintiff's Returns.**

On its face, any claim for additional penalties fails because the government has not pled facts sufficient to establish an "understatement."  In this regard, § 1.6664-2(c)(2) of the Treasury Regulations provides that an "understatement" does not include additional tax reported on a qualified amended return (ordinarily, a return filed before a notice of audit is received).  It is undisputed that Plaintiff filed an amended return, eliminating the loss and thus any potential understatement, well in advance of any audit.

While we understand from the government's Memorandum in Support of its Motion to Amend that it is the government's position that one of the exceptions to the qualified amended return provisions may be applicable in this case, the government has not pled the facts which would establish that this exception applied, such that the amount on the original return could still be considered as an "understatement." In its Memorandum (p. 8), the government takes the position that the amended return "does

not *appear to*[11] constitute a qualified amended return" because KPMG was placed under promoter penalty investigation prior to the filing of Plaintiff's amended return.

Section 1.6664-2(c)(3)(ii) of the Treasury Regulations provides the existence of a promoter penalty audit prior to the filing of an amended return will disqualify that return from constituting a qualifying amended return. Specifically, section 1.6664-2(c)(3)(ii) provides that the disqualifying promoter penalty audit must be in connection with "an activity described in section 6700(a) with respect to which the taxpayer claimed any tax benefit on the return directly or indirectly through the entity, plan or arrangement described in section 6700(a)(1)(A)." The entity, plan or arrangement through which Plaintiff claimed a tax benefit was Deerhurst General Partners. The government has failed to allege (or even argue in its brief) that KPMG came under investigation by the IRS with respect to the organization or sale of (and false statements made with respect to) *the investment in Deerhurst*. Without factual allegations that there was a promoter penalty investigation of KPMG *regarding the Deerhurst investment*, the government cannot establish the underpayment element required to support its penalty setoff.

Notably, the government has not even alleged that the alleged promoter penalty investigation included KPMG's SOS transactions.[12] From the Superseding Indictment

---

[11] Like the government's waffling statements regarding whether or not there was fraud, the government fails to state an affirmative position on one of the elements of the affirmative defense that it seeks to raise.

[12] The government has repeatedly characterized the Deerhurst transaction as a "KPMG SOS transaction." Plaintiff takes the position that KPMG functioned solely as a return preparer. While the resolution of this factual dispute is beyond the scope of this pleading, we note that paragraph 47 of the Superseding Indictment indicates that KPMG partners "assisted in marketing and implementing SOS transactions for KPMG clients for a fee to KPMG generally of not less than 1% of the tax losses to be generated ... ." As the claimed tax loss was approximately $60 million, if this were a KPMG SOS transaction, a fee in the

in the KPMG case (*United States v. Stein*, S.D. N.Y. 05-CR-888), it appears that, while the government clearly knew about KPMG's involvement with FLIP, OPIS and BLIPS by 2002, KPMG had resisted providing information regarding SOS transactions, and may have misled the government regarding its involvement in such transactions in communications with the IRS in 2002 and 2003.  Superseding Indictment, ¶¶ 59-61 (Attached as Exhibit A to the Government's Reply).  If KPMG had not disclosed information regarding SOS, then it is likely that any promoter penalty investigation in 2002 or early 2003, would not have included SOS transactions.

The declaration submitted by Agent Michael Halpert (attached as Exhibit OO to the Government's Reply) only states that, on March 19, 2002 the government informed KPMG that the promoter investigation of KPMG "had been extended to include transactions described in Notice 2000-44."  It is undisputed that BLIPS is a transaction described by Notice 2000-44, and that the IRS was aware of this transaction.  Agent Halpert's declaration does not state that the promoter examination specifically included SOS at that time; it merely states that the transactions described by Notice 2000-44 "include the BLIPS and SOS shelters."[13] In fact, in a Declaration filed by Michael Halpert in a summons enforcement action against KPMG in district court in Washington D.C., in December of 2003, Mr. Halpert declared "Some time *in 2003* I

---

range of $600,000 would have been generated.  Despite having apparent access to all of KPMG's files, the government has not alleged any such payment.  Thus, the Deerhurst transaction does not appear to share an important characteristic of those promoted by KPMG.

[13] Notice 2000-44 described two fact patterns.  One of the fact patterns involved using premium loans and is similar to the KPMG BLIPS product.  KPMG appears to be the only entity to offer BLIPS or the "loan premiums" variant.  There were numerous tax specialists who offered transactions described in the second fact pattern (the "short option" variant), including E&Y, BDO Seidman, Jenkens & Gilchrist, and the Diversified Group.  Thus, while the KPMG SOS transaction appears to be described by the "short option" fact pattern, KPMG was not by any means the exclusive provider of transactions like this.

learned from sources other than KPMG that KPMG may have developed and promoted a tax shelter called the 'Short Option Strategy' (SOS)." Declaration of Michael Halpert dated December 4, 2003 and filed on December 8, 2003 in Misc. No. 02-295 (TFH) ¶ 6. A copy of this Declaration is attached hereto as Exhibit B. Thus, it appears impossible that KPMG's SOS transactions had been made the subject of an IRS promoter penalty examination of KPMG prior to 2003 when Agent Halpert learned of SOS from third parties. In any event, the government fails to make the affirmative allegation that these transactions, including Plaintiff's, were under promoter penalty scrutiny prior to the November 2003 filing of the amended return.

Because the government has not made affirmative allegations regarding the applicability of the accuracy-related penalty to Plaintiff's tax reporting position, leave to amend to permit the government to assert a setoff defense (predicated on the existence of an accuracy-related penalty) should not be granted.

WHEREFORE, Plaintiff respectfully requests this Court deny Defendant's Motion for Leave to Amend Answer to Assert Additional Defenses.

DATED this 17th day of January, 2006.

CHICOINE & HALLETT, P.S.

s/ John M. Colvin
Darrell D. Hallett
John M. Colvin
Chicoine & Hallett, P.S.
Attorneys for the Plaintiffs Carlos E. Sala
        and Tina Zanolini-Sala
1011 Western Ave. Suite 803
Seattle WA, 98104
Telephone: (206) 223-0800
Facsimile: (206) 467-8170
Email: dhallett@chicoine-hallett.com
        jcolvin@chicoine-hallett.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2006, I electronically filed PLAINTIFFS'

OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO AMEND ANSWER

TO ASSERT ADDITIONAL DEFENSES using the CM/ECF system, which will send

notification to the following:

| | |
|---|---|
| David N. Geier | David.N.Geier@usdoj.gov |
| Philip Blondin: | Philip.Blondin@usdoj.gov |
| Anton. L. Janik, Jr.: | Anton.L.Janik@usdoj.gov |

I declare under the penalty of perjury under the laws of the State of Washington

and the United States that the foregoing is true and correct.

DATED this 17th day of January, 2006.

CHICOINE & HALLETT, P.S.

s/ John M. Colvin
Darrell D. Hallett
John M. Colvin
Chicoine & Hallett, P.S.
Attorneys for the Plaintiffs Carlos E. Sala
       and Tina Zanolini-Sala
1011 Western Ave. Suite 803
Seattle WA, 98104
Telephone: (206) 223-0800
Facsimile: (206) 467-8170
Email: dhallett@chicoine-hallett.com
       jcolvin@chicoine-hallett.com