# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00636-LTB-OES

CARLOS E. SALA and
TINA ZANOLINI SALA,

        Plaintiffs,

   v.

UNITED STATES OF AMERICA,

        Defendant.

_____

### PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STAY
### PENDING RELATED CRIMINAL TRIAL

_____

## INTRODUCTION

A lengthy memorandum and numerous exhibits are submitted by the government in support of its attempt to persuade the court that all discovery and other proceedings in this case should cease entirely pending the trial of *United States v. Stein* (No. S1 05 Cr.888, S.D.N.Y.) (hereinafter the "KPMG case").  These materials refer to many individuals whom the government asserts it needs to depose in order to defend this case.  In fact, almost all of the referenced individuals had nothing to do with Plaintiff's[1] transactions which are at issue in this case.  Moreover, while it focuses upon those involved in the KPMG case, the government ignores the fact that much discovery has

---

[1] Plaintiffs Carlos E. Sala and Tina Zanolini-Sala are husband and wife.  Plaintiff wife is a party to this suit solely by reason of having filed a joint federal income tax return.  Plaintiff husband will hereinafter be referred to as "Plaintiff".

already occurred in this case and can continue without intruding at all upon the KPMG case.

In this respect, Plaintiff has provided the government with approximately 1,800 pages of documents relating to his case, including those evidencing each and every transaction involved in the foreign currency investment program that he entered into during the year at issue and continuing during the following three years.  Plaintiff has further identified numerous individuals and firms who have discoverable information and who are neither defendants in the KPMG case nor did they have any association with KPMG in connection with the transactions at issue.  There is no indication that these individuals and entities will not respond to the government's discovery requests for documents and testimony.  In addition to disclosures of documents and information Plaintiff has already made to date, Plaintiff will respond to the government's Interrogatories and Requests for Production served on January 17, 2006.

Armed with this massive amount of documents and information, the government is free to proceed with discovery, unimpeded by, and without impeding, the KPMG case.  First, it is free to depose the Plaintiff.  In preparing for and taking this deposition, the documents and information in the government's hands will include: 1) the documents and information provided to the IRS during the audit preceding the filing of this case, and in the claim for refund submitted to the IRS; 2) the documents and information provided to the government through disclosures and responses to discovery requests in connection with this case; and 3) some 4,000 pages of documents which KPMG voluntarily turned over to the government in response to the

2

government's request of KPMG's counsel for all KPMG's documents that "might

pertain" to the Plaintiff.  (*See Exhibit OO to the United States' Reply to Response to*

*Motion to Continue Response to Plaintiffs' Motion for Partial Summary Judgment*

*Pursuant to FRCP 56 (f), hereinafter referred to as "Reply"*).  It is these KPMG

documents upon which the government extensively relies in support of its allegations

that KPMG was Plaintiff's "agent" in "developing" and "implementing" the

transactions at issue.[2]

  In addition to continuing to obtain discovery from the Plaintiff, the government

can and is expected to obtain testimony and documents from the following:

- **REFCO.**  Refco Capital Markets, Ltd. is a large independent brokerage firm through which Plaintiff's multi-million dollar investments in foreign currency contracts and options to buy and sell foreign currencies through Deerhurst were conducted over a four-year period.

- **DEERHURST.**  Deerhurst Management Company, Inc., (hereinafter "Deerhurst") is a New Jersey investment management firm which successfully managed investments in foreign currencies for many clients and for many years prior to its dealings with Plaintiff.  Deerhurst and its principals and its employees acted as Plaintiff's investment advisor during the entire four-year period that Plaintiff's transactions at issue in this case took place.

- **MICHAEL SCHWARTZ.**  Mr. Schwartz, conducting business through Multi National Strategies, LLC, is a New York independent financial and tax advisor.  He introduced Plaintiff to the Deerhurst Investment program and the tax benefit of using long and short options entered

---

[2] In fact, when it deposes Plaintiff and questions him concerning these KPMG documents, the government will find that many of its allegations relating to KPMG and its dealings with Plaintiff are simply wrong, as further discussed in detail in this memorandum and in Plaintiff's declaration submitted herewith (*See Declaration of Carlos E. Sala Regarding Plaintiff's Opposition to United States' Motion For Stay* ¶¶ 9-11 and ¶¶ 17-20 *(hereinafter referred to as "Sala Declaration")*.

into in connection with that program. Mr. Schwartz continued to advise Plaintiff on the investment and tax aspects of the Deerhurst program throughout Plaintiff's participation in it.

- **TWO LAW FIRMS**. Two separate and independent law firms located in Denver and Salt Lake City advised Plaintiff on various legal aspects of his Deerhurst investments.

None of the above firms or individuals are defendants in the KPMG case. None of them were associated with KPMG.

