IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

CARLOS E. SALA and )
TINA ZANOLINI SALA, )
) 05-cv-00636-LTB-OES
       Plaintiffs, )
)
    v. )
)
UNITED STATES OF AMERICA, )
)
       Defendant. )
_____

UNITED STATES' REPLY TO PLAINTIFFS' OPPOSITION TO
MOTION FOR LEAVE TO AMEND ANSWER TO ASSERT ADDITIONAL DEFENSES
_____

Defendant, the United States of America ("United States") hereby replies to Plaintiffs'

Opposition to the United States' Motion for Leave to Amend Answer.

## INTRODUCTION

The United States has requested leave to amend its Answer to assert additional defenses.

The first defense, fraud, a statutory defense to Plaintiffs' claim for interest abatement, is

predicated upon specific facts learned *after* the United States answered the complaint.[1]  The

proposed Amended Answer merely seeks to conform the pleadings to the issues the parties'

framed months earlier when they jointly submitted a proposed Scheduling Order.  Docket No. 26

---

[1]  The explanation of the Government's contentions of fraud is alleged more specifically in the Government's Reply in Support of its motion seeking Rule 56(f) relief.  *See* Docket No. 44. Plaintiffs have requested that the Motion to Amend be decided first.  The Government opposes this request and notes that if the Government's motion under Rule 56(f) is granted then the Government's pleadings can be amended accordingly.

at 4.  The second defense, setoff, is based on a mechanical application of the accuracy related

penalty imposed pursuant to 26 U.S.C. § 6662 (hereinafter "IRC").

Despite the fact this litigation is in its nascent stage, with a scheduling order just recently

entered and almost no discovery having been conducted, Plaintiffs ask that this Court deny the

United States the opportunity to pursue legitimate fraud and offset defenses.  Plaintiffs' main

contention appears to be that, because the United States cannot prove the elements of these

defenses at the outset of the litigation, it cannot plead them.

Perhaps recognizing the weakness of this position, and instead of directly confronting the

law as it pertains to amendment of pleadings, Plaintiffs have chosen instead to lace their

Opposition with pejorative *ad hominem* attacks.  Along the way, Plaintiffs' misapply applicable

law, assert inconsistent factual and legal positions, overlook cases harmful to their position,

confuse the rules of pleading and proof, and argue that the rules of pleading require harsh and

draconian results.[2]

This case is about Plaintiffs' conscious decision, with the assistance of a sophisticated

team of players, to evade paying taxes on $60,000,000 of income earned in 2000.  Plaintiffs'

eagerness to avoid these taxes led them to consider and review a variety of illegal shelters and

ultimately to a shelter commonly referred to as an SOS shelter.  Plaintiffs' accountants at

---

[2]      Illustrative of Plaintiffs' approach, is their strained effort to once again argue that the
Government filed its Answer "114 days" *after* the complaint was filed.  Plaintiffs' overlook that
the Government's Answer was *timely filed* and that the Government did not have in its
possession at that time documents obtained from the Plaintiffs' accountants at KPMG.

As to any suggestion that obtaining extensions to answer is evidence of bad faith or
dilatory conduct, Plaintiffs may wish to explain the fact that on *five separate occasions*,
including that in connection with the present motion, Plaintiffs sought and obtained extensions to
respond to matters before the Court.  (Docket Nos. 23, 28, 43, 49 and 55).

KPMG, who helped them shop for a shelter transaction and report the resulting improper

deductions, have since conceded that SOS shelters, and the accompanying deductions that they

purported to generate, are "bogus."

A typical SOS shelter involves the contribution of offsetting positions in foreign currency

(in this case, approximately $60,000,000 in long and short positions) to an S corporation or

partnership (in this case both).  The transaction is designed for the sole purpose of purporting to

create large tax losses without any corresponding or real economic risk.  In fact, and reflective of

Plaintiffs' expectations upon entering the SOS transaction, Plaintiffs' were required to deposit

15% of the amount of the anticipated deduction.  Exhibit A at 2.  Plaintiffs complied and

deposited nearly $9 million to obtain $60,000,000 in ordinary deductions.  Subsequent currency

trades, after the shelter losses had been locked in, did not impact the tax losses nor did they

approach the volume or frequency of the hundreds of trades undertaken to establish the offsetting

positions that generated the tax loss.

