IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00636-LTB-PAC

CARLOS E. SALA and
TINA ZANOLINI SALA,

        Plaintiffs,

  v.

UNITED STATES OF AMERICA,

        Defendant.

---

UNITED STATES' REPLY IN SUPPORT OF
MOTION FOR STAY PENDING RELATED CRIMINAL TRIAL
AND
RESPONSE TO MOTION FOR LEAVE TO FILE NOTICE
OF RECENT COURT DECISIONS

---

The United States of America, by its undersigned counsel, hereby REPLIES to plaintiffs' Response to Motion for Stay Pending Related Criminal Trial ("Opposition") and RESPONDS to the Plaintiffs' Motion for Leave to File Notice of Recent Court Decisions.

**REPLY IN SUPPORT OF MOTIONS FOR STAY
PENDING RELATED CRIMINAL TRIAL**

**I.  PLAINTIFFS' EFFORTS TO DISTINGUISH *STEIN* ARE NOT PERSUASIVE**

Plaintiffs spend a great deal of time arguing their continual refrain: KPMG only prepared their tax returns, and this case has nothing to do with *United States v. Stein*.[1]  As has been shown, this is not correct.  In fact, the indictment describes plaintiffs' SOS transaction.  Paragraph 47 of the Stein indictment states:

---

[1]     *See United States v. Stein, et al.*, S1 05 Cr. 888 (LAK) (S.D.N.Y. 2005).

<u>The Fraudulent SOS Shelters</u>

> 47. These shelters were designed to generate substantial capital and ordinary tax losses through a series of pre-arranged transactions that involved the clients entering into virtually offsetting foreign currency option positions with a bank, including but not limited to Bank A, sometimes transferring the offsetting positions to a partnership or other entity, and then withdrawing from the transaction, claiming a loss in the desired amount.

Although they might take issue with the characterization of their motives in entering into the transaction, plaintiffs cannot deny that the transactions at issue in this case involved them entering into virtually offsetting foreign currency positions and then transferring the offsetting positions to a subchapter S corporation and then to a partnership.[2]  Plaintiffs' denial that their shelter transaction involved a "bank" (Opposition at 12) is belied by the opinion letter issued to them by Ruble blessing their SOS transaction.  That letter *specifically identifies* Deerhurst as a "Bank."  *See* Exhibit EE to Docket No. 44, Draft Opinion Letter, at 2-3.  As far as the tax opinion writer was concerned, this deal involved a bank.

Paragraph 47 of the indictment continues:

> These shelters were referred to by various names, including Short Option Strategy, Spread Option Strategy, Split Option Strategy, SOS, Binary Option, Digital Option, Gain Mitigator, Loss Generator, COINS, BEST, FX Transaction (hereinafter "SOS").

Plaintiffs further allege that their shelter was not mentioned in the *Stein* indictment because it was *never* referred to "by any of these names in KPMG documents the government has produced, nor did Plaintiff or his advisors use these names or acronyms to describe the Deerhurst Transactions."  Opposition at 9-10.  Whatever name or acronym the parties assigned to the

---

[2]   Documents reflecting two types of the many offsetting foreign currency trades are attached at Exhibit A.

shelter by is irrelevant. Regardless, Sala's own records belie their statement that his particular brand of SOS shelter is not named in the indictment. In the documents that Sala provided to the United States, Deerhurst Management, Inc. referred to this transaction as an $FX^2$ Trading Plan. Exhibit B. The "FX Transaction" is one of the specific SOS variants named in the indictment.

> Paragraph 47 of the indictment continues:
>
> KPMG's Washington National Tax office and the defendant RICHARD SMITH considered whether KPMG could issue "more likely than not" opinions regarding SOS transactions, and they concluded that the phony losses generated by those transactions were *not* more likely than not to withstand IRS challenge. Moreover, KPMG's Washington National tax office and the defendant RICHARD SMITH reviewed draft "more likely than not" SOS opinion letters prepared by the defendant RAYMOND J. RUBLE, and known as "R.J. Ruble," and other firms, and determined that the transactions described therein were not more likely than not to withstand IRS challenge.

(Emphasis in original). Plaintiffs admit that Ruble prepared an opinion letter for their transaction.

