# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00636-LTB-OES

CARLOS E. SALA and
TINA ZANOLINI SALA,

       Plaintiffs,

  v.

UNITED STATES OF AMERICA,

       Defendant.

_____

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO STRIKE DEFENDANT'S FIRST AFFIRMATIVE DEFENSE
_____

On February 16, 2006, the Court entered an order permitting the Defendant to amend its answer to allege two affirmative defenses not included in the original answer. The Defendant's Amended Answer was filed on that same day (February 16, 2006). Pursuant to Fed.R.Civ.P. 12(f), Plaintiff[1] now moves this Court to strike Defendant's First Affirmative Defense on the grounds that the allegations of fraud fail to comply with the particularity requirement of Fed.R.Civ.P. 9(b) and that the requisite fraudulent intent has not been properly alleged.

As an initial matter, the Defendant's assertion of fraud is squarely inconsistent with its own Motion for Relief under Fed.R.Civ.P. 56(f) ("Motion for Relief"). In late

---

[1] Plaintiffs Carlos E. Sala and Tina Zanolini-Sala are husband and wife. Plaintiff wife is a party to this suit solely by reason of having filed a joint federal income tax return. Plaintiff husband will hereinafter be referred to as "Plaintiff."

June, Plaintiff moved for partial summary judgment on the issue of the § 6404(g) "suspended interest." In response, the government filed a Motion for Relief, representing to this Court that it did not currently have the evidence to affirmatively allege fraud (which would be a defense to Plaintiff's claim for suspended interest under § 6404(g)(2)(B)), and therefore required additional discovery in order to determine if such a defense were tenable. To date, neither Plaintiff's Motion for Partial Summary Judgment, nor the government's Motion for Relief have been ruled upon.

In its Memorandum in Support of its Motion for Relief, the government acknowledged that it did not have sufficient facts to affirmatively, and in good faith, assert Plaintiff committed fraud where it stated:

> Pursuant to Rule 56(e), the United States must oppose this motion for partial summary judgment with specific facts. Pursuant to Fed.R.Civ.P. 9, fraud must be pled with particularity, setting forth the specific facts and circumstances thereto. Without an opportunity for discovery, the United States cannot set forth specific facts by affidavit to oppose the motion for summary judgment. This is not to say that those facts may not exist.

*Memorandum in Support of Motion for Relief,* p. 7.

Indeed, in its Memorandum in Support of its Motion for Relief, the government recognized the distinct possibility that, if it were granted relief under Fed.R.Civ.P. 56(f), at the completion of discovery, it might be compelled to concede there was no fraud and stated:

> [I]f at the end of the discovery period the Court determines, <u>or the United States concedes</u>, that the case involving fraud exception does not apply, the plaintiffs will receive additional interest until the overpayment is refunded.

2

*Memorandum in Support of Motion for Relief,* p. 3. [Emphasis supplied and citations omitted].

The Amended Answer fails completely to make <u>any</u> specific, affirmative allegations supporting fraud. It simply alleges "based on the information available to the government at this initial stage of the litigation this is a 'case involving fraud,'" and cross references "the reasons articulated more specifically in the [Government's Reply regarding the 56(f) Motion]."

When the government subsequently filed its Reply with respect to the Motion for Leave ("Government Reply"), it squarely contradicted the allegations in its Amended Answer (filed the day before) that this <u>is</u> "a case involving fraud." Instead of setting out facts which would demonstrate that fraud had occurred with the requisite degree of particularity, the government waffled, stating that "[t]he evidence adduced so far points to the conclusion that it is likely that fraud occurred," that additional discovery is necessary to determine "whether" this is "a case involving fraud," and that the government "lacks personal knowledge as to the facts and circumstances surrounding plaintiffs' entry into this transaction." (Government Reply, pp. 4-5).

The fact is the government's own pleading (Government Reply), which was explicitly incorporated by reference in the Amended Answer to establish the factual predicate for its affirmative defense of fraud, *admits* that there is not sufficient evidence to allege affirmatively and with the requisite degree of particularity that Plaintiff acted fraudulently, and therefore requests additional time for discovery.

3

**A.     The First Affirmative Defense Does Not Comply With The Particularity Requirement Of Fed.R.Civ.P. 9(b).**

Fraud is an affirmative defense which must be separately stated pursuant to Rule 8(c).[2] Rule 9(b) of the Federal Rules of Civil Procedure states that:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

The particularity requirement of Rule 9(b) applies when fraud is raised as an affirmative defense. *In re Papst Licensing, GMBH Patent Litig.*, 174 F. Supp.2d 446, 448 (E.D. La. 2001).

