# EXHIBIT A

# IRS, Treasury Shared Views Of Shelter Lawyers

*By Crystal Tandon — ctandon@tax.org*

Notes taken by an attorney with the IRS Office of Chief Counsel in 1995 show that the IRS and Treasury believed one of the core cases relied on in son-of-BOSS transactions was good law and new regs would be required to treat an option as creating a liability. (For prior coverage, see *Doc 2005-18644*, *2005 TNT 175-6*; *Doc 2005-9014*, *2005 TNT 82-6*; and *Doc 2005-10089*, *2005 TNT 92-6*.)

The notes, which were entered as an exhibit in *Jade Trading LLC v. United States*, were verified, in part, by testimony by the author on September 8 before the Court of Federal Claims sitting in Atlanta. (For the exhibit, see *Doc 2005-20853*. For the transcript of the testimony, see *Doc 2005-20854*.) The trial in *Jade Trading* concluded on September 23.

A briefing memo prepared for then-IRS Chief Counsel Stuart Brown is quoted in the notes as saying "existing authority is contrary to a position that options create liabilities."

The notes go on to quote the memo as saying, "We agree existing authority prevents treating options as creating liabilities" but that further consideration of the definition of liabilities is recommended as another project.

## Legal Authority

The IRS attorney's notes cite to the Tax Court's opinion in *Helmer v. Commissioner*, T.C. Memo. 1975-160, as authority for the position that an option does not create a partnership liability. The *Helmer* decision, which was a victory for the IRS, involved a partnership that issued an option to acquire a piece of real property. The Tax Court in *Helmer* held that a partnership's issuance of an option does not create a partnership liability under section 752.

> *A briefing memo prepared for the chief counsel is quoted in the notes as saying 'existing authority is contrary to a position that options create liabilities.'*

Relying largely on *Helmer*, participants in son-of-BOSS-type transactions have taken the position that a written (or sold) call option contributed to a partnership at the same time as a roughly offsetting purchased call option does not create a partnership liability, and therefore does not reduce the partner's basis in the partnership interest.

In 2003 the IRS issued proposed regulations to prevent the duplication and acceleration of loss through the assumption by a partnership of a liability in son-of-BOSS-type transactions. The regs defined liability to include obligations under options and other derivative instruments (For REG-106736-00, see *Doc 2003-15227* or *2003 TNT 125-74*.) The preamble to those regs makes clear that that is a departure from the holding in *Helmer*. Temporary regulations were issued dealing with transactions entered into after October 18, 1999, and before the date the proposed regs were issued. The proposed and temporary regs were made final in May 2005.

## Internal Debate

The IRS attorney's notes detail meetings between several IRS and Treasury officials in the process of drafting a 1995 revenue ruling dealing with whether short sales of corporate stock created a liability. When issued, the ruling concluded that the obligation to deliver shares under a short sale was a liability. (For the ruling, see *Doc 95-5610* or *95 TNT 110-10*.)

> *While the notes refer to a desire to treat both short sales and options in the same manner, Helmer repeatedly comes up as an obstacle.*

Further, the notes recount a debate over whether to follow *Helmer* or the approach taken in another revenue ruling, which said a short sale created a liability. While the notes refer to a desire to treat both short sales and options in the same manner, *Helmer* repeatedly comes up as an obstacle.

*Helmer* is referred to in the exchange as good authority that an option cannot create a liability. The notes also indicate that Brown tended to agree with the approach taken in *Helmer* over the revenue ruling and that he "was reluctant to say a short sale generates a liability."

At several points, the notes say that regulations would be needed to overrule *Helmer* to treat an option as creating a liability, and at one point they say Treasury does not think it can be done in a revenue ruling.

## Effect on Shelter Cases

Lawyers observing the case say that the insight into the IRS and Treasury's internal thinking on the issue of options creating liabilities could affect both the merits of the transaction and the penalty assessment.

That may be particularly true in the case of *Jade Trading* because, according to stipulations filed with the court, the contributions of the options to the partnership occurred in early October 1999, before

(C) Tax Analysts 2005. All rights reserved. Tax Analysts does not claim copyright in any public domain or third party content.

NEWS AND ANALYSIS

the issuance of the proposed regs and the reach of the temporary regs, and even before the release of Notice 2000-44, which listed son-of-BOSS as an abusive transaction

### Inadvertent Disclosure

The *Helmer* notes were originally produced by the government in a case involving short sales, *Marriott Int'l Resorts v United States*, 61 Fed. Cl. 411 (2004), *Doc 2004-15919, 2004 TNT 151-10*. Attorneys close to the shelter cases have speculated that its release in that case may have been inadvertent, considering the huge number of documents the government withheld under claims of executive privilege.

> *The same notes were not produced by the government in Jade Trading, despite a similarly broad request for documents.*

The same notes were not produced by the government in *Jade Trading*, despite a similarly broad request for documents related to the IRS's definition of liability under section 752 by the taxpayer.

The Court of Federal Claims denied the government's assertion of executive privilege in *Marriott* and related assertions in *Jade Trading* because the privilege was not invoked by the head of the agency. The government is appealing the decision in *Marriott*. (For prior coverage, see *Doc 2005-9014* or *2005 TNT 82-6*.) ■

## IRS Audit of The Nature Conservancy Resolved

*By Fred Stokeld — fstokeld@tax.org*

An IRS audit of the financial transactions of The Nature Conservancy (TNC) has been resolved, according to TNC officials.

TNC spokesman James R Petterson, in a conversation with Tax Analysts on October 7, confirmed that the IRS examination was completed in July.

At the September meeting of the American Bar Association Section of Taxation's Exempt Organizations Committee in San Francisco, Philip Tabas, TNC general counsel, reported that the audit, begun in 2003, had been "resolved favorably," according to a transcript of the meeting.

TNC retained its tax-exempt status, and the tax returns it filed with the IRS for the years examined by the audit were accepted by the Service, he said. He added that the IRS, in a letter to TNC, recommended the group be vigilant on some issues and offered advice on strengthening TNC's policies and practices.

The audit, and a Senate Finance Committee investigation that concluded in June, began after *The Washington Post* in 2003 reported that TNC had close ties to oil companies, chemical manufacturers, mining concerns, and other industries and that some executives who sat on the board of TNC had paid millions in environmental fines.

> *Petterson added that the IRS, in a letter to TNC, recommended the group be vigilant on some issues and offered advice on strengthening TNC's policies and practices.*

The *Post* also reported that TNC participated in "conservation buyer projects." In those projects the charity purchased land and resold it at a loss. Then the buyers gave TNC cash gifts in amounts approximately equal to TNC's loss on the sale. Buyers could then take tax deductions for the cash gifts.

TNC complained that the *Post* articles omitted facts and contained mischaracterizations. But the organization later made substantial changes in its operations, such as prohibiting the purchase or sale of land in transactions with board members, trustees, employees, and the immediate families of those groups.

TNC President and CEO Steven J. McCormick told the Finance Committee in June that "we consistently meet higher standards of ethical conduct and organizational efficiency than we did two years ago." ■

(C) Tax Analysts 2005. All rights reserved. Tax Analysts does not claim copyright in any public domain or third party content.