IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00636-LTB-PAC

CARLOS E. SALA and
TINA ZANOLINI-SALA,

       Plaintiffs,

  v.

UNITED STATES OF AMERICA,

       Defendant.

_____

PLAINTIFFS' REPLY REGARDING MOTION TO STRIKE
DEFENDANT'S FIRST AFFIRMATIVE DEFENSE

_____

After briefing, on February 16, 2006, the Court entered an order permitting the Defendant to amend its Answer. Plaintiffs[1] recognize that, pursuant to Fed.R.Civ.P. 15(a), leave to amend pleadings is freely given, and are not seeking to relitigate the Motion to Amend. Rather, because a motion to strike must be brought within 20 days of service of the pleading to which it relates (Fed.R.Civ.P. 12(f)), Plaintiff asks the court to review whether the Amended Answer identifies with the particularity required by Fed.R.Civ.P. 9(b) conduct (the who, what, where, when and how) that supports the assertion that this is "a case involving fraud."

When Plaintiff filed the Motion to Strike on March 8, 2006, the Court had filed

---

[1] Plaintiffs Carlos E. Sala and Tina Zanolini-Sala are husband and wife. Plaintiff wife is a party to this suit solely by reason of having filed a joint federal income tax return. Plaintiff husband will hereinafter be referred to as "Plaintiff."

1

Defendant's Amended Answer on February 16, 2006.  The Amended Answer which was filed on February 16, 2006 was the Exhibit to Defendant's Motion to Amend filed on December 12, 2005.  This Amended Answer made no allegations, but simply referred to another pleading (United States' Reply to Plaintiffs' Response to Motion for Relief Under Fed.R.Civ.P.56(f) with Respect to Plaintiffs' Motion for Partial Summary Judgment ("Government's Reply."))  On March 9, 2006, the day after Plaintiff filed the Motion to Strike, the Court replaced the December 12, 2005 Amended Answer with the "substitute" Amended Answer, which had been filed by the Defendant on December 21, 2005, along with a request to the Clerk to substitute this document for the earlier exhibit. (This document is referred to herein as the "Substitute Amended Answer.")  While, in responding to the Motion to Amend, Plaintiff argues that the Substitute Amended Answer was untimely, we do not renew this argument.  However, Plaintiff believes that the Substitute Amended Answer is similarly lacking in the requisite particularity.

      A.      **Legal Standard**

There appears to be little disagreement between the parties with respect to the basic principles set out in Rule 9(b), i.e., facts supporting the assertion of fraudulent conduct must be pled with particularity, though the pleading need not reference evidence.  Mental state (knowledge, malice, etc.) may be pled generally.

The government argued that the Tenth Circuit case, *In re Edmonds,* is not applicable because it is a bankruptcy case.  It is a bankruptcy case, but the court specifically held the bankruptcy rule "incorporates Fed.R.Civ.P. 9(b)(1)."  *In re*

2

*Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991). Moreover, the court held that fraud must be alleged by setting forth the "*time, place and contents* of the false representation, the *identity* of the party making the false statement and the *consequences* thereof." *Id. at 180.*

The *Edmonds* case applied Rule 9(b) to a statute that provides for the revocation of discharge where discharge was fraudulently obtained (11 U.S.C. § 727(d)(2)), and held that Rule 9(b) required that the person attempting to set aside the discharge set out the basic facts supporting fraud.

The government also disputes Plaintiff's arguments as to the standards for pleading fraud under the Tenth Circuit case *Seattle-First National Bank*. The government notes that the language "who, what, when, where, and how" is not specifically quoted in *Seattle-First National Bank*. *See* U.S.' Response to Plaintiff's Motion to Strike at ¶ 4. However, a quick reading of the case makes it clear that the court interprets Rule 9 to require those specific facts to be pled. In this respect the court stated:

> Rule 9(b) … requires identification of the circumstances constituting fraud or mistake. That requirement means … that individual plaintiffs should identify particular defendants with whom they dealt directly, and from whom they purchased stock; that individual plaintiffs should designate the occasions on which affirmative statements were allegedly made to them - - and by whom; and that individual plaintiffs should designate what affirmative statements or half-truths were directed to them - - and how.

*Seattle-First National Bank v. Carlstedt,* 800 F.2d 1008, 1011 *citing Trussell v. United Underwriters, Ltd.* 228 F.Supp. 757, 774-75 (D.Colo. 1964).

