# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00636-LTB-PAC

CARLOS E. SALA and
TINA ZANOLINI SALA,

        Plaintiffs,

v.

UNITED STATES OF AMERICA,

        Defendant.

---

## OPENING BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: DEFENDANT'S OFFSET DEFENSE

---

Plaintiffs CARLOS E. SALA and TINA ZANOLINI-SALA, by and through their undersigned counsel, move this Court pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Civil Rules for the District of Colorado, for partial summary judgment against Defendant United States.

After Plaintiffs filed an amended 2000 return in November of 2003, removing the loss they claimed with respect to "Deerhurst[1]" on their originally-filed return and paying the resulting tax as well as 18 months worth of interest on that additional tax, the IRS assessed the tax self-reported by Plaintiffs. Plaintiffs were not under IRS audit when they filed their amended return. Likewise, neither Deerhurst nor the individuals involved in the organization and sale of interests

---

[1] The term "Deerhurst" as used in this brief includes a partnership, Deerhurst Investors General Partners, and other entities managed by Deerhurst's principal, Andrew Krieger. Transactions involving Deerhurst gave the tax loss at issue in these proceedings.

1

therein were under IRS audit at the time. When it assessed the interest due on the additional tax reported by Plaintiffs, the IRS ignored 26 U.S.C. § 6404(g), which provides for the suspension of interest if the IRS does not make a determination of additional tax due within 18 months after the filing of a taxpayer's return. After receiving the additional tax and 18 months interest, the IRS demanded payment of additional interest beyond 18 months, threatened to levy assets, and sent a collection officer to Plaintiffs' home. Plaintiffs paid the additional interest assessed, and filed a claim for refund. When the IRS did not act on this refund claim within the statutory time period, this Complaint was filed.

Thereafter, Plaintiffs moved for partial summary judgment with respect to the excessive interest assessed and collected. The Defendant acknowledged that interest was calculated beyond the statutory 18 month period, but requested, pursuant to Fed.R.Civ.P. 56(f), that the Court delay ruling on Plaintiffs entitlement to a refund of the excessive interest paid to give the Defendant an opportunity to conduct discovery and determine whether other grounds for opposing Plaintiffs' claim existed. Defendant then amended its Answer to add the affirmative defense of "offset." Defendant seeks to offset a previously unasserted accuracy penalty it alleges may be due under § 6662[2] against the illegally collected interest. With discovery now concluded, it is now evident that Defendant is not entitled to an offset.

Plaintiffs filed an amended return in November of 2003. An accuracy penalty cannot be imposed with respect to the additional tax shown due on this return unless there is an "underpayment." Generally, there is no "underpayment" where tax is shown due on taxpayer's originally filed return, or on a "qualified amendment return." Treas.Reg. § 1.6664-2(c).

---

[2] All statutory references refer to Title 26, the Internal Revenue Code of 1986 as amended. All references to regulations refer to 26 C.F.R.

2

A "qualified amended return" is one filed before the taxpayer receives a notice of audit, or a third party is contacted regarding a promoter penalty audit. In short, the accuracy penalty does not apply when the taxpayer self-reports changes to his or her tax return before an audit is commenced. This policy encourages taxpayers to file amended returns voluntarily by not subjecting them to penalties when they do so.

The United States attempts to rely upon a narrow exception to this rule which comes into play if there was a promoter penalty audit under § 6700 (which pertains to the tax benefits the taxpayer eliminated on the taxpayer's amended return), prior to the time that that the taxpayer removed the tax benefits on an amended return. Treas.Reg. § 1.6664-2(c)(3)(ii).

Persons are subject to a promoter penalty under § 6700 only if they "organized" or "participated in the sale" of the venture that produced the claimed tax benefits. A pending examination of a person who prepared a taxpayer's return to determine whether that person is liable for penalties under §§ 6694 (negligent or willful errors) or 6701 (aiding and abetting understatements of tax liability), does not disqualify that taxpayer's amended return from protecting the taxpayer against penalties.

Defendant does not contend that Deerhurst and those associated with the Deerhurst investment were under promoter penalty examination. Instead, Defendant appears to assert that an IRS examination of KPMG, pending at the time that Plaintiffs filed their amended return precludes the return from providing penalty protection to the Plaintiffs.

