# EXHIBIT 10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:05-cv-00636-LTB

CARLOS E. SALA, and
TINA ZANOLINI-SALA,

        Plaintiffs,

v.

UNITED STATES OF AMERICA,

        Defendant.

---

DECLARATION OF CARLOS E. SALA REGARDING
PLAINTIFFS' OPPOSITION TO UNITED STATES' MOTION FOR STAY

---

I, CARLOS E. SALA, being above 18 years old and competent to testify hereby declare and state:

    1.    I attended the University of Georgia at Athens and obtained a B.B.A. in Accounting and Finance in 1984.

Page 1
DECLARATION OF CARLOS E. SALA
RE: OPP. TO MOTION TO STAY

2. After college, I worked for Ernst & Young, first for three years as an auditor, and then subsequently in the E&Y Mergers and Acquisitions Group in New York. In 1990, one of our leveraged buyout clients in Texas (Dal-Tile International) hired me to oversee its Mexican operations. While this company was privately held after the leveraged buyout, it was comparable to many public companies in size and financial complexity. I subsequently became the CFO of this company, and my responsibilities included complicated financing transactions, as well as foreign currency transactions.

3. In 1996, I left Dal-Tile International to work as the CFO of Abacus Direct ("Abacus"), a small public company whose business was compiling customer information databases for catalogue companies and others. Stock options formed part of my compensation from Abacus.

4. Ultimately, in 1999, Abacus was acquired by an internet company, DoubleClick. The deal closed in December of 1999. Because of my status as an insider, I could not exercise my options and sell stock until after the first financial statements reflecting combined operations of the merged company were released.

5. As soon as the restrictions on selling lapsed, I exercised my options and sold my stock in late February of 2000. DoubleClick, along with many other internet companies, suffered significant declines in its stock price beginning in March of 2000.

Page 2
DECLARATION OF CARLOS E. SALA
RE: OPP. TO MOTION TO STAY

6.  After disposing of my DoubleClick stock, I focused upon managing my personal investments. I thought that the stock markets were then unattractive investments because I believed further significant declines were ahead. I invested much of my money into the municipal bond and other fixed income markets. I wanted to invest 10%- 15% of my total investment assets in non-equity investments with a potential for more profit than the fixed income markets. I was interested in and had some experience in the foreign currency markets.

7.  PricewaterhouseCoopers, LLC ("PwC") was the accountant for Abacus. As well as preparing the tax returns for Abacus, PwC also prepared my personal federal and state tax returns for years prior to 2000.

8.  In 1998, I met Mr. Johnathan Raby who then worked for PwC in Colorado. Mr. Raby provided financial advice to PwC clients.

9.  In early 2000, I discussed my financial situation and investment considerations with Mr. Raby. Mr. Raby referred me to Michael Schwartz. Mr. Raby recommended that I contact Michael Schwartz and discuss with Mr. Schwartz the Deerhurst investment program.

10. I subsequently met with Michael Schwartz regarding a potential investment in Deerhurst. The proposed Deerhurst investment would be in a fund managed by Andrew Krieger, an experienced trader in currency positions who I was told had produced impressive results over an almost 10 year period. I understood that Deerhurst had a strong track record

investing in positions on foreign currencies over many years. I performed extensive due diligence on Mr. Krieger and his investment history before determining to invest in the fund.

11. I had numerous meetings and discussions with Mr. Schwartz and Mr. Krieger in connection with my evaluation of the proposed Deerhurst investment. No KPMG partner or employee referred me either to Mr. Schwartz or to Deerhurst, nor was any KPMG partner or employee a participant in the meetings or discussions I had with them during my evaluation of their program.

12. The Deerhurst investment program required a substantial investment by participants, as well as a five-year commitment on the part of investors. I invested $8.9 million dollars in this program.

13. My overall goal in investing with Deerhurst was to make money. I also understood I would achieve a significant tax benefit by reason of the Deerhurst investments including both long and short options, and the tax law treatment of options.

