# EXHIBIT 14

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

- - -

CARLOS E. SALA and )
TINA ZANOLINI SALA, )
                        )    Case No:
           Plaintiffs, )    05-CV-00636-LTB-OES
                        )
vs. )
                        )
UNITED STATES OF AMERICA )
                        )
           Defendant. )
------------------------------

**CERTIFIED COPY**

THE DEPOSITION OF

LAURENCE NEMIROW

DENVER, COLORADO

SEPTEMBER 14, 2006

ATKINSON-BAKER, INC.
COURT REPORTERS
(800) 288-3376
www.depo.com

REPORTED BY:  MARTHA H. BENNETT
FILE NO.:  A007B17

1    recall that he did.

2              Q.    Have you been asked to testify at trial in

3    this matter?

4              A.    No.

5              Q.    If asked to testify, will you do so?

6              A.    Yes.

7              Q.    Do you have any plans during July of 2007 at

8    this point?  Occasions?  Anything scheduled?

9              A.    No.

10             Q.    Any other major matters you've got that would

11   keep you out of the office?

12             A.    I don't think so.

13             Q.    All right.  When did you first meet Carlos

14   Sala?

15             A.    It must have been in October of 2000, right

16   around that time frame.

17             Q.    Why do you say it must have been in October of

18   2000?

19             A.    That's my recollection.  I think that I was

20   able to put that together from my notes.

21             Q.    Tell me about the first meeting with Carlos.

22             A.    Carlos called me -- I think he called me --

23   and asked me whether I would represent him in connection with

24   the Deerhurst transaction.

25             Q.    Did he say why he needed representation?

1          A.      I don't recall.   I mean, people don't usually

2     tell me why they need representation; they just ask for

3     representation.   But, no, I don't recall.

4          Q.      Did you ask him if there was litigation

5     involved with this transaction?

6          A.      No, I did not.

7          Q.      What did he in particular ask you to do?

8          A.      I don't recall what he asked me to do, but I

9     think I recall what I told him I would be willing to do.

10         Q.      All right.   What was that?

11         A.      I would review the tax opinion from Brown &

12    Wood with a view towards trying to ensure that it would

13    provide penalty protection in the event that the IRS asserted

14    civil penalties.

15         I also told him that I would review the underlying

16    transactional documents, and comment on them, and try to make

17    sure that they worked.

18         Q.      What does that mean, "try to make sure that

19    they worked"?

20         A.      That they produced the intended deal; the

21    intended economic arrangement between the parties.

22         Q.      What was that intended economic relation

23    between the parties?

24         A.      Well, Carlos is part of the Deerhurst

25    transaction, invested in a limited liability company.   And

1    what I'm talking about are the terms of the investment in

2    that company.   I think "Deerhurst Strategies" is the name of

3    the company.

4              Q.     Could that have been "Deerhurst Trading

5    Strategies"?

6              A.     That could have been, yes.

7              Q.     And your role, then, in that regard, was to

8    ensure that the formation documents were correct to put them

9    in that?

10             A.     No, not the formation documents; it was the

11   terms of the Deerhurst Trading Strategies deal.   It was a

12   complex document.   I read the document and made sure the

13   allocation provisions in the LLC agreement would stand up,

14   and if they were what was intended; and if the termination

15   provisions would work.   All the economic provisions of the

16   document, were what I looked at.

17             Q.     You said "they would work."   Does that mean to

18   you that they would survive legal scrutiny?

19             A.     What I meant to say was that they would

20   capture the intended economic arrangement between Carlos and

21   the company and the rest of the members.

22             Q.     Okay.   Now, we're talking here about Deerhurst

23   Trading Strategies, LLC?

24             A.     Uh-huh.

25             Q.     Were you aware of when that transaction would

 1   begin?   When Carlos would enter Deerhurst Trading Strategies,

 2   LLC?

 3          A.     I believe it was at the end of 2000.

 4          Q.     Did Carlos ask you to review any transactions

 5   he was entering before that time period?

 6          A.     Yes.

 7          Q.     What was that?

 8          A.     He entered into a trading account with

 9   Deerhurst, I believe, prior to entering into the Deerhurst

10   Trading Strategies, LLC.

11          Q.     Did you do any review work for that?

12          A.     Less; but, yes.

13          Q.     Were you asked to review that transaction?

14          A.     Yes; yes.

15          Q.     What's your understanding of that transaction?

16          A.     That transaction was an acquisition of short

17   and long options.

18          Q.     What was the goal of that transaction?

19          A.     The goal was to make money.

20          Q.     Was another goal to get a tax loss?

21          A.     There was also a goal to get a tax loss.

22          Q.     Were they equal goals?  Was one more important

23   than the other?

24          A.     That, I don't know.

25          Q.     Did -- we'll come back to that.