# EXHIBIT 9

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF COLORADO

 3

 4  _____
    CARLOS E. SALA and TINA ZANOLINI SALA,)  05-CV-00636-LTB-PAC
 5                                      )
                 Plaintiffs,            )
 6                                      )
    vs.                                 )
 7                                      )
    UNITED STATES OF AMERICA,           )   CERTIFIED COPY
 8                                      )
                 Defendants.            )
 9  _____   )

10

11

12                 DEPOSITION OF BRUCE LEMONS

13                    SAN DIEGO, CALIFORNIA

14                       OCTOBER 6, 2006

15

16

17

18

19

20

21

22  ATKINSON-BAKER, INC.
    COURT REPORTERS
23  (800) 288-3376
    www.depo.com
24
    REPORTED BY:  ELAINE J. COHEN, CSR 2706
25  FILE NO.: A00842D
```



1  A   Okay. Remember now, the only thing I have a clear
2  recollection of is having talked to somebody from in or
3  around an airport and said I thought that the analysis in an
4  opinion was reasonable.
5  Q   I want to just make sure I understand what you mean
6  by the analysis in the opinion.
7  A   That's all I remember.
8  Q   Sitting here now, are you able to shed any more
9  light on what you meant by analysis in an opinion?
10 A   No. I just don't recollect. I clearly wasn't hired
11 to give an opinion and so -- you know, it was just the
12 analysis in the opinion. That's all I remember.
13 Q   In giving an analysis, would it have been important
14 for you to know if the economic projections relied upon were
15 not accurate?
16 A   But see, I don't recollect whether somebody asked me
17 just to tell them that the legal analysis was okay. I don't
18 recollect that. If all somebody asked me to do -- if you
19 handed me that piece of paper and you said does this legal
20 analysis look reasonable, I'm not sure the economics play a
21 major role in all that.
22 Q   So you weren't focusing in on the --
23 A   I don't recollect.
24 Q   But part of the economic analysis -- part of the
25 legal analysis, you would agree, in this opinion talks about

```
 1  the economics of the transaction, the economic substance of
 2  the transaction.
 3       A    Right.  But as a lawyer, since you are not an
 4  arbiter of -- in a matter that's inherently factual in
 5  nature, you can't -- I can't opine to you on the facts.  I
 6  can only take them as assumptions.  I don't know how you get
 7  deeper than somebody representing to you that the
 8  transaction has real economics.  I don't know how you do
 9  that.
10       Q    All I'm asking you is would you have wanted to
11  know if the projections for the economics were inaccurate or
12  not sound in this opinion, would you have wanted to be aware
13  of that in giving advice?
14       A    I'm not even sure that -- I'm just not sure what
15  somebody asked.  All I remember is saying that the analysis
16  was reasonable and I don't have any other recollection.
17       Q    Would you have wanted to know the economics?
18       MR. HALLETT:  Counsel, I object.  We have treaded over
19  this five times.  We've got airplanes to catch.  Let's
20  please don't repeat questions 50 times.  It's been asked.
21       Q    BY MR. GEIER:  Okay.  You can ignore that.
22       MR. HALLETT:  You cannot ignore that.  I'm objecting on
23  the grounds it's been asked and answered.
24       Q    BY MR. GEIER:  And you can go ahead and answer.
25  Would you have wanted to know?  That's all I'm asking.
```