IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF COLORADO

| | | |
|---|---|---|
| CARLOS E. SALA and<br>TINA ZANOLINI SALA,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>UNITED STATES OF AMERICA<br><br>　　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No. 05-cv-00636-LTB-PAC |

UNITED STATES' MEMORANDUM IN SUPPORT OF MOTION FOR RELIEF UNDER
FED. R. CIV. P. 56(f) WITH RESPECT TO PLAINTIFFS' SECOND MOTION FOR
PARTIAL SUMMARY JUDGMENT RE: DEFENDANT'S OFFSET DEFENSE

　　　　The United States of America, by its undersigned counsel, submits the following memorandum in support of its motion pursuant to Fed. R. Civ. P. 56(f) and requests that adjudication of the Plaintiffs' Second Motion for Partial Summary Judgment (Docket No. 114) (referred to as Sala's motion for summary judgment on offset) be postponed until after the United States has an opportunity to obtain sworn testimony from Carlos Sala's accountant, former KPMG partner Tracie Henderson.  Because Ms. Henderson, through her counsel, has said that she would refuse to answer questions and invoke her rights under the Fifth Amendment, her testimony cannot be obtained in connection with the instant motion, and Ms. Henderson will be unavailable to testify at the trial of this matter scheduled for July 2007.  The United States therefore requests that the Court postpone any ruling on the Salas' motion; in addition, since Henderson also has information that would be relevant to the merits of the tax shelter issues that

will be presented for trial, the United States in the near future intends to renew its request for a stay of the entire proceeding.[1]

Carlos Sala, in this proceeding, requests a refund of taxes and interest for the tax year 2000. The United States contends that Sala is not entitled to a refund because the underlying transaction giving rise to the claimed refund is an abusive tax shelter. Sala contends otherwise of course, but he also claims that even if the shelter transaction does not create the tax benefits he seeks, he would still be entitled to a refund of at least a portion of the interest. In response to this contention, the United States has asserted that Sala is also liable for an accuracy-related penalty pursuant to § 6662 of the Internal Revenue Code. Even though the Internal Revenue Service did not assess that penalty against Sala, the United States contends that it may setoff any interest that would be owing to Sala against the much larger penalty that Sala owes to the United States.

Sala, in his motion for summary judgment on offset, contends that the Court need not conduct a trial on the factual issues relating to the accuracy-related penalty, because the undisputed material facts establish that he does not owe the penalty. That is, Sala contends that even though he initially filed an income tax return on which he claimed the tax shelter benefits, in November 2003 he filed an amended return on which he eliminated those claimed benefits. He filed that amended return before he was under audit by the IRS (but he does not dispute that

---

[1] The United States has also been unable to depose Raymond J. Ruble, the attorney who provided Plaintiffs with a legal opinion regarding this transaction. Mr. Ruble is a defendant in a pending criminal prosecution. *United States v. Stein*, S1 05 Cr. 888 (S.D. N.Y.). At the inception of this case, Plaintiffs' identified both Ms. Henderson and Mr. Ruble as individuals likely to have discoverable information that they may use in support of their case. The Government's initial motion requesting a stay (Docket No. 15) was denied (Docket No. 82) as was a motion for reconsideration (Docket Nos. 86 and 93).

the accounting firm KPMG was under audit as a tax shelter promoter at that time).[2]  Sala obviously changed course again when, in 2004, he filed yet another amended return with the IRS on which he asserted that he could claim the tax benefits of the shelter transaction that he had claimed on his original return.  The IRS denied Sala's refund claim, and this suit followed.

The narrow issue presented in Sala's motion for summary judgment on offset is whether the amended return he filed in 2003 is a "qualified amended return" for the purposes of Treas. Reg. § 1.6664-2.  If it is, then Sala asserts that he would not owe a penalty.  The regulation states that an amended return is not a "qualified amended return" if, before that amended return was filed, "any person [KPMG, in the present case] is first contacted by the IRS concerning an examination of that person under section 6700 (relating to the penalty for promoting abusive tax shelters) for an activity with respect to which the taxpayer claimed any tax benefit on the return directly or indirectly through the entity, plan or arrangement described in section 6700(a)(1)(A)."  Section 6700(a)(1)(A), in turn, describes the type of plan or arrangement that KPMG must have "organize[d] (or assist[ed] in the organization of)" as being "(i) a partnership or other entity, (ii) any investment plan or arrangement, or (iii) any other plan or arrangement."  The language in § 6700(a)(1)(A) is broad, and intentionally so.  The plain language of that statute encompasses a sweeping reference to "any plan or arrangement."  Congress certainly was aware of the broad scope of § 6700.  For example, Assistant Treasury Secretary John E. Chapoton testified that such broad language was needed:  "We believe that the penalty must be applicable to a wide variety of investment plans and arrangements in order to be effective."  Tax Compliance Act of 1982 and Related Legislation:  Hearing Before the Committee on Ways and

---

[2]     KPMG, in its letter to counsel for Sala, given in lieu of a Rule 30(b)(6) deposition, stated that it was under investigation beginning in 2001.  (Exhibit AA, Docket No. 119)

- 3 -

Means, 97th Cong., at 48 (May 18, 1982) (Statement of John E. Chapoton, Assistant Treasury Secretary for Tax Policy).

