**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

Civil Action No. 05-cv-00636-LTB-OES

CARLOS E. SALA and
TINA ZANOLINI SALA,

      Plaintiffs,

  v.

UNITED STATES OF AMERICA,

      Defendant.
_____

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STAY PENDING
RELATED CRIMINAL TRIAL
_____

## I. INTRODUCTION

The government submitted a lengthy memorandum and numerous exhibits in support of its attempt to persuade the Court that trial in this case, currently scheduled for July 9, 2007, should be postponed until after the trial of *United States v. Stein* (No. S1 05 Cr.888, S.D.N.Y.).

The *Stein* trial, described by the government as the largest criminal tax case ever brought, is scheduled to begin on September 17, 2007, and the government estimates that its case in chief will take 17 weeks to present. (S.D. N.Y. No. 05-cr-888, Memorandum and Order denying defendants' request for severance, dated April 23, 2007, a copy of which is attached to the accompanying Declaration of John M. Colvin ("Colvin Decl.") as Exhibit 1. It is unknown how long the 18 defendants may take to present their

1

defense, nor can it be readily ascertained when any sentencing may take place if convictions are obtained. Moreover, given the complexity of the case, there is no assurance that the trial date will not be postponed yet again. Essentially, the government asks that this case be put on hold indefinitely in order that it can obtain the testimony of two witnesses.

The government's arguments are ultimately unpersuasive for four reasons. First, the witness whose testimony the government appears to desire the most, Tracie Henderson, is <u>not</u> a defendant in the *Stein* trial, and there is no indication that she will cease to invoke her Fifth Amendment rights after the *Stein* trial is concluded.

Second, the other witness whose testimony the government indicates is necessary for its case, Raymond J. Ruble, if convicted, would retain his Fifth Amendment rights pending sentencing and appeal. Moreover, if acquitted, Ruble could argue that he faces further incrimination with respect to transactions outside the scope of the Superceding Indictment in *Stein*. In this regard, R.J. Ruble is named as an unindicted coconspirator in an Information filed against Bayerische Hypo-Und Vereinsbank, AG, on February 14, 2006, in the Southern District of New York, which alleges participation in three tax shelters which are not part of the KPMG case: CARDS, 357(c), and the Common Trust Fund. *See* Colvin Dec., Exhibit 2. Thus, there is a substantial probability that Ruble will continue to be unavailable long after the *Stein* trial is concluded, if ever.

Third, the government's request for a stay comes too late. Discovery is closed in this case – the discovery cut-off was November 27, 2006. The requested stay of proceedings would yield the government no benefit. Even after the conclusion of the *Stein* trial, the government could not take additional depositions without court approval.

2

Likewise, because Henderson and Ruble are both outside the jurisdiction, the government cannot compel their attendance at trial. Thus, there is no practical mechanism for the government to obtain testimony from Henderson or Ruble for use at trial, even if a stay is granted.

Fourth, the facts produced in discovery in this case provide a strong indication that testimony from Henderson and Ruble, if such could ever be obtained, will not realistically provide the government with any additional non-cumulative material in support of its contentions regarding Plaintiff's subjective profit motive and/or the application of the accuracy penalty.

## II.     Factual Background

The discovery in this case reveals that Henderson and Ruble played only a minor role with respect to Plaintiff's investment in Deerhurst investment, far out of proportion to the significance that the government attempts to assign to their role.

In late November of 1999, Plaintiff Carlos Sala ("Sala") was introduced to Henderson by his friend Tim Gillis ("Gillis"), another partner at KPMG. *See* Exhibit 1 at pp. 59-62 (Carlos Sala Deposition, Vol. I, September 15, 2006); Exhibit 2 at pp. 34-37 (Timothy Gillis Deposition, October 23, 2006).

Henderson was a personal financial planning partner in the Atlanta office of KPMG, who supervised tax return preparation as part of her duties. *See* Exhibit 3 at p. 18, 29 (Kevin Brady Deposition, September 27, 2006). Sala ultimately hired Henderson and KPMG to prepare his federal and state income tax returns for the years 2000 through 2003. Exhibit 1 at 78-80; Exhibit 3 at 42-43, 47. Sala paid KPMG annually for preparing his returns for several years. *See* Exhibit 4 at pp. 225-226 (Carlos Sala Deposition, Vol. II, October 24, 2006).

