# EXHIBIT 15

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1799372 (D.Colo.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

H

S.E.C. v. Nacchio
D.Colo.,2005.
Only the Westlaw citation is currently available.
United States District Court,D. Colorado.
SECURITIES AND EXCHANGE COMMISSION, Plaintiff,
andUNITED STATES ATTORNEY'S OFFICE, District of Colorado, Intervenor,
v.
Joseph P. NACCHIO, Robert Woodruff, Robin Szeliga, Afshin Mohebbi, Greg Casey, James Kozlowski, and Frank Noyes, Defendants.
No. Civ.A05CV00480MSKCBS.

July 28, 2005.

Patricia E. Foley, Polly Arlene Atkinson, Robert M. Fusfeld, Thomas J. Krysa, Mary S. Brady, U.S. Securities & Exchange Commission-Colorado Denver Regional Office, Denver, CO, for Plaintiff.
Charles A. Stillman, Diane J. Nehro, Michael J. Grudberg, Scott M. Himes, Stillman & Friedman, PC, David Meister, James D. Miller, Wesley Railey Powell, Clifford Chance, US LLP, Noah D. Genel, Paul R. Grand, Morvillo, Abramowitz, Grand, Iason & Silberberg, PC, New York, NY, James D. Kilroy, Neil Peck, Snell & Wilmer, LLP, Richard B. Caschette, Starrs, Mihm & Caschette, LLP, Patrick John Kanouff, Davis & Ceriani, P.C., Dean Steven Neuwirth, Patrick J. Burke, Burke & Neuwirth, PC, David Richard Fine, Walter W. Garnsey, Jr., Kelly/Haglund/Garnsey & Kahn LLC, Kevin D. Evans, Phillip L. Douglass, Steese & Evans, PC, Forrest W. Lewis, Forrest W. Lewis, P.C., Denver, CO, Terry W. Bird, Thomas Vincent Reichert, Bird, Marella, Boxer, Wolpert, Nessim, Drooks & Lincenberg, Los Angeles, CA, Michael D. Trager, Richard L. Jacobson, Arnold & Porter, Washington, DC, for Defendants.
William J. Leone, U.S. Attorney's Office, Denver, CO, for Intervenor.

MEMORANDUM ORDER REGARDING MOTION TO INTERVENE AND TO STAY PROCEEDINGS
SHAFFER, Magistrate J.
*1 THIS MATTER came before the court on a Motion to Intervene for the Limited Purpose of Seeking a Stay of Discovery (Document # 114), filed by the United States Attorney's Office for the District of Colorado (hereinafter the "United States Attorney") on July 26, 2005. In its motion, the United States Attorney's Office requests leave to intervene in this action, either as a matter of right under Fed.R.Civ.P 24(a)(2) or through permissive intervention under Fed.R.Civ.P. 24(b)(2). The United States Attorney also seeks an Order staying all discovery, save for limited exceptions, for 150 days or more "depending on the procedural posture of its investigation at the conclusion of the 150 day period." See Motion of Proposed Intervenor, at 2.

The District Court's Order of Reference, dated April 11, 2005, referred this action to the Magistrate Judge with instructions to, *inter alia,* "hear and determine motions relating to discovery" and "hear and determine such other non-dispositive motions as may be specifically referred." The instant motion was referred to this Magistrate Judge on July 26, 2005. This court held a hearing on July 27, 2005, during which it heard argument from counsel for Intervenor United States Attorney's Office, Plaintiff Securities and Exchange Commission (SEC) and Defendant James Kozlowski. The court has carefully considered the arguments presented in the pending motion and during the July 27th hearing the entire court file, and the applicable case law. At the conclusion of that hearing the court granted in part and denied in part the relief sought by the United States Attorney. This Memorandum Order more fully explains the reasons for that decision.

FACTUAL BACKGROUND

On March 15, 2005, the SEC filed its Complaint in the instant case. That Complaint alleges generally that during the period from April 1, 1999 through March 31, 2002, certain "senior executives and others at Qwest Communications International, Inc. engaged in a massive financial fraud that hid from the investing public the true source of the company's revenue and earnings growth, [and] caused the company to fraudulently report approximately $3 billion of revenue." See Complaint, at ¶ 1. The SEC further contends that "during the fraudulent scheme, the defendants profited by approximately $300,000,000 through salary, bonuses, stock sales, and other compensation." *Id.* at ¶ 10. The Complaint asserts seven claims for relief under 15 U.S.C. § 77q(a)(1); 15 U.S.C. § 77q(a)(2) and (3); 15 U.S.C.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1799372 (D.Colo.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 2

§ 78j(b) and 17 C.R.R. § 240.10b-5; 15 U.S.C. § 78m(b)(5) and 17 C.F.R. § 240.13b2-1; 15 U.S.C. § 87m(a) and 17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13; and 15 U.S.C. § 78m(b)(2).

