**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE**

Case No. 05-cv-00636-LTB-PAC

CARLOS E. SALA, and
TINA ZANOLINI-SALA,

    Plaintiffs,

v.

UNITED STATES OF AMERICA,

    Defendant.

_____

**Order**
_____

Defendant United States of America ("the Government") moves to continue plaintiffs' motion for partial summary judgment on the Government's offset defense (Docket # 114), pursuant to Fed. R. Civ. P. 56(f) (Docket # 136), and also moves to stay plaintiff's case in its entirety, (Docket #147), until the conclusion of the trial phase of a criminal case in the Southern District of New York. For the reasons stated below, the Governments motions are DENIED.

**I. BACKGROUND**

This case involves a claim by Carlos Sala and Tina Zanolini Sala (referred to herein as "Sala") for a refund on their 2000 federal tax return. Although Sala had income in 2000 of more than $60 million, he claimed a tax loss that essentially nullified his tax burden. He achieved this loss through involvement in a foreign currency options transaction known as Deerhurst. The Government contends he is not entitled to this loss because Deerhurst was an improper tax shelter. Sala disagrees, and has brought suit against the Government to obtain a refund of taxes,

interest and penalties he paid to the Government.

The specific chronology of Sala's tax returns is important to these motions. Sala filed his original year 2000 federal income return on or before April 15, 2001, claiming a tax loss of about $60 million, approximately equal to his $60 million of income. On or about November 18, 2003, Sala filed an amended return, eliminating this claimed loss and paying over $26 million in taxes. On February 25, 2004, the Internal Revenue Service ("IRS") asserted a deficiency against Sala for his 2000 return of $22,204, and penalties of $4,440.80. On June 30, 2004, Sala paid this full amount, plus interest, totaling $31,987.23. On August 25, 2004 Sala filed another amended return, reclaiming the loss he had originally claimed in his 2000 return, as well as the $31,987 he paid June 30, 2004. In total, he claimed a refund of over $26 million.

When Sala filed the amended return in 2003, he paid the tax due, as well as interest calculated through the date 18 months after the initial due date of the return. The IRS assessed interest it claimed was due after this 18 month period. Sala paid the full amount, and filed a claim for a refund for the additional amount, approximately $1.5 million, on September 24, 2004. Sala's claim here is for a refund of all of these payments, totaling over $27 million.

The Government asserted two affirmative defenses, both relating to Sala's claim for refund of the $1.5 million in putatively "excess" interest. The Government's second affirmative defense is that it is not obliged to refund the excess interest because this is a case involving fraud under 26 U.S.C. § 6404(g)(2)(B). I granted plaintiff's motion for summary judgment on this issue May 1, 2007.

The Government's first affirmative defense is that even if Sala overpaid interest, the Government is entitled to setoff any amount due to Sala against an accuracy-related penalty

owed, but not assessed, under 26 U.S.C. § 6662. The Government contends that the accuracy related penalty it may impose against Sala for improperly claiming tax losses in his original return may equal as much as 40% of the tax owed, or up to $9.49 million. *See* 26 U.S.C. § 6662(h).

Sala filed a motion for summary judgment on this issue February 5, 2007, arguing that the undisputed facts show that his 2003 amended return constitutes a "qualified amended return" under Treasury Regulations, barring the Government from asserting an accuracy-related penalty. The Government, rather than responding to Sala's motion, filed a motion for a continuance under Fed. R. Civ. P. 56(f), due to the unavailability of two witnesses who are also involved in a criminal case pending in the Southern District of New York, *United States v. Stein,* S1 05 cr 888 (LAK) (S.D.N.Y. 2005). In *Stein,* the Government has indicted several accountants and lawyers, as well as the accounting firm KPMG, on numerous counts all related to developing and promoting a series of fraudulent tax shelters. The Government has characterized *Stein* as "the largest criminal tax prosecution the United States has ever filed."

