IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| CARLOS E. SALA and <br> TINA ZANOLINI SALA, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | ) <br> ) <br> )   05-cv-00636-LTB-PAC <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

UNITED STATES' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE UNITED STATES' OFFSET DEFENSE

Defendant, the United States of America ("United States") hereby opposes plaintiffs' motion for partial summary judgment regarding the United States' offset defense (Docket Entry No. 114).

**SUMMARY OF THE ARGUMENT**

The Section 6662 accuracy-related penalty applies only to underpayments of tax. Plaintiffs' original tax return showed no tax due because the tax shelter they employed purportedly offset their $60 million in income. Taxpayers filed an amended return in November 2003 eliminating the purported and substantial tax benefits of the shelter and thereby showing a substantial underpayment of tax on their original return. Plaintiffs' motion for partial summary judgment raises the narrow issue of whether their 2003 amended return constitutes a *qualified* amended return—which would have eliminated the underpayment of tax for purposes of calculating the accuracy-related penalty.

The 2003 amended return was not a qualified amended return because: (1) the Internal Revenue Service's ("IRS") Sections 6700, 6701, 6707, 6708, and 7408 examination of KPMG ("KPMG examination") was initiated <u>before</u> plaintiffs filed their amended return eliminating that underpayment; and (2) the scope of the IRS's KPMG examination included plaintiffs' Deerhurst Transaction.

## ARGUMENT

Plaintiffs' motion for partial summary judgment raises the narrow issue of whether their 2003 amended return is a qualified amended return.  *See* TREAS. REG. 1.6664-2(c).  The Court has narrowed the issue in dispute to "whether, prior to Sala's filing of his amended return, KPMG was under a § 6700 investigation, and the scope of this investigation."  *See* May 30, 2007 Order at 6.  This Court determined that "the parties do not dispute that KPMG was under a § 6700 examination."  *Id*.  Accordingly, the only remaining issue is whether prior to plaintiffs' filing of an amended return, did "the scope of that investigation include [] the Deerhurst transaction."  *Id*. at 6-7.

**I.   THE DEERHURST TRANSACTION FELL WITHIN THE SCOPE OF THE IRS's KPMG EXAMINATION. KPMG SPECIFICALLY IDENTIFIED CARLOS SALA'S NAME IN RESPONSE TO THE KPMG EXAMINATION AND PRODUCED DOCUMENTS TO THE IRS RELATED TO THE DEERHURST TRANSACTION.**

Plaintiffs are not entitled to summary judgment because: (1) the KPMG examination was initiated <u>before</u> plaintiffs filed their amended return; and (2) the scope of the KPMG examination included the Deerhurst transaction.

Plaintiffs filed an amended return in November 2003.  *See* Motion for Partial Summary Judgment at 1, Docket Entry No. 114.  Two years earlier, by letter dated October 17, 2001, the

2

IRS provided formal notice to KPMG that the IRS was commencing an examination pursuant to Sections 6700, 6701, 6707, 6708, and 7408 of the Internal Revenue Code (26 U.S.C.).[1]  *See* Second Declaration of Internal Revenue Service Tax Shelter Promoter Compliance Specialist Michael A. Halpert ("Second Halpert Declaration") at ¶3.  At the beginning of this KPMG examination, the scope was limited to determining KPMG's role, if any, in promoting the Offshore Portfolio Investment Strategy ("OPIS"), a transaction described in Notice 2001-45, and to obtain information from KPMG about OPIS transactions.  *Id.*

On February 5, 2002, the IRS provided notice that the IRS was expanding the scope of its examination to include all of KPMG's tax shelter activities from January 1, 1994 to the present. *Id.* at ¶4 and its attached Exhibit A-1.   On March 19, 2002, in furtherance of the examination, the IRS served KPMG with 21 administrative summonses.  *Id.* at ¶5.  The summonses requested information about all of KPMG's shelter activity, including a summons specifically directed to Notice 2000-44 transactions,[2] and a "catch-all" summons issued under Section 6111(c).  Second

