IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00636-LTB-PAC

CARLOS E. SALA and
TINA ZANOLINI SALA,

        Plaintiffs,

v.

UNITED STATES OF AMERICA,

        Defendant.

---

PLAINTIFFS' REPLY TO UNITED STATES' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE DEFENDANT'S OFFSET DEFENSE

---

Introduction

The government's opposition fails to acknowledge the language of the applicable Treasury Regulation requiring that, for Carlos Sala's ("Sala") amended return to be disqualified from providing penalty protection, KPMG must have been contacted by the IRS regarding an examination of the activity that generated Sala's claimed tax benefit before the amended return was filed. The activity with respect to which Sala claimed a tax benefit was Deerhurst. The government also chooses to ignore altogether the fact that KPMG was not in fact contacted by the IRS concerning a promoter penalty examination of Deerhurst before the filing of Sala's amended return. The far more general contacts the IRS had with KPMG before the filing of the amended return in the course of the IRS' examination of KPMG do not even mention Deerhurst. Therefore, the contacts do not preclude Sala's amended return from being a "qualified amended

1

return" within the meaning of the regulation.

    I.    <u>Sala's amended return was filed before any person was contacted regarding an examination of the activity with respect to which Sala claimed a tax benefit.</u>

Sala's motion for partial summary judgment is focused upon the Treasury Regulation which provides that, for an amended return to constitute a qualified amended return protecting the taxpayer from the IRS assertion of an accuracy penalty, it must be filed before

> [T]he time any person described in section 6700(a) (relating to the penalty for promoting abusive tax shelters) is first contacted by the Internal Revenue Service concerning an examination of an activity described in section 6700(a) with respect to which the taxpayer claimed any tax benefit on the return ... .

Treas. Reg. § 1.6664-2(c)(3), prior to amendment by T.D. 9186, 3/01/2005.

In its opposition, the government fails to address the key language of the above cited Regulation: was KPMG contacted concerning "an examination of an activity... with respect to which [Sala] claimed any tax benefit on [his] return."

Sala claimed a tax benefit with respect to his investment in Deerhurst. Deerhurst was a very specific "activity," involving a five-year program designed to profit from investments in foreign currency contracts. The activity included the acquisition and disposition of hundreds of long and short positions on foreign currency contracts and options. Although all of the transactions were undertaken with the objective to make an economic profit, some transactions were reported for tax purposes in accordance with the then existing law which required that short options be disregarded in determining basis, causing an initial tax loss.

The government does not assert that KPMG was contacted concerning an examination of Deerhurst before Sala filed an amended return in November of 2003. Indeed, the government

does not argue that KPMG was <u>ever</u> contacted concerning an IRS examination of Deerhurst.[1] In fact, the government presents no information, nor does any of the discovery show, that any person or organization, including Deerhurst and its principals, was ever notified of a promoter penalty examination of Deerhurst.

IRS Agent Michael Halpert[2] states in his Declaration submitted with the government's opposition (Ex. 3, pg. 3, ¶¶ 8 & 9) that he did not even know about Deerhurst until 2005

---

[1] The language of the Regulation provides that a return will no longer be a qualified amended return if it is filed after,

> [t]he time any person described in section 6700(a) (relating to the penalty for promoting abusive tax shelters) is first contacted by the Internal Revenue Service concerning an examination of an activity described in section 6700(a) … .

Consistent with the controlling language of this regulation, in Request for Admission No. 33, Plaintiffs asked the government to,

> [a]dmit that the IRS did not contact KPMG with respect to an examination of Deerhurst Investor General Partners, prior to the time that Plaintiffs filed an amended return in 2003.

The government replied,

> Subject to and without waiving its general objections, the United States admits that the IRS did not contact KPMG with respect to an examination of Deerhurst Investors General Partners prior to the time that Plaintiffs filed their amended return in 2003. However, the United States avers that it is not required to identify co-promoters in a Section 6700 examination and that the IRS did contact KPMG with respect to transactions substantially similar to the transactions at issue in this case.

