**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**LEWIS T. BABCOCK, JUDGE**

Case No. 05-cv-00636-LTB-PAC

CARLOS E. SALA, and
TINA ZANOLINI-SALA,

    Plaintiffs,

v.

UNITED STATES OF AMERICA,

    Defendant.

_____

**Order**
_____

    Plaintiffs Carlos and Tina Zanolini-Sala (referred to herein as "Sala") move for partial summary judgment on the Government's offset defense (Docket #114) against Sala's claim for a $26 million tax refund. For the reasons stated below, Sala's motion is DENIED.

**I.  BACKGROUND**

    This case involves a claim by Sala for a refund on his year 2000 federal tax return. Although Sala had income of more than $60 million, he claimed a tax loss that essentially nullified his tax burden. Sala initially filed his 2000 federal tax return on or before April 15, 2001, claiming a tax loss of about $60 million, approximately equal to his $60 million in income. Sala's claimed his loss from his investment in Deerhurst, a foreign currency options transaction. Sala filed an amended return November 18, 2003, where he eliminated the loss he claimed on his original 2000 return, and paid over $26 million in taxes. Sala later filed another amended return, reclaiming the loss he originally claimed in his 2000 return, and sought a refund of taxes and penalties he had

paid to the IRS. Most relevant to this motion, Sala's claims for refund includes $1.5 million he paid in putatively "excess" interest.

The Government asserted two affirmative defenses to Sala's excess interest claim. The first affirmative defense, the subject of this motion for summary judgment, asserts that even if Sala overpaid interest, the Government is entitled to setoff an accuracy-related penalty against any amount due to Sala, under 26 U.S.C. § 6662. The Government argues that this accuracy related penalty may equal as much as 40% of the tax he owes, or up to $9.49 million. *See* 26 U.S.C. § 6662(h).

The Government's defense against Sala's claims also involves an unrelated criminal case in the Southern District of New York, *United States v. Stein,* S1 05 cr 888 (LAK) (S.D.N.Y.) 2005). In *Stein*, the Government has indicted several accountants and lawyers, as well as the accounting firm KPMG, on numerous counts all related to developing and promoting a series of fraudulent tax shelters. The Government, as part of its overall defense against Sala's claim, alleges that KPMG played a key role in promoting and developing Deerhurst.

## II. STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). I shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©. A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The non-moving party has the burden of showing that there are issues

of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

### III. DISCUSSION

The parties agree on the statutory framework governing this motion. The Government seeks to assess an accuracy related penalty against Sala pursuant to 26 U.S.C. § 6662. The Internal Revenue Service ("IRS") may only apply such a penalty if there is an "underpayment" of taxes. 26 U.S.C. § 6662(a). A taxpayer may correct an earlier underpayment by filing a "qualified amended return" which has the effect of preventing liability for an accuracy related penalty. 26 C.F.R. § 1.664-2(c)(2) (2003). (I cite to the version of the Code of Federal Regulations in effect in 2003.) Accordingly, if Sala's 2003 amended return is a "qualified amended return" he is not liable for an accuracy related penalty.

At issue here is an exception to the rule regarding qualified amended returns in situations involving abusive tax shelters. A return is not a "qualified amended return" if it was filed after:

> "The time any person described in section 6700(a) (relating to the penalty for promoting abusive tax shelters) is first contacted by the Internal Revenue Service concerning an examination of an activity described in section 6700(a) with respect to which the taxpayer claimed any tax benefit on the return directly or indirectly through the entity, plan or arrangement described in section 6700(a)(1)(A)."

26 C.F.R. § 1.664-2(c)(3)(ii) (2003). Section 6700(a) in turn imposes penalties on an individual who "organizes (or assists in the organization of)" a partnership or other entity, any investment plan or arrangement, or any other plan or arrangement, § 6700(a)(1)(A), and who "makes or furnishes or causes another person to make or furnish (in connection with such organization or sale)" a statement with respect to the allowability or excludability of a tax credit or benefit "which

the person knows or has reason to know is false or fraudulent as to any material matter." 26 U.S.C. § 6700(a)(2)(A).

