# EXHIBIT 6

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

1440 NEW YORK AVENUE, N.W.

WASHINGTON, D.C. 20005-2111

TEL: (202) 371-7000

FAX: (202) 393-5760

http://www.skadden.com

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEWARK
NEW YORK
PALO ALTO
RESTON
SAN FRANCISCO
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO

November 17, 2006

**VIA E-MAIL AND FEDERAL EXPRESS**

John Colvin, Esq.
Chicoine & Hallett P.S.
Waterfront Place One, Suite 803
1011 Western Ave.
Seattle, WA 98104

RE: <u>Sala v. United States, 05-CV-00636</u>

Dear Mr. Colvin:

      This Firm represents KPMG LLP ("KPMG") in connection with a Rule 45 subpoena for documents and for 30(b)(6) testimony (the "Subpoena") in the above-captioned matter. As we have discussed and as set forth in prior correspondence, KPMG's position is that the subpoena is overly broad and unduly burdensome, and is otherwise objectionable. Nevertheless, in an effort to cooperate with the parties to this litigation, KPMG has collected certain responsive documents and has expended efforts to gather information that may be relevant to this litigation. As set forth below, KPMG will supplement its prior productions of documents relating to Carlos Sala and the Deerhurst Transaction and is setting forth information relating to the deposition topics identified in the subpoena for testimony.

      With regard to the subpoena for documents, KPMG has previously produced to the government or you certain responsive documents in its possession that it has located responsive to Subpoena Requests 1 through 4. Additional responsive documents are enclosed, bearing the bates numbers KMPG-SALA-00020001 through KMPG-SALA-00020623. Documents KMPG-SALA-00020257 through KPMG-SALA-00020265, KMPG-SALA-00020267 through KPMG-SALA-00020276, KPMG-SALA-00020288 through KPMG-SALA-00020289, KPMG-SALA-00020300 through KPMG-SALA-00020301 and KPMG-SALA-00020397 through KPMG-SALA-00020623 were derived from Tracie Henderson's hard drive. Document KPMG-SALA-00020242 originated in Angie Napier's hard drive. Documents KPMG-SALA-00020249 through KPMG-SALA-00020256 were derived from Joseph DePew's hard drive, and a substantially duplicate copy was also located

John Colvin, Esq.
November 17, 2006
Page 2

on Tracie Henderson's hard drive. Finally, documents KPMG-SALA-00020331 through KPMG-SALA-00020375 originated in David Rivkin's hard drive. KPMG objects to producing any documents responsive to Requests 5 through 9 because these documents reveal confidential aspects of the IRS examination and the grand jury proceedings. Relevant information relating to communications between KPMG and the government is, however, set forth below.

If KPMG becomes aware of any additional documents that reference Mr. Sala or the Deerhurst Transaction, we will provide those documents to you in a supplemental production.

With regard to the subpoena for a 30(b)(6) deposition, KPMG's role in the transaction at issue in the litigation between your client and the government is readily ascertainable from the documents already in your possession. In addition, as there are no individuals currently at KPMG who have organizational knowledge of the topics that you seek to cover, we do not believe that it would be appropriate to seek 30(b)(6) testimony from KPMG on the issues set forth in the deposition notice. Finally, as we have discussed with both you and the government, any need for a 30(b)(6) deposition can be obviated by the parties entering into stipulations based on representations from KPMG. With those considerations in mind and without waiving any objections that KPMG might assert, set forth below are representations in response to each of the deposition topics identified by you. Please note that KPMG's responses here are based on the information available to KPMG, and KPMG does not have access to the individuals with the most direct knowledge of the topics set forth below.

1. "The role, if any, played by KPMG with respect to the transaction entered into by Plaintiff Carlos E. Sala in the year 2000 with the Deerhurst, which transaction was reported by Sala on his 2000 tax return (which return was prepared by KPMG). This transaction is referred to hereafter as the "Deerhurst Transaction";

KPMG has not spoken with Tracie Henderson, Jeff Eischeid, Angie Napier, or Kevin Brady with respect to this transaction. KPMG has determined based on the available documents that its role was to provide tax advice with respect to this transaction, including by commenting on draft opinion letters, and to prepare the tax returns.

2. "The role, if any, played by Tracie Henderson, Jeffrey Eischeid, Angie Napier or Kevin Brady with respect to Plaintiff Carlos E. Sala's participation in the Deerhurst Transaction";

KPMG has not spoken with Tracie Henderson, Jeff Eischeid, Angie Napier, or Kevin Brady with respect to this transaction. Accordingly, KPMG cannot comment with specificity as to what role these individuals played in the Deerhurst Transaction aside

from what it has learned from documents, which documents are in the parties' possession, or from depositions of these individuals taken by the parties.

3. "Advice or recommendations, if any, given by KPMG to any of its clients with respect to the Deerhurst Transaction";

KPMG has located no information indicating whether it provided any advice or recommendations to any of its clients with respect to the Deerhurst Transaction beyond that set forth in the documents provided to you and the government.

4. "Opinions, if any, issued by KPMG regarding the Deerhurst Transaction";

KPMG is not aware of having issued any opinions regarding the Deerhurst Transaction.

5. "Fees, if any, earned by KPMG with respect to Plaintiff Carlos Sala's participation in Deerhurst";

KPMG earned fees of $25,000 from Mr. Sala related to his participation in Deerhurst.

6. "Fees, if any, received from Carlos E. Sala with respect to his potential or intended participation in the BLIPS strategy";

KPMG does not believe that it received any fees from Sala with respect to his potential or intended participation in the BLIPS strategy.