The government's ability to continue its discovery in this case without prejudicing the KPMG case and without being materially disadvantaged in its development of the facts and defenses of this case is further demonstrated by a review of the claims and defenses that the government set forth in the Scheduling Order (p. 3) as follows:

- The purported transaction giving rise [to] the claimed losses lacks economic substance. The documents of Plaintiff, Deerhurst, REFCO and Multi National Strategies, LLC and the testimony of plaintiff and the individuals associated with the entities go to the heart of this issue.

- The purported transactions violate the partnership anti-abuse rules. Whether this is the case is primarily a legal issue, based upon the documents and testimony that will establish how the transactions occurred.

- The Plaintiffs improperly valued their purported partnership interest by only including the value of purchase call options and not written call options. This is almost entirely a legal issue based upon undisputed facts (the claim for refund admits that short options were not reflected in the calculation in Plaintiff's loss, and states the basis for this position).

- <u>The Plaintiff's participation in this alleged transaction was not profit motivated</u>.  Discovery that bears upon this point includes all the transaction documents that reflect in detail Plaintiff's investment strategy, as well as the testimony of Plaintiff, Deerhurst principals and employees, Schwartz, and other witnesses identified above.  To the degree that Plaintiff's discussions with KPMG representatives concerning any other tax advantaged program which Plaintiff did not enter into is considered relevant to this issue, the government is free to pursue the subject on Plaintiff's deposition.

- <u>The gain and loss positions in the alleged currency transactions may be integrated into a single transaction in accordance with their economic substance</u>.  Again, this is primarily a legal issue based upon the facts that have been and will be further developed as set forth above.

In short, the government's sweeping attempt to bring all proceedings in this case to a halt based upon the pendency of the KPMG case is without merit.  The Scheduling Order provides for discovery cutoff on Friday, October 7, 2006.  Much discovery can and should be completed well before that date without any intrusion into the KPMG case.

The government has identified 41 parties in its amended Rule 26(e) disclosure, almost all of whom are associated with KPMG.  We believe most of those persons had nothing to do with Plaintiff's transactions. However, if discovery proceeds as we propose with those who <u>were</u> involved in Plaintiff's transactions, the government will have more, not less, information to use in its defense of this case.  Hopefully, the government can then narrow its list of 41 persons who it presently asserts it needs to depose.  But even if it can't, we will be much further along towards completing discovery and going to trial.

On the other hand, if discovery ceases entirely until after the KPMG trial, it is a

virtual certainty that there will be much more delay in both the completion of discovery and the trial.  Justice delayed is justice denied.  Memories dim, witnesses die or become incapacitated, and documents that were in the hands of third parties are much more likely to become unavailable with the passage of time.  Plaintiff has the burden of proof and is the party who stands to be most prejudiced by these events.

Of course, the currently scheduled KPMG trial date for September 2006 could be continued.[3]  Further, the trial, whether it results in an acquittal or conviction of some or all of the defendants, will not preclude individuals such as Tracie Henderson, who prepared Plaintiff's 2000 tax return, is not a defendant in the KPMG case, but whose counsel has indicated to the government would refuse to testify on deposition in this case on Fifth Amendment grounds (*See United States' Memorandum in Support of Motion for Stay ("Memo."), Exhibit. 3*) from continuing their refusal to testify.  Those persons who are defendants in the KPMG trial could contend, if convicted, that they retain their Fifth Amendment rights pending appeal and, even if acquitted, those persons could argue that they face further incrimination possibilities with respect to transactions the government may allege were not within the scope of the Superceding Indictment (hereinafter "the Indictment")[4].

Denial of the government's Motion at this time best assures this case will proceed as efficiently as possible.  At the conclusion of the substantial discovery outlined above, the government will remain free to again seek a stay if it still believes

---

[3]  In light of the government's allegation that this is the largest criminal tax case ever filed, the number of defendants, and the complexity of the charges, this would appear to be a reasonable possibility.

[4]  The Superseding Indictment in *United States v. Stein et al*, S.D. N.Y. Case No. 05-888 is attached as Exhibit A to the United States' Reply To Plaintiffs' Response to Motion for Relief Under Fed.R.Civ.P. 56(f) With Respect To Plaintiffs' Motion for Partial Summary Judgment. (hereinafter "Reply").

that this case and the KPMG case overlap and further discovery will prejudice both cases. The court will be in a much better position, based upon the discovery that will have then been completed, to decide the degree, if any, that there is an overlap and whether any stay is appropriate.

### I. KPMG DID NOT ACT AS PLAINTIFF'S "AGENT" OR TAKE A "SIGNIFICANT MATERIAL ROLE IN LOCATING, DEVELOPING, AND IMPLEMENTING" PLAINTIFF'S TRANSACTIONS AS ALLEGED BY THE GOVERNMENT.