Plaintiffs ask the Court to accept that their decision to participate in the SOS shelter was

out of a genuine desire to diversify their financial holdings.  Under the Plaintiffs' asserted view

of the transactions, the generation of $60 million in tax losses, the precise amount needed to

offset their other income and pay no taxes, was merely beside the point.  It was not beside the

point.  It was the point.

## ARGUMENT

## I.       The Plaintiffs Position Distorts the Liberal Rules Governing Amending Pleadings.

Plaintiffs do not address the very liberal standard for amending pleadings.  Rule 15, Fed.

R. Civ. P.; *Foman v. Davis*, 371 U.S. 178 (1962) (recognizing that a party should be afforded an

opportunity to pursue his claim on the merits unless bad faith or dilatory motives or undue prejudice is present.)  In fact, the denial of a motion to amend is warranted only where the facts are egregious and not, as is the case here, where the amendment is timely filed and well within the discovery period established by the Court.  *A.E. and R.R. v. Mitchell*, 724 F.2d 864 (10th Cir. 1983) (trial court did not abuse its discretion in denying motion to amend where plaintiffs had already amended their complaint three times and the fourth request was nearly one year later and which request purported to add new claims and new parties); *Creamer v. Laidlaw Transit, Inc.*, 86 F.3d 167 (10th Cir. 1996) (trial court did not abuse its discretion where motion was filed after close of discovery).

## II.     The United States Has Acted in Good Faith and Without Delay.

Plaintiffs accuse the Government of improper conduct in this litigation.  (Opposition at 9-13).  Plaintiffs' argument is two-fold.  First, Plaintiffs argue that the Government engaged in dilatory behavior thereby justifying the denial of its timely filed Motion to Amend.  Second, Plaintiffs argue that the Government's prior request for Rule 56(f) relief (Docket Nos. 18, 19, 20 and 44) is inherently inconsistent with the present motion and therefore indicative of an improper motive.  As to the former, the record belies the argument.  As to the latter, the requirements of pleading and proof are not identical.

### A.     The Government has acted timely and appropriately.

The Government's Motion to Amend merely seeks to conform the pleadings to the issues agreed to by the parties.[3]  Plaintiffs point to the fact that the Government answered the complaint

---

[3]     Plaintiffs also argue that the Government's Motion to Amend should be denied because it incorporates a document filed the very next day and because the Government filed a revised proposed Amended Answer eight days later.  The Plaintiffs argue that this renders the

114 days after it was filed, but did not assert fraud in that Answer.  That is an accurate statement

as far as it goes – but it does not go far.  After the Government timely answered but *before* the

entry of a Scheduling Order, Government's counsel contacted Plaintiff's counsel, John Colvin,

and discussed the assertion of fraud.  The proposed Scheduling Order submitted by the parties to

the Court in October identified fraud as an issue to be resolved.  (Docket No. 26 at 2).  Before

that, the Government asserted fraud in its request for relief under Rule 56(f) filed on October 3,

2005.  Docket Nos. 18, 19 and 20. [4]

> Plaintiffs' self-serving suggestion that all of the information needed to assess the merits

of this case was in the hands of the IRS at the time the case was filed is inaccurate.  In the first

instance, Plaintiffs' documents do not tell the whole story – they merely tell what the Plaintiffs'

wish to disclose.  Second, the documents forming the basis for the Governments' Rule 56(f)

motion were obtained from Plaintiffs' accountants *after* the Government answered. [5]  These

---

Government's request for relief untimely.  This would constitute an unduly harsh result given the Government's timely filed motion and the absolute lack of undue prejudice or harm.  Plaintiffs' Opposition asserting dilatory conduct ignores that they asked for and obtained an additional twenty-five days to make such an argument.  Docket Nos. 42, 43 and 45.

[4] Plaintiffs argue that, "[n]otably" the Government "did not point out to the Court" in its request for Rule 56(f) relief "the necessity for pleading fraud as an affirmative defense." (Opposition at 12).  Notably, Plaintiffs did not address their concern at the time the parties framed the issues for the Court.  *See* Docket No. 26, proposed Scheduling Order at 4.