> Paragraph 47 of the indictment continues:
>
> Nevertheless, between 1998 and 2002, the defendants JEFFREY STEIN, RICHARD SMITH, JEFFREY EISCHEID, LARRY DELAP, STEVEN GREMMINGER, RAYMOND J. RUBLE, also known as "R.J. Ruble," RANDY BICKHAM, CAROL WARLEY, CARL HASTING, and RICHARD ROSENTHAL, and their co-conspirators, assisted in marketing and implementing SOS transactions for KPMG clients for a fee to KPMG generally not less than 1% of the tax losses to be generated, and prepared and caused to be prepared tax returns based on phony SOS tax losses.

KPMG, through Henderson and others and Ruble, assisted Sala in implementing his SOS transaction. *See* Docket No. 44, Exhibits P and Y (indicating that Ruble and Henderson were working together to implement Sala's shelter strategy). Consistent with the indictment, Sala paid KPMG for its services in this regard and also paid Ruble $75,000. Thereafter, KPMG prepared Sala's 2000 tax return based upon phony SOS generated shelter losses for which it was

3

paid a fee.

Plaintiffs assert, however, that because they paid only approximately $25,000 to KPMG and their SOS transaction involved $60 million, theirs cannot be one of the SOS transactions encompassed by the indictment. This purposely misreads the indictment, which states that the fee to KPMG was "***generally*** not less than 1% of the tax losses to be generated." It does not state that the fee was always 1%, as implied by plaintiffs.

Morever, plaintiffs admit that they relied on KPMG for more than just return preparation services. As Mr. Sala stated in his second declaration, he kept his accountants (who included KPMG's Henderson) informed "about any potential transactions that would have significant tax consequences prior to conducting the transactions." Document 61-1 at ¶16. Presumably, the transaction at issue here, with its stratospheric tax consequences, was one such transaction. It follows then that, after reviewing the terms of the proposed SOS transaction, Henderson advised the Salas to go forward. Thus, plaintiffs cannot credibly deny that KPMG was involved in facilitating their participation in the SOS transaction.

Paragraph 47 of the indictment concludes:

> For many of these SOS transactions, KPMG did not issue an opinion letter, but instead certain lawyers, including RUBLE, issued "more likely than not" opinion letters with respect to those transactions so that clients would claim the fraudulent SOS losses and evade taxes.

Consistent with the indictment, the United States does not allege that KPMG issued an opinion letter to plaintiffs, but asserts, as plaintiffs have conceded, that Ruble prepared such a letter.

Plaintiffs note that the declaration of Assistant United States Attorney Shirah Neiman did not state that Sala is one of the at least 165 wealthy individuals to whom SOS was marketed and sold. Opposition at 11. Ms. Neiman's declaration did not state this - only because it was

4

unnecessary to do so.  Ms. Neiman's declaration stated that "[t]he Carlos Sala SOS shelter that is the subject of this civil lawsuit is *one of the SOS shelter transactions encompassed by the charges in the Indictment."*  Docket No. 47 at Exhibit 2, ¶2.  The above comparison of the indictment's description of the SOS transaction to the Sala's SOS transaction confirms that statement.

## II.     BECAUSE ESTABLISHING BOTH THE TRANSACTION'S LACK OF ECONOMIC SUBSTANCE AS WELL AS THE FRAUD CLAIM REQUIRES INVESTIGATION OF THE INTENT OF THE PLAINTIFFS, THE PROMOTERS, AND THE OPINION WRITERS, AMONG OTHERS, DEPOSITIONS OF THE *STEIN* DEFENDANTS ARE NECESSARY AND CRITICAL TO THIS CASE.