The Rule 9(b) particularity requirement is designed to ensure that a pleading alleging fraud "afford[s] the [other party] fair notice" of the "claims and factual grounds upon which they are based." *Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000). A fraud allegation must offer specific facts that the other party can either deny or controvert at trial. *Chiron Corp. v. Abbott Lab.*, 156 F.R.D. 219,

---

[2] Fraud is a defense which must be pled <u>affirmatively</u> under Fed.R.Civ.P. 8(c). Black's Law Dictionary, 82 (4th ed. Rev. 1968) defines "affirmative" as "that which declares positively; that which avers a fact to be true; that which establishes; the opposite of negative." The Amended Answer does not "declare positively" that this is a case involving fraud, or state that fraud <u>is</u> a "true fact." It qualifies the conclusory assertion that this is a case involving fraud as being "based on the information available to the government at this initial stage of litigation." In the government's next day filing (i.e., the Government's Reply) which the Amended Answer claims "articulates more specifically" the reasons supporting its fraud assertion, the government: (1) reiterates that it lacks personal knowledge as to the facts and circumstances surrounding Plaintiff's entry into these transactions; (2) states additional discovery will enable it to determine "whether" this is a case involving fraud; and, (3) says that the evidence adduced so far points to the conclusion that fraud "likely" occurred. Government Reply, pp. 3-4. Fraud has clearly not been pled "affirmatively." The government has done no more than say there *might be* fraud which it *might be* able to establish at the conclusion of discovery.

4

222 (N.D. Cal. 1994).

In order to satisfy the Rule 9(b) particularity requirement, the Tenth Circuit has ruled that the party pleading fraud must set forth "the time, place and contents of the false representation, the identity of the party making the false statement and the consequences thereof." *In re Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991). The particularity requirement of Rule 9(b) modifies the general notice pleading rule to require that a party pleading fraud act like a journalist and set out the "who, what, when, where, and how" of the allegedly fraudulent conduct. *Seattle First National Bank v. Carlstedt,* 800 F.2d 1008, 1011 (10th Cir. 1986); *Vess v. Ciba-Geigy Corp.,* 317 F.3d 1097, 1106 (9th Cir. 2003). A complaint alleging fraud meets the Rule 9(b) standard if it alleges the time, place, and content of the fraudulent statements, including reasons why the statements are false. *In re GlenFed., Inc., Securities Litig.,* 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc), *rev'd on other grounds,* 60 F.3d 591 (9th Cir. 1995).

One of the purposes underlying Rule 9(b)'s heightened pleading requirement is to put the party who must defend against such claims on notice of the specific fraudulent conduct in order to enable them to adequately defend against such allegations. *In re Stac Elec. Litig.,* 89 F.3d 1399, 1405 (9th Cir. 1996). Another purpose of the particularity rule is "to force plaintiff to do more than the usual investigation before filing his complaint." *Zic v. Italian Government Travel Office*, 130 F. Supp.2d 991, 999 (N.D. Ill. 2001).[3]

---

[3] Here, the government had two opportunities to perform a pretrial investigation of any facts which might suggest fraud. First, Plaintiff's tax returns were subject to an IRS examination. Defendant certainly could

Rule 9(b) also serves "to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *In re Stac Elec. Litig.*, 89 F.3d at 1405.  Other courts have characterized the purpose of Rule 9(b) as to prevent litigants from "embark[ing] on wide-ranging discovery upon a thimble-full of facts.  This is precisely the sort of maneuvering that Rule 9(b) is designed to deter."  *Chiron, supra*, 124 F.R.D. at 221.

None of the facts as to the "who, what, where and how" of the alleged fraud are set forth in the government's proposed Amended Answer.  The Amended Answer only asserts, in broad conclusory terms, this is "a case involving fraud" within the meaning of the Internal Revenue Code.  The Answer purports to refer to the Government's Reply for the factual reasons supporting this assertion.

The lengthy 36 page Government Reply, replete with legal arguments and containing 43 exhibits, merely sets out the grounds the government has to believe that further discovery may unearth fraud; it does not state the who, what, when, where, and how of fraud.  Indeed, it is totally inconsistent with the Amended Answer's assertion that this is "a case involving fraud" in its representations that fraud "may have occurred," and that the government will not be in a position to assert the specifics showing that fraud did occur until the completion of discovery.  This is just the sort of

---

have investigated the possibility of fraud at that time.  Second, when Plaintiff filed his claim for refund, Defendant had an opportunity to examine the claim.  After filing his claim, Plaintiff had to wait for the IRS to disallow the claim or the expiration of six months before filing suit on the refund claim, pursuant to section 6532(a)(1) of the Internal Revenue Code.

fishing expedition that the particularity requirement of Rule 9(b) is designed to prohibit.