Relying upon Form 13 in the Appendix to the Federal Rules of Civil Procedure,

3

a sample form for a complaint to set aside fraudulent conveyances, the government argues that it is sufficient merely to allege that the property was conveyed "for the purpose of hindering, defrauding or delaying plaintiff."  The elements of fraudulent transfer under the Uniform Fraudulent Transfer Act are: (1) a transfer; with (2) the intent to hinder, defraud or delay (e.g., COLO.REV.STAT. 38-8-105(1)(a).)  The government fails to acknowledge the rest of the form which requires the Plaintiff to plead the facts surrounding the transfer or conveyance of property (*who* transferred the property, *who* received it, and *when*).  *See* Appendix of Forms at Form 13.  Moreover, if there are other facts which indicate fraud (*See* COLO.REV.STAT. 38-8-105(2)(a) – (k) (non-exclusive list of factors taken into account in determining fraudulent intent)), these likewise are required to be pled with particularity.

> **B.     The Government Has Not Pled Any Facts Which Would Indicate That Plaintiff Attempted To Mislead The Government Or Conceal The True Nature Of The Transaction**

Simply not reporting the amount of tax that the government believes should have been reported does not constitute tax fraud.  There must be affirmative misconduct on the part of the taxpayer.  The types of affirmative misconduct ("badges of fraud") taken into account by courts in concluding the existence of fraud on the part of taxpayers include: the making of false statements to revenue agents, the filing of false documents, understatements of income, inadequate records, implausible or inconsistent explanations of behavior, concealment of assets, and failure to cooperate with tax authorities.  *Parks v. Commissioner,* 94 T.C. 654, 664-665 (1990) (summarizing types of misconduct ordinarily found in tax fraud cases.)  The government has not alleged facts that would demonstrate the existence of any of the traditional "badges of fraud."  Quite simply,

there were no allegations of any misrepresentations made to the IRS or attempts to conceal anything on the part of the Plaintiff.

Like the initially filed Amended Answer, the Substitute Amended Answer does not provide any specifics as to any affirmative misconduct on the part of Plaintiff designed to mislead the government or conceal the transaction. A close examination of each of the 10 allegations in support of the Second Affirmative Defense pled in the Substitute Amended Answer demonstrates that, even if the facts alleged therein were true, the government has utterly failed to set out the requisite specifics of any attempt to mislead or conceal:

- A. <u>Searching for a scheme</u>. The fact that someone searched for a strategy to minimize their taxes, or even entered into a program that (allegedly) failed to have reasonable expectation of profits, does not constitute an attempt to mislead or conceal;

- B. <u>Claiming a tax shelter loss on a tax return</u>. Again, unless the nature of the loss is misrepresented or concealed, there is no misconduct. Here, the returns make no secret of the fact that the loss ultimately came from the disposition of an interest in Deerhurst Investors General Partners. The government does not even allege the proper scienter, where it states "plaintiff knew or *should have known*, or acted in reckless disregard to the fact that the claimed loss was illegal." Negligence, even gross negligence, does not amount to fraud;

5

C. <u>Participating in a transaction that the IRS has characterized as invalid</u>. Through published notices, the IRS informs taxpayers of its litigating position. Taxpayers are entitled to disagree with the position set out by the IRS in a Notice, a Revenue Ruling, or even an interpretive Treasury Regulation. Taking a position contrary to an IRS notice is not in itself illegal, and it is certainly not an effort to mislead or conceal;

D. <u>Others involved in promoting the shelter knew or should have known that the shelter was an illegal scheme</u>. Whether others involved may have been acting with improper motive, or were merely negligent, says nothing about whether active steps were taken by Plaintiff to mislead the IRS or conceal the transaction;

E. <u>Expression of concern that action might alert IRS to tax shelter loss</u>. This does not allege any act to mislead or conceal;

F. <u>Requested revision to engagement letter in transaction that was never consummated</u>. This concealed nothing as no transaction was ever entered and no losses with respect to this transaction were ever claimed;

G. <u>KPMG concession that certain transactions were bogus</u>. KPMG does not admit that it took any steps to mislead or conceal with respect to the specific transaction under scrutiny, the Plaintiff's investment in Deerhurst, from the IRS. Indeed, the Superseding Indictment against KPMG alleges that, when asked about SOS shelters, KPMG representatives "falsely respond[ed] that KPMG was not involved in SOS, but may have prepared a couple of tax

6

returns containing SOS losses." ¶ 61.  As alleged in the Indictment, KPMG *truthfully* responded that they prepared tax returns containing losses based on the digital option version of the transaction described in the Son of Boss notice (which included the transaction entered into by Plaintiff), though they falsely denied their participation as promoters in other transactions.  This allegation does not support the assertion of fraud;

H. <u>Attempted misclassification of fees</u>.  This allegation fails to allege that fees paid to KPMG were in fact ultimately misclassified on a tax return, i.e., how they should have been classified and how they were classified.  Moreover, it fails to allege *when* Plaintiff requested this, *to whom* was he speaking, and *what was said*.  The document which the government is apparently relying on is simply a handwritten note by an accountant which states "He [Sala] doesn't want to lose [the 2001 deductions], but not worth risk of linking it to last year." (*See* Government's Reply filed December 13, 2005, pp. 12-13, Ex. CC.)  Even if the fees were ultimately not deducted (out of fear of linkage), it would be absurd to claim that not taking a deduction (which the government would no doubt claim is not deductible because it relates to a tax shelter) was an attempt to mislead or conceal;