However, the evidence produced in discovery clearly demonstrates that there are no issues of material fact as to whether KPMG played a "promoter" role with respect to Deerhurst. KPMG was only the preparer of a tax return that claimed benefits pertaining to Deerhurst.

3

KPMG was not an "organizer" of Deerhurst, and did not "participate in the sale" of any interest in Deerhurst.

Were the offset Defendant seeks to proceed to trial, Plaintiffs firmly believe that, even if the Court found the tax benefits at issue to be unallowable, the evidence would show that they were not negligent, that there was substantial authority for their position, and that they acted in reasonable cause and in good faith. §§ 6662 and 6664. Therefore, Plaintiffs would not be liable for any accuracy penalties. However, as a matter of law, the Court does not need to hear and decide these factual issues if it determines that there is no triable issue regarding KPMG's role as a promoter of Deerhurst. Thus, summary judgment on this issue is fully appropriate because it eliminates the needless resolution of extensive factual issues.

**A.     Facts.**

At the conclusion of massive document discovery and countless hours of depositions throughout the United States, Defendant was asked to admit that KPMG did not promote the Deerhurst investment to Sala. Defendant responded on November 30, 2006:

> Request for Admission No. 34:
>
> Admit that KPMG did not promote the Deerhurst investment to Plaintiffs
>
> Response:
>
> The United States cannot admit or deny this request for admission for lack of information or knowledge. Subject to and without waiving its general objections, the United States avers that KPMG worked closely in promoting and assisting Carlos Sala in selecting a tax shelter and was paid a fee in connection with such work. Furthermore, the United States avers that it has made reasonable inquiry, but because of the limitations upon the discovery it can obtain due to individuals asserting or likely to assert their Fifth Amendment rights, the information known or readily obtainable by the United States at this time is insufficient to enable it to admit or deny this request for admission.

*See* Exhibit 1 at p. 22 (Defendant's Responses to Requests for Admission).

4

In short, the United States admits that it does not have evidence to establish that KPMG was an organizer of Deerhurst or participated in the sale of interests in the Deerhurst program, a matter on which it bears the burden of proof, and which is a necessary element to establish its entitlement to the asserted offset defense. Its unsupported allegation that KPMG worked closely in promoting "a tax shelter" is deliberately obtuse and falls woefully short of establishing a triable issue of fact as to whether KPMG actually participated in the organization of Deerhurst and/or sale of interests in the Deerhurst investment.

While the United States seeks to excuse its lack of evidence based upon Henderson and/or other unspecified individuals claiming or threatening to claim the Fifth Amendment, the fact is that the United States had access to <u>all</u> KPMG documents (numbering thousands of pages), including all of Henderson's documents, and it failed to produce any documents that would show KPMG was a promoter of Deerhurst. Likewise, in its Response to the Request for Admission set forth above, the United States conveniently ignores that it had a full day of testimony from former KPMG employees and Henderson subordinates, Angie Napier and Kevin Brady, and failed to find any indication of a promoter role for KPMG.

Aside from Defendant's own admission, the United States' discovery depositions and document disclosures show that there is no genuine issue of material fact regarding KPMG's limited role with respect to the Deerhurst investment.

In late November of 1999, Plaintiff Carlos Sala ("Sala") was introduced to Tracie Henderson ("Henderson") of KPMG by his friend Tim Gillis ("Gillis"), a partner at KPMG. *See* Exhibit 2 at pp. 59-62 (Carlos Sala Deposition, Vol. I, September 15, 2006); *see also* Exhibit 3 at pp. 34-37 (Timothy Gillis Deposition, October 23, 2006). Henderson was a personal financial planning partner in the Atlanta office of KPMG, who supervised tax return preparation as part of

her duties. *See* Exhibit 4 at p. 18, 29 (Kevin Brady Deposition, September 27, 2006). Sala ultimately hired Henderson and KPMG to prepare his federal and state income tax returns for the years 2000 through 2003. Exhibit 2 at 78-80; Exhibit 4 at 42-43, 47. Sala paid KPMG annually for preparing his returns for several years. *See* Exhibit 5 at pp. 225-226 (Carlos Sala Deposition, Vol. II, October 24, 2006).