14. I understood that a tax attorney at Brown & Wood in New York, R.J. Ruble, had reviewed the transaction and agreed to provide a legal opinion. Through Michael Schwartz, I received a specimen opinion prepared by Mr. Ruble in advance of investing in the transaction. Because I wanted to discuss the tax ramifications of the transaction with the person who had prepared the opinion prior to any investment in Deerhurst, Mr. Schwartz

Page 4
DECLARATION OF CARLOS E. SALA
RE: OPP. TO MOTION TO STAY

arranged a teleconference for me with Mr. Ruble. I briefly discussed the substance of his opinion with Mr. Ruble in that teleconference.

15. While I was determining whether or not to invest in the Deerhurst transaction, I hired Larry Nemirow, a tax attorney with the Denver law firm of Davis Graham & Stubbs, to represent me in the transaction. Mr. Nemirow was not referred to me by KPMG. I hired Mr. Nemirow in October of 2000. Mr. Nemirow reviewed the various agreements, and assisted in the negotiations regarding the terms of my investment. He also reviewed drafts of the legal opinions which I received in connection with the Deerhurst investment, including the opinion issued by Mr. R.J. Ruble, to be sure that the factual representations in those opinions were accurate.

16. I hired KPMG to prepare my state and federal tax return for 2000. KPMG continued to prepare my returns through 2003. Tracie Henderson was the KPMG employee who was primarily responsible for the preparation of the 2000 returns. I believed it was important for Ms. Henderson, as the return preparer, to understand the Deerhurst transactions and the tax consequences I understood would result from those transactions. In my corporate career, I always attempted to keep the accountants responsible for preparation of the corporate return informed about any potential transactions that would have significant tax consequences *prior* to conducting the transactions.

17. I understand from documents filed in this proceeding by the government that KPMG's records indicate Ms. Henderson spent approximately 12.5 hours with respect to Deerhurst transaction between October 6 and October 13, of 2000. These internal time records, kept on an hourly basis by Ms. Henderson, included her review of Mr. Ruble's proposed tax opinion, as well as discussions with her concerning other attorneys with whom I could consult and who had particular expertise in S corporations since Mr. Ruble's opinion included an analysis of certain S Corporation issues involved in the Deerhurst program.

18. I have reviewed the government's allegations in their pleadings in my case that I considered and/or agreed to enter into numerous tax shelter transactions with KPMG in 1999 and 2000. Of the various mentioned transactions, I gave significant consideration only to the BLIPS program. I never agreed to enter into that program, nor did I pay any fees for it. One of my concerns regarding the BLIPS investment was its short term existence and, in my view, its inability to demonstrate a significant profit potential.

19. I have briefly reviewed the approximately 4,000 pages of documents which the government obtained from KPMG and recently turned over to my counsel. Almost all of the documents consist of items used in the preparation of tax returns, such as brokerage statements, and the returns themselves. A small portion of the documents consists of material that the government claims reflects my consideration of transactions promoted by KPMG.

20. I have no recollection of hearing any presentation regarding or giving any consideration to the Foreign Leveraged Investment Program ("FLIP"), the Tax Relief Act Charitable Trust ("TRACT"), the Common Trust Fund Straddle ("CTF"), the Offshore Portfolio Investment Strategy ("OPIS"), a Rabbi Trust transaction, the Partnership Option Portfolio Strategy ("POPs") and/or the "Jones Day Transaction." I have reviewed the documents submitted by the government in support of its allegation that I considered and/or agreed to enter into these programs, virtually all of which are KPMG internal documents that were never shared with me. I do not believe those documents conflict with my own recollection that I, in fact, did not give any significant consideration to any of these programs. Most of them, I believe, were not even mentioned to me, much less presented to me.

I declare under penalty of perjury under the laws of the United States of America and the State of Colorado that the foregoing is true and correct.

DATED this 2nd day of February, 2006

_____
Carlos E. Sala

Page 7
DECLARATION OF CARLOS E. SALA
RE: OPP TO MOTION TO STAY