Sala acknowledges that KPMG was under investigation, but contends that the actions of KPMG, as they relate to the particular SOS Deerhurst tax shelter at issue in this case, do not fall within the broad reach of § 6700(a)(1)(A). In general, Sala makes his point (brief at 7) generally by referring to others such as Michael Schwartz, who designed the shelter, and Andrew Krieger who executed the trades, who both unquestionably would fall within the ambit of having organized or assisted in the organization of the type of plan or arrangement described in § 6700(a)(1)(A). We do not dispute Sala's point on this score, but that does not answer the question before the Court. As we describe herein, the question whether KPMG organized or assisted in the organization of Sala's "plan or arrangement" is one that requires testimony from KPMG accountant Tracie Henderson, and therefore the resolution of that issue should await the development of further facts.

Sala nowhere disputes that Henderson's testimony would be highly relevant on this question. Indeed, at the inception of this case, Sala identified Henderson as someone likely to have discoverable information and on whom he intended to rely to support his case. Henderson has refused to provide testimony, invoking her Fifth Amendment right to do so. As set forth more fully below, and in the affidavit of David N. Geier accompanying the Government's Motion, Henderson is likely to have knowledge relevant to a resolution of the issues raised in Sala's offset summary judgment motion.

FACTUAL BACKGROUND

On December 12, 2005, the Government sought leave to amend its answer to assert two additional defenses to this action. (Docket No. 40.) Leave to amend was granted on February 15, 2006. (Docket No. 66.) One of the defenses, the offset defense, is at issue in the instant motion.[3] The offset defense, as stated both in Sala's motion and in the Government's previously filed motion to amend, is predicated on a determination that KPMG, Plaintiffs' accountant, is found to have organized or assisted in the organization of Sala's "plan or arrangement." Discovery on this point is incomplete because of the refusal of Henderson to provide testimony. Without the testimony of Henderson, the United States cannot adequately defend against the relief sought by Sala's offset summary judgment motion.

In our motion to stay this proceeding pending the criminal proceeding in the Southern District of New York, we pointed out that KPMG and Henderson worked extensively with Sala to find him a tax shelter to avoid tax on his significant income. In late 1999 it attempted to sell him a shelter known as TRACT. (See Exhibit H to Reply, Docket 44.)[4] Then, in mid 2000, Henderson had apparently sold to Sala the BLIPS transaction, but that deal fell through after the IRS issued Notice 2000-44, effectively invalidating the shelter. (Exhibit I to Reply, Docket 44.) Henderson then tried to sell to Sala the Common Trust Fund Straddle shelter (Exhibit M to Reply, Docket 44.) KPMG also tried to sell to Sala the Offshore Portfolio Investment Strategy (OPIS). (Exhibit N to Reply, Docket 44.) Through all of this Henderson remained optimistic that she could work with Sala to find a tax shelter that would suit him. In September of 2000

---

[3] The other defense, that this is "a case involving fraud," is the subject of another motion for judgment and is contested.

[4] A fact which Sala denies but Henderson can confirm.

- 5 -

Henderson sent an internal KPMG email noting that she had just gotten off the telephone with Sala and that "he said he would do a transaction with [KPMG] if we are able to do one. Otherwise, <u>he will use us as an advisor on another transaction</u>. We are hoping to do a Jones Day transaction for Carlos Sala." (See Exhibit Q to Reply, Docket 44) (emphasis added.)  Additional facts relating to Henderson's activities are presented by the United States in its Opposition to Plaintiffs' First Motion for Partial Summary Judgment (Docket No. 117).