3

During the year 2000, Henderson attempted to interest Sala in one of the tax strategies marketed by KPMG, the Bond Linked Interest Premium Strategy ("BLIPS"). Exhibit 1 at 80. Sala considered the proposed BLIPS investment (Exhibit 1 at 70-72), but determined not to participate in the BLIPS program, in large part because of the poor economics of the investment as it was presented to him. Exhibit 1 at 71-74, 89-90. As the government begrudgingly admits (Renewed Motion for Stay, page 7), Sala did not enter into any binding agreement and paid no fees with respect to BLIPS, or any other transaction offered or promoted by KPMG.[1] Exhibit 1 at 75. Given that the case at hand involves the tax consequences of an investment in Deerhurst, a non-KPMG related investment, the relevance of any attempts by Henderson or KPMG to interest Sala in one of their tax products is marginal at best.

The investment at issue in this case did not come by way of KPMG, but rather came through one of its competitors. Sala was acquainted with John Raby, who was employed at Pricewaterhouse Coopers ("PwC") in PwC's Colorado office. *See* Exhibit 5 at p. 73 (John Raby Deposition, September 13, 2006); *see also* Exhibit 6 at pp. 135-136 (Michael Schwartz Deposition, Vol. I, June 28, 2006). PwC's Colorado's office had

---

[1] It is possible that Henderson attempted to interest Sala in other tax reduction strategies during the period that she worked with Sala. The government claims that "contrary to Sala's sworn testimony" (Renewed Motion for Stay, at page 6), an email from Henderson sent shortly after the first meeting between Sala and Henderson mentions that the matters discussed at the initial meeting included OPIS (which the government mischaracterizes as a "Son of Boss" in note 7 of the Renewed Motion for Stay) and an "option strategy." The government neglects to point out that the other participant in this meeting (besides Sala and Henderson), Tim Gillis, likewise did not recall any discussion of tax shelters at this initial meeting. Exhibit 2 at pp. 42-50. Such a limited discrepancy in testimony regarding matters of little relevance more than seven years old is clearly not extraordinary or unexpected.

4

performed audit and tax work for Sala's former employer (Abacus Direct, Inc.), and prepared Sala's federal and state income tax returns for several years. Exhibit 5 at 37-39.

Being aware that Schwartz was involved with the Deerhurst investment program (Exhibit 5 at 60), in the Spring of 2000, Raby introduced Sala to Michael N. Schwartz ("Schwartz"). Exhibit 1 at 111-112; Exhibit 5 at 40-41 and 60-62; Exhibit 6 at 12-13.

The Deerhurst investment was organized by Andrew Krieger ("Krieger") and Schwartz, with the assistance of the New York law firm, Rosenman & Colin. *See* Exhibit 7 at pp. 14-15 (Michael Schwartz Deposition, Vol. II, June 29, 2006); Exhibit 6 at 155-160. KPMG was not involved. *See* Exhibit 8 at pp. 389-390 (Andrew Krieger Deposition, Vol. II, October 27, 2006); Exhibit 7 at 134.

In a series of meetings and discussions, Schwartz discussed with Sala the Deerhurst foreign currency trading strategy, the potential for significant profits, and the potential tax benefits available through that strategy. Exhibit 1 at 113-115, 120-124. Thereafter, Sala performed an extensive independent investigation of Deerhurst and its principal, Andrew Krieger. *See* Exhibit 8 at pp. 438-441; Exhibit 4 at 217-220. Sala traveled to New Jersey and met with Krieger and others several times in order to determine whether he was willing to invest in the Deerhurst investment program. Exhibit 4 at 214-216. During these visits, the discussions and investigations focused almost entirely on the merits of the proposed investment, and not the tax implications. Exhibit 4 at 30-31. Neither Henderson nor any other KPMG representative ever attended any of Sala's meetings with Deerhurst and/or Schwartz. Exhibit 1 at 111; Exhibit 6 at 12-13; Exhibit 8 at 438-439.

During his investigation, Sala was provided with a draft legal opinion, written by Raymond J. Ruble ("Ruble") of Brown & Wood.  Exhibit 4 at 62.  Sala spoke with Ruble directly on only one occasion, in the fall of 2000, regarding the draft legal opinion.  This conversation lasted approximately 20 minutes.  Exhibit 1 at 127; Exhibit 4 at 244.