On May 17, 2005, Defendant Kozlowski filed a Motion to Dismiss the First, Third, Sixth and Seventh Claims for Relief asserted against him, and filed an Answer as to the Second and Fourth Claims for Relief. Defendant Mohebbi filed a Motion to Dismiss Complaint on June 1, 2005, as did Defendants Nacchio and Woodruff. Defendant Szeliga filed a Motion to Dismiss or, in the alternative, Motion for More Definite Statement on June 1, 2005. Defendant Noyes filed an Answer on June 1, 2005. On July 26, 2005, Plaintiff SEC filed a Motion for Entry of Final Judgment Against Defendant Casey.

*2 On April 12, 2005, this court held a status conference to tentatively address scheduling matters in this case. At that status conference, I acknowledged the June 1, 2005 deadline for filing motions to dismiss set by the District Court and the potential effect such motions might have on the scope of discovery. I also noted the factual similarities between this case and other pending litigation relating to Qwest Communications, International, Inc. This court expressed the hope that ongoing discovery in those other cases might be of some assistance in facilitating discovery in this action. Given the evolving status of the litigation, the court set this matter for a further status conference on September 28, 2005. It was my hope to establish pretrial deadlines at that time.

It also bears noting that this Magistrate Judge has been assigned responsibility for managing pretrial scheduling and discovery in other pending civil actions alleging fraudulent or improper conduct relating to Qwest Communications International, Inc. Several cases have been consolidated in *In re Qwest Communications International, Inc. Securities Litigation,* Civil Action No. 01-cv-01451-REB-CBS (hereinafter "the Consolidated Securities Actions"). Class Plaintiffs' Fifth Consolidated Amended Class Action Complaint generally alleges that Qwest Communications, International, Inc. and other defendants issued false and misleading statements about Qwest's financial performance in the period from May 24, 1999 to July 28, 2002. Class Plaintiffs insist that these statements caused a factitious inflation in Qwest's stock price. The Fifth Consolidated Amended Class Action Complaint further alleges that the defendants engaged in various improper accounting manipulations to make Qwest appear mor profitable and more valuable that it really was during the class period. Class Plaintiffs are asserting claims under 15 U.S.C. § 78j(b) and 17 C.R.F. § 240.10b-5; 15 U.S.C. § 78t(a); 15 U.S.C. § 77k; and 15 U.S.C. § 77o. As of the date of this Memorandum Order, Defendants Nacchio, Woodruff, Casey and Szeliga remain parties in both the instant case and the Consolidated Securities Actions.

The court also has case management responsibilities in *In re Qwest Savings and Investment Plan ERISA Litigation,* Civil Action No. 02-cv-00464-REB-CBS. This action, and the cases consolidated with it, generally allege that the defendants breached their fiduciary duties under the Employee Retirement Income and Security Act (ERISA), 29 U.S.C. §§ 1001-1461. In part, the ERISA plaintiffs allege that various defendants repeatedly communicated false and misleading material information relevant to the value of Qwest stock to Savings Plan participants, in violation of the defendants' duties. Defendants Nacchio, Szeliga and Woodruff are also parties in the consolidated ERISA actions, which is coordinating discovery with the Consolidated Securities Actions.

The parties in the Consolidated Securities Actions have been directed to complete fact depositions by September 16, 2005. This court anticipates that expert discovery in the Consolidated Securities Actions would proceed after fact discovery has been completed. As of July 15, 2005, Lead Plaintiffs in the Consolidated Securities Actions had taken 30 depositions, mostly involving current or former Qwest employees, and Defendants had taken six depositions. In a Joint Status Report filed on July 15, 2005, the parties in the Consolidated Securities Actions advised this court that they had scheduled an additional 19 depositions, including depositions of Defendants Woodruff and Nacchio on September 14 and 15, 2005, respectively. Another 21 depositions are anticipated, but had not been scheduled as of July 15, 2005. The Joint Status Report also indicates that 15 depositions purposely have not been scheduled and have been delayed at the request of the United States Attorney. Included within that list are depositions of Robin Szeliga and Greg Casey.