The two unavailable witnesses whose testimony the Government seeks are Tracie Henderson and Raymond J. Ruble. Henderson was a partner at KPMG, allegedly involved in the tax shelter activities at the core of *Stein,* and was also Sala's accountant. Sala and the Government dispute the extent of her connection to Sala and Deerhurst, and consequently the level of connection between this case and *Stein.* The Government contends that Henderson was deeply involved in the creation and marketing of Deerhurst, which in turn implicates Deerhurst as part of the fraudulent tax schemes at issue in *Stein.* Sala states that Henderson prepared and advised him on his 2000 tax return but was not otherwise involved in marketing or promoting Deerhurst, and that consequently Deerhurst is not a transaction implicated in *Stein.* Henderson

3

has notified Sala, and the Government, that she will invoke her Fifth Amendment rights and refuse to testify or be deposed in this case.

Ruble is a tax lawyer who prepared a lengthy opinion letter for Sala, analyzing the Deerhurst transaction and concluding that it was "more likely than not" that Deerhurst would withstand a challenge by the IRS. Ruble is a defendant in *Stein*, in part for his role in crafting opinion letters for the transactions that are the subject of the *Stein* indictments. Ruble has invoked his Fifth Amendment rights and refused to testify in other civil cases that implicate transactions that may be similar to those in *Stein*. The Government asserts, and Sala does not appear to contest, that Ruble will refuse to testify in this case.

The Government's motions relate to the availability of both witnesses. The Government requests a Rule 56(f) continuance of Sala's motion for partial summary judgment on the penalty offset issue, contending that Henderson's testimony is essential to its defense against that motion. The Government also seeks a stay of the case in its entirety due to the unavailability of both Henderson and Ruble, whom the Government claims are necessary to provide testimony as to Sala's motive in pursuing the Deerhurst transaction. Both the motion to stay and the Rule 56(f) motion seek a delay until the trial phase of *Stein* is concluded. I address both motions below.

## II.  Rule 56(f) Motion to Continue

Fed. R Civ. P. 56(f) allows a court to continue a motion for summary judgment when the opposing party is unable to gather facts essential to defeat the motion. The purpose of Rule 56(f) "is to provide an additional safeguard against an improvident or premature grant of summary judgment." *Price v. General Motors Corp.,* 931 F.2d 162, 164 (1st Cir. 1991). Rule 56(f) provides:

> "**When Affidavits are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

"Unless dilatory or lacking in merit, the (Rule 56(f)) motion should be liberally treated." *Committee for the First Amendment v. Campbell,* 962 F.2d 1517, 1522 (10th Cir. 1992). The Tenth Circuit has identified several criteria governing a Rule 56(f) motion. The party seeking Rule 56(f) relief must furnish an affidavit explaining "why facts precluding summary judgment cannot be presented." *Id.* The affidavit must state "the probable facts not available and what steps have been taken to obtain these facts." *Id.* The party must also explain "how additional time will enable him to rebut movant's allegations of no genuine issue of fact." *Id.* The movant must "state with specificity how the additional material will rebut the summary judgment motion." *Ben Ezra, Weinstein, and Company, Inc. v. America Online Inc.,* 206 F.3d 980, 987 (10th Cir. 2000).

Here, the Government has provided an affidavit stating that Henderson will invoke her Fifth Amendment right against self-incrimination and refuse to testify in this case. The Government has deposed two other accountants at KPMG, but neither had specific information on the nature of the relationship between Henderson and Sala. So there is no question that the Government has identified the party it wishes to depose, why that party is unavailable and what steps it has taken either to depose that party or to get equivalent information from other parties.

The critical issue then reduces to the specific testimony the Government seeks from Henderson and the role it plays in rebutting Sala's motion. The parties agree that the core issue here is whether Sala's 2000 return is a "qualified amended return" under Treasury regulations. If

it is a qualified amended return, the Government cannot impose an accuracy-related penalty. 26 C.F.R. § 1.6664-2(c)(2). However, an amended return is not a qualified amended return if it was filed after the commencement of an investigation of "any person described in section 6700(a) . . . concerning an examination of an activity described in section § 6700(a) with respect to which the taxpayer claimed any tax benefit on the return directly or indirectly. . . " 26 C.F.R. § 1.6664-2(c)(3)(ii). (This rule was amended in 2005; I cite here to the rule in effect in 2002 and 2003.) Section 6700(a) imposes penalties on anyone who "organizes (or assists in the organization of)" an abusive tax shelter.