---

[1] The IRS has broad authority to gather and examine information in order to determine whether a person, including an entity, is complying with the internal revenue laws, including those that govern the promotion, marketing, disclosure, registration and maintenance of records (including investor lists) concerning tax shelters.  Obviously, the IRS cannot know in advance of its examination whether a particular entity has complied with the internal revenue laws.  Therefore, such examinations are necessarily, and appropriately, broad.  *See, e.g.,* 26 U.S.C. § 7602(a) (IRS may examine *any* books, papers, records, or other data which may be relevant or material to *any* inquiry into the liability of *any* person for *any* internal revenue tax); *United States v. Arthur Young & Co*., 465 U.S. 805, 816 (1984) (Congress' intent was to foster effective tax investigations by giving the IRS expansive information-gathering authority).

[2] Plaintiffs' tax counsel Laurence Nemirow testified that the Deerhurst Transaction fell within Notice 2000-44.  *See* Deposition of Laurence Nemirow at 73:16-18, attached as Exhibit A to Declaration of Anton L. Janik, Jr. ("Janik Declaration") filed herewith.

Halpert Declaration at ¶6. The KPMG examination was commenced and the summonses were served nearly two years before plaintiffs filed their amended return.

As this Court has appropriately noted, the question here is whether the KPMG examination covered the Deerhurst Transaction, <u>not</u> whether KPMG was liable for a promoter penalty for that activity.[3] The Deerhurst Transaction fell within the scope of the KPMG examination. *See* Second Halpert Declaration at ¶11; Declaration of [KPMG partner] Diane D. Fuller ("Fuller Declaration") at ¶4.[4] First, the February 5, 2002 letter explicitly notified KPMG

---

[3] While not relevant to the issue before the Court, for purposes of Section 6700, a promoter is anyone who "organizes (or assists in the organization of)" an abusive tax shelter. 26 U.S.C. § 6700(a)(1)(A). Under the Treasury Regulations, this "includes any marketing activity (directly or through an agent) with respect to an investment, including the following:
  (1)   Direct contact with a prospective purchaser of an interest, or with a representative or agent of a prospective purchaser, but only if the contract [*sic*] relates to the possible purchase of an interest in the tax shelter;"
*See* 26 C.F.R. § 301.6111-1T at Q-31.

While the question before the Court is whether KPMG was under examination for its shelter activity, which activity included the Deerhurst Transaction, and not whether KPMG was liable for a promoter penalty, KPMG in fact had extensive contact with plaintiff Carlos Sala, his counsel and others relating to his purchase of an interest in the tax shelter. Such activity falls within the plain language of the promoter penalty regulations. *See, e.g.*, KPMG Billing Records, Exhibit B to Janik Declaration. KPMG partner Tracie Henderson sought out and located additional legal counsel for plaintiffs, to review specific portions of the deal to lend support to the deal and convince plaintiffs to enter the Deerhurst Transaction. *Id*. Many of these steps were critical to Mr. Sala's decision to enter into the tax shelter.

In the Court's May 30, 2007 Order, it determined that the relevant considerations were whether KPMG was under a Section 6700 investigation before plaintiffs filed their amended return, and the scope of that investigation. *See* May 30, 2007 Order at 6. To the extent that plaintiffs' reply raises any additional issues beyond those narrowed by the Court, the United States believes that such issues will likely require factual development and testimony of former KPMG partner Tracie Henderson and her former boss Jeffrey Eischeid, and will require this Court to reconsider its prior ruling. Mr. Eischeid is a criminal defendant in *United States v. Stein*, 05-Cr.-888 LAK (S.D.N.Y. 2005).

[4] Ms. Fuller's testimony as KPMG's corporate designee was outlined in a November 17, 2006 letter sent from KPMG's counsel to John Colvin, plaintiffs' counsel. *See* November 17, 2006 Letter from Joseph Barloon to John Colvin, Exhibit C to Janik Declaration.

that the ongoing examination was expanded to include all of KPMG's shelter activity.  Second, in the administrative summonses the IRS issued in connection with the examination, the IRS explicitly requested the identification of persons, investors, and transactions related to KPMG's shelter activity.  *See* Second Halpert Declaration at Exhibit A-1.