Exhibit 1 to Plaintiffs' Motion for Summary Judgment re: Defendant's Offset Defense, at p. 22 (Defendant's Responses to Requests for Admission). The government has thus admitted that it did not contact KPMG with respect to the Deerhurst "activity," apparently believing that it was sufficient to have contacted KPMG with respect to transactions that were "substantially similar" to Deerhurst.

[2] In contesting Plaintiffs' Motion for Partial Summary Judgment, the government relies extensively on declarations submitted by Agent Halpert and KPMG partner Diane Fuller, and certain documents attached thereto. Plaintiffs will be filing a motion to strike these declarations on the grounds that the witnesses and attached documentary information were not timely disclosed. Even if the Court does not grant Plaintiffs' motion to strike and the facts set out in those declarations are received by the Court, Plaintiffs are still entitled to prevail on the merits as set out in this Reply Brief.

following his inquiry to KPMG "in connection with this litigation."[3] How, then, could Halpert be considered to have contacted KPMG two years earlier about an activity (Deerhurst) of which he was completely unaware?

The plain language of the Regulation requires that the contact that would disqualify an amended return from providing penalty protection be specific with respect to the "activity" that was the basis for the taxpayer's claimed tax benefit. The government and Halpert's reliance upon Halpert's 2002 letter to KPMG's counsel John Bray that "we are conducting an examination to determine KPMG's liability with respect to all tax shelter activities from January 1, 1994 to the present" certainly lacks the required specificity. Likewise, their reliance on two IRS administrative summonses served upon KPMG is misplaced.

Neither of the two summonses to KPMG (Ex. A-2 & A-3) refer at all to Deerhurst. Instead, the "matter" to which the summonses pertain is stated as KPMG's liability for "IRC sections 6700, 6701, 6707, and 6708 penalties." The government and Agent Halpert attempt to make much of the fact that the April 18, 2002 administrative summonses (Ex. A-2) define "transactions" with respect to which documents were requested to include "all transactions, or any part, step or intermediate step or intermediate transaction, that are the same as, or substantially similar to transactions described in Notice 2000-44 ... ."

But the issue here is not whether KPMG was requested, before Sala filed his amended return, to produce documents that might include those relating to Sala and his participation in Deerhurst. The IRS's request for production of documents from KPMG was made pursuant to the IRS' broad authority under Section 7602 of the Internal Revenue Code to summons any

---

[3] Diane Fuller states in her Declaration as follows: "In connection with such examination and administrative summonses, KPMG produced documents to the IRS relating to Carlos Sala's Deerhurst transaction, including documents that identified Carlos Sala as a participant." She does not disclose, as does Halpert, that these documents were produced in 2005 in connection with this litigation. Nor does she disclose that prior IRS contacts with KPMG did not even mention Deerhurst.

4

documents from any person that "might throw light upon" the correctness of a return under IRS examination. *United States v. Harrington*, 388 F.2d 520, 523-524 (2d Cir. 1968). The issue here is whether KPMG was contacted concerning an examination of the "activity" that produced Sala's claimed tax benefit within the meaning of Treasury Regulation § 1.6664-2(c)(3) and 26 U.S.C. § 6700(a).

Notice 2000-44 describes a situation where "a taxpayer purchases and writes options and purports to create substantial positive basis in a partnership interest by transferring these option positions to a partnership," then disposes of the partnership interest and claims a loss because the cost of the purchased option is included in basis, but the short option is disregarded. The fact the IRS' summonses sought information from KPMG concerning taxpayers who took the legal position described by the IRS in Notice 2000-44 does not establish that KPMG was contacted regarding an examination of the activity that generated Sala's claimed tax loss. The "activity" that produced Sala's tax loss was much more than a legal theory regarding the treatment of short positions; it was an investment program. A 'legal theory' standing alone is not an activity that produces a tax loss, which is clear from the relevant language of the Regulation and the provisions of the statute (§6700(a)) to which it refers.[4]