Sala argues that the record contains no disputed fact showing that KPMG "organized or assisted in the organization of" the Deerhurst transaction that was the basis for Sala's claimed tax loss. Absent evidence that KPMG was a promoter of Deerhurst, Sala contends, it is undisputed that his November 2003 is a qualified amended return, and he is therefore not subject to an accuracy related penalty, which in turn entitles him to summary judgment.

However, as I stated in an Order May 30, 2007 on the Government Motion to Stay (Docket # 167), the issue here is not whether KPMG did or did not organize, or assist in organizing, Deerhurst but whether KPMG was, pursuant to Section 1.6664-2, "contacted" by the IRS with regard to an activity described in § 6700. As that Order stated "(T)he issues on which Sala's motion depend are the date the IRS notified KPMG it was under investigation and whether the scope of that investigation included the Deerhurst transaction." For the purposes of that Order, which only addressed whether the Government was entitled to a continuance or stay of Sala's motion, I did not resolve those issues. The time has now come to do so.

A.      Was KPMG Under a § 6700 Investigation Prior to Sala's filing of his Amended Return?

It is undisputed that Sala filed his amended return on November 18, 2003. So this issue reduces to whether KPMG was under an investigation under § 6700 prior to that date. According to IRS Tax Shelter Promoter Compliance Specialist Michael A. Halpert, the IRS first notified KPMG that it was under investigation for tax shelter activities on October 17, 2001. On February 5, 2002 the IRS notified KPMG that it was expanding the scope of this investigation to cover "KPMG's liability with regard to all tax shelter activities from January 1, 1994 to the present."

The summonses the IRS served to KPMG state explicitly that the examination is pursuant to § 6700, as well as other provisions of the IRS Code. Moreover, the attorney for KPMG, in a letter to Sala's attorney, has stated that in September of 2001 "the IRS commenced an examination into whether KPMG was complying with federal tax laws that govern promotion, marketing disclosure, registration and maintaining records of tax shelters." I conclude that KPMG was subject to an IRS investigation pursuant to § 6700 prior to Sala's filing of his amended return.

B.    The Scope of the § 6700 investigation

Sala's motion therefore hinges on the scope of the IRS investigation of KPMG under § 6700. If the scope of this examination included Deerhurst, Sala's amended return is not a "qualified amended return" and he is subject to an accuracy related penalty. In the posture of this motion for summary judgment, the Government need only raise a fact issue as to whether the KPMG investigation included Deerhurst to defeat Sala's motion.

Sala, argues that the record contains no evidence showing that KPMG was contacted specifically about Deerhurst prior to November 18, 2003. Moreover, Sala contends that the Government's response to its Request for Admission 33 resolves this issue. This request reads:

> "Admit that the IRS did not contact KPMG with respect to an examination of Deerhurst Investors General Partners, prior to the time that Plaintiffs filed an amended return in 2003."
>
> Answer: The United States admits that the IRS did not contact KPMG with respect to an examination of Deerhurst Investors Partners prior to the time that Plaintiffs filed an amended return in 2003. However, the United States avers that the IRS is not required to identify co-promoters in a Section 6700 examination and that the IRS did contact KPMG with respect to transactions substantially similar to the transactions at issue in this case."

The Government responds that this admission is not dispositive. While the IRS did not

5

contact KPMG with respect to an examination of Deerhurst, KPMG was contacted with respect to its own tax shelter activity, which the Government avers "happened to include an SOS shelter that involved Deerhurst Investors General Partnership." Accordingly, the Government argues, the scope of the investigation included Deerhurst even if the IRS did not contact KPMG "with respect to" Deerhurst.

Sala disputes the Government's evidence. He points out that Halpert's own declaration states he had not heard of Deerhurst until 2004, and that the IRS investigation of KPMG did not disclose documents identifying Sala until 2004, after he filed his amended return. Sala also provides his own declaration stating that he had no "knowledge or information" that KPMG had been contacted by the IRS concerning an examination of Deerhurst" prior to November of 2003.