7. "When and how KPMG provided information to Carlos E. Sala concerning any KPMG-promoted tax advantaged transactions other than BLIPS";

KPMG met with Mr. Sala on October 28, 1999 and provided information to Mr. Sala at that time concerning certain KPMG-promoted tax advantaged transactions. KPMG provided information to Mr. Sala concerning other transactions, including OPIS and TRACT, in 1999 and 2000, as set forth in documents in the parties' possession.

8. "When and how KPMG provided information to the IRS during the section 6707 tax shelter registration examination with respect to those SOS transactions which KPMG promoted, marketed, assisted with, or included as losses or deductions on client tax returns";

Pursuant to a March 19, 2002 summons (as set forth below in response to topic 10), KPMG produced documents relating to SOS transactions to the IRS on numerous

John Colvin, Esq.
November 17, 2006
Page 4

occasions in 2003, 2004, and 2005. On July 27, 2004, KPMG provided to the IRS an Investor List for SOS transactions, which list included Mr. Sala.

9. "The IRS section 6700 promoter penalty examination of KPMG, including all correspondence received from the IRS and any oral or written communications regarding what transactions were being reviewed as part of the examination";

In September 2001, the IRS commenced an examination into whether KPMG was complying with federal tax laws that govern promotion, marketing, disclosure, registration and maintaining records of tax shelters. On August 26, 2005, KPMG and the IRS entered into a Closing Agreement, which resolved "KPMG's Examination under IRC sections 6694, 6700, 0701, 0708, 7404, and 7408." Between September 2001 and August 26, 2005, KPMG or counsel to KPMG engaged in hundreds of written or oral communications with the IRS relating to the IRS examination.

10. "When and how KPMG learned that the IRS section 6700 promoter penalty examination was expanded to cover "SOS transactions." (one of the two transactions described generally in Notice 2000-44, sometimes referred to as "digital options");

As noted above, in September 2001, the IRS commenced an examination into whether KPMG was complying with federal tax laws that govern promotion, marketing, disclosure, registration and maintaining records of tax shelters. In early 2002, KPMG was informed that the examination related to all listed transactions. On March 19, 2002, the IRS issued a Notice 2000-44 summons to KPMG. The summons indicated that it was being sent to KPMG pursuant to the IRS examination of KPMG under, *inter alia*, 26 U.S.C. § 6700 and 26 U.S.C. § 6707. The summons identified the relevant "Transaction" as all transactions, or any step or intermediate transaction, that were the same as or substantially similar to the transactions described in Notice 2000-44. Numerous documents from August 2000 and March-April 2002 show that KPMG personnel were aware of the fact that Notice 2000-44 related to, *inter alia*, SOS transactions. The Notice 2000-44 summons called for all documents relating to any transaction that was the same as or substantially similar to the transactions described in Notice 2000-44, whether or not completed. Accordingly, as of March 19, 2002, if not earlier, KPMG knew that it was subject to a section 6700 promoter penalty examination that covered SOS transactions.

11. "Which transactions are included within paragraph 20 of the Statement of Facts filed by KPMG in connection with KPMG's deferred prosecution agreement in the Southern District of New York as SOS transactions that were as marketed and implemented by tax professionals at KPMG, including whether the Deerhurst transaction was within the scope of that paragraph";

John Colvin, Esq.
November 17, 2006
Page 5

The transactions "included" within paragraph 20 are those SOS transactions that KPMG tax professionals "market[ed] and implement[ed]," and those SOS transactions for which KPMG tax professionals "prepare[d] tax returns incorporating" the "bogus tax losses" of the SOS transactions. The Deerhurst transaction is an SOS transaction that resulted in claimed losses on a tax return prepared by KPMG. Accordingly, the Deerhurst transaction is within the scope of paragraph 20.

In addition, please note that KPMG did not "file" a Statement of Facts in connection with KPMG's deferred prosecution agreement in the Southern District of New York, although the Statement of Facts was attached to the Deferred Prosecution Agreement that KPMG signed on August 26, 2005.

12. "The assistance [] KPMG provided in implementing SOS transactions for its high net worth clients and the fees received in exchange for that assistance, including the assistance and fees described in paragraph 22 of the Statement of Facts filed by KPMG in connection with KPMG's deferred prosecution agreement in the Southern District of New York;"

Paragraph 22 of the DPA SOF sets forth the assistance that KPMG provided in implementing the SOS transactions and states that the fee KPMG received was "generally equal to 1% of the tax losses to be generated."

13. "When and how KPMG provided information to the IRS regarding SOS transactions marketed and sold by KPMG partners, including that information referred to in paragraph 32 of the Statement of Facts filed by KPMG in connection with KPMG's deferred prosecution agreement in the Southern District of New York".

As set forth above, KPMG provided information to the IRS regarding SOS transactions marketed and sold by KPMG partners in response to a March 19, 2002 summons issued by the IRS. KPMG responded to that summons with information regarding SOS transactions in 2003, 2004 and 2005. KPMG continues to provide information to the IRS as requested.

In addition, as noted above, KPMG did not "file" a Statement of Facts in connection with KPMG's deferred prosecution agreement in the Southern District of New York, although the Statement of Facts was attached to the Deferred Prosecution Agreement that KPMG signed on August 26, 2005.

* * *

John Colvin, Esq.
November 17, 2006
Page 6

       We believe that the above information, based on a review of documents in KPMG's possession, sufficiently sets forth KPMG's role in the transaction at issue in the litigation between Mr. Sala and the United States. We do not believe that a KPMG organizational witness would be able to provide any additional information. Please contact me if you have any questions regarding the above.

       Sincerely,

       Joseph L. Barloon

Enclosures

cc:   David N. Geier, Esq. (with enclosures)