The entities involved in advising Plaintiff regarding his foreign currency investments, from beginning to end, were Deerhurst and Multi National Strategies, LLC, not KPMG. Plaintiff stated in an earlier Declaration[5] that, to his knowledge, KPMG had no relationship or dealings with either of the two entities. The government argues in its Memo (p. 20), that Plaintiff's statement is false, and that "KPMG, by its own admission, used those firms to provide tax-advantaged transactions to its clients", citing Reply, Exhibit II.

Exhibit II contains two 2003 emails. In the first, Jeffrey Eischeid, a KPMG partner, states:

> John Chopack needs a list of the investment advisory firms, law firms, etc. that we have worked with that have provided tax advantaged strategies to our clients. Examples include Quadra, Presidio, Helios, Diversified, Jenkins & Gilchrest, Grammercy, Spectrum and Twenty-First Securities. If you can add to this list, send us a message by Wednesday. In addition, John needs to know whether you are still introducing clients to any of them.

Eischeid's email was directed to various individuals, including Henderson.

---

[5] See Declaration of Carlos E. Sala Regarding Plaintiffs' Opposition to United States' Motion for Relief ¶ 8, p. 3.

Henderson responded with an e-mail listing some 15 additional names, two of which were Multi National Strategies, LLC and Deerhurst.  However, Henderson stated:

> I did not introduce my clients to all of those listed above.
> In many cases, clients found the advisor.

Plaintiff's case was one of the many where the client "found the advisor."  (*See* Sala Declaration, ¶¶ 8-11).  He was initially introduced to Schwartz through Johnathan Raby.  Raby and Schwartz had both been employed by KPMG's competitor, Pricewaterhouse Coopers ("PwC"), Raby in the Colorado office and Schwartz in New York.  PwC's Colorado's office did audit and tax work for Plaintiff's former company (Abacus Direct), and prepared Plaintiff's state and federal tax returns.  Raby provided financial advice to Plaintiff and others while he was associated with PwC, and continued to do so when he became an independent consultant.  Raby was familiar with Plaintiff's sale of his DoubleClick stock and Plaintiff's interest in pursuing investment and tax planning strategies.

Raby was aware of Schwartz's involvement with Deerhurst and its investment program.  He recommended Plaintiff that he contact Schwartz concerning that program.  In a series of meetings and discussions thereafter, Schwartz discussed the Deerhurst foreign currency trading strategy, and the use of short options in foreign currencies as part of that strategy to achieve tax benefits.  Plaintiff did extensive independent investigation of Deerhurst and its principals, since he contemplated investing a significant part of his net worth with them for a lengthy period of time.

No KPMG representative participated in Plaintiff's meetings with Deerhurst and Schwartz.  Schwartz referred Plaintiff to Ruble, who was familiar with the Deerhurst

program, and who provided Plaintiff with a draft tax opinion discussing the various tax issues that would be presented by the then contemplated investment strategy. Plaintiff contacted Denver attorney, Lawrence Nemirow to review the Ruble opinion and to advise on some of the legal issues involved. KPMG also received a copy of the tax opinion, because they were involved in the preparation of the tax return.

After Plaintiff invested in Deerhurst, hundreds of transactions were entered into on his behalf, including long and short positions on millions of dollars on foreign currencies. Deerhurst and its principals and employees implemented all of the transactions on the international markets through Refco. They acted as Plaintiff's investment advisor throughout his four year participation in the program. Schwartz also acted as Plaintiff's advisor prior to and throughout the period of his involvement. Plaintiff saw no evidence of KPMG having anything to do with the "development" or "implementation" of the Deerhurst investment program, nor did he understand or intend that KPMG have any such role.

In an attempt to persuade the court otherwise, the government places great reliance upon the Declaration of Assistant United States Attorney Shirah Nieman and her following statement:

> The Carlos Sala SOS shelter that is the subject of this civil lawsuit, is one of the SOS shelter transactions encompassed by the charges in the Indictment.

Exhibit 2 to Motion for Stay, p. 3, ¶ 2.

Nieman speaks in the broadest terms, not specifying how Plaintiff's transactions are involved. She does not even disclose her grounds for describing Plaintiff's transactions as an "SOS shelter." The Indictment (¶ 47) states the KPMG "Fraudulent

SOS Shelters" were referred to by eleven different names, "including Short Option Strategy, Spread Option Strategy, Split Option Strategy, SOS , Binary Option, Digital Option, Gain Mitigator, Loss Generator, COINS, BEST, and FX Transaction." Plaintiff's Deerhurst Transactions were never referred to by any of these names in any of the KPMG documents the government has produced, nor did Plaintiff or his advisors use these names or acronyms to describe the Deerhurst Transactions.