[5] By way of additional example,  Plaintiff Carlos Sala this past week identified for the first time, an individual, Jonathan Raby, whom he stated introduced him to the tax shelter transaction at issue here.  Docket No. 61.  Plaintiffs did not identify Mr. Raby in their initial disclosures nor have they produced documents evidencing communications with Mr. Raby.  This too illustrates the need for discovery.

documents counter Plaintiffs' story and shed light on Plaintiffs' motivation and intent to shelter income instead of pursuing a *bona fide* investment.  *See* Docket No. 44 and attachments thereto.

Plaintiffs' suggestion that a party may not learn additional information after litigation has commenced and that it cannot incorporate such information into a pleading finds no support in the law and is inconsistent with Federal Rules 15 and 26 which recognize that often critical information is discovered *after* the commencement of a case.

**B.     Plaintiffs confuse pleading and proof.**

Fraud in the context of this case can be the absence of an actual economic purpose. *United States v. Kilpatrick*, 726 F. Supp. 789, 794 (D. Colo. 1989).  Plaintiffs do not disagree. (Opposition at 6 *citing Kilpatrick*).  Where the parties differ is that Plaintiffs contend that any amendment must also include proof of fraud.  Plaintiffs offer no legal authority on this point and have cited to this Court legal authority to contrary (Opposition at 20).  *Codest Engineering v. Hyatt*, 954 F. Supp. 1224, 1230 (N.D. Ill. 1996) (in denying a motion to strike the trial court noted that while evidence may not be available to carry the ultimate burden of proof, "it is enough for this court to deny the motion to strike").

Plaintiffs also argue that the Government cannot, on the one hand, seek evidence to oppose summary judgment (the Rule 56(f) motion) and on the other, amend its pleadings to allege fraud.  The two are not mutually exclusive.  Indeed, if Plaintiffs' argument is correct and the rules of pleading do require the simultaneous offer of admissible evidence, then Rule 56(f) is effectively stripped of its purpose and is superfluous.

In an effort to fast forward to the merits, Plaintiffs make arguments which highlight the dichotomy between pleading and proof.  First, Plaintiffs state that they relied upon a legal

opinion letter authored by R.J. Ruble (who is under criminal indictment).  However, Plaintiffs have chosen to withhold Mr. Ruble's legal opinion (and drafts) from their initial disclosures in this case.  Why?  The legal opinion is referred to in the Plaintiffs' Opposition but is not even annexed as an exhibit.  Instead, Plaintiffs backhandedly suggest that the Government "acknowledges' the opinion letter.  (Opposition  at 17).  Plaintiffs must have some reason for not confronting the Ruble opinion letter.  However, at this stage the inference drawn from this should not be a favorable one for Plaintiffs.[6]

Second, Plaintiffs state that their deposit of nearly $9 million dollars in the SOS transaction is evidence of its *bona fides*.  (Opposition at 12.)  In fact, the opposite is true.  The shelter scheme *required* Plaintiffs to deposit 15% of the guaranteed tax losses they wished the shelter to provide them - in this case $60,000,000 of improper deductions.  Exhibit A at 2.

Plaintiffs understandably wish to avoid scrutiny of these matters.  However, Plaintiffs should not be permitted to obtain favorable inferences from an incomplete record.

**III.    THE UNITED STATES IS ENTITLED TO AMEND ITS ANSWER TO ASSERT THAT THIS IS A CASE INVOLVING FRAUD.**

This is a case involving fraud.  This Court has previously held that "[w]hat divides a tax shelter from tax fraud is the existence of some actual economic purpose" and that is precisely one of the issues in this case.  *United States v. Kilpatrick*, 726 F. Supp. 789, 794 (D. Colo. 1989).

In its Opposition, Plaintiffs have not offered a fair account of the state of tax shelter law.  This is  illustrated when they lambaste the Government for not disclosing that this is a case of first impression and that no other case has been decided on the precise shelter scheme before the

---

[6]    The Government has turned over to Plaintiffs drafts of Ruble opinion letters it obtained from KPMG.

Court (Opposition at 2-3) but then later argue that their transaction has, at least since 1975, been validated by the courts.  (Opposition at 11).  In challenging the simple amendment of the Government's Answer, Plaintiffs do not correctly apply the rules of pleading, seek to rewrite the controlling statutory language to impose conditions that do not exist and argue that the Government has not previously opposed their position.  Moreover, none of the exhibits annexed to Plaintiffs' Opposition, offered to cast doubt on the Government's fraud allegations, answer, or discuss the crucial question here – whether the Plaintiffs' entered into a transaction devoid of economic substance.