The government simply cannot depose several key fact witnesses nor authenticate critical documents needed to make the necessary factual and legal determinations in this case without interfering with the criminal case.   As the government has shown:

- *Stein* criminal defendant R.J. Ruble ("Ruble") discussed the SOS tax shelter at issue here both with Sala and with Sala's representative, Ruble was retained by Sala to render a legal opinion, Ruble wrote that opinion letter, and Ruble was paid $75,000 for the services he provided in connection with the SOS tax shelter;

- As charged in the indictment and admitted by KPMG, KPMG partners reviewed Ruble's legal opinions and, even though they knew the legal opinions were not credible, they nevertheless prepared and caused to be filed tax returns for KPMG clients based upon the phony tax losses blessed by those legal opinions.  Plaintiffs admit that KPMG prepared the return that incorporated the SOS losses the government contends are phony;

- Sala's accountant and tax return preparer, KPMG partner Tracie Henderson ("Henderson") was instrumental in presenting and reviewing shelter transactions for Sala, and communicated with several other KPMG partners, now *Stein* criminal defendants, about locating and marketing a tax shelter to Sala. Henderson also communicated with Ruble regarding Sala and reviewed material prepared by Ruble for Sala, including Ruble's draft opinion letters, and prepared the tax returns for the years at issue; and

- Ruble and Henderson, two of the essential, critical witnesses Plaintiffs identified in their Rule 26 disclosures as having discoverable information that they may use

5

    to support their claims, will not provide testimony because the *Stein* case is in litigation.

  Witnesses with critical knowledge of these facts will not testify in light of *Stein.* Moreover, because Sala's subjective intent in entering into the SOS shelter is at issue, and because Sala now professes a lack of recall as to certain the events leading up to his participation in the SOS shelter (including his apparent shopping for a transaction that would create losses to shelter his substantial income) the need for third party witnesses is even more critical. Docket No. 61 at ¶20.

  Plaintiffs suggest that all the discovery the United States needs to defend its case is obtainable now.[3] Plaintiffs further argue that if discovery is needed of the *Stein* defendants, it could commence once the *Stein* case concludes. However, plaintiffs then protest that if the United States then seeks to take their depositions, plaintiffs may seek a protective order. Opposition at 14. Absent a stay, discovery into critical subject matters is unobtainable at this time.

  One of the critical issues to be resolved is the economic substance of the shelter strategy adopted by plaintiffs in connection with the SOS transaction which created a $60,000,000 tax loss (but no corresponding economic loss). If the Court ultimately concludes that the plaintiffs' purported structured foreign currency trades lacked economic substance, Sala's tax deduction must be disallowed. A resolution of this issue depends, in pertinent part, on Sala's *subjective*

---

  [3] Plaintiffs cannot fairly make this assertion given that Federal Rule 26 required them to identify each individual "**likely to have discoverable information that the disclosing party may use to support its claim or defenses**" (emphasis supplied) and in their initial disclosures they identified Ruble and Henderson, two witnesses they now claim to be unnecessary to the government's defenses. Exhibit C, at ¶¶7,10.

6

*intent* in making those trades, as well as the intent of the promoters structuring the tax shelter, the persons facilitating the tax shelter, and the writer of the legal tax opinions blessing the tax shelter. *See James v. C.I.R.*, 899 F.2d 905, 908-09 (10th Cir. 1990) (consideration of a taxpayer's subjective intent is a factor when considering "whether the transaction had any practical economic effects other than the creation of income tax losses") (*quoting Sochin v. Commissioner*, 843 F.2d 351, 354 (9th Cir. 1988), *cert. denied*, 488 U.S. 824 (1988); *Long Term Capital Holdings, et. al., v. United States*, 330 F. Supp.2d 122, 171 (D.Conn. 2004) (the "*subjective business purpose* of the taxpayer for engaging in the transaction," as well as the transaction's objective economic substance are relevant in evaluating the bona fides of the claimed deduction) (emphasis supplied).

Information bearing on subjective intent is uniquely in the hands of third parties such as Ruble, Henderson and other KPMG partners who will not testify while the *Stein* case is being prosecuted. Contrary to Sala's protestations, KPMG partners will be vitally important to this case. Sala first represented that KPMG played "no role in the transactions at issue in this case other than as a return preparer, compensated on an hourly basis." Docket No. 33 at 15. In fact Sala submitted a declaration stating that "Deerhurst had no relationship or dealings with KPMG," Docket No. 32-1 at 8(d), and that KPMG only received fees in connection with preparation of his return. *Id*. at 8(g). This position changed *after* the Government pointed to documents showing: (1) the significant role KPMG played in reviewing various shelter transactions for Sala, (2) Sala committed to using a KPMG shelter or, absent that, to employing KPMG as his adviser "on another deal," and (3) KPMG acknowledging having "worked with" Deerhurst. Now, Sala concedes keeping his accountants (including KPMG's Henderson)

informed "about any potential transactions that would have significant tax consequences *prior* to conducting the transactions." Document 61-1 at ¶16. There can be little doubt that testimony from Sala's "accountants" is clearly relevant to discovering Sala's true intent.[4]