In civil tax fraud cases, fraud may not be found under "circumstances which at most create only suspicion." *Davis v. Commissioner*, 184 F.2d 86, 87 (10th Cir. 1950). The types of conduct ("badges of fraud") taken into account by courts in concluding the existence of fraud on the part of taxpayers include: the making of false statements to revenue agents, the filing of false documents, understatements of income, inadequate records, implausible or inconsistent explanations of behavior, concealment of assets, and failure to cooperate with tax authorities. *Parks v. Commissioner, supra* 94 T.C. at 664-665. The government has not alleged facts that would demonstrate the existence of any of the traditional "badges of fraud."

In this regard, the government does not allege that any of the transactions set forth in Plaintiff's Claim for Refund did not occur, or occurred in a different manner or order than Plaintiff contends, including (a) the investment in foreign currency options, (b) the transfer of the option positions to an S-corporation and to a domestic pooled investment partnership, (c) the liquidation of the partnership and distribution of foreign currencies, and (d) the conversion of the foreign currencies into U.S. dollars and investment of those dollars in a long term fund managed by Deerhurst.

Moreover, the government acknowledges that attorney R.J. Ruble supplied a 113 page tax opinion to Plaintiff which supported the deductibility of his claimed loss. *See Exhibit EE to Government's Reply*. Yet, it does not point to one fact set forth in the opinion that is erroneous, let alone fraudulently stated. Nor does it point to any discussion of a legal position or authorities which fraudulently misrepresents the law.

7

Plaintiff set forth precisely the who, where, why, and how of his loss and provided these details to the IRS in its claim for refund long before this case was filed. The government has chosen to ignore these specifics all together in arguing that, for unspecified reasons (which it hopes further discovery will unearth), this *may be* "a case involving fraud." This it cannot do and meet the particularity requirement of Fed.R.Civ.P. 9(b).

**B.     The Amended Answer Fails To Allege Fraudulent Intent.**

For this to be a fraud case, the government must allege fraudulent intent. Pursuant to Rule 9(b), intent may be alleged generally, and is not subject to the same particularity standard as conduct. As the Defendant acknowledges in the Government Reply (p. 5), "[o]rdinarily, for determinations of fraud, the government must show that a taxpayer intended to evade tax believed to be owing ... ."  Thus, the government must properly allege that: (1) under the Internal Revenue Code, the loss is not allowable; and (2) plaintiff knew that was the case. The Defendant must allege that Plaintiff knew what the law was and intentionally violated a known legal duty.

The government seems to believe that Plaintiff's loss is not allowable under the Code. However, it totally fails to state with any specificity why the loss is not allowable. It does not even allege that the legal position supporting the existence of the tax loss – disregard of short options as liabilities in determining basis – is an erroneous interpretation of the law.

Indeed, although it describes Plaintiff's loss as stemming from an artificially inflated basis, which was arrived at "by including only the value of contributed purchase call options in taxpayer's partnership share while disregarding the offsetting

8

liability assumed by the partnership in the form of written call options" (*Memorandum in Support of Motion for Relief,* p. 2), the government does not explain why this is improper. Indeed, the IRS' Office of Chief Counsel Attorneys and Treasury Officials recognized in 1995 that "existing authority is contrary to a position that options create liabilities."[4] *See* Tandon, Crystal, *IRS, Treasury Shared Views of Shelter Lawyers,* Tax Analysts, Oct. 17, 2005 (attached hereto as Exhibit A).

The "existing authority" was primarily the Tax Court's decision in *Helmer v. Commissioner*, T.C. Memo. 1975-160. *Helmer* was still good law when Plaintiff entered into the transactions giving rise to his tax loss, and was one of the authorities relied upon by attorney R.J. Ruble in the tax opinion issued to Plaintiff. Claiming a tax loss based upon fairly debatable legal issues, let alone long-standing Tax Court authority, does not support a fraud allegation. *United States v Harris*, 942 F.2d 1125, 1132-34 (7th Cir. 1992) (given confusing Tax Court precedent regarding tax treatment of payments to mistresses, fair notice barred tax fraud prosecution for failure to report such payments).