I. <u>Obtaining tax opinion from Ruble</u>.  This allegation does not indicate that any affirmative misrepresentations were made or acts of concealment were undertaken;

J. <u>Representations in tax opinion</u>.  The government states in its Response that

7

"[t]o the extent that false statements are at issue here, they have been specifically identified." (U.S.' Response to Plaintiff's Motion to Strike at ¶5). In making this statement, the government relies on its allegation that the Ruble opinion letter contains false representations of Plaintiff: 1) that he entered into the transaction for non-tax business reasons; 2) that the use of the sub-chapter S corporation by Plaintiff was for non-tax business reasons; and 3) that he entered into the transaction for the purpose of diversifying his portfolio. While for purposes of this Motion, it must be assumed that the government's allegations are correct, the government does not allege that the Ruble opinion was ever submitted to the IRS. Therefore, it cannot constitute an attempt to mislead the IRS or conceal the transaction. One purpose for obtaining a tax opinion was to obtain protection from penalties, in case the IRS asserted them. If factual representations in the opinion were incorrect, the opinion would not protect the taxpayer from the imposition of the penalties. *Long Term Capital Holdings v. United States*, 330 F.Supp.2d 112 (D. Conn. 2004). However, here, the opinion was never used in that fashion, and the government does not allege it was. Because the opinion was never provided by Plaintiff to the government in an effort to eliminate the proposed penalty, it cannot constitute an attempt to mislead or conceal. Accordingly, the government has not met its burden and is wrong in its belief that fraudulent misstatements have been specifically identified.

## Conclusion

The government does not allege that any of the transactions set forth in Plaintiff's Claim for Refund did not occur as Plaintiff has represented (which facts formed the basis for Plaintiff's position on the originally filed return), only that the legal consequences are other than as claimed by Plaintiff. More importantly, for the purposes of this Motion, it does not allege the specifics of *any conduct* designed to mislead or conceal anything from the government.

While the government characterizes Plaintiff's reporting position as illegal, it studiously avoids addressing the fact that the IRS' Office of Chief Counsel Attorneys and Treasury Officials recognized in 1995 that "existing authority is contrary to a position that options create liabilities."[2] (*See* Plaintiffs' Memorandum in Support of Motion to Strike Defendant's First Affirmative Defense.) How can a position which was grounded in existing law be "illegal?" A position based upon fairly debatable legal issues, including Tax Court authority, simply cannot support a fraud allegation. *United States v. Harris*, 942 F.2d 1125, 1132-34 (7th Cir. 1992.)

WHEREFORE, Plaintiff respectfully requests this Court Strike Defendant's First Affirmative Defense in the Amended Answer.

---

[2] Apparently, the government's current position is that the short call options should have been treated as liabilities, reducing the partner's basis in his partnership interest, and that it was illegal to disregard such liabilities. This is a wholesale departure from the analysis by Counsel and Treasury attorneys in 1995.

9

DATED this 10th day of April, 2006.

                CHICOINE & HALLETT, P.S.

                s/ John M. Colvin
                Darrell D. Hallett
                John M. Colvin
                Chicoine & Hallett, P.S.
                Attorneys for the Plaintiffs Carlos E. Sala
                    and Tina Zanolini-Sala
                1011 Western Ave. Suite 803
                Seattle WA, 98104
                Telephone: (206) 223-0800
                Facsimile: (206) 467-8170
                Email: dhallett@chicoine-hallett.com
                        jcolvin@chicoine-hallett.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2006, I electronically filed PLAINTIFFS' REPLY REGARDING MOTION TO STRIKE DEFENDANT'S FIRST AFFIRMATIVE DEFENSE using the CM/ECF system, which will send notification to the following:

| | |
|---|---|
| David N. Geier | David.N.Geier@usdoj.gov |
| Philip Blondin: | Philip.Blondin@usdoj.gov |
| Anton. L. Janik, Jr.: | Anton.L.Janik@usdoj.gov |

I declare under the penalty of perjury under the laws of the State of Washington and the United States that the foregoing is true and correct.

DATED this of 10th day of April, 2006.

CHICOINE & HALLETT, P.S.

s/ John M. Colvin
Darrell D. Hallett
John M. Colvin
Chicoine & Hallett, P.S.
Attorneys for the Plaintiffs Carlos E. Sala
 and Tina Zanolini-Sala
1011 Western Ave. Suite 803
Seattle WA, 98104
Telephone: (206) 223-0800
Facsimile: (206) 467-8170
Email: dhallett@chicoine-hallett.com
 jcolvin@chicoine-hallett.com