During the year 2000, Henderson attempted to interest Sala in one of the tax strategies marketed by KPMG, the Bond Linked Interest Premium Strategy ("BLIPS"). Exhibit 2 at 80. Sala considered the proposed BLIPS investment (Exhibit 2 at 70-72), but determined not to participate in the BLIPS program, in large part because of the poor economics of the investment as it was presented to him. Exhibit 2 at 71-74, 89-90. Sala did not enter into any binding agreement and paid no fees with respect to BLIPS, or any other transaction offered or promoted by KPMG. Exhibit 2 at 75.

Sala was acquainted with John Raby, who was employed at Pricewaterhouse Coopers ("PwC") in PwC's Colorado office. *See* Exhibit 6 at p. 73 (John Raby Deposition, September 13, 2006); *see also* Exhibit 7 at pp. 135-136 (Michael Schwartz Deposition, Vol. I, June 28, 2006). PwC's Colorado's office had performed audit and tax work for Sala's former employer (Abacus Direct, Inc.), and prepared Sala's federal and state income tax returns for several years. Exhibit 6 at 37-39.

In the Spring of 2000, Raby introduced Sala to Michael N. Schwartz ("Schwartz"). Exhibit 2 at 111-112; Exhibit 6 at 40-41 and 60-62; Exhibit 7 at 12-13. Raby knew Schwartz because Schwartz had formerly been employed with PwC's New York office. Exhibit 6 at 60. Raby was aware that Schwartz was involved with Deerhurst's investment program. *Id.*

6

The Deerhurst investment had been organized by Andrew Krieger ("Krieger") and Michael Schwartz, with the assistance of the New York law firm, Rosenman & Colin. *See* Exhibit 8 at pp. 14-15 (Michael Schwartz Deposition, Vol. II, June 29, 2006); Exhibit 7 at 155-160.

In a series of meetings and discussions, Schwartz discussed with Sala the Deerhurst foreign currency trading strategy, the potential for significant profits, and the potential tax benefits available through that strategy. Exhibit 2 at 113-115, 120-124. Thereafter, Sala performed an extensive independent investigation of Deerhurst and its principal, Andrew Krieger. *See* Exhibit 9 at pp. 438-441 (Andrew Krieger Deposition, Vol. II, October 27, 2006); Exhibit 5 at 217-220. Sala traveled to New Jersey and met with Krieger and others several times in order to determine whether he was willing to invest in the Deerhurst program. Exhibit 5 at 214-216. During these visits, the discussions and investigations focused almost entirely on the merits of the proposed investment, and not the tax implications. Exhibit 5 at 30-31. Neither Henderson nor any other KPMG representative ever attended any of Sala's meetings with Deerhurst and/or Schwartz. Exhibit 2 at 111; Exhibit 7 at 12-13; Exhibit 9 at 438-439.

During the time he was considering participating in the Deerhurst investment, Sala disclosed his consideration of this investment to Henderson. Exhibit 5 at 65. Because he was employing Henderson and KPMG as his income tax return preparer, Sala believed that Henderson should be apprised of significant tax positions with respect to his tax return. *Id.* This is consistent with the practice that Sala employed during his tenure as chief financial officer of two publicly traded corporations. *See* Exhibit 10 at ¶ 16 (Declaration of Carlos E. Sala Regarding Plaintiffs' Opposition to United States' Motion for Stay, dated February 2, 2006).

7

Henderson reviewed a draft legal opinion written by Brown & Wood, regarding the Deerhurst investment, and referred Sala to attorney Bruce Lemons of the Salt Lake City offices of Holland & Hart regarding the legal opinion. Exhibit 5 at 67-68. Sala employed Bruce Lemons to review the draft opinion and determine whether the opinion was reasonable, and paid $1,240 for these services. Exhibit 5 at 222-224; *see also* Exhibit 11 (Bruce Lemons Deposition Exhibit 136).

Henderson also made a telephone call to another attorney referred to Mr. Sala, Beckett Cantley. *See* Exhibit 12 at pp. 18-19 (Beckett Cantley Deposition, October 11, 2006); Exhibit 5 at 262-263. Sala determined not to employ Mr. Cantley's services. Exhibit 12 at 56-57.