     As has become apparent, Sala indeed found a tax shelter that he felt suited him, but he insists that KPMG's role was limited to that of a tax return preparer, and nothing more.  To be sure, KPMG and Henderson prepared Sala's return.  But plainly Henderson's role was far greater than that, given her attempts to sell several tax shelters to him.  Moreover, in October 2000, before Sala committed to the Deerhurst transaction, Henderson, at Sala's request, reviewed a Brown and Wood opinion letter with respect to the SOS shelter.  (Exhibit Y to Reply, Docket 44.)  Further, Sala submitted a sworn statement in this case explaining that he discussed the shelter with Henderson in advance of committing to purchase the shelter because of the tax consequences and impact on his tax return, and, indeed, that it was his practice to have done so. (Exhibit B to Plaintiffs' Response to Motion for Reconsideration (Docket No. 88).)

     Henderson's KPMG time records reflect her conversations with Sala's advisors on the shelter transaction, Bruce Lemmons and R.J. Ruble, shortly before Sala entered into the shelter in late October 2000.  (KPMG time records, Exhibit P to Reply, Docket No. 44.)  It thus appears that Henderson's role (and KPMG's role) may have exceeded that of a mere tax return preparer, as reflected in the $25,000 fee paid by Sala to KPMG.  (See KPMG Invoices, Exhibits T and U to Reply, Docket No. 44.)  The KPMG billing statements do not contain detailed breakdowns of the reason for the $25,000 fee – thus from the face of the statements it does not appear that

KPMG's activities were limited to the preparation of Sala's return.  Moreover, KPMG's more recent letter to counsel for the Salas, given in lieu of a Rule 30(b)(6) deposition, noted that "its role was to provide tax advice with respect to this transaction, including by commenting on draft opinion letters, and to prepare the tax returns."  (Exhibit AA, Docket No. 119.)  Thus KPMG, which has reviewed its documents, has admitted that its participation in Sala's tax shelter exceeded the mere preparation of the returns.

Since it could not obtain testimony from Ms. Henderson, the Government deposed two KPMG employees who worked for Ms. Henderson on the Sala matter and who are identified in KPMG's letter to counsel.  The first, Kevin Brady, was introduced to Sala by Ms. Henderson.  Mr. Brady not only had no knowledge of the other shelter transactions KPMG presented to Sala, he had no knowledge of the workings of the Deerhurst transaction at issue here.  He testified that his conversations with Ms. Henderson in connection with Sala were limited to the reporting of the shelter loss on Plaintiffs' federal income tax return and that, unlike Ms. Henderson, he did not have any conversation with Sala prior to his involvement in the Deerhurst transaction.  Deposition of Kevin Brady at pp. 16-17, 58, 64 and 69-73.  The second employee, Angie Napier, was a staff employee in Ms. Henderson's Personal Financial Planning Group.  She testified that she had no involvement in connection with Sala's 2000 federal income tax return at issue here.  Deposition of Angie Napier at pp. 45, 77-78,92, 119 and 159.  The United States therefore attempted to conduct discovery that might substitute for the unavailable testimony of Ms. Henderson, but the witnesses were unavailable to provide testimony on the same subjects as Ms. Henderson.

In response to the Salas' subpoena seeking to determine, in part, the role KPMG played in this case, KPMG's counsel stated that he had not spoken with Ms. Henderson, Ms. Napier or

- 7 -

Mr. Brady. However, KPMG's counsel stated that Sala's SOS transaction was one of the transactions included in KPMG's Statement of Facts appended to the Deferred Prosecution Agreement as a transaction which KPMG knew would not withstand legal scrutiny, that legal opinions based upon representations by taxpayers were not credible, and for which the tax returns KPMG prepared incorporated "bogus tax losses." (Exhibit AA to Docket No. 119).

The testimony of Ms. Henderson is necessary to learn, assess and clarify KPMG's role in the shelter at issue here, and to determine whether KPMG, through Henderson, took sufficient steps and actions to amount to the organization or assistance in the organization of the tax shelter "plan or arrangement" utilized by Sala.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(e), the party opposing a motion for summary judgment may not rest upon the mere allegations or denials of the adverse party's pleading. Rather, the adverse party's response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial on the issues presented in the motion. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In circumstances where a party moves for summary judgment before the opposing party has had an adequate opportunity to discover information necessary for the preparation of affidavits in opposition to the motion, Fed. R. Civ. P. 56(f)[5] authorizes the Court, upon motion of the non-movant, to refuse the motion or to order a continuance or grant such other relief as may

---

[5] **(f) When Affidavits are Unavailable**. Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

be appropriate. The meaning and application of Rule 56(f) is well set out and explained in Edward Brunet's article Timing of Summary Judgment, 198 F.R.D. 679 (2001) ("Brunet Article"):