Sala independently employed Denver attorney Laurence Nemirow to review the Brown & Wood opinion and to advise on some of the legal issues involved, including the negotiation of the terms for Sala's participation in the Deerhurst investment.  *See* Exhibit 9 at pp. 14-17 (Laurence Nemirow Deposition, September 14, 2006); Exhibit 4 at 220-221.  This assistance took place over the course of several months, and Nemirow was paid on an hourly basis for his work on Sala's behalf.  Exhibit 4 at 221.  In the course of his representation of Sala, Nemirow reviewed later drafts of the legal opinion as well as the proposed factual representations, and requested numerous changes.  Exhibit 9 at 84, 143-144.  Thus, but for one brief initial telephone call, all of the contact between Sala and Ruble took place through Mr. Nemirow, who has been deposed in this case and who will testify at trial.  Exhibit 4 at 257.  The government's requested deposition of Ruble would be merely cumulative of the information it has already obtained from Nemirow.

During the time he was considering participating in the Deerhurst investment, Sala disclosed his consideration of the Deerhurst investment to Henderson.  Exhibit 4 at 65.  Because he was employing Henderson and KPMG as his income tax return preparer, Sala believed that Henderson should be apprised of significant tax positions with respect to his tax return.  *Id.*  This is consistent with the practice that Sala employed during his tenure as chief financial officer of two publicly traded corporations.  *See* Exhibit 10 at

¶ 16 (Declaration of Carlos E. Sala Regarding Plaintiffs' Opposition to United States' Motion for Stay, dated February 2, 2006).

Henderson reviewed the draft legal opinion written by Raymond J. Ruble of Brown & Wood, regarding the Deerhurst investment, and referred Sala to attorney Bruce Lemons of the Salt Lake City offices of Holland & Hart regarding certain aspects of the legal opinion. Exhibit 4 at 67-68. Sala employed Bruce Lemons to review the draft opinion and determine whether the opinion was reasonable, and paid $1,240 for these services. Exhibit 4 at 222-224; *see also* Exhibit 11 (Bruce Lemons Deposition Exhibit 136).

Henderson also made a telephone call to another attorney referred to Mr. Sala, Beckett Cantley. *See* Exhibit 12 at pp. 18-19 (Beckett Cantley Deposition, October 11, 2006); Exhibit 4 at 262-263. Sala determined not to employ Mr. Cantley's services. Exhibit 12 at 56-57.

Aside from reviewing the opinion in an effort to understand the transaction prior to signing Sala's return, and referring Sala to persons with expertise in the area discussed in the proceeding paragraphs, Henderson took no other material steps with respect to the Deerhurst investment. KPMG has produced its entire file with respect to Mr. Sala to the parties in this case. The only relevant time entries made by Henderson (or any or other KPMG personnel) related to Deerhurst prior to Sala's entry into the transaction (October 6 through October 13, 2000) are consistent with KPMG functioning as return preparer and recommending Sala employ outside experts to review the transaction. *See* Exhibit 13 (Kevin Brady Deposition Exhibit 131). The internal KPMG tracking of Henderson's time indicates that her review of the Deerhurst transaction in her capacity as return

7

preparer and her provision of assistance to Sala in locating professional assistance all occurred within the space of eight days (October 6 to October 13, 2000), and amounted to a total of 12.5 hours (five of which were to review the lengthy legal opinion). See Exhibit J to Janik Declaration. There is one time entry in March of 2001 (subsequent to Sala's entry into the transaction), relating to a discussion with Laurence Nemirow, not any contact with Sala. *Id*. The government has already deposed Nemirow, Lemons and Cantley. The information that might be provided by Henderson with respect to these conversations would merely be cumulative of other evidence already obtained.

With respect to the government's speculation that Sala may have shared his motivations with Henderson, Sala's deposition testimony indicates that all fees paid to KPMG related to the preparation of his tax return, rather than any assistance in evaluating tax products. Exhibit 4 at 44.[2] Kevin Brady indicated that the $25,000 fee charged Sala was reasonable because Sala required more work that most of Brady's other clients, being a very "hands-on" client who required work throughout the year. Exhibit 3 at 103-104.