ANALYSIS

*I. Motion to Intervene*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1799372 (D.Colo.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

*3 I find that the United States Attorney's motion to intervene is proper under either Rule 24(a)(2) or Rule 24(b)(2). "Intervention" contemplates that a non-original party may participate as a party in order to protect some right or interest alleged to be affected by that litigation. See American Bowling Supply Co. v. Al Martin, Inc., 96 F.Supp. 35, 36 (D.Kan.1951). To that end, Rule 24(a)(2) provides that anyone "shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter, impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." See Fed.R.Civ.P. 24(a)(2). Alternatively, Rule 24(b)(2) states that upon timely application, permissive intervention may be appropriate "when an applicant's claim or defense and the main action have a question of law or fact in common." See Fed.R.Civ.P. 24(b)(2). In deciding a question of permissive intervention, the court "shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Id.

I am aware that a number of courts have permitted intervention under circumstances analogous to those in this case. See, e.g., S.E.C. v. Chestman, 861 F.2d 49, 50 (2d Cir.1988) (holding that the government "had a discernible interest in intervening in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal matter"); Securities and Exchange Commission v. Mutuals.com, Inc., 2004 WL 1629929, *2 (N.D.Tex.2004) (in case where government prosecutors sought to intervene in a parallel civil lawsuit, the court held that it was unnecessary to address the issue of permissive intervention because the government's motion satisfied the higher standard under Rule 24(a)(2)); Pfizer Ireland Pharmaceuticals v. Albers Medical, Inc., 225 F.R.D. 591, 592 (W.D.Mo.2004) (holding that the government was entitled to intervene in civil action for the limited purpose of seeking a stay of discovery, where the government's criminal case and the civil action overlapped in large measure); S.E.C. v. Downe, 1993 WL 22126, *11 (S.D.N.Y.1993) (noting that "it is well-established that the United States Attorney may intervene in a federal civil action to seek a stay of discovery when there is a parallel criminal proceeding ... that involves common questions of law or fact").

Relying upon the analysis set forth in the above decisions, I find that the United States Attorney has an interest relating to the transactions which form the bases for the parallel civil and criminal proceedings, and is uniquely situated such that unfettered discovery in the civil actions could, as a practical matter, impair or impede the government's ability to protect its interests in the criminal arena. Given the Securities and Exchange Commission's decidedly different mandate and objectives, I conclude that the interests articulated by the United States Attorney cannot be adequately protected by the Commission. Accordingly, pursuant to Rule 26(a)(2), the court will grant the motion to intervene.

*II. Motion to Stay Proceedings*

*4 The United States Attorney's motion to stay discovery generally in this case is more problematic. The Intervenor argues that the requested stay is necessary
because the subject matter of the civil case now before this Court is directly related to the facts underlying an ongoing criminal investigation. In addition, the subject matter of this civil case is directly related to the facts underlying two pending criminal matters and three pending plea agreements.

See Motion of Proposed Intervenor, at 1. Given the pendency of this criminal investigation [FN1] and the ongoing criminal cases, the United States Attorney insists that

> FN1. Not surprisingly, the pending motion provides no further details on the scope of this "ongoing criminal investigation." The court is left to guess at the parameters of this "ongoing criminal investigation" and when the investigation might be concluded. Compare Securities and Exchange Commission v. Doody, 186 F. Supp.2d 379, 382 (S.D.N.Y.2002) (refusing the blanket stay of all discovery requested by the government, after observing that the court was "left guessing as to just what protection the government legitimately requires").

it is simply unmanageable to try to conduct full-scale civil discovery at the same time the government is trying to complete its criminal investigation. As the civil litigants notice depositions, answer interrogatories and face disclosure deadlines, witnesses and parties will legitimately be inquiring of the government as to their status in the investigation

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1799372 (D.Colo.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

before all the work necessary to accurately advise them has been completed. Witnesses will face difficult, and perhaps unnecessary, choices between asserting their fifth amendment rights and testifying in the civil case.
*Id.* at 12-13. The Intervenor also suggests that it will suffer irreparable prejudice if civil discovery tools are used to circumvent the limitations on discovery imposed by the Federal Rules of Criminal Procedure and applicable statutes. During the July 27th hearing, the United States Attorney's Office indicated that it would be moving in the very near future for a stay of discovery in the Consolidated Securities Actions, as well as related state court litigation. Presumably, that request will be predicated on the same arguments advanced in the instant motion.

It bears noting that Rule 26(b)(1) permits discovery "regarding any matter ... that is relevant to the claim or defense of any party." *See* Fed.R.Civ.P. 26(b)(1). Moreover, Rule 26(b)(2) provides that the court may limit the use of available discovery methods if the court determines that "the discovery sought is ... obtainable from some other source that is more convenient, less burdensome, or less expensive," or where "the burden ... of the proposed discovery outweighs its likely benefit, taking into account the needs of the case ... the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *See* Fed.R.Civ.P. 26(b)(2). The court can impose these discovery limitations on its own initiative after reasonable notice or pursuant to a motion for protective order under Rule 26(c). *Id. See also Scott v. Leavenworth Unified School District,* 190 F.R.D. 583, 585 (D.Kan.1999) (holding that objections on grounds of relevance may be sustained where the requested discovery is of such marginal relevance that the potential harm occasioned by the discovery outweighs the presumption in favor of expansive discovery); *Doubleday v. Ruh,* 149 F.R.D. 601, 614 (E.D.Cal.1993) (refusing to allow a deposition where the desired information could be obtained from another source that might be more accurate and complete).