The specific information the Government seeks from Henderson concerns her role as a promoter or organizer of Deerhurst within the meaning of § 6700. The Government cites evidence suggesting that Henderson played a role in Deerhurst beyond merely as Sala's accountant, but contends that it cannot develop the facts necessary to defend against Sala's motion for summary judgment on this point without deposing Henderson. Sala responds that whether Henderson was or was not a promoter or organizer under § 6700 is irrelevant to his motion for summary judgment. The sole issue is whether, prior to Sala's filing of his amended return, KPMG was under a § 6700 investigation, and the scope of this investigation. I agree with Sala.

The language of 26 C.F.R. § 16664-2(c)(3)(ii) (2002) states unambiguously that an amended return is a qualified amended return only if it is filed before the commencement of an examination under § 6700, "of an activity with respect to which the taxpayer claimed any tax benefit on the return." The parties do not dispute that KPMG was under a § 6700 examination. Accordingly, the issues on which Sala's motion depend are the date the IRS notified KPMG it

was under investigation and whether the scope of that investigation included the Deerhurst transaction. It is the investigation of KPMG, and not whether Henderson was in fact a promoter of Deerhurst, or whether the IRS ultimately concludes that she violated § 6700, that establishes the cut-off date that determines if Sala's 2003 amended return is a "qualified amended return."

The question of the timing and scope of the § 6700 investigation of KPMG does not require Henderson's testimony. Accordingly, I conclude that the Government has not satisfied the requirement of Rule 56(f) to show that Henderson's testimony is necessary to rebut Sala's motion. I deny the Government's motion to continue under Rule 56(f), and under separate order will direct the parties to expeditiously complete their briefing on this motion.

### III.  MOTION TO STAY

The Government also moves to stay this case in its entirety pending the completion of the *Stein* trial to allow it to depose Henderson and Ruble. A district court has "broad discretion to stay proceedings incident to its power to control its own docket." *Clinton v. Jones,* 520 U.S. 681, 706, 117 S. Ct. 1636, 137 L. Ed.2d 945 (1997). "Especially in cases of extraordinary public moment, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Landis v. North American Co.,* 299 U.S. 248, 256, 57 S. Ct. 163, 81 L. Ed. 153 (1936). A district court should grant such a stay only in "rare circumstances." *Id.*  The party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay . . . will work damage to someone else." *Id.*  at 255.

Typically, a district court will stay civil proceedings in deference to parallel criminal proceedings to protect the criminal defendant's right against self-incrimination, to prevent the

criminal defendant or the Government from taking advantage of broader discovery rights available under civil discovery rules, or to avoid revealing the criminal defense strategy to the prosecution. *S.E.C. v. Dresser Industries, Inc.,* 628 F.2d 1368, 1376 (D.C. Cir. 1980). The present case does not implicate any of these traditional concerns. Sala is not a party to the criminal proceeding in *Stein.* Since discovery in this case is completed, this motion does not implicate the *Stein* defendants' access to discovery here.

Rather, the thrust of the Government's argument is that it will be unduly prejudiced if it is obliged to defend against Sala's suit without access to the testimony of Ruble and Henderson. While courts may consider many factors in assessing a motion to stay, this case reduces essentially to balancing the Government's claim of prejudice in the absence of a stay against Sala's interest in "proceeding expeditiously with the civil litigation" and "the potential prejudice to (Sala) of a delay." *See S.E.C. . Rivelli,* No. Civ. A. 05CV1039RPM, 2005 WL 2789317 at *1 (D. Colo. October 26, 2005).

The Government asserts it needs Henderson and Ruble's testimony as to Sala's motive in seeking out and investing in Deerhurst. Central to the Government's defense against Sala's claim is that the Deerhurst transaction is invalid because it lacked economic substance. *James v. Commissioner,* 899 F.2d 905, 908 (10th Cir. 1990). A transaction is entitled to tax recognition only if the transaction "is compelled or encouraged by business or regulatory realities, is imbued with tax-independent considerations, and is not shaped solely by tax-avoidance features that have meaningless labels attached." *Id.*  In the Tenth Circuit, the analysis of economic substance involves both a subjective element, the "business purpose" behind the transaction, and an objective element, the economic realities underlying the transaction. *Id.* at 908-909.  These are

8

"more precise factors to consider in the determination of whether the transaction had any practical economic effects other than the creation of income tax losses." *Id.* The Government seeks Henderson and Ruble's testimony on the subjective prong of the economic substance test; whether Sala entered into the Deerhurst transaction in order to claim a tax loss or whether he did so for a viable economic purpose.