The summonses defined the term "person" as "the meaning as defined in section 7701(a)(1) of the Internal Revenue Code but also includes all of the person's representatives," and which Section includes individuals, trusts, estates, partnerships, associations, companies and corporations.  26 U.S.C. § 7701(a)(1); *see also* Second Halpert Declaration at Exhibits A-2 and A-3.  The term "Investor" was defined as "any person that has or had a direct or indirect economic or beneficial interest in a Transaction and includes agents for and representatives of the Investor with respect to the Transaction … [and] also includes anyone who participated in a Transaction."  *See* Second Halpert Declaration at Exhibits A-2 and A-3.  The term "Transaction" was defined in the Notice 2000-44 summons as "all transactions, or any part, step or intermediate transaction, that are the same as, or substantially similar to transactions described in Transactions described in Notice 2000-44, 2000-36 I.R.B. 255 (transactions generating losses resulting from artificially inflating the basis of partnership interests)."  *See* Second Halpert Declaration at Exhibit A-2.  In the 6111(c) "catch-all" summons, the term "transaction" was defined as "all entities, plans, arrangements, investments, strategies, solutions, or transactions, or any part, step or intermediate transaction, for which KPMG made representations to its clients or potential investors from which such clients and potential investors may have reasonably concluded that such transaction will generate tax benefits greater than twice the amount of cash and property to be contributed towards such entities, plans, arrangements investment, strategies, solutions and/or

5

transactions." *See* Second Halpert Declaration at Exhibit A-3.  These two summonses sought, among other information:

1. All documents that identify all Investor(s) from whom KPMG received any fee, whether or not such fee related to a Transaction.

4. All documents that identify any persons whose names KPMG furnished to anyone that solicited, sold, marketed, organized, or managed any Transaction.  All documents that identify any persons whom KPMG referred to anyone that solicited, sold, marketed, organized, or managed any Transaction.  All documents that identify the persons that solicited, sold, marketed, organized, or managed any Transaction to whom KPMG furnished names or made referrals.

*See* Second Halpert Declaration at Exhibits A-2 and A-3.

In response to these summonses and the ongoing examination, KPMG identified Carlos Sala as a participant in an SOS transaction (Deerhurst) and produced documents to the IRS regarding Carlos Sala's shelter transaction.  *See* Fuller Declaration at ¶4; Second Halpert Declaration at ¶¶9,10; [First] Declaration of Michael Halpert ("[First] Halpert Declaration"), Docket Entry No. 44, at Ex. OO ¶6.  The plaintiffs' Deerhurst Transaction fell within the scope of the KPMG examination.

### II. BECAUSE PLAINTIFFS' AMENDED RETURN WAS FILED <u>AFTER</u> KPMG WAS NOTIFIED OF THE KPMG EXAMINATION, IT WAS NOT A QUALIFED AMENDED RETURN.

Qualified amended return status serves as a means to encourage taxpayers to be forthright in their dealings, and is a benefit afforded to those who disclose their transactions and tax liabilities before the IRS initiates an examination.  As the Department of Treasury noted when it implemented temporary regulations in 2005 in the area of qualified amended returns, changes were necessary "[t]o discourage the wait-and-see approach of some taxpayers and to encourage voluntary compliance" with the tax laws.  T.D. 9186, 2005-1 C.B. 790.  Indeed, taxpayers

6

engaging in tax shelter transactions are generally known to be playing different "lotteries," including the "audit lottery" wherein the taxpayer hopes that the IRS does not audit his tax return and discover the tax shelter. *See generally* Brian Galle, "Interpretative Theory and Tax Shelter Regulation," 26 VA. TAX REV. 357, 358, 403 (Fall 2006).  Aggressive taxpayers are therefore forced to make the choice between not disclosing their tax shelter activities and suffering the imposition of penalties if they are caught, or disclosing their activities and paying their full tax liability, but not penalties.  It is a game of chance, because taxpayers do not know when the IRS will start an audit that will lead to the disclosure of their shelter activities.