The Regulation in question refers to a person being contacted "concerning an examination of an activity referred to in section 6700(a)... ." Section 6700(a) refers to an "activity" with respect to which a promoter penalty may apply as a "partnership or other entity, investment plan or arrangement, or any other plan or arrangement." The "investment plan or arrangement" here was Deerhurst, which included the acquisition and disposition of specific foreign currency contracts by specific individuals and entities, not merely the application of the

---

[4] Laurence Nemirow's testimony, relied upon by the government (Opp. pg. 3, footnote 2), that he cautioned Sala the IRS would likely challenge the Deerhurst transaction in light of Notice 2000-44 is irrelevant to the issue here as to whether KPMG was contacted regarding the examination of the "activity" for which Sala claimed a tax benefit.

legal theory concerning the treatment of short positions discussed in Notice 2000-44. Thus, the plain language of both the Regulation and Section 6700 of the Internal Revenue Code refute the government's position that a legal theory, standing alone, constitutes an "activity" such that the summonses served upon KPMG meet the Regulation requirements.

The summonses served upon KPMG for information concerning transactions "substantially similar" to those described in Notice 2000-44 were aimed at identifying "activities" that the IRS might want to examine. That is substantially different from a contact with KPMG stating an "activity," e.g. Deerhurst, has been identified and has been placed under examination.

Agent Halpert further states in his declaration that:

> In June 2004, KPMG provided me with a list of clients, including Carlos Sala, who participated in 'SOS' tax shelter transactions. 'SOS' is a designation given by KPMG to one of the two tax shelter transactions described in IRS Notice 2000-44. At that time, KPMG did not produce any other information about Carlos Sala's 'SOS' shelter transaction (referred to in this litigation as Deerhurst) or KPMG's role in connection with that shelter transaction."

Halpert Dec., ¶ 7.

KPMG may well have concluded, in light of the summonses' broad definition of "transaction" that Sala's name had to be provided in response to the summonses. This would explain Halpert's assertion that Deerhurst fits within KPMG's alleged designation of so-called "SOS" transactions. Or, KPMG may have produced Sala's name in response to the summonses because the summonses required production of documents where KPMG received fees, regardless of "whether or not such fee[s] related to a [t]ransaction." (Ex. A-3, pg. 5, ¶ 1). In either case, the fact that KPMG produced Sala's name does not show that it was contacted concerning Deerhurst.

6


The government argues (Opp., pgs. 6-7) that the regulations regarding qualified amended returns are intended "[t]o discourage the wait-and-see approach of some taxpayers and encourage voluntary compliance with the tax laws." The amended return procedures, according to the government, discourage the taxpayer from playing the audit lottery, where the taxpayer "hopes that the IRS does not audit his tax return and discover the tax shelter." In exchange for penalty protection, the taxpayer must voluntarily come forward and pay the tax. That is precisely what occurred in Sala's case.

While the government correctly notes that Sala was advised by Laurence Nemirow from the outset that "the IRS would likely challenge the transaction" (Dec. of Janik in Support of U.S.'s Opposition, Ex. A), Sala never "played the audit lottery." He never received notice that any person or organization was contacted concerning Deerhurst before filing his amended return. He never received notice or was otherwise aware that KPMG was under examination, had received summonses, and provided his name to the IRS. He voluntarily filed his amended return and paid the tax and legally-required interest after being advised that he was not required to do so, but that, if he did, he would be protected from penalties. Declaration of Carlos E. Sala in Support Of Plaintiffs' Motion For Partial Summary Judgment, ¶¶ 2-4. He undertook all of these actions in 2003, long before KPMG apparently provided his name to the IRS in June of 2004.