While this evidence tends to show that the Government was not investigating KPMG specifically about Deerhurst, the record before me shows the scope of the investigation may nevertheless have included Deerhurst. The Government provides the declaration of Diane D. Fuller, who serves as Risk Management – Tax Partner in Charge – Policy and Procedure at KPMG. Fuller states that in relation to the IRS examination of KPMG, KPMG produced documents "relating to Carlos Sala's Deerhurst transaction, including documents that identified Carlos Sala as a participant." Fuller does not state when these documents were provided. Halpert states in his declaration that on February 5, 2002 the IRS provided formal notice to KPMG that the IRS was expanding the scope of its examination to determine KPMG's liability with regard to all tax shelter activities from January 1, 1994 to the present." Halpert also states that "Carlos Sala's SOS shelter transaction is within the scope of the IRS's examination of KPMG." Halpert does not state at what point the investigation included Deerhurst.

6

KPMG's attorney, Joseph Barloon, in a letter to Sala's lawyer, John Colvin, answered a series of questions related to this case. Barloon states that "As of March 19, 2002, if not earlier, KPMG knew that it was subject to a section 6700 promoter penalty examination that covered SOS transactions." Barloon further states in his letter to Colvin that "The Deerhurst transaction is an SOS transaction that resulted in claimed tax losses on a tax return prepared by KPMG."

The IRS summons itself also sheds light on the scope of the IRS investigation of KPMG and its relation to Deerhurst. The summons includes among the definitions of "transactions" for which it seeks information all transactions that are "the same as or substantially similar to transactions described in Notice 2000-44." While during this litigation the parties have disputed both the scope and the legal authority of IRS Notice 2000-44, there is no question that Sala and his attorneys were aware that there was at least a question as to whether Deerhurst was covered by 2000-44. One of Sala's attorneys, Bruce Nemirow, stated that he believed it was.

Sala argues that the fact that the IRS sought information from KPMG about tax shelters like those in 2000-44 does not mean they were contacted about Deerhurst. But the Barloon letter states that between August 2000 and March-April 2002, "KPMG personnel were aware of the fact that Notice 2000-44 related to, *inter alia,* SOS transactions." So KPMG apparently, understood that the IRS investigation covered SOS transactions, which KPMG itself acknowledges included Deerhurst. Sala states that Nemirow's testimony is irrelevant to the issue of the scope of the KPMG investigation, but it does address the extent to which Sala's own attorney believed that Deerhurst was covered by 2000-44. If KPMG and Nemirow both believed that Deerhurst was a 2000-44 activity, that does not prove that it was. But it certainly raises a fact question.

Cumulatively, this record is sufficient to create a question of fact as to whether the IRS investigation of KPMG included Deerhurst. There is no question that it covered SOS transactions, and KPMG representatives state that Deerhurst was an SOS transaction. There is no question it covered transactions like those described in 2000-44; the IRS summons specifically requests information on transactions like those in 2000-44, which Sala's own attorney believed covered Deerhurst.  KPMG understood that 2000-44 covered SOS transactions, which it believed to include Deerhurst. There is also no question that after 2003 KPMG provided the IRS documents specifically on Deerhurst, and identifying Sala. An IRS official, and a KPMG partner, both have declared that the investigation included Deerhurst. To be clear, this evidence does not prove that KPMG was a Deerhurst promoter. It does not even show, beyond dispute, that the scope of the investigation included Deerhurst. (The Government has not sought summary judgment on this issue). However, this record is sufficient to create disputed facts which defeat summary judgment for Sala on this issue.

It is so Ordered that Sala's Motion for Summary Judgment Re: Defendant's Offset Defense (Docket # 114) is DENIED.

**DONE and ORDERED,** this ___3rd___ day of July, 2007, at Denver, Colorado.

                                        ___s/Lewis T. Babcock_____
                                        United States District Judge