We suspect Nieman may rationalize her statement on the grounds that various KPMG shelters may have involved a similar tax treatment of short options, and KPMG prepared Sala's 2000 federal income tax return.  But numerous individuals and firms, independent of KPMG, were aware of the short option strategy.  (*See Declaration of Michael Schwartz Regarding Plaintiff's Opposition to United States' Motion For Stay, ¶ 6, hereinafter referred to as "Schwartz Declaration"*).[6]  The mere fact that the tax treatment of Plaintiff's Deerhurst transactions may involve a legal issue common to one presented by the KPMG programs certainly does not justify a stay of proceedings in this case.  This is especially the case in light of the fact that neither Nieman nor the government make any assertion that the Deerhurst transactions are included within those which the indictment in the KPMG case alleges to be false and fraudulent.

A close examination of the Indictment demonstrates that Nieman's declaration is insufficient to demonstrate Plaintiff's transactions comprise, in fact, part of the KPMG case.  The indictment charges that the defendants attempted to evade tax owing by some

---

[6]  In a 2005 news release, (IR 2005-37), the IRS estimated that 1,800 taxpayers used some variant of the Notice 2000-44 strategy, either the short option strategy or the loan premium variant.  In the KPMG case, the government estimated that 165 individuals participated in KPMG's short option strategy, and 186 participated in BLIPS (which involved loan premiums).  Apparently, the vast majority of the participants in programs involving this strategy were not KPMG clients.

39 clients of KPMG (Indictment, ¶ 80).  Nieman does not state that Plaintiff is one of these clients.  Our review of the limited information provided about the listed clients indicates that he is not.

The Indictment (¶ 32) alleges as follows:

> SOS was marketed and sold from at least in or about 1998 through at least in or about 2002 to at least 165 wealthy individuals, and generated at least $1.9 billion in phony tax losses; KPMG's gross fees from SOS transactions were at least $17 million.

Notably, Nieman does not state that 1) Plaintiff is one of the 165 "wealthy individuals" to whom SOS was marketed and sold; 2) Plaintiff's claimed loss was part of the $1.9 billion in "phony tax losses" referred to in the Indictment; or 3) Plaintiff paid KPMG fees that are part of the $17 million dollars of gross fees that KPMG was paid for its SOS transactions.  Moreover, the additional allegations in the Indictment which more specifically discuss the structure of KPMG's SOS transactions, in fact, demonstrate that Plaintiff and his transactions are not part of these allegations.

In this regard, the Indictment alleges (¶ 47) that various KPMG partners and employees "assisted in marketing and implementing SOS transactions for a fee to KPMG generally not less than 1% of the tax losses to be generated."  Plaintiff's loss was approximately $60 million dollars, thus would call for a fee of approximately $600,000 if he were one of the clients to whom KPMG marketed and implemented its SOS transactions.   Yet the government states in its Memo (pp. 12-13) that Plaintiff paid a total of $25,000 for services rendered by KPMG in 2000 and up through April 17, 2001.

In describing the SOS tax shelters which KPMG allegedly "designed, marketed

and implemented", the Indictment states (¶ 47), the shelters "involved the clients entering into virtually offsetting currency positions with a bank, including but not limited to Bank A. [7]"

Plaintiff, in fact, never entered into any currency transactions with "Bank A" or any other bank. Neither Deerhurst, nor REFCO, purported to be banks, domestic or foreign.

The government relies upon KPMG's "admission" for its argument that Plaintiff's transactions were part of the "various illegal shelter transactions" described in the Indictment. (Memo., pp. 3-4; Reply, Exhibit E). As an initial matter, KPMG's "admission" should be viewed as a coerced confession, made under threat of indictment which would likely have been a death sentence, just as it was to Arthur Andersen. *See*, "Congress and KPMG," Wall Street Journal Europe, p. A6, August 31, 2005 (A copy of this article is attached to this brief as Exhibit A.) It is certainly not binding on Plaintiff. More importantly, KPMG's lengthy statement of facts does not state that Deerhurst Transactions are part of the SOS tax shelters which "KPMG tax partners helped design or sell." (Reply, Exhibit E, ¶ 5). Nor does the government submit any statement by KPMG saying this is the case.

Aside from reliance upon Nieman's sweeping statement, unsubstantiated by any specifics, that Plaintiff's transactions are "encompassed by the charges in the indictment," the government alleges (Memo, p. 3) that "the civil and criminal cases overlap" because Plaintiff "considered or agreed to participate in virtually all of the

---

[7] The Indictment describes "Bank A" as "a foreign bank with its principal United States branch located in New York, New York, and an audit client of KPMG," which "participated in FLIP, OPIS, BLIPS, and SOS tax shelter transactions." Indictment, ¶ 3.

various illegal shelter transactions described in [the Indictment]." Outside of SOS, the indictment describes three "tax shelter transactions": 1) the Foreign Leveraged Investment Program ("FLIP"), 2) the Offshore Portfolio Investments Strategy ("OPIS"); and 3) the Bond Linked Issue Premium Strategy ("BLIPS").