> **A.      The Government has met its burden of pleading fraud.**

Rule 8 of the Federal Rules of Civil Procedure requires a short and plain statement of a claim showing entitlement to relief.  Rule 9(b) requires allegations of fraud to be pled with particularity.  The Federal Rules incorporate by way of example certain forms of pleading that are deemed legally sufficient.  Rule 84 and Appendix of Forms.  Form 13 is a complaint alleging fraud in connection with the transfer of real property.  The complaint merely alleges that the property was conveyed "for the purpose of defrauding plaintiff and hindering and delaying the collection of the indebtedness owed."

In the context of a tax shelter, the difference between a tax shelter and tax fraud may simply be "the existence of some actual economic purpose," and nothing more.  *United States v. Kilpatrick*, 726 F. Supp. 789, 794 (D. Colo. 1989).  Here, the Government set out in its proposed Amended Answer ten succinct lettered paragraphs, setting forth acts, conduct and statements

which it submits are reflective of Plaintiffs' fraudulent intent.  (Docket No. 51).  A more detailed recitation of facts is contained in the Government's request for Rule 56(f) relief.[7]

This is not a case of fraudulent inducement or detrimental reliance and therefore the pleading requirements for pleading the date, time and place of misstatements are not applicable. To the extent that there are false representations at issue, the representations (*e.g.*, that Plaintiff had substantial non-tax business reasons for structuring the transactions the way he did) and the document from which they are obtained (the Ruble draft opinion letter) have been identified. Proposed Amended Answer, Docket No. 51, Second Defense, paragraph (J).

The case law cited by Plaintiffs does not support their arguments for pleading fraud and appears to contradict them.  For example, in *Seattle-First National Bank v. Carlstedt*, 800 F.2d 1008 (10th Cir. 1986) (Opposition at 14-15) the Tenth Circuit reversed the trial court's dismissal of a counterclaim which alleged securities fraud.  The Court of Appeals noted that "[w]hile the counterclaim and the proposed amended counterclaim are not examples of 'model' pleadings, given the liberal approach this court has taken regarding securities fraud cases. . . and the importance of reading Rule 9(b) in conjunction with the pleading requirements of Rule 8 . . .we hold that the district court erred in dismissing the defendant's 10b-5 claim for failure to satisfy Rule 9(b)."  *Id*. at 1011.

---

[7]     As stated, the Amended Answer also references a much more detailed factual record – the Government's Reply to Plaintiffs' Response for Relief Under Fed. R. Civ. P. 56(f). Plaintiffs' complaint that the reply causes the Government to have alleged too much.  In Plaintiffs' view, this makes a "mockery" of the rules of pleading.  (Opposition at 15).  Plaintiffs' barebones complaint itself incorporates page upon page of single spaced documents  containing legal and factual arguments in support of their claims.

Plaintiffs also challenge the Government's allegation of "reckless disregard" as being insufficient to amount to fraud.  (Opposition at 18-19).  These allegations were made in addition to, and not in place of, fraud.  Even if this were not the case, Plaintiffs position is inconsistent with the law in the Tenth Circuit which makes it clear that "reckless disregard" for the truth and "fraud" are synonymous.  *O'Connor v. R.F. Lafferety & Co. Inc.*, 965 F.2d 892 (10th Cir. 1992) (recklessness satisfies scienter requirement for purposes of securities fraud); *United States v. Boyer*, 694 F.2d 58 (10th Cir. 1982) (specific intent to deceive in a criminal mail fraud prosecution may be found from a material misstatement made with reckless disregard of the facts); *United States v. Depew*, 100 F.2d 725, 728 (10th Cir. 1938) ("it is well settled that a misrepresentation will not constitute a defense to an action on [an insurance policy] unless it was intentionally untrue or was made with a reckless disregard for its truth or falsity."); *R.J. Wolf v. McGuire*, 284 B.R. 481 (Bankr. D. Colo. 2002) (finding of reckless disregard as to truth of representations sufficient to establish actual fraud).