As to the numerous other shelter transactions offered or presented to the plaintiffs by KPMG, Sala attempts to dismiss the lot of them. He offers a vague and conclusory statement that, "I do not believe [the documents presented by the Government] conflict with my own recollection that I, in fact, did not give any *significant* consideration to these programs." *Id.* at ¶20 (emphasis added). Plaintiffs then spend several pages of their Opposition trying to distinguish and distance themselves from these shelters. Opposition at 13-15. Sala's consideration of these shelters bears on his subjective intent and the credibility of his stated reasons for ultimately selecting the SOS shelter transaction. KPMG documents reflect communications with or about Sala involving three of the four shelter transactions (SOS, BLIPS and OPIS) encompassed in the Superseding Indictment.[5]

Moreover, and as previously pointed out, the opinion letter written by Ruble contains affirmative factual representations made to him by Sala regarding the nature of the shelter transactions, including statements of Sala's intent. Docket No. 44, Exhibit EE at 4-5. It also contains representations made by Deerhurst to the Plaintiffs. *Id*. at 6. The *Stein* indictment alleges that Ruble's opinion letters contain false representations. Docket No. 44, Exhibit A at

---

[4] Sala's attorneys contend that information on Sala's intent is readily available from Sala himself and therefore the Government need not depose others with knowledge of the transactions. Sala's own changing and incomplete recollection of the involvement of KPMG in the transactions at issue points out the absurdity of that position.

[5] The fourth shelter, FLIP, is a variation of OPIS that was marketed to individuals with smaller (but still in excess of $10 million) capital gains.

8

¶49.  Plaintiffs are apparently relying upon that opinion letter, and have named Ruble as a witness in their Rule 26 disclosures.  Ruble's intent in creating, marketing, and selling that opinion letter are clearly relevant to whether this tax shelter has economic substance, and whether this is a case involving fraud.  Because Plaintiffs are challenging the imposition of an IRS accuracy related penalty, Mr. Ruble's testimony will also shed light on whether Plaintiffs had reasonable cause to claim the deductions for which the penalty was assessed.  *See United States v. Boyle*, 469 U.S. 241 (1985) ("Courts have frequently held that 'reasonable cause' is established when a taxpayer shows that he reasonably relied on the advice of an accountant or an attorney that it was unnecessary to file a return, even when such advice turned out to have been mistaken.")  Furthermore, Sala and Henderson and others acting on Sala's behalf communicated with Ruble about Deerhurst.  Only Sala, Ruble, and Henderson can shed light on these communications.

Finally, it is not unreasonable to expect that Sala will raise objections to the introduction into evidence of KPMG documents.  Therefore, discovery of KPMG witnesses will be necessary to ensure those documents' admissibility at trial.

## III.   VERY LITTLE DISCOVERY HAS OCCURRED IN THIS CASE

Plaintiffs protest that a stay is not warranted, because, among other things, "extensive discovery has already occurred," in this case. Opposition at 19.  That is wrong.  Plaintiffs have not undertaken *any* discovery.  The United States has obtained documents from KPMG and has served an initial set of interrogatories and request for production upon the Plaintiffs.  That is the sum total of discovery.

## IV. PLAINTIFFS DO NOT HAVE A GENUINE CONCERN THAT EVIDENCE WILL DISSIPATE

Plaintiffs point out that evidence may dissipate with the passage of time. But it is important to note that six years have passed since this shelter transaction occurred while only months remain before trial of the *Stein* case. The relatively short additional delay caused by a stay would not appear to be a significant concern in light of the time that has already passed.[6]

Plaintiffs' expressed interest in proceeding expeditiously to preserve the factual record, Opposition at 20, is severely tempered by the fact that plaintiffs have not served any third-party discovery and have not sought to preserve any testimony. Certainly, if records in the hands of third parties such as Deerhurst, Michael Schwartz, REFCO or plaintiffs' prior counsel (Opposition at 3-4) are a concern for the plaintiffs, the United States does not object to the preservation of such information via subpoenas *duces tecum* directed to these third parties.