Fraud requires a specific intent to evade tax believed to be due and owing. *United States v. Critzer*, 498 F.2d 1160, 1162 (4th Cir. 1974). Because of the specific intent requirement, negligence, no matter how great, does not constitute fraud:

> Negligence, whether slight or great, is not equivalent to the fraud with intent to evade tax named in the statute. The fraud meant is actual, intentional wrongdoing, and the intent required is the specific intent to evade a tax believed to be owing.

---

[4] Apparently, the government's current position is that the short call options should have been treated as liabilities, reducing the partner's basis in his partnership interest, and that it was illegal to disregard such liabilities. This is a wholesale departure from the analysis by Counsel and Treasury attorneys in 1995.

*Mitchell v. Commissioner*, 118 F.2d 308, 310 (5th Cir. 1941); *Parks v. Commissioner*, 94 T.C. 654 (1990); *Also see Cheek v. United States*, 498 U.S. 192 (1991) (subjective belief that reporting position is permissible may not be qualified by a reasonableness standard in determining "willfulness").

While Rule 9(b) allows intent to be "averred generally," the government does not allege, even generally, that Plaintiff knew the loss claimed on his tax return was clearly not allowable under the tax laws.  At most, the Government Reply states that Plaintiff considered numerous tax strategies, but determined not to utilize them.  While we firmly dispute the many government assertions in this regard, the assertion that Plaintiff investigated other tax strategies does not constitute an allegation that Plaintiff knew the transactions he <u>did</u> enter into and the loss he <u>did</u> claim were illegal.

The Government's Reply refers to five persons who have been indicted for "devising, marketing and implementing fraudulent tax shelters with the knowledge that they were fraudulent."  We dispute the government's contention that any inference should be drawn from the New York indictment, and have taken issue with the assertion that the indictment is related in any way to Plaintiff's transactions and claimed loss.[5]  However, even if true, this allegation is not the equivalent of an allegation that Plaintiff knew his losses were illegal.  To the contrary, the Government's Reply states (p. 9), "[T]hese five persons <u>may</u> be able to establish that plaintiff's motive in entering into this transaction was only to create a tax loss sufficient to shelter a particular, defined amount of income" [Emphasis supplied].  The desire to enter into a legal

---

[5] Plaintiff's position on whether the KPMG-related indictment in the Southern District of New York has any relation to his case is more fully set out in Plaintiff's Opposition to the government's Motion to Stay.

transaction to minimize one's taxes (e.g., making end of year charitable contributions) is not *per se* fraudulent.

Without clearly defined law making the claimed benefits unavailable, and allegations that Plaintiff knew that this was the case, the government has completely failed to allege the requisite fraudulent intent in its Amended Answer.

WHEREFORE, Plaintiff respectfully requests this Court Strike Defendant's First Affirmative Defense in the Amended Answer.

DATED this $8^h$ day of March, 2006.

                CHICOINE & HALLETT, P.S.

                s/ John M. Colvin
                Darrell D. Hallett
                John M. Colvin
                Chicoine & Hallett, P.S.
                Attorneys for the Plaintiffs Carlos E. Sala
                    and Tina Zanolini-Sala
                1011 Western Ave. Suite 803
                Seattle WA, 98104
                Telephone: (206) 223-0800
                Facsimile: (206) 467-8170
                Email: dhallett@chicoine-hallett.com
                         jcolvin@chicoine-hallett.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2006, I electronically filed PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO STRIKE DEFENDANT'S FIRST AFFIRMATIVE DEFENSE using the CM/ECF system, which will send notification to the following:

| | |
|---|---|
| David N. Geier | David.N.Geier@usdoj.gov |
| Philip Blondin: | Philip.Blondin@usdoj.gov |
| Anton. L. Janik, Jr.: | Anton.L.Janik@usdoj.gov |

I declare under the penalty of perjury under the laws of the State of Washington and the United States that the foregoing is true and correct.

DATED this 8th day of March, 2006.

CHICOINE & HALLETT, P.S.

s/ John M. Colvin
Darrell D. Hallett
John M. Colvin
Chicoine & Hallett, P.S.
Attorneys for the Plaintiffs Carlos E. Sala
          and Tina Zanolini-Sala
1011 Western Ave. Suite 803
Seattle WA, 98104
Telephone: (206) 223-0800
Facsimile: (206) 467-8170
Email: dhallett@chicoine-hallett.com
          jcolvin@chicoine-hallett.com