Aside from reviewing the opinion and referring Sala to persons with expertise in the area, Henderson took no other material steps with respect to the Deerhurst investment. KPMG has produced its entire file with respect to Mr. Sala to the parties in this case. The only relevant time entries made by Henderson (or any or other KPMG personnel) prior to Sala's entry into the transaction (October 6 through October 13, 2000) are consistent with KPMG functioning as return preparer and recommending Sala employ outside attorneys to review the transaction. *See* Exhibit 13 (Kevin Brady Deposition Exhibit 131).

Sala independently employed Denver attorney Laurence Nemirow to review the Brown & Wood opinion and to advise on some of the legal issues involved, including the negotiation of the arrangement for Sala's participation in the Deerhurst investment. *See* Exhibit 14 at pp. 14-17 (Laurence Nemirow Deposition, September 14, 2006); Exhibit 5 at 220-221. Again, KPMG was not involved during these negotiations.

As Sala's undisputed deposition testimony shows, KPMG played no role in marketing or promoting the Deerhurst transaction; KPMG's only involvement was as a return preparer:

8

Q. Did you seek from anyone associated with KPMG, a tax opinion regarding the Deerhurst transaction?

A. No.

Q. Did you obtain from anyone associated with KPMG, a tax opinion regarding the Deerhurst transaction.

A. No.

Q. To your knowledge, did KPMG have anything to do with the tax position that was formulated with respect to Deerhurst transactions?

A. No.

…

Q. Who played a role, if there is more than one, let's talk about them, in formulating the – analyzing the tax position that would be taken with respect to Deerhurst?

A. Michael Schwartz was involved.

Q. Who, if anyone, did you have discussions with regarding the tax consequences of entering into the transactions with Deerhurst?

A. Michael Schwartz. I received an opinion from Brown & Wood. I then discussed that opinion with Larry Nemirow and Bruce Lemons.

Q. What, if any, discussions did you have with Tracie Henderson concerning the Deerhurst transaction?

A. I provided her with a copy of the draft opinion to ensure that she would feel comfortable that if the transaction did occur, that she could sign a tax return. And in subsequent years, there was reporting in my tax returns based on the results of operations of the Deerhurst financial results and she was involved in the reporting of those results in future tax returns.

Q. To your knowledge, did anyone associated with KPMG have any involvement in the implementations of the Deerhurst transactions?

A. Absolutely not.

Q. To your knowledge, did anyone associated with KPMG have anything to do with management of the Deerhurst transactions?

A. Absolutely not.

9

> Q. Do you have any doubt about that as far as what you know?
>
> A. None.

Exhibit 5 at 233-235.

Counsel for the Defendant asked Sala about whether any of the fees paid to KPMG were related to his participation in the Deerhurst transaction. Sala responded:

> Q. You paid KPMG for reviewing the transaction?
>
> A. No, I paid KPMG in conjunction to preparing my tax return.
>
> Q. You consulted with KPMG prior to entering into the transaction?
>
> A. Only for the tax return preparation. For instance, had they not prepared the tax return, there would have been no fees for them associated with ... Deerhurst.

Exhibit 5 at 44. KPMG's only involvement was as a return preparer. In that role, it reviewed the Brown & Wood opinion to ensure that the tax treatment was properly reported on Sala's 2000 federal income tax return.

Martin White, a close associate of Sala who invested in the Deerhurst program along with Sala, also used Tracie Henderson of KPMG as his accountant. When Mr. White was asked if KPMG participated in the Deerhurst investment or otherwise assisted him in entering into the Deerhurst investment, Mr. White responded that KPMG had not, although KPMG had attempted to interest him in the BLIPS transaction. *See* Exhibit 15 at p. 129 (Martin A. White Deposition, August 30, 2006).

Michael N. Schwartz, the individual who introduced Sala to the Deerhurst investment, was asked on deposition whether anyone at KPMG had any connection with the Deerhurst program. He responded that there was no connection. Exhibit 7 at 68-69; Exhibit 8 at 134.

When asked specifically about KPMG's role with respect to Sala, Mr. Schwartz responded as follows:

> Q. Did you at any time ever have any discussions with anyone associated with KPMG relative to Mr. Sala's involvement in the Deerhurst program?
>
> A. Yes.
>
> Q. And with whom did those discussions take place?
>
> A. Tracy [sic] Henderson.
>
> Q. And what was your understanding of Ms. Henderson's role with respect to Mr. Sala?
>
> A. She was preparing his individual tax return.
>
> Q. And what do you recall of your conversations with Ms. Henderson?
>
> A. That she had questions about the structuring of the transaction, just basically, information necessary in order to prepare Mr. Sala's tax return.