> Rule 56(f) is the product of a balancing of competing policy considerations. One such policy focuses on the importance of the availability of discovery in the summary judgment process. An opportunity to engage in meaningful discovery is the fulcrum of a notice pleading system, and the resolution of a summary judgment motion before the nonmovant has had that opportunity would undermine the system of which Rule 56 is only one part. That is because it would be patently unfair to permit a judgment to be entered against a person without affording that party the opportunity to gather and submit evidence on his or her behalf. The legal system would not permit this at trial and it should not permit it at the summary judgment stage which is a substitute for trial. For this reason, Rule 56(c) refers specifically to the fruits of discovery as an appropriate element of proof in the summary judgment process. Operation of that process therefore must ensure that parties have sufficient time to gather materials to support and oppose the motion. Because the movant has the tactical advantage of choosing when to file a summary judgment motion, Rule 56(f) is designed entirely to protect the non-movant from having to respond to a summary judgment motion before he or she is able to obtain evidence to oppose the motion.

Significant factors in evaluating a motion under Rule 56(f) include whether evidence of material facts is within the control of the movant and whether the non-movant has had an adequate opportunity to conduct discovery. *See Vivid Technologies, Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795 (Fed. Cir. 1999); *see also* Brunet Article, 198 F.R.D. at 695-702. In deciding whether to grant a motion under Rule 56(f), the Tenth Circuit Court of Appeals considers whether the party moving for relief under that rule has made a proffer that: (1) is authoritative and timely; (2) explains why facts precluding summary judgment cannot be presented; (3) identifies the probable facts not available and what steps have been taken to obtain these facts; and (4) explains how additional steps will enable the nonmovant to rebut the

allegations of no genuine issue of fact.  *Committee for the First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992).

## ARGUMENT

**I.  DEFENDANT IS ENTITLED TO RELIEF UNDER RULE 56(f) WITH RESPECT TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant is entitled to relief under Rule 56(f) as all elements with respect to a motion under that rule are fully satisfied.

**A.  The Request for Relief is Authoritative and Timely.**

Defendant's request for relief under Rule 56(f) plainly is authoritative and timely.  The request is made by the formal motion accompanying this brief and is supported by a declaration executed by one of defendant's trial attorneys.  Pursuant to D.C.COLO.LCivR7.1(a), counsel for plaintiffs has been fully informed of this decision, and unsuccessful attempts were made to secure an agreeable timeframe for response to the underlying motion for partial summary judgment.  Further, the instant motion has been filed and served prior to the expiration of the time for responding to plaintiffs' motions for partial summary judgment.  No more is required in order for the request for relief under Rule 56(f) to be authoritative and timely.  *See Resolution Trust Corp. v. North Bridge Associates, Inc.*, 22 F.3d 1198, 1204-05 (1st Cir. 1994).

**B.  Facts Precluding Summary Judgment Cannot be Proffered Because A Relevant Witness Has Refused to Testify.**

Good cause exists for the Government's not having previously adduced material facts. The Government can hardly be said to have had an adequate opportunity to conduct discovery on the issue of KPMG's role, where the KPMG employee who had substantial contact with Sala and was marketing tax shelters to him refuses to testify.  Further, the suggestion that discovery has

been adequate is not well taken where, as is the case here, that individual has been identified by Plaintiffs as someone likely to have discoverable information.

Summary judgment should not be granted "where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5, 106 S.Ct. 2548, 2511 n.5 (1986); *Committee for the First Amendment*, 962 F.2d at 1521. Accordingly, because there has been no opportunity for full discovery of the information essential to the United States' opposition, this Court should grant the United States motion for Rule 56(f) relief.

      C.      The United States Has a Reasonable Belief that Discoverable Material Facts Exist.

Accepting the representations made by KPMG in connection with its deferred prosecution agreement and again during the course of this litigation in lieu of testimony, the United States has a reasonable belief that the testimony of Tracie Henderson can shed light on KPMG's role in connection with Sala's shelter. We also know from a combination of KPMG's records, testimony and Sala's sworn statement that Henderson communicated with Sala, with Ruble, with Lemmons and possibly others prior to Sala's entry into the transaction. Henderson also spoke with the shelter's designer, Michael Schwartz about the structure of the transaction.

In determining whether Henderson's testimony would be material, it is important to understand that the threshold of materiality at this point, that is, prior to the completion of adequate discovery, is necessarily low. *Resolution Trust*, 22 F.3d at 1207. In *Resolution Trust*, the First Circuit Court of Appeals stated that "[w]e do not believe that it is either necessary or desirable for a court to attempt to probe sophisticated issues on an undeveloped record. If, at this stage of the proceedings, lack of materiality is not apparent, then an inquiring court should err, if


at all, on the side of liberality." *Id.*, at 1208. The Tenth Circuit agrees that "[u]nless dilatory or lacking in merit, the motion should be liberally treated." *Committee for the First Amendment*, 962 F.2d at 1522 (quoting James W. Moore & Jeremy C. Wicker, Moore's Federal Practice ¶56.24 (1988)).