The government took the deposition of other KPMG personnel who worked closely with Henderson, but these depositions give the government no reason to believe that Henderson played any significant role with respect to Sala's investment in the Deerhurst transaction. Angie Napier, who worked with Henderson and whose role at KPMG was to coordinate the preparation of documents associated with transactions

---

[2] KPMG was paid $25,000 for the following professional services rendered through the due date of Sala's tax return (April 15, 2001): (1) preparation of 2000 Federal and Colorado income tax projections, including discussions with Goldman Sachs and Morgan Stanley; (2) preparation of 2001 Federal and income tax projections for investments planning purpose and related consultations; (3) preparation of 2000 Federal and Colorado individual income tax returns; (4) Form W-2 analysis and related discussions regarding

8

initiated by Henderson's group, testified that she had only heard about Deerhurst in connection with KPMG's preparation of Carlos Sala's tax return.  *See* Exhibit 14 at p. 36-38, 158 (Angie Napier Deposition, September 26, 2006).  Likewise, the senior manager working under Henderson on Sala's return, Kevin Brady, did not testify as to any facts that would support a finding that KPMG was anything more than a return preparer with respect to Deerhurst.

The significance of Henderson's limited review and her offer to refer Sala to experts pales in comparison with the quantity and quality of discussions that Sala had with Krieger, Schwartz and Nemirow.  All of these individuals were deposed in this case, and can provide far more information at trial regarding Sala's motives than an accountant who failed to interest Sala in one of her firm's products.

Again attempting to tar Sala with the admissions made by KPMG in connection with the criminal proceedings against it, the government paraphrases the contents of a letter from a KPMG attorney (not under penalty of perjury or otherwise admissible evidence), as indicating that Sala's transaction was "an SOS transaction 'included' within the *Stein* indictment as having been marketed and implemented by KPMG." Renewed Motion for Stay, at page 8.  The government's characterization of the statement in the letter is incorrect: the letter from KPMG counsel differentiated transactions which had been "marketed and implemented" by KPMG professionals from those for which KPMG prepared tax returns, and placed the Sala Deerhurst transaction in the latter category.  Janik Dec., Exh. J, at page 5.[3]  Thus, the unverified statement of KPMG's attorney,

---

stock option income; and (5) miscellaneous tax advice as requested.  Exhibit 4 at 225-229; Exhibit 13.

[3] The text of the letter reads as follows:

consistent with the documents and testimony, do not establish that KPMG and Henderson did anything more than prepare tax returns.

### III.     THE CASE LAW DOES NOT SUPPORT A STAY

A complete stay of a pending civil action until the outcome of a related criminal proceeding is an extraordinary remedy. *Weil v. Markowitz*, 829 F.2d 166, 174 (D.C. Cir. 1987). The government has failed to make the case that there is sufficient justification for the application of such an extraordinary remedy.

In *SEC v. Nacchio,* 2005 WL 1799372 (D. Colo.) (attached hereto as Exhibit 15), the court recognized that it had the authority to impose discovery limitations, including protective orders under Fed. R. Civ. P. 26(b)(2) after balancing the relative benefits and burdens of particular discovery sought by a party, the importance of the discovery to the issues at stake in the litigation, and the potential harm, if any, of the discovery. *See, e.g. Texaco v. Borda*, 383 F.2d 607, 608 (3rd Cir. 1967) (court's power to control docket includes power to stay civil discovery until the termination of related criminal proceedings).

Here, discovery is complete; there is nothing left to be stayed. The court's power to control discovery in cases before it, pursuant to Rule 26, is not implicated. The government asks for a delay in the trial "so that [the government] may have an opportunity to depose Tracie Henderson and Raymond J. Ruble … ." Renewed Motion

---

> The transactions 'included' within paragraph 20 [of the KPMG statement of Facts, attached to the Deferred Prosecution Agreement] are those SOS transactions that KPMG tax professionals "market[ed] and implement[ed]" and those SOS transaction for which KPMG tax professionals "prepare[d] tax returns incorporating the "bogus tax losses" of the SOS transactions. The Deerhurst transaction is an SOS transaction that resulted in claimed losses on a tax return prepared by KPMG. Accordingly, the Deerhurst transaction is within the scope of paragraph 20.