*5 I believe that a stay of civil discovery in this case may be appropriate. In the absence of a stay, there is the possibility that some defendants in this action might be able to obtain discovery and disclosure of documents that they would not otherwise be entitled to receive through criminal discovery. Moreover, discovery requests directed to government personnel potentially would divert prosecutorial resources that would otherwise be devoted to preparing for trial or concluding any ongoing criminal investigation. These are legitimate interests that are entitled to protection. As one court has noted, "the public has an interest in ensuring the criminal process is not subverted." *Bridgeport Harbour Place I, LLC v. Ganim,* 269 F.Supp.2d 6, 10 (D.Conn.2002). *See also S.E.C. v. Treadway,* 2005 WL 713826, *4 (S.D.N.Y.2005) (noting that "judicial discretion and procedural flexibility should be utilized to prevent the rules and policies applicable to one suit from doing violence to those pertaining to another").

However, the United States Attorney has not a sought a complete stay of discovery in this case. Rather, the United States Attorney proposes that the parties in this action "be given access to the documents obtained by the SEC, pursuant to subpoena, from Qwest, witnesses before the SEC or from other third parties." *See* Motion of Proposed Intervener, at 3. The government also announced its' intention to seek access to "the discovery product" developed in *In re Qwest Communications International, Inc. Securities Litigation. Id.* It may well be that the parties in the Consolidated Securities Actions no objection to the proposed "sharing arrangement." I am reluctant, however, to enter such an order without first hearing from the parties in those other cases.

A court is vested with considerable discretion to stay proceedings where required in the interests of justice. *See, e.g., Clinton v. Jones,* 520 U.S. 681, 707, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997) (recognizing that a trial court has broad discretion to stay proceedings as incident to its power to control its own docket). "In granting such relief, courts must weigh competing interests, including 'the interests of the defendants, the interests of the plaintiffs in proceeding with the litigation, the public interest, and the interests of the courts and of third parties.'" *Securities and Exchange Commission v. Doody,* 186 F.Supp.2d 379, 381 (S.D.N.Y.2002). In exercising its discretion in this case, the court must be take into consideration the fact that some of the civil defendants currently are not charged in related criminal proceedings and may not be targets of an "ongoing criminal investigation." Those civil defendants have a legitimate interest in proceeding to trial or disposition without undue delay, a goal that is presumably shared by the plaintiffs in the various actions.[FN2] That goal, however, must be reconciled with the public interest in ensuring that the criminal process is not subverted. "Especially in cases of extraordinary public moment, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1799372 (D.Colo.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 5

will thereby by promoted." *Landis v. North Amercian Co.,* 299 U.S. 248, 256, 57 S.Ct. 163, 81 L.Ed. 153 (1936). While it would be my hope that the court could reconcile these competing interests, at this juncture, I lack sufficient information to achieve that goal.

> FN2. As a practical matter, an interim stay of discovery may not materially prejudice the interests of the parties in this case. The resolution of pending motions to dismiss could reduce the number of parties or could potentially narrow or completely eliminate the need for some discovery.

## CONCLUSION

*6 Based upon the foregoing analysis, the United States Attorney's motion for leave to intervene is GRANTED. The United States Attorney's motion to stay proceedings is GRANTED IN PART and DENIED IN PART. The court will preliminarily stay discovery in this case pending a status conference at 9:30 a.m. on September 28, 2005. The court will address the necessity for or the parameters of any additional stay of discovery at the September 28th status conference. The parties are hereby directed to file, on or before September 12, 2005, a joint discovery plan, or if necessary separate discovery plans, addressing to what extent, if any, discovery in this action shall proceed after September 28, 2005 and during the pendency of related criminal proceedings. The parties' submission should address to what extent discovery or depositions in the Consolidated Securities Actions might be utilized to expedite the pretrial process in this case.

The parties also are directed to submit confidential settlement statements on or before September 12, 2005. The court will set one or more settlement conferences in this case if it appears from the parties' confidential settlement statements that such sessions would be helpful.

D.Colo.,2005.
S.E.C. v. Nacchio
Not Reported in F.Supp.2d, 2005 WL 1799372 (D.Colo.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.