The Government makes two basic arguments for Henderson's centrality to its defense. First, the Government contends that Henderson's role in the KPMG scheme at the heart of *Stein* heavily implicates her role in marketing Deerhurst to Sala. Henderson was a member of the Innovative Strategies group at KPMG, headed by *Stein*-indicted Jeffrey Eischeid. This group developed, marketed and implemented tax shelters to KPMG clients. According to the Office of the U.S. Attorney in the Southern District of New York, Sala's Deerhurst investment "is one of the SOS shelter transactions encompassed by the charges in the Indictment (in *Stein.*)." KPMG has admitted, according to the Government, that Deerhrust is one of the shelters described in the *Stein* indictment. Henderson's central role in *Stein,* the Government argues, strongly suggests that she was similarly responsible for marketing Deerhurst to Sala, and consequently that Sala's tax losses through Deerhurst do not deserve favorable tax treatment.

Second, the Government argues that the evidence on the record so far strongly suggests that Henderson played a far greater role in Deerhurst than merely preparing Sala's tax returns, as Sala contends. Henderson tried to interest Sala in other KPMG sponsored - shelters (which Sala ultimately rejected).  She was involved in several conversations with Sala's attorneys, and referred Sala to Ruble. Henderson reviewed Ruble's opinion and charged Sala for her time doing so. Also, while Sala claims he did not speak to Henderson at their first meeting about possible tax shelters,

9

Henderson's email after the meeting shows that they did. Other email traffic shows that Henderson attempted to clarify with Ruble the scope of his opinion letter.

The Government makes similar arguments for deposing Ruble. Ruble was indicted in *Stein* for preparing false and fraudulent opinion letters, which also contained false statements by his clients. He wrote the letter analyzing Deerhurst, on which Sala relied. Sala paid Ruble $75,000 for this letter, and discussed Ruble's letter with him in a telephone conference. Sala states that he "briefly discussed the substance of his opinion with Mr. Ruble" because he "wanted to discuss the tax ramifications of the transaction with the person who had prepared the opinion prior to any investment in Deerhurst."  Additionally, the Government points out that Sala listed  Ruble and Henderson as individuals with "discoverable information that Plaintiffs may use to support their claims or defenses," under Fed. R. Civ. P. 26(a).

Finally, the Government asserts that the prosecutors in *Stein* have information relevant to its defense here, but it cannot use this information during the pendency of *Stein* because of Grand Jury secrecy rules, and because use of such information might prejudice the Government's criminal case. The Government contends it should not be forced to make a "Hobson's choice" between sharing information and prejudicing its criminal case, or not sharing information and prejudicing the civil case.

I find these arguments, cumulatively, to be unpersuasive. First, it is important to emphasize that the delay the Government seeks is substantial. The *Stein* trial is currently set to begin September 17, 2007. The prosecution has indicated it will require 17 weeks to present its case in chief. It is unknown how long the 18 defendants will need to present their case. If there

are convictions, it is unknown how long sentencing may take, and the time to complete appeals is unknown. Moreover, it is possible the September 17, 2007 trial date will be postponed.

Additionally, it is unknown and unknowable whether these witnesses will even be available after the conclusion of the *Stein* trial. Henderson is not a *Stein* defendant, and the Government has offered no evidence that Henderson will be ready to testify once the *Stein* trial is concluded. Ruble, if convicted in *Stein*, retains his Fifth Amendment rights against self-incrimination during sentencing and appeal. Ruble also faces other potential criminal charges outside of *Stein*. There is, accordingly, no way to assess the actual duration of the Government's proposed stay, or whether these witnesses will testify even at the conclusion of the *Stein* trial.