Because the Deerhurst Transaction fell within the scope of the IRS's KPMG examination, plaintiffs' amended return filed <u>after</u> the commencement of that examination does not constitute a qualified amended return.  Therefore, the amended return is not considered for purposes of calculating the accuracy-related penalty.

Treasury Regulation Section 1.6664-2(c)(3) defines a qualified amended return as:

An amended return … filed after the due date of the return for the taxable year … and before the earliest of …

(B) the date any person[5] is first contacted by the Internal Revenue Service concerning an examination of that person under Section 6700 (relating to the penalty for promoting abusive tax shelters) for an activity with respect to which the taxpayer claimed any tax benefit on the return directly or indirectly through the entity, plan or arrangement described in Section 6700(a)(1)(A)….

---

[5] Under TREAS. REG. 301.7701-6(a), the term "person" is defined to include "an individual, a corporation, a partnership, a trust or estate, a joint-stock company, an association, or a syndicate, group, pool, joint venture, or other unincorporated organization or group." According to KPMG's U.S. website, KPMG LLP is "a U.S. limited liability partnership and a member firm of the KPMG network of independent member firms affiliated with KPMG International, a Swiss cooperative."  *See* http://www.us.kpmg.com/index.asp (last visited June 11, 2007).  Because KPMG is a partnership, it is a "person" for purposes of the Treasury Regulations.

Plaintiffs' original tax return showed no tax due because the tax shelter they employed purportedly offset their $60 million in income. There is no dispute that in November 2003 plaintiffs filed an amended return, eliminating their $23 million underpayment of tax by disclosing the shelter and then paying the tax due. *See* Plaintiffs' Motion for Partial Summary Judgment, at 1. Nearly two years earlier, on February 5, 2002, the IRS notified KPMG that it was "conducting an examination to determine KPMG's liability with regard to all tax shelter activities from January 1, 1994 to the present." *See* Exhibit A-1 to Second Halpert Declaration. KPMG identified Carlos Sala as a participant in a SOS transaction and then provided the IRS with documents regarding the Deerhurst Transaction. *See* Declaration of Diane Fuller at ¶¶2,4; Second Halpert Declaration at ¶¶7,9; [First] Halpert Declaration at ¶6.

Because plaintiffs' amended return does not constitute a qualified amended return, the United States may seek to offset that accuracy-related penalty, in a dollar amount to be established at trial, against any payment this Court orders returned, including a return of interest under Section 6404(g) of the Internal Revenue Code. *See* TREAS. REG. 1.6664-2(c)(3); *Lewis v. Reynolds*, 284 U.S. 281, 283 (1932) ("the United States [may] retain payments already received when they do not exceed the amount which might have been properly assessed and demanded"). Accordingly, plaintiffs are not entitled to summary judgment on the United States' offset defense.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for partial summary judgment on the United States' offset claim should be denied.

Dated this 19th day of June, 2007.    TROY A. EID
United State Attorney
MARK S. PESTAL
Asst. U.S. Attorney

s/ Anton L. Janik, Jr.
DAVID N. GEIER
ANTON L. JANIK, JR. CO #35164
AMY T. MATCHISON
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 683
Ben Franklin Station
Washington, D.C. 20044-0683
Telephone:  (202) 305-2558
Facsimile:   (202) 307-0054
Email: Anton.L.Janik@usdoj.gov

Street Address:    Judiciary Center Building
555 Fourth Street, N.W.
Washington, D.C. 20001

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CERTIFICATE OF SERVICE (CM/ECF)

      I hereby certify that on June 19, 2007, I electronically filed the foregoing United States' Opposition To Motion For Partial Summary Judgment (Offset) with the Clerk of Court using the EFC system which will send notification of such filing to the following e-mail addresses:

dhallett@chicoine-hallett.com
jcolvin@chicoine-hallett.com
david.n.geier@usdoj.gov
anton.l.janik@usdoj.gov
amy.t.matchison@usdoj.gov

                                        s/ Anton L. Janik, Jr.
                                        ANTON L. JANIK, JR.
                                        U.S. Department of Justice
                                        Tax Division