Our position that Sala's amended return entitles him to penalty protection under the Regulations is in accordance with both the spirit and letter of the law. Indeed, for other Deerhurst investors who filed amended returns and for whom KPMG was a tax return preparer, the government agreed the returns provided penalty protection. Ex. 19 to Plaintiffs' Motion for Partial Summary Judgment Regarding Defendant's Offset Defense. Sala's initiation of litigation has caused the government to strain the facts and law beyond any reasonable limits in an effort to

deny him the interest refund to which he is entitled. The government should not be allowed to treat taxpayers differently and punish those who elect to exercise their legal rights.

 II. <u>If the Court concludes the IRS' contacts with KPMG did amount to contact concerning an activity with respect to which Sala claimed a tax benefit, within the meaning of the Regulation, then fact issues remain to be decided to determine whether the amended return qualifies for penalty protection.</u>

Under the provisions of the Treasury Regulations in effect prior to 2005, there are two requirements that must be shown by the government in this proceeding in order for Sala's amended return to be disqualified for penalty protection: 1) KPMG was "a person described in §6700(a)"; and 2) KPMG was contacted by the IRS concerning an examination of the activity that produced Sala's claimed tax loss. Thus far, this brief has dealt with requirement (2). If the Court holds that requirement (2) is satisfied and denies our motion for partial summary judgment on that ground, requirement (1) remains to be decided.

Section 6700(a) describes a person subject to the promoter penalty as follows:

> Any person who-
>
> (1)(A) organizes (or assists in the organization of)- (i) a partnership or other entity, (ii) any investment plan or arrangement, or (iii) any other plan or arrangement, or
>
> (B) participates (directly or indirectly) in the sale of any interest in an entity or plan or arrangement referred to in subparagraph (A) **and**
>
> (2) makes or furnishes or causes another person to make or furnish (in connection with such organization or sale)
>
> (A) a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement which the person knows or has reason to know is false or fraudulent as to any material matter…

26 U.S.C. § 6700(a) (emphasis supplied).

Pursuant to the statute, in order for KPMG to be a "person described in section 6700(a)" it must be proven by the government that KPMG participated in the organization or sale of interests in Deerhurst, <u>and</u> made false or fraudulent statements concerning the represented tax benefits of investing in Deerhurst.[5] As set forth in Sala's opening brief in support of partial summary judgment, the evidence produced in discovery falls woefully short of establishing these requirements of Section 6700(a), a matter on which the government bears the burden of proof.

Michael Schwartz and Andrew Krieger, persons who <u>did</u> participate in the organization of Deerhurst and/or the sale of interests therein, testified unequivocally that KPMG had no role in their activities. Former KPMG employees Angie Napier and Kevin Brady were unaware of any activities of KPMG amounting to the promotion of Deerhurst. This is so despite the fact that Brady was the KPMG employee most involved in the preparation of Sala's 2000 tax return, and that Napier's primary responsibility at KPMG was to coordinate and prepare the paperwork on transactions promoted by Tracie Henderson's group. Even KPMG's current counsel, Joseph Barloon, whose letter setting forth what he alleges was KPMG's role with respect to Deerhurst, does not state that KPMG participated in the organization or sale of Deerhurst, and/or made false statements with respect to claimed tax benefits, so as to be a person described in Section 6700(a). The government points to no document of the thousands produced by KPMG to it that would show that KPMG is such a "person" within the meaning of Section 6700(a).

The government argues (Opp. pg. 4, n.3) that, "while not relevant to the issue before the Court," the evidence demonstrates KPMG's liability for the Section 6700 promoter penalty regarding Deerhurst. Yet, the government does not even allege, nor does any discovery material show, that the Section 6700 promoter penalty was ever asserted by the IRS against KPMG with

---

[5] In its Reply Brief with respect to its 56(f) Motion, the government agreed that it must show not only the required contact with KPMG, but also whether KPMG's activities made them a promoter within the meaning of Section 6700(a). United States' Reply to Motion for 56(f) Relief, p. 1.