As to FLIP, the government does not allege that Plaintiff was ever presented by KPMG with this program, nor that he considered or agreed to participate in it. He, in fact, did not. (*See* Sala Declaration, ¶ 20). With respect to OPIS, the government relies upon an e-mail from Jeffery Eischeid to Henderson forwarding a script regarding OPIS for Henderson's "conversations" with various clients, including Plaintiff. (Reply, Exhibit N). The e-mail requests a "memorandum of oral advice for each client when the client visit is complete." Significantly, KPMG's files apparently contain no such memorandum from Henderson, indicating no presentation to Plaintiff took place. Plaintiff recalls none (*See* Sala Declaration, ¶ 20).

The government, is of course, free to question Plaintiff in his deposition regarding these KPMG tax shelters. It cannot legitimately argue that it is materially handicapped in doing so at this stage of the proceeding in light of the large volume of KPMG documents it has obtained and, indeed, upon which it relied in its Motion for Relief and to Motion to Amend its Answer. The government's inability to now depose KPMG partners and employees concerning all the intricacies and alleged falsehoods of OPIS, FLIP and BLIPS creates no significant impediment to the orderly conduct of discovery. Indeed, the government may well be persuaded, after taking Plaintiff's deposition, that those programs have no significant relevance to the transactions that are

at issue in this case.  If not, Plaintiff may well be entitled to a protective order limiting extensive discovery on those programs as burdensome in light of the marginal possible relevance.

As to BLIPS, the government alleges (Memo. p. 9) that Plaintiff "agreed to enter into BLIPS." It relies upon an unsigned engagement letter to Plaintiff.  Reply, Exhibit R.  The $700,000 fee called for in the engagement letter (Reply, Exhibit N, p. 3) was never paid, nor does the government allege it was.  The government also relies upon an internal KPMG memorandum regarding allocation of fees (Reply, Exhibit I), which states the "engagement" was "sold to Plaintiff" in June 2000.  This is refuted by the fact that no fee was paid, and no transaction documents were ever executed by Plaintiff.  In fact, while Plaintiff did consider the BLIPS program, he rejected it in large part because of the poor economics of the investment as it was presented to him (*See* Sala Declaration ¶ 18). Notably, one of the KPMG documents relied upon by the government (Reply, Exhibit J) reflects Plaintiff's focus upon the investment aspects of the proposed BLIPS transaction, particularly the reliance upon short term devaluation of two foreign currencies in order to even recoup Plaintiff's investment, let alone make a profit.

Even if it were assumed that the government's allegations regarding BLIPS were correct, the fact is, as the government agrees, Plaintiff did not enter into this program. The transaction at issue in this case has nothing to do with BLIPS.  KPMG did not, in the words of the government, "develop and implement" the BLIPS program for Plaintiff.

While the government also attempts to link Plaintiff with various other KPMG tax strategies (Memo., pp. 9-12), which are not the subject of the Indictment, the evidence relied on is so tenuous as to border on the absurd.  For example, the government claims that Larry Nemirow, acting as Plaintiff's agent, was scheduled to listen to a presentation by Gary Powell of KPMG on a "Rabbi Trust" transaction on October 9, 2000. The emails that that the government relies on to support this speculation are emails between Gary Powell, Carol Warley and Pamela Weems of KPMG and an eric@kramerco.com.  (Exhibits O, Z and AA to the Government Reply).  The emails do not mention Plaintiff's name, or provide any other indication that he was the underlying client.  Indeed, from the text of Exhibits O, Z and AA to the Reply, it is clear that the Nemirow client who may have been considering this "Rabbi Trust" transaction was not Carlos Sala, but rather an "Eric" of "Kramerco."

## II.  THE CASE LAW DOES NOT SUPPORT A STAY IN THIS PROCEEDING

The government relies upon two cases where this court recently considered motions to stay civil discovery pending related criminal cases, *United States v. Nacchio,* 2005 WL 1799372 and *SEC v. Rivelli,* 2005 WL 2789317. Both cases support Plaintiff's position that a stay of proceedings in this case is inappropriate.

In *Nacchio*, some of the civil defendants were not involved in the ongoing criminal investigation.  The court held "those civil defendants have a legitimate interest in proceeding to trial or disposition without undue delay... ."  The court granted the Unites States Attorney's Motion to Intervene, but it viewed his Motion to Stay discovery "more problematic."  *Nacchio,* 2005 WL 1799372 at *4.  This was so even

though the subject matter of the civil case was apparently directly related to the facts at issue in the pending criminal proceedings.