**B.     The United States need not assert a fraud penalty as a condition precedent to proving that this is a "case involving fraud."**

Pleadings aside, Plaintiffs argue that the Government is estopped from pleading and proving that this is a "case involving fraud" under IRC section 6404(g)(2)(B) (regarding the abatement of interest) because the IRS has not also asserted a fraud penalty under Section 6663.[8] (Opposition at 7-8).  This argument is inconsistent with the plain and unambiguous statutory language and ignores that the two code sections serve entirely different purposes.

---

[8]     If this is a case involving fraud, Plaintiffs are not entitled to the abatement of interest accrued after 18 months and one day form the filing of their original return.  26 U.S.C. § 6404(g)(2)(B).

First, IRC section 6404 grants a concession to taxpayers by providing for the cessation of interest accruals on a tax deficiency after the expiration of a certain period of time.  The concession is specifically eliminated in "a case involving fraud" and not, as Plaintiffs argue, "in a case involving the assertion of a fraud penalty under section 6663."  Next, IRC section 6663 establishes a penalty that may be imposed on any underpayment "attributable to fraud."  Plaintiffs rewriting of these provisions violates the cardinal rule of statutory construction.

A court will first look to the language of the statute and assume its plain meaning accurately expresses the legislative purpose.  *Loughridge v. Goodyear Tire and Rubber Company*, 207 F. Supp.2d  1187 (D. Col. 2002).  Because "a case involving fraud," is inherently unambiguous, the first canon of statutory construction also becomes the last and a court will go no further.  *Connecticut National Bank v. German*, 503 U.S. 249 (1992).

In addition to being at odds with the plain language of the statutes, Plaintiffs' reading is inconsistent with a prior position taken in this litigation.  Plaintiffs previously pointed out that IRC section 6662(b) (the accuracy related penalty) specifically referenced the fraud penalty and directs that the two cannot be applied cumulatively.  *See* Plaintiffs' Opposition to Defendant's Motion for Relief Under Fed. R. Civ. P. 56(f), Docket No. 33 at 23; IRC section 6662(b) (the accuracy-related penalty "shall not apply to any portion of an underpayment which a penalty is imposed under section 6663 [fraud].")  Therefore, had Congress similarly wanted to draw a connection between the fraud penalty and section 6404, it would have done so.

**C.      The Government has challenged Plaintiffs' illegal shelter transaction.**

Plaintiffs argue that the Government has not challenged that Plaintiffs' $60,000,000 of claimed losses are improper, let alone fraudulent.  (Opposition at 16.)  This argument is

inconsistent with positions and representations asserted in papers previously filed.  For example, in the parties' jointly submitted proposed Scheduling Order (Docket No. 26), Plaintiffs alleged that, "[c]ontrary to Defendant's assertions, Plaintiffs entered into no 'abusive tax shelter,' 'scheme' or otherwise impermissible transactions."  In the same submission, the Government affirmatively alleged that "this case involves the use of an abusive tax shelter through which purported partners obtain an artificially high basis in a purported partnership."  The United States further alleged that "the losses claimed by plaintiffs were properly disallowed," and set forth five reasons why.  (*Id*. at 3).  As reflected here, the Government has articulated its position that Plaintiffs' shelter related deductions are improper.[9]

**D.      Overview of shelter cases.**

Plaintiffs appear to argue that the Government is not able to show fraud given the state of the law on tax shelters.  Plaintiffs cite to only one case, *Coltec Industries, Inc. v. U.S.*, 62 Fed. Cl. 716 (2004), discussed below, and in doing so overlook a large body of relevant case law -- including cases decided by the Supreme Court and the Tenth Circuit which establish that many similar tax-driven schemes are only economic shams.  As the Supreme Court, the Tenth Circuit, and other circuits have made clear, artificial tax losses generated by transactions lacking economic substance must be disregarded when determining tax liability.