Plaintiffs are correct in pointing out that there is no guarantee that witnesses who presently refuse to testify will testify after the conclusion of the criminal trial. However, it is entirely possible that, after the criminal trial, the status of some witnesses may have changed, allowing them to testify freely. In addition, post-trial, much of the concern regarding civil

---

[6] It should also be noted that recent rulings by the court handling the criminal case make clear that the court intends the criminal case not to be delayed. On January 26, 2006, the court denied the government's motion to disqualify one of the defendant's attorneys' on the basis of a conflict of interest. One of the grounds for denial stated by the court (at p. 23 of the Order) was that a substitute counsel would not have time to adequately prepare for trial, thus signaling that the criminal trial is to go forward as scheduled. A true and correct copy of that Order is attached as Exhibit D. Further, the court issued an Order dated February 1, 2006, in which it notified the criminal defendants that a guilty plea must be submitted prior to June 15, 2006, in order to be considered timely to obtain sentencing credit for permitting the government to avoid trial preparation. This again indicates that the Judge intends for the criminal case to go forward as scheduled. A true and correct copy of that Order is attached as Exhibit E.

proceedings prejudicing the criminal prosecution will have been dissipated.

If the Court is amenable, a status conference could be set for late October or early November to permit the Government an opportunity to advise the Court of the status of *Stein* and to permit the parties to set out their positions on the remaining pretrial proceedings in this case.

## RESPONSE TO MOTION
## FOR LEAVE TO FILE NOTICE OF RECENT COURT DECISIONS

Plaintiffs correctly point out that on December 13, 2005 Judge David Laro of the United States Tax Court denied the Government's request for a stay in *Tucker v. Commissioner* (Tax Court Docket No. 12307-04).[7] The Order denying the stay, and attached to the plaintiffs' submission in this case, contains a single sentence and is without analysis or explanation. (Docket No. 68-3).[8] Other than the recent decision in *Klamath Strategic Investment Fund v. United States*, (Civil No. 5:04-278-TJW, E. D. Texas) ("*Klamath*"), no other court has sided with or cited to *Tucker*.

In fact, the conclusion reached by Judge Laro in *Tucker* is in contravention to orders entered by several other Tax Court judges who have granted stays or continuances or removed cases from the calendar because of the pendency of the ongoing criminal tax shelter

---

[7] Docket information on Tax Court cases are available to the public via the internet at http://www.ustaxcourt.gov/UstcDockInq/asp/CaseNo.asp.

[8] The very same judge denied a taxpayers request for a stay in *Belford v. Commissioner*, No. 023698-04. That case was filed under 26 U.S.C. § 6226(b) by a partner who was not the tax matters partner for the partnership. According to the statute, an action under Section 6226(b) may only be filed if the tax matters partner for the partnership fails to bring suit under Section 6226(a). The tax matters partner, having commenced suit in district court (in which a stay was obtained) has since intervened in the Tax Court case and requested a dismissal of that action. The request is not opposed by the Government. A companion case, *Shimmon v. Commissioner*, Docket No., 019735-04) has already been dismissed.

11

investigation.[9]  Further, the *Tucker* order denying a stay is not being followed by other courts in tax shelter cases, even when those cases involve the very same parties and transactions as in *Tucker*.  *See Epsolon Limited, by and through Sligo (2000) Company, Inc., Tax Matters Partner v. United States* (Case No. 05-999-MMS, Ct. Fed. Cl.).