Exhibit 7 at 68-69.

Andrew Krieger, the person who organized the Deerhurst investment, was questioned extensively about whether there was any connection between KPMG and Deerhurst:

> Q. Okay. Did you ever have any discussions with anyone associated with the accounting firm of KPMG regarding the Deerhurst Program.
>
> A. I don't believe so.
>
> Q. To your knowledge and observation, did anyone associated with KPMG have anything to do with the implementation of the program.
>
> A. I don't believe so.
>
> Q. Did anyone associated with KPMG have anything to do with the management of the program.
>
> A. The trading?
>
> Q. Yes.
>
> A. No, no way.

11

> Q. Okay. Did you ever talk with anyone associated -- yourself, associated with KPMG about the Deerhurst Program.
>
> A. I don't think so.

Exhibit 9 at 389-390.

The evidence shows that no KPMG employee ever attended any meetings or presentations regarding Deerhurst, and that the firm was not paid any fees other than as a return preparer. While the government may allege that, in the absence of Tracie Henderson's testimony on this issue, it should be able to avoid summary judgment, there are no facts indicating that, even if she were to testify, Henderson might testify that KPMG was the organizer of Deerhurst or a participant in the sale of the Deerhurst investment.

Angie Napier, who worked with Henderson and whose role at KPMG was to coordinate the preparation of documents associated with transactions initiated by Henderson's group, testified that she had only heard about Deerhurst in connection with KPMG's preparation of Carlos Sala's tax return, but that she did not recall seeing any documents to indicate that KPMG was involved in the promotion of Deerhurst. *See* Exhibit 16 at p. 36-38, 158 (Angie Napier Deposition, September 26, 2006). Likewise, the senior manager working under Henderson on Sala's return, Kevin Brady, did not testify as to any facts that would support a finding that KPMG was anything more than a return preparer with respect to Deerhurst.

The limited time spent by Ms. Henderson on Deerhurst, which involved reviewing the legal opinion (at Sala's request) to ensure that the transaction was properly reported on Sala's tax return, and referring Sala to an outside attorney, is consistent with her role as return preparer (it was a significant item on Sala's tax return) and *inconsistent* with the activities of a promoter. A promoter presumably would be encouraging the client to enter the proposed transaction, rather than reviewing a transaction that the client was considering.

12

The United States has repeatedly attempted to characterize the Deerhurst investment program as a "KPMG SOS transaction." We note that paragraph 47 of the Superseding Indictment in the *Stein* case indicates that KPMG partners "assisted in marketing and implementing SOS transactions for KPMG clients for a fee to KPMG generally of not less than 1% of the tax losses to be generated ... ." *See* Exhibit 17 (Superseding Indictment). As the claimed tax loss in this case was approximately $60 million, were Deerhurst a KPMG SOS transaction, a fee in the range of $600,000 would have been paid to KPMG. No such fee was paid for "assisting and implementing" Sala's transaction with Deerhurst.[3] Thus, in addition to the consistent testimony of every single witness deposed in this case regarding the lack of any connection between KPMG and Deerhurst, the Deerhurst investment does not share an important characteristic of those that the government alleges were promoted by KPMG.

Plaintiffs timely filed their 2000 federal income tax return, claiming a loss arising out of the Deerhurst investment program. Thereafter, in 2003, Plaintiffs filed an amended income tax return for 2000, eliminating the claimed loss, and reflecting the resulting tax due. *See* Docket No. 1 at ¶ 7 (Complaint). The tax was paid, together with interest through the date 18 months after the date that the original return was filed.[4] *Id.* at ¶ 10. Subsequently, the IRS collection division insisted that additional interest, beyond the 18 month interest suspension period be paid. *Id.* at ¶ 14. While Sala contested the assessment of additional interest, the additional interest was paid under protest after an IRS collection agent visited the Salas' home to demand immediate

---

[3] KPMG was paid $25,000 for five separate professional services from December 1, 2000 through April 15, 2001: (1) preparation of 2000 Federal and Colorado income tax projections, including discussions with Goldman Sachs and Morgan Stanley; (2) preparation of 2001 Federal and income tax projections for investments planning purpose and related consultations; (3) preparation of 2000 Federal and Colorado individual income tax returns; (4) Form W-2 analysis and related discussions regarding stock option income; and (5) miscellaneous tax advice as requested. Exhibit 5 at 225-229; Exhibit 13.