Further, the resolution of this defense on summary judgment will not perceptibly shorten the trial on the merits of the tax shelter and the claimed losses and deductions arising therefrom. As recognized in *Greenville Equipment Co. v. United States Casualty Company*, 180 F.Supp. 715, 717 (D.Del. 1960):

> In short, a resolution of the legal questions raised by the motion will not perceptibly shorten the trial. On the other hand, a determination at trial of the fact issues may eliminate the need for deciding the legal questions which defendant's motion raises. In these circumstances, it is particularly appropriate that the Court, in the exercise of its discretion, deny the motion without prejudice."

The reasoning of *Greenville* applies with great force to plaintiffs' motion for partial summary judgment. The bona fides of the shelter transaction and Plaintiff Carlos Sala's reasons for participating are not before the Court on summary judgment. These issues will be a part of the trial. The trial testimony, from both parties, will include the reasons why Carlos Sala entered into the transaction and will include the testimony of individuals who communicated with Plaintiffs (or Plaintiffs' agents or representatives) about Carlos Sala's knowledge and intent regarding the shelter transaction. This testimony should include Tracie Henderson's account of her contact with Sala and his advisors before and after Sala entered into the shelter transaction. The issues raised in the Plaintiffs' Motion focus only on the discrete issue of the specific role played by KPMG and Ms. Henderson in the shelter transaction. If tried, these issues will not

encompass a lengthy examination.  A resolution on summary judgment will not perceptibly shorten the trial.

        D.        Discovery of these Additional Facts Will Enable the United States to Rebut the Allegations Presented in Plaintiffs' Motion

Because the KPMG witnesses who were able to provide testimony had no information on the role of KPMG and because they and Plaintiff Carlos Sala have identified former KPMG partner Tracie Henderson as someone with knowledge, Ms. Henderson's testimony is necessary to determine whether her actions fall under 26 U.S.C. § 6700(a)(1)(A).  Given the broad scope of the relevant statutory language and the fact that Ms. Henderson had communications with Plaintiffs, with Raymond Ruble and with shelter creator Michael Schwartz about the shelter transaction before Sala committed to purchase the shelter and entered into the transaction, her actions may fall within the scope of the statute's and regulation's definition.  Her testimony may provide the factual support necessary to rebut summary judgment.

CONCLUSION

WHEREFORE, defendant prays that its motion be allowed and that the Court continue proceedings with respect to the motion until after the United States is able to depose Ms. Henderson.

>TROY A. EID
>United States Attorney
>
>
>MARK S. PESTAL
>Assistant United States Attorney
>
>s/ David N. Geier
>DAVID N. GEIER
>ANTON L. JANIK, JR.  CO#35164
>AMY MATCHISON
>Trial Attorneys, Tax Division
>U.S. Department of Justice
>P.O. Box 683
>Ben Franklin Station
>Washington, D.C. 20044-0683
>Telephone:     (202) 616-3448
>               (202) 305-2558
>               (202) 307-6531
>Facsimile:     (202) 307-0054
>Email:David.N.Geier@usdoj.gov

Street Address:         Judiciary Center Building
                        555 Fourth Street, N.W.
                        Washington, D.C. 20001

CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on March 12, 2007, I electronically filed the foregoing UNITED STATES' MEMORANDUM IN SUPPORT OF MOTION FOR RELIEF UNDER FED. R. CIV. P. 56(f) WITH RESPECT TO PLAINTIFFS' SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT RE: DEFENDANT'S OFFSET DEFENSE with the Clerk of Court using the ECF system which will send notification of such filing to the following e-mail addresses:

dhallett@chicoine-hallett.com

jcolvin@chicoine-hallett.com

and I hereby certify that I have mailed or served the document to the following non CM/ECF participants in the manner (mail, hand delivery, etc.)  indicated by the non-participants name:

Internal Revenue Service
Office of Associate Area Counsel
701 Market Street, Suite 2200
Philadelphia, PA 19106
(Mail)

        s/ Amy Matchison
AMY MATCHISON
Attorney for Defendant
United States of America
Trial Attorney, Tax Division
United States Department of Justice
Ben Franklin Station
P.O. Box 683
Washington, D.C. 20044-0683
Telephone:     (202) 307-6531
Facsimile:      (202) 307-0054
Email:Amy.T.Matchison@usdoj.gov

Street Address:        Judiciary Center Building
555 Fourth Street, N.W.
Washington, D.C. 20001