10

for Stay, at page 1. The government does not inform the court that the discovery cut-off was more than five months ago, and trial in this case is set to start in approximately two months.

Contrary to the government' assertion that it did not schedule the deposition of Tracie Henderson (Renewed Motion for Stay, at page 5), the government did schedule a deposition of Ms. Henderson before the close of discovery on October 25, 2006.  *See* Exhibit 3 to Colvin Decl.  It was only after counsel for Plaintiffs and Ms. Henderson's counsel agreed to execute a stipulation that Ms. Henderson would refuse to testify on Fifth Amendment grounds that the deposition was cancelled.  *See* Colvin Decl. ¶ 5. There is nothing in the government's submissions that indicates that the absence of Henderson or Ruble on Fifth Amendment grounds was unanticipated prior to the close of discovery.

Given the layers of speculation on which the Renewed Motion for Stay is based, it is clear that the government wants to prevent the case from going to trial.  Similarly, the government has sought stays in almost every case where similar legal issues are presented, and where there is some arguable connection to KPMG.  It may have sought these stays because it fears that a decision on the merits, or on the application of the penalties, may adversely impact its criminal case against the *Stein* defendants.  In this regard, commentators have speculated about how the district court's ruling in the recent *Klamath Strategic Investment Fund v. United States*, No. 04-278 (E.D. Tex.) case with respect to a BLIPS taxpayer might impact the government's case in *Stein*. *See*  Exhibit 4 to Colvin Decl.  Although it held for the government on economic substance grounds (finding that certain purported loans were never intended to be repaid by virtue of a secret

11

agreement between the banks and Presidio), the *Klamath* court held that certain contingent loans were not liabilities for purposes of section 752 of the Code (for reasons similar to those advanced by Sala in this litigation) and refused to apply penalties against the taxpayers, finding that reliance upon a legal opinion was reasonable. *See* Exhibits 5-7 to Colvin Decl. It may well be that a legal ruling adverse to the government in a civil case may adversely impact the criminal case in *Stein*. However, that is not a legitimate reason to place Sala's case in limbo.

The government possesses, and has used extensively in its motions in this case, all of the KPMG and Brown & Wood documents pertaining to Plaintiff, including those with Henderson's and Ruble's names on them. The government was free to question Plaintiff and all other witnesses in this case concerning all these documents and any communications with Henderson and Ruble.[4]

Henderson's counsel informed the government's counsel that Henderson would refuse to answer any deposition questions on Fifth Amendment grounds. This refusal was not conditioned in any way upon the pendency of the *Stein* case. Henderson's counsel may well consider his client to be at risk long after the trial of the KPMG case, regardless of its outcome.

Ruble wrote a tax opinion regarding the tax consequences of Plaintiff's Deerhurst transactions. However, his prospective unavailability does not prevent the government from testing Sala's reliance upon this opinion at trial. Ruble's testimony is unnecessary for the government to prove Plaintiff's receipt of Ruble's opinion letter, or the fact that Plaintiff paid $75,000 for the opinion. Most of Ruble's opinion letter is irrelevant to any

12

of the issues in this case. All but 9 pages of the 114 page opinion consist of Ruble's analysis of the legal issues he believed were involved. Whether Ruble's legal analysis and conclusions are correct or not is beside the point. The court will decide the legal issues.

With respect to the factual portion of the opinion letter, three pages of the opinion consist of Ruble's summary of Sala's transactions, including Deerhurst's trading history and strategy, and the specifics of Plaintiff's transactions managed by Deerhurst. There is also a two page summary of "investor representations." However, Ruble did not speak directly to Sala regarding these facts, but rather spoke to Nemirow, who requested several changes to the opinion letter, including the factual representations. Again, Nemirow was available for deposition and will attend the trial of this case.

Given that the government alleges that all of the legal opinions were produced from a master document created by Ruble (with variation between investors aside from amounts), the government has not been placed at a disadvantage in not obtaining what little information may have been provided by Sala during the brief initial teleconference after the receipt of the draft legal opinion.