Most important, the Government's case for the centrality of Henderson's and Ruble's testimony is unpersuasive. There is no dispute that Ruble was the author of the tax letter on which Sala relied in entering the Deerhurst transaction. But the Government seeks Ruble's testimony not as to the veracity of Ruble's analysis or opinion, but for what he may reveal about Sala's motives and purposes. Sala has testified in his deposition, and the Government does not dispute this testimony, that his direct contact with Ruble was one 20 minute phone conversation. The bulk of Sala's dealings with Ruble were through another attorney, Bruce Nemirow, who has been deposed by the Government. While Ruble's role in *Stein* may implicate in some fashion the opinion letter he wrote for Sala, the Government's stated purpose in seeking Ruble's testimony is to shed light on Sala's motives in seeking out Deerhurst. It is unclear how important this testimony can be when Ruble's direct contact with Sala was one twenty minute phone call.

Sala had more direct contact with Henderson than with Ruble, and so Henderson's

11

pertinence to the Government's case is a closer call, but still ultimately unpersuasive. The information the Government presents is for the most part consistent with Sala's representations. While there is evidence that Henderson and KPMG tried to interest Sala in other transactions, the record also shows that Sala ultimately rejected these options. The Government finds it significant that the documents produced by KPMG in one instance contradict Sala's testimony – that Sala did in fact discuss investment and tax shelter strategies with Henderson at their first meeting, when Sala claims they did not. But this is a minor discrepancy of a meeting that occurred years earlier. The Government also overstates KPMG's "admission" regarding Deerhurst. KPMG admitted only that Deerhurst was "an SOS transaction that resulted in claimed losses on a tax return prepared by KPMG."  KPMG did not admit that Deerhurst was a transaction described in the *Stein* indictment.  Similarly, while Sala listed Henderson (and Ruble) as Rule 26(a) witnesses, he describes her as possessing information about Sala's tax return and the analysis of Deerhurst for tax purposes. This is consistent with Sala's description of Henderson's role as his accountant and tax advisor.

Even absent evidence that Henderson was directly involved in Deerhurst, it is always possible that Sala disclosed some information about his motive to her. But this reduces essentially to Government speculation. The Government states that "it is not unreasonable to assume that Sala may have shared his true motivations with his accountant," and that Henderson "must have had good reason to shop" shelter transactions to Sala.  In essence, the Government wishes to stay this case in order to allow for the possibility that she may testify post *Stein*, and that her testimony may address Sala's motives in seeking out Deerhurst. Conversely, the Government has already had the opportunity to depose several witnesses who are undisputedly more central to Deerhurst

and who had far more extensive contact with Sala about Deerhurst and why he chose it. The incremental value of Henderson's testimony is both speculative and minimal. The prejudice to the Government in proceeding without her testimony is slight.

Against this minor prejudice to the Government, I must weigh the potential prejudice to the plaintiff in staying this case. Sala filed his complaint in April of 2005. The dispute concerns a tax return for the year 2000. Sala, like all civil plaintiffs, has an interest in an expeditious resolution of his civil claims. Moreover, the amount of money here is significant; Sala claims a refund of more than $27 million. While in general there is a greater public interest in law enforcement than in a litigant's civil claims, *Campbell v. Eastland,* 307 F.2d 478, 487 (5th Cir. 1962), the Government has not shown how pursuing this case will prejudice its criminal case. And, as stated above, civil discovery is now completed, so the risk of criminal defendants benefitting from information gleaned from civil discovery is, at this point, irrelevant. At most, the Government suggests that its civil case will be prejudiced by its inability to access information from the criminal case. However, the Government does not have a "special right" to the prosecutor's files; any such access to the *Stein* criminal files is a "windfall, not an entitlement." *Belford Strategic Investment Fund, LLC v. U.S.,* 2005 WL 3278597 at *3 (N.D. Cal. Nov. 7, 2005).

In sum, I conclude that the Government has not "made out a clear case of hardship or inequity" sufficient to carry its burden to justify a stay.

It is So Ordered that:

    1) The Government's Motion for Relief Under Fed. R. Civ. P. 56(f) (Docket #136) is DENIED; and

    2) The Government's Renewed Motion to Stay (Docket # 147) is DENIED.

**DONE and ORDERED,** this   30th   day of May, 2007 at Denver, Colorado.

                                            s/Lewis T. Babcock
                                            United States District Chief Judge