9

respect to Deerhurst.

Further, the "evidence" described by the government does not begin to establish KPMG's liability as a promoter of Deerhurst: First, KPMG's billing records (Janik Dec. Ex. B) corroborate Sala's testimony regarding KPMG's role as a return preparer, not as a promoter. For example, Henderson's billing entry stating "read short option opinion, and discuss with Carlos and Tony, telephone call with R.J. Ruble," is consistent with Sala's testimony that Henderson wanted to be familiar and comfortable with the Ruble tax opinion before preparing and signing off on Sala's tax returns. Numerous other entries in the billing records relate to the preparation of the 2000 tax return.

Second, Henderson did recommend "additional legal counsel" to Sala as the government alleges. However, her suggestion that Sala contact an independent attorney, Bruce Lemons, to obtain additional confirmation regarding legal issues posed by the Deerhurst program hardly establishes Henderson's participation in the organization or sale of Deerhurst.

Moreover, the government's reliance on Section 301.6111-1T of the Treasury Regulations, at Q&A-31, is completely misplaced. First, that regulation relates to a "material advisor" required to file a return with respect to a "reportable transaction" under Section 6111 of the Internal Revenue Code. It does not define who is a "promoter" for purposes of Section 6700(a) (who in addition to organizing or selling, must also make or furnish a false statement regarding tax benefits). Further, the provision of the regulation the government relies upon states participation in the sale of a tax shelter includes "direct contact with a prospective purchaser of an interest ... but only if the contact relates to a possible purchase of an interest in the tax shelter." This provision comes into play if a person is promoting the purchase of an interest. It clearly would not make Henderson a participant in the sale by reason of her preparation of the

10

tax return and review of the Ruble opinion in connection therewith.

In light of the above, and the fact that the government has the burden of proof with respect to whether Sala's amended return was disqualified from treatment as a qualified amended return by reason of the existence the examination of KPMG with respect to the Deerhurst investment, we believe it would be appropriate for the Court to grant summary judgment on the promoter issue if the Court denies our motion regarding the contact issue. However, in view of the Court's ruling on the government's 56(f) Motion, we do not ask the court to do so.

WHEREFORE, Plaintiffs respectfully request this Court grant Plaintiffs' Motion for Partial Summary Judgment on Defendant's Offset Defense.

DATED this 29th day of June, 2007.

        CHICOINE & HALLETT, P.S.

        s/ John M. Colvin
        Darrell D. Hallett
        John M. Colvin
        Chicoine & Hallett, P.S.
        Attorneys for the Plaintiffs Carlos E. Sala
          and Tina Zanolini-Sala
        1011 Western Ave. Suite 803
        Seattle WA, 98104
        Telephone: (206) 223-0800
        Facsimile: (206) 467-8170
        Email: dhallett@chicoine-hallett.com
               jcolvin@chicoine-hallett.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2007, I electronically filed using the CM/ECF system, which will send notification to the following:

    David N. Geier:        David.N.Geier@usdoj.gov

    Anton. L. Janik, Jr.:        Anton.L.Janik@usdoj.gov

    Amy Matchison:        Any.T.Matchison@usdoj.gov

I declare under the penalty of perjury under the laws of the State of Washington and the United States that the foregoing is true and correct.

DATED this 29th day of June, 2007.

<div style="text-align: right">

CHICOINE & HALLETT, P.S.

s/ John M. Colvin
Darrell D. Hallett
John M. Colvin
Chicoine & Hallett, P.S.
Attorneys for the Plaintiffs Carlos E. Sala
    and Tina Zanolini-Sala
1011 Western Ave. Suite 803
Seattle WA, 98104
Telephone: (206) 223-0800
Facsimile: (206) 467-8170
Email: dhallett@chicoine-hallett.com
      jcolvin@chicoine-hallett.com

</div>