The court noted its authority to impose discovery limitations, including protective orders under Fed.R.Civ.P. 26(b)(2) in consideration of the relative benefits and burdens of particular discovery sought by a party, the importance of the discovery to the issues at stake in the litigation, and the potential harm, if any, of the discovery. Ultimately, the court granted a short stay until a hearing, where the court would consider discovery plans submitted by the parties to determine the extent, if any, that discovery should be stayed. *Nacchio,* 2005 WL 1799372 at *5-6. Also see *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 211 (1989) (A general stay of discovery is not the best option. Stays can and should be tailored to avoid undue prejudice.)

Unlike the situation in *Nacchio*, no party in this case is involved in the KPMG criminal case. The court's concern in *Nacchio* that unlimited discovery might enable defendants in the civil case who were involved in criminal proceedings to obtain discovery they would not otherwise be entitled to is inapplicable here. Plaintiff has no intention to depose the lengthy list of KPMG partners the government is concerned about in connection with the criminal case, nor to put in issue the validity of BLIPS, FLIP, OPIS or any other KPMG program. If discovery proceeds as we propose it should and the government believes some particular third-party discovery might materially interfere with the KPMG case, it can seek a protective order. A surgeon's scalpel, not a nuclear option, is called for in this case.

The court in *Rivelli* set forth nine relevant factors a court should consider in deciding whether to grant or deny a motion to stay:

1)   The extent to which a defendant's Fifth Amendment rights are implicated.

This factor is inapplicable.

2)   The extent to which the criminal and civil cases overlap.

As set forth above, the government has not established there is an "overlap" so material as to justify a blanket stay of all discovery.  The only KPMG partner or employee who had direct dealings with the Plaintiff regarding the transactions at issue in this case was Henderson, and that was almost entirely in her capacity as a return preparer.  The government possesses, and has used extensively in its motions in this case, purportedly all of the KPMG documents pertaining to Plaintiff, including those with Henderson's name on them.  The government is free to and undoubtedly will question Plaintiff on his deposition concerning all these documents and his communications with Henderson.

Henderson's counsel informed the government's counsel that Henderson would refuse to answer any deposition questions on Fifth Amendment grounds.  (Memo., Exhibit 3).  He did not, however, state that her refusal is conditioned upon the pendency of the KPMG case.  He may well consider his client to be at risk after the trial of the KPMG case, regardless of its outcome.

Of all the KPMG defendants, the only one who had a material involvement with Plaintiff in connection with the transactions whose tax consequences are at issue in this case is Ruble.  Ruble wrote a 114 page tax opinion regarding the tax consequences of

Plaintiff's Deerhurst transactions (Reply, Exhibit EE).  Unlike in the case of Henderson, the government does not submit a letter from Ruble's counsel stating he would be unwilling to be deposed in this case.  But even if he were, his unavailability to be deposed by the government at this stage of discovery does not materially handicap the government from proceeding.

Ruble's testimony is unnecessary for the government to prove Plaintiff's receipt of Ruble's opinion letter, nor Plaintiff's payment of $75,000 for Ruble's tax opinion. Plaintiff will so stipulate.  Most of Ruble's opinion letter is irrelevant to any of the issues in this case.  All but 9 of the 114 pages consist of Ruble's analysis of the legal issues he believed were involved.  Whether Ruble's legal analysis and conclusions are correct or not is beside the point.  So to, would be deposition testimony of him testing the legal validity of his conclusions.  The court will decide the legal issues.

Three pages of the opinion consist of Ruble's summary of Plaintiff's transactions.  Whether all the facts set forth in the summary – such as Deerhurst's trading history and strategy, and the specifics of Plaintiff's transactions managed by Deerhurst – are correct can be determined by the government proceeding with discovery as we propose.

Similarly, the government can pursue on Plaintiff's deposition and further discovery whether the two page summary of "investor representations" are correct.  In discovery involving Deerhurst, its documents, and testimony of its principals and employees, the government can likewise explore the accuracy of the one page summary of "Deerhurst representations" in the Deerhurst opinion.

The second *Rivelli* factor calls for an examination of "the extent to which" the criminal and civil cases overlap.  Some overlap does not justify a stay, particularly the blanket stay the government seeks here.  This is not a case such as *Shasta Strategic Investment Fund* cited by the government in its memorandum (Memo., p. 1), where the three principals of the plaintiff entities in the civil tax case (Lanning, Pfaff and Makov) are defendants in the KPMG case, and one of the KPMG tax shelters (BLIPS) was the very shelter at issue in the civil case.