*1. Supreme Court and appellate court decisions*

For example, Plaintiffs fail to cite to *Knetsch v. United States*, 364 U.S. 132 (1960).  In *Knetsch*, the Supreme Court held that a transaction, in that case the purchase of $4,004,000 in

---

[9]      Plaintiffs also take issue with the United States advising this Court that Plaintiffs' accountants have confessed that shelter transactions such as the one at issue here were "bogus." While this does not prove the Government's case of fraud, it supports the amendment of the Government's Answer to include fraud.

deferred annuity bonds for $ $4,000 and the signing of a non-recourse note, generated nothing more than tax deductions and constituted shams.  The deductions were disallowed.  In *James v. C.I.R.*, 899 F.2d 905, (10[th] Cir. 1990), the Tenth Circuit was confronted with a situation in which taxpayers, either individually or through entities they controlled, invested in ventures that purchased expensive computer systems which in turn had been leased to large corporations.  The taxpayers claimed large deductions and credits on their individual tax returns.  The IRS disallowed the deductions and credits on the basis that the transaction lacked economic substance.  The Tenth Circuit court agreed noting that the consideration of business purpose and economic substance  are factors when considering "whether the transaction had any practical economic effects other than the creation of income tax losses."  *Id*. at 908-909 (*quoting Sochin v. Commissioner*, 843 F.2d 351, 354 (9[th] Cir.)) *cert. denied*, 488 U.S. 824.

*Boca Investerings Partnership v. U.S.*, 314 F.3d 625 (D.C. Cir. 2003),  involved a partnership which, with the assistance of a newly created corporate entity, purchased bonds in order to generate paper losses  to offset multimillion dollar capital gains.  The D.C. Circuit held that the transactions were improper and disallowed the deductions.  Similarly, in *ACM Partnership v. C.I.R.*, 157 F.3d 231 (3rd Cir. 1998), the Third Circuit concluded that the purchase of notes which where then exchanged for other notes, thereby generating capital losses, lacked economic substance and would not be respected for tax purposes.

More recently, the Sixth Circuit reversed a trial court finding in favor of Dow Chemical and held that a shelter involving corporate-bought life insurance policies lacked economic substance.  The court disallowed claimed deductions that totaled approximately one-half of the

amount of deductions claimed by the Plaintiffs here.  *The Dow Chemical Company v. United States*, ___ F.3d ___, 2006 WL 155152 (6th Cir. 2006).

In the lone case cited by Plaintiffs, *Coltec Industries*, a case involving contingent liabilities, the trial court found that a corporate taxpayer had a *bona fide* business reason for the transaction in dispute -- to manage its contingent asbestos liability.   The *Coltec* court's apparent conclusion that it could not apply the economic substance doctrine to the transactions at issue in that case is clearly contrary to Supreme Court and Tenth Circuit precedent.  In fact, just last week, the Fourth Circuit reached a contrary conclusion to the holding in *Coltec* and applied the economic substance doctrine to a case involving contingent liabilities.  *The Black & Decker Corporation v. United States*, ___ F.3d ___ (4th Cir. 2006), 2006 WL 241073.  *Coltec* is on appeal and the Fourth Circuit has heard oral argument.

### 2.   *Practical implications of Plaintiffs' position*

From an economic standpoint, Plaintiffs shelter constituted a *win only* situation without economic risk.[10]  The tax losses were generated by Plaintiffs contributing offsetting positions in

_____

[10]      Plaintiffs place heavy reliance on two cases.  In an effort to refute a position that has not been argued here, namely, that "economic loss" is always a condition precedent to "tax loss," Plaintiffs cite to *Gitliz* v. *Commissioner*, 531 U.S. 206 (2001).  As courts as recently as last week have noted, a transaction's "economic substance" (and not economic loss) is crucial in order to be recognized for the purposes of claiming a tax deduction.  *See The Dow Chemical Company v. United States*, *supra*; *The Black & Decker Corporation, supra*.  *Gitliz* only decided whether discharge of debt constituted an "item of income" for purposes of classifying S corporation pass-through to its shareholders.

The other case relied upon by Plaintiffs is *Helmer v, C.I.R.,* TC Memo 1975-160, 1975 WL 278.  *Helmer* is not legal precedent since it is an unpublished memorandum decision of the United States Tax Court.  *See Nico v. Commissioner*, 67 T.C. 647, 754 (1977), *aff'd in part and rev'd in part on other issues*, 565 F.2d 1234 (2nd Cir. 1977).  *Helmer* involved a *bona fide* business and its grant of an option on a piece of real property it owned.  It did not purport to address the situation here, where the purported transactions lacked economic substance.  The

foreign currencies.  The purported five-year shelter strategy alleged by Plaintiffs should be viewed in light of the fact that funds were deposited in late October and the purported tax losses were created by Christmas of the same year when the positions were liquidated.  As the Third Circuit has noted, "[w]hen a taxpayer is presented with what would appear to be a fabulous opportunity to avoid tax obligations he should recognize that he proceeds at his own peril." *Neonatology Associates, P.A. v. C.I.R.*, 299 F.3d 221, 234 (3rd Cir. 2002).  Even if Plaintiffs were exposed to some risk in foreign currency positions, their guaranty of a $60,000,000 tax loss more than covered any potential exposure.