*Epsolon* is a suit filed in the United States Court of Federal Claims by the entity used by Mr. Tucker to facilitate the very same SOS shelter and very same transactions pending before the Tax Court in the *Tucker* case in which a stay was denied.[10]  Mr. Tucker's purported tax losses in both cases were generated by Epsolon in the same SOS-type shelter that involved transactions which straddled two different tax years.  The *Tucker* case involves options transactions in furtherance of the shelter which took place in the 2000 tax year, while the *Epsolon* case involves related options transactions in furtherance of the same shelter which took place in the 2001 tax year.[11]  *Tucker* is an individual case because Epsolon was not subject to the TEFRA partnership

---

[9] *See e.g.*, *Crawford Property v. Commissioner*, Docket No. 2052-01; *Diversified Group Inc., et al. v. Commissioner*, Docket No. 2051-01; *Diversified Capital Services v. Commissioner*, Docket Nos. 2053-01, 13330-01, 13331-01; *Greenberg v. Commissioner*, Docket No. 1143-05; *Meruelo v. Commissioner*, Docket No. 624-04; *Starlike Properties v. Commissioner*, Docket No. 2484-04; *Goddard v. Commissioner*, Docket No. 1144-05; and *Pointe Du Hoc v. Commissioner*, Docket No. 006041-05.  Some of these cases involve transactions that are not described in the *Stein* criminal case, and at least one of these stayed cases, *Meruelo*, was filed by a shelter participant who was not a defendant in the criminal case or a promoter of that shelter.  With the exception of *Pointe Du Hoc, Goddard* and *Meruelo*, these Tax Court cases are in addition to the Tax Court cases listed in Ms. Neiman's Fourth Declaration.  Docket No. 47, Exhibit 1.

[10] Epsolon has expressly agreed that the transactions underlying its case are the same as those in *Tucker*.  See Exhibit F, Plaintiffs' Response and Objection to Defendant's Motion to Suspend Proceedings, at pp.14-15.

[11] Many of the purported transactions described in the *Tucker* Petition (Exhibit G hereto at pp. 4 through 8) are identical to those in the *Epsolon* Complaint (Exhibit H hereto at pp. 8 through 10).

audit procedures for the 2000 tax year.  The United States' notified the Court of Federal Claims in *Epsolon* of the denial of a stay in the related *Tucker* Tax Court case.  Epsolon argued that a stay would not prevent harm to the criminal case because the same information would come out in *Tucker* anyway.[12]  Despite the denial of a stay in *Tucker*, the Court of Federal Claims granted the United States' Motion for Stay in *Epsolon*.[13]

A little more than one month *after* the stay was denied in *Tucker*, the Honorable Joel Gerber, Chief Judge of the United States Tax Court, entered an order staying *Besicorp Group, Inc. & Subsidiaries v. Commissioner* (Docket No. 5785-05), because of the criminal proceedings pending in the Southern District of New York.  *Besicorp*, like *Tucker* and like this case, involved an SOS shelter.  A copy of the Order and petition are attached as Exhibits K and L, respectively.

Although it is impossible to determine the Tax Court's rationale for its denial of a stay in *Tucker*, it is possible that differences in the nature of Tax Court proceedings versus district court proceedings may have been a consideration.  Proceedings in the Tax Court do not have the broad discovery permitted in this Court.  Rule 75 of the Rules of the United States Tax Court severely limits the taking of depositions without an order of the court or upon consent of the parties.[14]

---

[12] Plaintiffs' Response and Objection to Defendant's Motion to Suspend Proceedings in *Epsolon*, at pp. 14-15, attached hereto as Exhibit F.

[13] *See* Order Granting Stay in *Epsolon* attached hereto as Exhibit J.

[14] Tax Court Rule 75 provides in pertinent part:

**(a) When Depositions May Be Taken.** After a notice of trial has been issued or after a case has been assigned to a Judge or Special Trial Judge of the Court, and within the time for completion of discovery under Rule 70(a)(2), any party may, without leave of Court, take a deposition for discovery purposes of a nonparty witness in the circumstances described in paragraph (b) of this Rule. . . .

Further Rule 91 of the Rules of the United States Tax Court requires the parties to attempt to agree upon stipulations of fact which can prevent the need for testimony at trial.[15]  Thus, the judge in *Tucker* may have believed that proceedings in the Tax Court presented a less compelling case for a stay due to more limited discovery in Tax Court.  However, as noted above, we do not know because the one-sentence denial provides us with no concrete basis to distinguish <u>or</u> rely upon that decision.