[4] Under 26 U.S.C. § 6404(g), interest stops accruing 18 months after the filing of the return, unless the IRS had provided notice that additional tax is due.

payment of the taxes. *See* Exhibit 18 at ¶¶ 6-7, Declaration of Carlos E. Sala, dated June 27, 2005. Subsequently, Plaintiffs filed a claim for refund, relating solely to this excess interest. *See* Exhibit B&C of Docket No. 1. This additional interest is the subject of Plaintiffs' pending Motion for Partial Summary Judgment.

In February of 2004, the IRS commenced an audit of Sala's 2000 tax return. At the conclusion of the audit, on June 18, 2004, the IRS issued a notice of deficiency, disallowing approximately $56,000 in investment management fees paid to Deerhurst in 2000 and deducted on the tax return - but not eliminated on the amended return. The IRS asserted additional tax due of $22,204 and also asserted an accuracy penalty of $4,480 (20% of the deficiency) pursuant to § 6662 of the Internal Revenue Code. The asserted additional tax and interest were paid, and are at issue in this refund litigation. Defendant now seeks to assert an additional accuracy penalty of over $8 million in an attempt to eliminate completely Plaintiffs' entitlement to illegally assessed interest in the amount of approximately $1.5 million.

**B.    Argument**

**1.    Standards for Summary Judgment**

Summary judgment is appropriate under Rule 56 of the Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. See Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); *RSBI Aerospace Inc. v. Affiliated FM Insurance Company*, 49 F.3d 399, 401 (8th Cir. 1995). Summary judgment is appropriate when a party cannot meet an essential

element of its claim or defense. *Meterlogic Inc. v. KLT Inc.*, 368 F.3d 1017, 1019 (8th Cir. 2004).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that its case, on which the nonmoving party will bear the burden of proof at trial. 477 U.S. at 322-23, 106 S.Ct. at 2552-53.

Here, the United States has not and cannot meet its burden of demonstrating that KPMG was the organizer of Deerhurst, or that KPMG participated in the sale of an interest in the Deerhurst investment. This factual matter is an essential element in Defendant's offset affirmative defense. The United States will bear the burden of proof at trial on the issue of whether KPMG was a promoter of the Deerhurst investment, such that the existence of a promoter penalty investigation of KPMG regarding the Deerhurst investment renders Sala's November 2003 amended federal income tax return ineligible as a qualified amended return. Because Defendant cannot establish this essential element of its case, summary judgment on this issue is appropriate.

### 2. The Accuracy Penalty Is Inapplicable Because Plaintiffs Filed An Amended Return Eliminating Any Understatement.

It is undisputed that Plaintiffs filed an amended return for 2000 in November of 2003, eliminating the loss and thus any potential understatement, well in advance of any audit. If this 2003 amended return were a "qualified amended return" for purposes of § 1.6664-2(c)(3)(ii) of

15

the Treasury Regulations, then there would be no underpayment of tax. If there were no underpayment of tax, then the government could not raise an unasserted accuracy penalty under § 6662 as an offset, because the imposition of the accuracy penalty is predicated on the existence of an underpayment.[5]

Section 1.6664-2(c)(3)(ii) of the Treasury Regulations provides that the existence of an IRS audit of a promoter in connection with "an activity described in section 6700(a) with respect to which the taxpayer claimed any tax benefit on the return directly or indirectly through the entity, plan or arrangement described in section 6700(a)(1)(A)" will disqualify a taxpayer's return from status as a "qualified amended return."

Section 6700(a) provides a civil penalty against one who either (1) *organizes* (or assists in the organization of) a partnership or other entity, plan or arrangement, or (2) *participates* in the sale of the partnership, entity, plan or arrangement, and who either (1) makes a false or fraudulent statement about tax benefits with respect to tax benefits, or (2) provides a gross valuation overstatement. The "activity described in section 6700(a)" in § 1.6664-2(c)(3)(ii) of the Treasury Regulations is thus the organization of the partnership (or other entity plan or arrangement), or participation in the sale of partnership interests, coupled with making false statements about the availability of tax benefits.