Plaintiff's interest in the trial of his case not being delayed for years is that he will be handicapped because of the passage of time. The transactions and events at issue occurred more than six years ago. Credible, specific testimony of third-party witnesses becomes more difficult as time passes. For example, Refco has entered into bankruptcy in New York, and many of its affiliates were sold to outside purchasers. Additionally,

---

[4] The bulk of the communication with Ruble was through Plaintiff's Denver attorney, Larry Nemirow.

Plaintiff has a strong interest in obtaining the refund of money sought in this case that will not occur until he has had an opportunity to try this case on the merits.[5]

The government argues (Renewed Motion for Stay, pages 10-11) that a stay until after the completion of the *Stein* case will be helpful for the government because the United States Attorney's office will provide information to it that is currently restricted by the Fed. R. Crim. P. 6(e). The Court's order in the *Presidio* case provides the best response to this argument:

> The government's first argument is not persuasive. It may be true that the prosecutor in New York may not share – or may even be precluded from sharing – certain evidence with the government lawyers in these civil cases. But that does not justify staying in this case. If the prosecutors and government civil defendant are somehow barred from collaborating, then the defendants here will simply have to conduct its own discovery, like every other civil defendant must do. In other words, the government defendant does not have a special right to the prosecutor's discovery or to the information used by the grand jury. Any additional discovery obtained through a parallel criminal proceeding is a windfall, not an entitlement.

*Belford Strategic Investment Fund, LLC and Presidio Growth LLC (Tax Matters Partner) v. United States*, Case No. 04-4309, N.D. Cal., Order dated November 7, 2005, p. 5.  (A

---

[5] While any recovery will include statutory interest, as this Court recognized at oral argument on the government's prior motion to stay:

> Any plaintiff who brings an action, particularly implicating the monetary amount at issue here, has an interest in resolving it one way or the other.
>
> There is the 7 percent interest cushion which mitigates that somewhat should he prevail, but a 7 percent return is – the cushion effect depends on one's perspective, I suppose.  As Mr. Hallett said, it doesn't sound too bad to him. It sounds pretty good to me, but I'm not an astute investor.  Some others would like something in the double digits.

Transcript of March 23, 2006 hearing, at page 61.

copy of this Order, which was also entered in *Shasta Strategic Investment Fund, LLC v. United States*, Case No. 04-4264, is attached hereto as Exhibit 16).

## IV.   SUMMARY AND CONCLUSION

The Court should not grant the government the requested stay. There is no indication that either Henderson or Ruble will be available to testify after the trial of the *Stein* case. Moreover, the government's motion is untimely because discovery is now closed. Finally, and most significantly, from the facts developed in this case during discovery, it is apparent that Henderson and Ruble can add little, if any, non-cumulative testimony, regarding Sala's motivations for entering into the Deerhurst transaction.

WHEREFORE, Plaintiffs respectfully request this Court deny Defendant's Renewed Motion for Stay.

DATED this 2nd day of May, 2007.

CHICOINE & HALLETT, P.S.

s/ John M. Colvin
Darrell D. Hallett
John M. Colvin
Chicoine & Hallett, P.S.
Attorneys for the Plaintiffs Carlos E. Sala
and Tina Zanolini-Sala
1011 Western Ave. Suite 803
Seattle WA, 98104
Telephone: (206) 223-0800
Facsimile: (206) 467-8170
Email:  jcolvin@chicoine-hallett.com

15

**CERTIFICATE OF SERVICE**

I hereby certify that on May 2, 2007, I electronically filed PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STAY PENDING RELATED CRIMINAL TRIAL and the DECLARATION OF JOHM M. COLVIN, using the CM/ECF system, which will send notification to the following:

> David N. Geier
>
> Anton. L. Janik, Jr.
>
> Amy Matchison

I declare under the penalty of perjury under the laws of the State of Washington and the United States that the foregoing is true and correct.

DATED this 2nd day of May, 2007.

>
> CHICOINE & HALLETT, P.S.
>
>
> s/ John M. Colvin
> John M. Colvin
> Chicoine & Hallett, P.S.
> Attorneys for the Plaintiffs Carlos E. Sala
> and Tina Zanolini-Sala
> 1011 Western Ave. Suite 803
> Seattle WA, 98104
> Telephone: (206) 223-0800
> Facsimile: (206) 467-8170
> Email: jcolvin@chicoine-hallett.com