In summary, the "overlap" in this civil case and the KPMG case is minimal, and discovery can proceed without any material harm to the government or to third parties as a result of what overlap there is.

       3)      <u>The status of the case</u>.

The government focuses on the status of the KPMG case, pointing out that the case is currently scheduled for September 2006.  It ignores the status of this case. Extensive discovery has already occurred, unimpeded by the KPMG case, and much remains.  Much can be completed within the scheduled discovery cutoff date (October 7, 2006).   If the KPMG trial proceeds as scheduled, it may be over before the cutoff date and, if not, the cutoff date can be extended to allow the Government's attempt to obtain deposition testimony of Ruble, Henderson, or any KPMG defendant which then appears warranted.

On the other hand, if the KPMG case is continued, this civil case will likely go on for years.  That is not justice.

       4)      <u>Whether the defendant has been indicted</u>.

This factor is inapplicable.

5)      The interest of the Plaintiff in proceeding expeditiously
        with the civil litigation.

The government argues (Memo., p. 25) that Plaintiff's interest in expedience is only money, and that interest is satisfied by the "generous" interest he will be paid on his judgment if he wins. Plaintiff's interest in the discovery and trial of his case not being delayed for years, as it likely will if all discovery now ceases, and remains so until after the completion of the KPMG trial, is that he will be handicapped in carrying his burden of proof because of the passage of time.  We are already dealing with transactions and events that occurred almost six years ago.  Credible, specific testimony of third-party witnesses who may not even have thought about facts involved in this case for years becomes more difficult as time passes.  For example, Refco has entered into bankruptcy in New York, and many of its divisions are being sold to outside purchasers.  Third-party witnesses have no duty to retain documents that are relevant to this case, and, in this age of lawyer-drafted document retention policies, will be more difficult to obtain as time passes.

Further, Plaintiff has the interest of most citizens who take their case to court seeking a fair and expeditious resolution.  That interest should not be so lightly swept aside as the government seeks to do in this case.[8]

6)      The potential prejudice to the Plaintiff of a delay.

See (4) above.

7)      The efficient use of judicial resources.

The conviction or acquittal of some or all of the KPMG defendants will not

_____

[8] We note the court in *Rivelli,* in denying one defendant's motion for a stay, stressed that the Plaintiff and another defendant had "a strong interest in having this action proceed expeditiously." *Rivelli*, 2005 WL 2789317 at *1.

likely resolve or narrow the issues in this case.  The government has not offered to concede this case if it loses the KPMG case, nor do we believe that such an offer is likely.  Conviction of some or all of the defendants – i.e., a jury verdict of guilty on the broad conspiracy counts and/or any other charges – does nothing to establish the deductibility or non-deductibility of Plaintiff's losses.

As to the government's contention that the KPMG case will lessen the likelihood of this court and/or the court in the KPMG case having to decide discovery disputes regarding "testimonial privileges and rights," Plaintiff is prepared to agree with the government on a discovery schedule involving Plaintiff and all the witnesses and entities involved in his transactions who are not defendants in the KPMG case, and excluding Henderson.  There is no indication that any of those witnesses will invoke testimonial privileges or rights.

8)      The interests of persons not parties to the civil litigation.

The government argues that some witnesses will invoke their Fifth Amendment rights and will refuse to testify on deposition in this case, and that proceeding with discovery will impose additional burdens upon them including the cost of counsel. There is no indication that will occur if discovery proceeds as we propose.  Further, counsel can confirm with all witnesses or their counsel that they intend to appear and testify before their scheduled appearance date.

The government argues the conclusion of the trial in the KPMG case "is likely to reduce the extent of third-party discovery allowing both parties to review the record and testimony presented at trial.  This may reduce the number of witnesses who may need to be deposed or, at the least, narrow the scope of future discovery."

The third-party witness discovery can best be minimized by discovery proceeding as we have proposed.  In that discovery, the Government can pursue the issues it has raised about Plaintiff's contacts and communications with KPMG, and the extent of KPMG's involvement in his transactions, using the KPMG documents and all other documents it has obtained and will obtain through further discovery.  That will be much more efficient and likely to reduce the number of third-party depositions than the parties' counsel in this case pouring over a likely massive and expensive transcript of a case involving 39 defendants and many transactions and events occurring over a four-year period, as well as the examination of hundreds or thousands of exhibits, most of which will likely have nothing to do with Plaintiff's transactions.

> 9)   <u>The interest of the public in the pending civil and criminal litigation</u>.