## IV.    THE GOVERNMENT IS ENTITLED TO ASSERT SETOFF AS AN AFFIRMATIVE DEFENSE.

In its proposed Amended Answer and in the supporting memorandum in support of its Motion to Amend, the Government has set out its case for setoff, including the applicable code sections, and has provided a computation of the setoff amount.  Motion to Amend at p. 8, n.2. Plaintiffs oppose this by relying primarily on two cases, which as discussed below do not support the denial of the Motion.  Moreover, Plaintiffs claim ignorance of one of the issues in this case – namely the tax basis they have asserted in a wholly owned S corporation and in a related partnership.

---

lone case that has cited to *Helmer* since it was decided more than thirty years ago, specifically called into question its applicability to short sale transactions.  *Salina Partnership LP, et al. v. C.I.R.*, TC Memo 2000-353 ("We are  not convinced that . . . *Helmer v. Commissioner* . . . provided a sound basis for determining whether a short sale transaction generates a partnership liability within the meaning of section 752" of the Internal Revenue Code.)  *Salina* was decided *before* plaintiffs claimed their $60 million dollar tax loss.

### A.      Plaintiffs' legal authority does not support its Opposition.

Plaintiffs rely heavily on two cases to support its position that the Government cannot amend its answer to assert a set-off.  The first case, *Shecter v. Comptroller of the City of New York*, 79 F.3d 265 (2nd Cir. 1996) (Opposition at 20), involved defendants' motion for judgment on the pleadings.  The answer raised qualified immunity but never alleged that defendants were acting within the scope of their official duties.  The appellate court was asked to consider the trial court's denial of the motion for judgment.  The Second Circuit affirmed *but did not* strike the defense,  In fact, the Second Circuit remanded the case for further consideration of the merits of the defense on qualified immunity.  If anything, *Shecter* supports the consideration of the Government's defenses on their merits and not their disposition on technical or procedural grounds.

The second case, *Codest Engineering v. Hyatt*, 954 F. Supp. 1224 (N.D. Ill. 1996) is significant for what Plaintiffs omit.  In *Codest*, a contract case, defendants raised seven affirmative defenses, all of which were the subject of plaintiff's motion to strike.  As to the first two defenses, that the contractual obligations were those of another and that others not named as parties were indispensable, the pleadings did not contain specific allegations of fact.  Instead of striking the defenses, the court reviewed other papers in the case to assess the propriety of the defenses and then denied the motion as to each.  In its third and fourth defenses, defendant asserted that plaintiff breached contractual duties.  The motion to strike was denied and the court noted that while evidence may not be available to carry the ultimate burden of proof, "it is enough for this court to deny the motion to strike," those defenses.  *Id*. at 1230.  The fifth defense, the only one referred to by the Plaintiffs here, alleged a failure to mitigate.  Because, as

the trial court specifically noted, the litigation was not at an early stage, the court expected additional facts to support the defense.  The court granted leave for the defendant to plead the facts.  The sixth defense, asserting estoppel, contained no allegation of detrimental reliance.  The court however inferred this missing element from the remainder of the answer and denied the motion on that basis.  *Id*. at 1231.  With regard to the final defense, failure to state a claim upon which relief could be granted, the court granted leave to amend to assert additional facts.  A full and fair reading of *Codest* does not support the Plaintiffs' Opposition.

To the contrary, the decision reflects a court's recognition that the pleading party need not prove its claims at the pleading stage and that leave to amend should be liberally granted; principles ignored by Plaintiffs in their response in this case.  If this Court deems the pleadings as proposed in any way deficient, leave is hereby requested to amend.