---

**(b) Availability.** The taking of a deposition of a nonparty witness under this Rule is an extraordinary method of discovery and may be used only where a nonparty witness can give testimony or possesses documents or things which are discoverable within the meaning of Rule 70(b) and where such testimony, documents, or things practically cannot be obtained through informal consultation or communication (Rule 70(a)(1)) or by a deposition taken with consent of the parties (Rule 74). If such requirements are satisfied, then a deposition may be taken under this Rule, for example, where a party is a member of a partnership and an issue in the case involves an adjustment with respect to such partnership, or a party is a shareholder of an electing small business corporation . . . .

**(d) Objections.** Within 15 days after service of the notice of deposition, a party or a nonparty witness shall serve on the party seeking the deposition any objections to the deposition. The burden shall be upon the party seeking the deposition to move for an order with respect to any such objections or any failure of the nonparty witness, and such party shall annex to any such motion the notice of deposition with proof of service thereof, together with a copy of any responses and objections. . . . .

[15]     Tax Court Rule 91 provides in pertinent part:

**a) Stipulations Required. (1) General.** The parties are required to stipulate, to the fullest extent to which complete or qualified agreement can or fairly should be reached, all matters not privileged which are relevant to the pending case, regardless of whether such matters involve fact or opinion or the application of law to fact. Included in matters required to be stipulated are all facts, all documents and papers or contents or aspects thereof, and all evidence which fairly should not be in dispute ....

14

Plaintiffs also refer to the recent reversal of a conditional stay in *Klamath*. *Klamath* did not involve an SOS shelter but nevertheless the district court reversed its earlier grant of a stay in light of *Tucker*. It is apparent that the *Klamath* court incorrectly believed that *Tucker* was one of many Tax Court cases moving forward in which stay motions based on the pending criminal proceedings had been denied. Document 68 at Exhibit E ("The government made many, if not all, of these same arguments in these Tax Court cases that it made before this Court in support of its motion to stay.") In fact, until *Klamath*, *Tucker* stood alone as the only case in such a posture. The *Klamath* court was simply incorrect in concluding that other courts had followed *Tucker*. On February 24, 2006, the Government filed a Motion to Reconsider the *Klamath* court's denial of the stay.

## CONCLUSION

The United States has offered compelling reasons to grant a stay. The related criminal case is the largest criminal tax case ever filed and pursues criminal charges against accountants and lawyers who were supposed to provide independent tax advice rather than help implement false and fraudulent transactions for wealthy clients. A stay will protect the intertwined interests of the public and the United States. The Plaintiffs have not offered any valid reason to deny the relief and their opposition only serves to highlight the need for the relief requested.

        WILLIAM J. LEONE
        Acting United States Attorney

        MARK S. PESTAL
        Assistant United States Attorney

        s/ DAVID N. GEIER
        DAVID N. GEIER
        ANTON L. JANIK, JR. CO#35164
        PHILIP E. BLONDIN
        Trial Attorneys, Tax Division
        U.S. Department of Justice
        P.O. Box 683
        Ben Franklin Station
        Washington, D.C. 20044-0683
        Telephone: (202) 616-3448
        Facsimile:   (202) 307-0054
        Email:david.n.geier@usdoj.gov

Street Address:        Judiciary Center Building
        555 Fourth Street, N.W.
        Washington, D.C. 20001

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CERTIFICATE OF SERVICE (CM/ECF)

      I hereby certify that on February 28, 2006, I electronically filed the foregoing Reply and Response with the Clerk of Court using the EFC system which will send notification of such filing to the following e-mail addresses:

    dhallett@chicoine-hallett.com
    jcolvin@chicoine-hallett.com

                                          s/ DAVID N. GEIER
                                          DAVID N. GEIER
                                          Attorney for Defendant
                                          United States of America
                                          Trial Attorney, Tax Division
                                          United States Department of Justice
                                          Ben Franklin Station
                                          P.O. Box 683
                                          Washington, D.C. 20044-0683
                                          Telephone: (202) 616-3448

    Street Address:                Judiciary Center Building
                                          555 Fourth Street, N.W.
                                          Washington, D.C. 20001