Under the governing Treasury Regulation, it is not enough that a promoter is under a promoter penalty examination for some other conduct; the examination must relate to "the activity ... with respect to which the taxpayer claimed any tax benefit on the return directly or indirectly through the entity, plan or arrangement." Thus, KPMG's role as a promoter of BLIPS,

---

[5] We note that the IRS has refunded illegally assessed suspended interest with respect to other investors in Deerhurst. *See* Exhibit 19 at pp. 84-85 (Christopher Dice Deposition, August 29, 2006). The IRS and the DOJ Tax Division appear to be attempting to punish Sala for exercising his right to have his refund claim determined by the courts.

16

assuming it was established, is irrelevant to the offset issue because Sala did not invest in BLIPS. Likewise, assuming KPMG was under investigation for its role in promoting SOS, that too is irrelevant because Sala did not invest in any SOS transaction organized or sold by KPMG.

The Treasury Regulations do not prevent an amended return from eliminating accuracy penalties even when the taxpayer's return preparer is under examination for possible penalties under sections 6694 (negligent or willful return preparation) or 6701 (aiding and abetting understatements of tax liability) of the Code, even if the preparer examination relates to the preparation of the taxpayer's return.

The government cannot establish that KPMG was under examination with respect to the organization or sale of any interest *in Deerhurst*. The factual discovery and the deposition testimony in this case establishes that Andrew Krieger and Michael Schwartz were the persons responsible for organizing the Deerhurst entities, with the assistance of Rosenman & Colin, a New York law firm. Neither Krieger, Schwartz, nor the law firm had any affiliation with KPMG.

Krieger testified that he had no communication with anyone from KPMG. Schwartz's only communication with KPMG were conversations with Tracie Henderson regarding how the Deerhurst investment should be reported on Sala's tax return. Thus, there was no participation by Henderson and KPMG in the sale of any interest in the Deerhurst investment to Sala. Henderson's role was limited to reviewing the proposed investment in Deerhurst as Sala's return preparer.

## C.   Summary And Conclusion

The Government's attempt to deny Plaintiffs a refund of approximately $1.5 million illegally assessed and collected, with its belated assertion of an accuracy penalty should be

17

rejected. Plaintiffs followed the letter of the law, which was designed to protect them from the government's assertion of these penalties. The very narrow exception to that protection does not apply in this case. The Government's discovery yielded no credible evidence with respect to its assertion that the protection is unavailable because of the IRS's examination of KPMG and its activities. Extensive factual issues remain to be decided at trial, and the record should not be further encumbered with needless evidence relating to accuracy penalties.

WHEREFORE, Plaintiffs respectfully request this Court enter an order of Partial Summary Judgment on the Offset Affirmative Defense raised by the Defendant.

DATED this 5th day of February, 2007.

CHICOINE & HALLETT, P.S.

s/ John M. Colvin
Darrell D. Hallett
John M. Colvin
Chicoine & Hallett, P.S.
Attorneys for the Plaintiffs Carlos E. Sala
  and Tina Zanolini-Sala
1011 Western Ave. Suite 803
Seattle WA, 98104
Telephone: (206) 223-0800
Facsimile: (206) 467-8170
Email: dhallett@chicoine-hallett.com
       jcolvin@chicoine-hallett.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2007, I electronically filed OPENING BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: DEFENDANT'S OFFSET DEFENSE using the CM/ECF system, which will send notification to the following:

    David N. Geier:    David.N.Geier@usdoj.gov

    Anton. L. Janik, Jr.:    Anton.L.Janik@usdoj.gov

    Philip Blondin:    Philip.Blondin@usdoj.gov

I declare under the penalty of perjury under the laws of the State of Washington and the United States that the foregoing is true and correct.

DATED this 5th day of February, 2007.

    CHICOINE & HALLETT, P.S.

    s/ John M. Colvin
    Darrell D. Hallett
    John M. Colvin
    Chicoine & Hallett, P.S.
    Attorneys for the Plaintiffs Carlos E. Sala
        and Tina Zanolini-Sala
    1011 Western Ave. Suite 803
    Seattle WA, 98104
    Telephone: (206) 223-0800
    Facsimile: (206) 467-8170
    Email: dhallett@chicoine-hallett.com
        jcolvin@chicoine-hallett.com