The government argues (Memo., pp. 27-30) that  the public interest in the criminal proceeding not being "subverted" will be served by a stay because the government will be handicapped in the defense of this civil case in view of the Rule 6(e) restrictions on its civil lawyers' access to information developed in the criminal case. The Court's order in the *Presidio* case provides the best response to this argument:

> The government's first argument is not persuasive.  It may be true that the prosecutor in New York may not share – or may even be precluded from sharing – certain evidence with the government lawyers in these civil cases. But that does not justify staying in this case.  If the prosecutors and government civil defendant are somehow barred from collaborating, then the defendants here will simply have to conduct its own discovery, like every other civil defendant must do.  In other words, the government defendant does not have a special right to the prosecutor's

> discovery or to the information used by the grand jury. Any additional discovery obtained through a parallel criminal proceeding is a windfall, not an entitlement.

*Belford Strategic Investment Fund, LLC and Presidio Growth LLC (Tax Matters Partner) v. United States*, Case No. 04-4309, N.D. Cal., Order dated November 7, 2005, p.5. (A copy of this Order, which was also entered in *Shasta Strategic Investment Fund, LLC v. United States*, Case No. 04-4264, is attached hereto as Exhibit B.)

The government's other argument regarding the alleged prejudice to the KMPG case giving the criminal defendants an earlier look at documents and witness testimony (via civil discovery) than they are entitled to under the criminal rules is equally unpersuasive. Unlike the situation in *Presidio* where the court recognized the rule that "[i]f a grand jury indicts a party for conduct that is the subject of a civil action * * * the court is obligated to prevent that criminal defendant from 'using parallel civil proceedings to gain premature access to evidence and information pertinent to the criminal case'" (Order, p. 6), none of the KPMG defendants are parties here. Nor will those defendants obtain any advantage in the criminal case by discovery continuing in this case as we propose it should. Plaintiff does not propose to depose any of the KPMG defendants, nor to seek the government's evidence against them.

## SUMMARY AND CONCLUSION

Plaintiff is frankly at a loss at to why the government is compelling him to expend the resources to oppose a stay motion, when all he seeks is an expeditious resolution of this civil case, not an advantage for any party to the KPMG case. The answer may be that Plaintiff is merely caught up in the government's broad attempt to

stay all civil cases involving in what it perceives as an "abusive tax shelter" where there is any relationship between the taxpayer and KPMG.  It may also be that the government is concerned that this court will rule favorably for the Plaintiff on the legal issue involving the tax treatment of short options before the KPMG case is tried. Neither of these reasons support a stay.

Whatever the government's reason, the stay sought by it is clearly not supported by the law or the facts.  The Plaintiff stands ready to continue to proceed cooperatively through stipulations, admissions and discovery scheduling in a manner that will most efficiently get the facts relevant to this case on the table and before the court, but will not intrude into the KPMG case. This Plaintiff does not, as do some parties in cases where a stay is sought because of parallel criminal proceedings seek to use the pending criminal case to his advantage.

WHEREFORE, Plaintiff respectfully requests this Court deny Defendant's Motion to Stay Pending Related Criminal Trial.

DATED this 3rd day of February, 2006.

CHICOINE & HALLETT, P.S.

s/ John M. Colvin
Darrell D. Hallett
John M. Colvin
Chicoine & Hallett, P.S.
Attorneys for the Plaintiffs Carlos E. Sala
        and Tina Zanolini-Sala
1011 Western Ave. Suite 803
Seattle WA, 98104
Telephone: (206) 223-0800
Facsimile: (206) 467-8170
Email: dhallett@chicoine-hallett.com
        jcolvin@chicoine-hallett.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2006, I electronically filed PLAINTIFFS'

OPPOSITION TO DEFENDANT'S MOTION TO STAY PENDING RELATED

CRIMINAL TRIAL, DECLARATION OF CARLOS E. SALA REGARDING

PLAINTIFFS' OPPOSITION TO UNITED STATES' MOTION FOR STAY and

DECLARATION OF MICHAEL SCHWARTZ REGARDING PLAINTIFFS'

OPPOSITION TO UNITED STATES' MOTION FOR STAY using the CM/ECF

system, which will send notification to the following:

| | |
|---|---|
| David N. Geier | David.N.Geier@usdoj.gov |
| Philip Blondin: | Philip.Blondin@usdoj.gov |
| Anton. L. Janik, Jr.: | Anton.L.Janik@usdoj.gov |

I declare under the penalty of perjury under the laws of the State of Washington

and the United States that the foregoing is true and correct.

DATED this 3rd day of February, 2006.

CHICOINE & HALLETT, P.S.

s/ John M. Colvin
John M. Colvin
Chicoine & Hallett, P.S.
Attorneys for the Plaintiffs Carlos E. Sala
        and Tina Zanolini-Sala
1011 Western Ave. Suite 803
Seattle WA, 98104
Telephone: (206) 223-0800
Facsimile: (206) 467-8170
Email: dhallett@chicoine-hallett.com
        jcolvin@chicoine-hallett.com