### B.     The Motion and proposed Amended Answer set forth sufficient details.

The United States' motion and the proposed Amended Answer set forth the IRC section at issue (6662(e)) in the setoff claim and also calculate the amount of the setoff ($9,486,691). *See* Motion at p 8, n.2.  Section 6662(e) addresses a situation involving a valuation misstatement and provides that if "the value of any property or services (*or the adjusted basis of any property*) claimed on any return . . . is 200 percent or more of the amount determined to be the correct amount," then the penalty applies.  (Emphasis supplied).  Plaintiffs complain that more details must be pled.  Plaintiffs have chosen to argue for the sake of argument.  Here Plaintiffs have claimed a tax basis in an S corporation and in a related partnership.  According to documents previously submitted, Plaintiffs contend that they acquired a tax basis in each on account of certain long options ($60,987,866.79) they acquired.  However, and concurrently, Plaintiffs sold

a nearly identical amount of short options thereby creating an offsetting liability ($60,259,568.94).  *See* Draft Legal Opinion, Exhibit EE to Docket No. 44 at 3.  Plaintiffs take the position that their contribution of these offsetting positions, first to the S corporation and then to a partnership, allowed them to establish basis in the amount of the long positions ($60,987,866.79) but not reduced by the liability that the short positions established.  *Id*. at 8, ¶¶ 4 and 8.  Without this corresponding reduction in basis, Plaintiffs are able to entirely offset approximately $60,000,000 in ordinary income for that year and demand a refund in excess of $27,000,000.  To the extent that the claimed amount of basis ($60,987,866.79) is more than 200% of the correct amount (which the Government believes is close to zero by virtue of the offsetting positions), then the penalty amount is simply a percentage of the tax deficiency owed.  That calculation was included in the Government's motion.  For the Plaintiffs to profess ignorance of this is disingenuous and needlessly litigious.

### C.  Whether Plaintiffs' amended tax return constitutes a qualified amended return is not ripe for decision at the pleadings stage of this litigation.

Plaintiffs challenge at the pleading stage the Government's contention that their amended 2000 federal income tax return (filed in November 2003) did not constitute a qualified amended return.  (Opposition at 22-24).  The resolution of this issue is dependant upon whether the IRS notified KPMG of its examination of its SOS transactions under IRC section 6700 (relating to the penalty for promoting abusive tax shelters) *prior* to November 2003.  Plaintiffs' speculate that because the IRS was not aware of all of KPMG's shelter activity in 2003 the Government could not have notified KPMG of such an examination.  In fact, the Government knew that the SOS shelter transactions existed, it just did not yet know KPMG's role.

Plaintiffs' also argue that the Government has not shown any connection between its shelter transaction and KPMG.  Plaintiffs own accountant, represented in an internal email that KPMG worked with "Deerhurst" and with "Brown & Wood," (Ruble's firm) in providing "tax advantaged strategies" to clients.  Docket No. 44 at Exhibit II.  The email is just one of the pertinent documents obtained after the Government filed its initial Answer.

## CONCLUSION

The vituperative tone of the Plaintiffs' submission aside, the record and legal authority cited to, do not support the denial of the Government's motion.  To the contrary, and as strong evidence of the weakness of the Opposition, Plaintiffs' cited  legal authority firmly supports the granting of the Motion.

Plaintiffs' effort to prevent the pleadings from conforming to the newly discovered information is certainly understandable in light of how that information reflects on their case. This case should not be decided at the pleadings stage, but rather, on its merits.

Dated this 8th day of February, 2006.     WILLIAM J. LEONE

Acting United States Attorney
MARK S. PESTAL
Assistant United States Attorney

s/ David N. Geier
DAVID N. GEIER
ANTON L. JANIK, JR.  CO#35164
PHILIP E. BLONDIN
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 683
Ben Franklin Station
Washington, D.C. 20044-0683
Telephone:     (202) 616-3448
                      (202) 305-2558
Facsimile:      (202) 307-0054
Email:David.N.Geier@usdoj.gov

Street Address:               Judiciary Center Building
                                       555 Fourth Street, N.W.
                                       Washington, D.C. 20001

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on February 8th, 2006, I electronically filed the foregoing REPLY with the Clerk of Court using the EFC system which will send notification of such filing to the following e-mail addresses:

dhallett@chicoine-hallett.com

jcolvin@chicoine-hallett.com

s/ David N. Geier
DAVID N. GEIER
Trial Attorney, Tax Division
U.S. Department of Justice