# EXHIBIT 1

# SECOND DECLARATION OF JOHN M. COLVIN TO PLAINTIFFS' REPLY TO MOTION IN LIMINE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Case No. 05-cv-00636-LTB-PAC

---

CARLOS E. SALA, et al.,

Plaintiffs,

vs.

UNITED STATES OF AMERICA,

Defendant.

---

Proceedings before O. EDWARD SCHLATTER, United States Magistrate Judge, United States District Court for the District of Colorado, commencing at 12:30 p.m., May 3, 2007, in the United States Courthouse, Denver, Colorado.

---

WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED...

---

APPEARANCES

Darrell

~~DAVID~~ D. HALLETT, Attorney at Law, appearing for the plaintiffs.

DAVID GEIER, ANTON JANIK, JR. and AMY MATCHISON (by telephone), Attorneys at Law, appearing for the defendant.

---

FINAL PRETRIAL CONFERENCE

P R O C E E D I N G S

(Whereupon, the within electronically recorded proceedings are herein transcribed, pursuant to order of counsel.)

THE COURT: We've got somebody on the phone. Is that, what, Amy?

MS. MATCHISON: Yes, Your Honor. This is Amy Matchison with the Department of Justice.

THE COURT: Okay. We're in the middle of talking here. This is important stuff. Go ahead.

MR. HALLETT: This is a minor one, but I noticed reading through Judge Babcock's standard instructions he requested a trial memorandum and said normally it should be limited to ten pages. I'm all for brevity, and I fought it for 40 years to try to be brief, but in this case I think maybe 25 pages might be more appropriate.

THE COURT: Well, you're going to have to get it from him --

MR. HALLETT: So --

THE COURT: -- so file a motion for --

MR. HALLETT: Okay.

THE COURT: And he may recognize that there's some unusual issues in this.

MR. HALLETT: Okay. We'll do that by motion.

I raised with counsel, and I won't bother you with

it now. We found on review one error in a date in the stipulated facts, and counsel's indicated he's happy to look at it and if we're right that it's an error, we'll -- we'll correct it by a supplemental stipulation.

The exhibits -- I think on the bottom line we have, as usual, tons of paper in this case, and I would hope there would little argument over admissibility. I have a concern because there's some key transactions in this case, maybe 24, 25 transactions in options, and in the request for admissions we asked the government to admit that the transactions occurred, and we tried to do it in a nonargumentative fashion, realizing that they might take the position that they occurred -- in substance, were owned by other parties and so forth, but they qualifiedly denied that in a request for admission.

Then in our proposed stipulation of fact we just laid out as objectively as we could -- and maybe be failed -- the terms of the -- a long option was bought on such and such a date for so much money, the short option was bought on such and such date for so much money and just laid them all out in sequence, and the government didn't stipulate to those.

Now, that leaves it, as it is now, to prove through the paper and through witnesses, which can be done, but I guess on the bottom line what I'd like to inquire is

as we go through the stip' -- we have both agreed to try to agree, to the extent possible, on admissibility, and if we can't agree on admissibility authenticity -- but if we run into problems, if we could get a conference call with Your Honor and see if that could facilitate ironing out the problems. And I'm talking about problems with respect to stipulating as to admissibility of exhibits, in particular.

THE COURT: My advice in that regard is to not have any problems. Here's why. I'm a short-timer here. You may or may not know that. I'm phasing out even as we speak, and that's why I'm so light-hearted today because I see that light at the end of the tunnel getting brighter and brighter, and I'm only here for a few days twice in the next month or so. So, you know, your opportunity to catch me would be very low.

You might be able to contact this chambers and ask if they could locate another judge to resolve your dispute, and that's always doable, because they know what's going -- the other magistrate judges are, you know, they know that this is going to fall on them when I walk out the door, and the new magistrate judge is not going to be here until mid to late August. So they know they've got to step up to the plate.

So the best you can do is call here, ask the secretary if you can get some magistrate judge to be

available at a certain time and probably he would, but, you know, they will be just about as knowledgeable about your case as I am.

MR. HALLETT: Well, first of all, I envy Your Honor. I'll be 64 tomorrow. Just having remodeled a house, I have another ten years before I can drop off the scene, so I can't be quite so light-hearted, but I appreciate that, and we'll do that, and I go in with all optimism that we'll be able to iron out our differences.

This case can be viewed as very complicated, but like a lot of them, it can be very simple if you get rid of all the fluff.

THE COURT: It seems to me that the documents are simple. I can't imagine that you wouldn't be able to at least agree on what documents are going to be used so that Judge Babcock can have a master three-ring binder for him.

MR. HALLETT: I don't think so, but there's some things -- like I looked at their list, and I think most of that I could stipulate to the admissibility, but there's things like a complaint filed by an individual who's not going to be a witness. Well, there's a little thing called hearsay. I would stipulate that it's authentic, but I didn't see a lot of that, frankly, but something like that I -- and even that, maybe I'll look at it and decide I can live with it.

But so --

THE COURT: Go ahead. Somebody wants to say something. Interrupt him. Go ahead. Jump in.

MR. GEIER: Your Honor, I didn't mean to interrupt, I just --

THE COURT: Yeah, you did.

MR. GEIER: You're right, I did. I absolutely did. I didn't want it to appear that I did, but I guess by standing I indicated that I absolutely did.

MR. HALLETT: You see how they gang up on me, Your Honor.

THE COURT: I do.

MR. GEIER: And I did want to say for the record, in terms of talking about working careers, I certainly am younger, but since I'm 43 and had my most recent child within the last six weeks, I don't think I'm ever going to be able to retire.

THE COURT: Probably not.

MR. GEIER: Yeah. But I did want to mention two things. One is obviously the complaint that was just referred to was shown to a witness and it was used as impeachment with respect to the witness to show litigation against them, but, more importantly, the 24 or 23 transactions -- we actually even disagree over the exact number because of the documents. There's no dispute I think

on the underlying documents, but there is a dispute on how they're characterized, and it's not necessarily a petty dispute because we have testimony in this case about it. So we're certainly willing to work with Mr. Hallett and have worked with him, and I think, you know, we're able to continue to further refine and stipulate to as much as possible.

But as in any case, the reason why we're here is we view the facts, and possibly the law, a little differently, as can be expected. So our unwillingness or our not admitting certain things is because what we were asked to admit is inconsistent with the testimony in the case. In fact, the testimony by someone that the plaintiff has indicated is their own expert. So, you know, that's -- that was my two cents that I wanted to throw in, and sorry for --

MR. HALLETT: All I would ask counsel is we proposed stipulations on the transactions, please get us back what you propose. That would try to leave both parties free to argue characterization and so forth, but it would eliminate a lot of paper.

MR. GEIER: But we have. We've disagreed. You've tossed out ours, we've tossed out -- you know, we --

MR. HALLETT: I haven't seen -- but anyway, we don't need to bicker about it here, but hopefully we can --

MR. GEIER: Yeah, Darrell you tossed out ours.

MR. HALLETT: Well, let's get them back on the table --

MR. GEIER: Okay.

MR. HALLETT: -- and see if we can toss them both back in and come up with something --

MR. GEIER: I think that's fair.

MR. HALLETT: -- is what I would suggest. So there's -- our issues regarding witnesses are laid out in the special issues. I guess out of inquiry, Your Honor, since our issues deal with whether witnesses that weren't previously disclosed can be called at trial and, if there's a determination that they can, we want the opportunity to depose them before trial, so some procedure that we could get a determination on that so we know whether they're going to appear at trial or not.

THE COURT: Here's my advice. I know that Judge Babcock says, as all judges say, that they discourage motions in limine, but I would nevertheless advise you to file something that's entitled something like that and just -- and indicate to them that you're aware that he doesn't like motions in limine but you wanted to bring to his attention before trial the existence of several evidentiary issues that he might be able to address at the time of your trial prep conference on June 12.

And I would say on the very first paragraph: And this is being done in part because of the confusion that reigns with regard to the existence of a magistrate judge in this chambers, that you don't have the same availability that you might otherwise have, and that way Judge Babcock can take these things up at his trial prep conference, and I'm sure he will, and his resolution of the issues is better than any that me or any other magistrate judge would give because then there's no appeal.

MR. HALLETT: And if we get chastised for filing a motion in limine, we'll say the reasonable cause is --

THE COURT: Blame me.

MR. HALLETT: -- Your Honor suggested it.

THE COURT: Just blame me. He has my cell phone number --

MR. HALLETT: Right.

THE COURT: -- as I regrettably found out.

MR. HALLETT: Well, that's -- that's all I had on my list. I appreciate it.

THE COURT: All right. Because I think Judge Babcock does want to know about these things before trial. You want to know about them because you want to avoid the -- having to subpoena and bring somebody here, and he'd like to know about some of these things so that he can think about them and resolve them before trial. So, you know, as much

as they say they discourage motions in limine, I don't think they really mean it, quite frankly. I've never discouraged them, and I've been in the business for 26 years now. It's supposed to be 25, but it's now 26. Because I found motions in limine to be an effort by the lawyers to get rid of some issues before trial that they're -- it's going take up time at the time of trial.

MR. GEIER: I think there's another -- yeah, I talked to Mr. Hallett about this, Your Honor, before the hearing, and in fairness he indicated he's not able to agree to dates, but what I thought would be helpful, given that we have a lot of deposition testimony, and, more particularly, video deposition, which requires advance rulings by the Court, and then if we could try to --

THE COURT: Are you going to edit them?

MR. GEIER: Well, the idea would be to try to get our objections at least to the video ones ahead of the paper ones because the paper ones don't need to be edited for the Court and can be just turned in at the time of trial, so I was hoping to establish some deadlines so that Judge Babcock could see the written objections, determine what flies and what doesn't and --

THE COURT: I think it's a good idea. I've been swamped with those things at the time of trial and cursed the day I was born. So, yeah, you guys are going to sit

down with the videos, I take it, or are you going to do transcripts?

MR. GEIER: Well, Your Honor, we have -- with respect to the videos, what I'd like to have happen is to have each party's designations and then counter-designations, put those in front of Judge Babcock and however is appropriate to do, let him make the rulings, and then we can splice or whatever they do to those things so that those videos can just be played. The written ones we can do the same process, but it's not important, I don't think, for the judge to make advance rulings on those because there's no requirement that anything else be done with them.

So I was hoping that we could -- we have four, I believe, video depositions, and I was hoping to set deadlines for each party to designate and then counter-designate so that we can get those out of the way.

THE COURT: Mr. Hallett, are you up for deadlines?

MR. HALLETT: I'm up for them. It's easy for me to commit, and then I have my bright young people do it, so I just don't want them to commit to deadlines and have --

THE COURT: Well, what do you want --

MR. HALLETT: -- my people not able -- but I'll be happy to --

THE COURT: Give me some -- you know, you're

running out of time here, so give me some deadlines.

MR. HALLETT: I just can't do it today, Your Honor. I have to --

THE COURT: Oh, I understand that. I mean --

MR. HALLETT: But we will.

THE COURT: -- you need a full day where you can sit down with a pitcher of martinis and really do this right.

MR. HALLETT: That would be preferable, but we'll get with counsel and figure out a day.

THE COURT: Do you wnt a deadline in a minute order, just so that you have your feet to the fire?

MR. HALLETT: Your Honor, I would prefer not to have it. I'd really like to confer with my people and find out when we realistically --

THE COURT: Well, you've got to have it done by some point.

MR. HALLETT: I understand.

MR. GEIER: My suggest' --

MR. HALLETT: Well, I think Judge Babcock's order says ten days before trial.

MR. GEIER: My suggestion would be, since we have a lot of other depositions that aren't video and if there's only four video depositions that -- that, you know, the May 18 and June 1st would be the depositions and the counter-

designations. And, obviously, if counsel runs into a problem with deadlines, we certainly have been agreeable in the past. I don't think there's ever been an instance where they've asked us for an extension where we haven't -- at least ourselves have said we won't oppose -- you know, we -- or we will oppose it. So those were the dates that I threw out, May 18 and June 1st, given, as I count them, there's only four videos.

MR. HALLETT: Your Honor, I just cannot agree to that. Judge Babcock's order says ten days before. I will represent to the Court I will --

THE COURT: Well, yeah, but he wants to have the benefit if this -- well, I mean, maybe he doesn't. I don't know. I would, but, if his order says ten days before, I'm not in a position to change it.

MR. HALLETT: And I represent to the Court I will confer with my people and I'll get with counsel and we'll do it as expeditiously as we can.

THE COURT: All right. You got an order from me to hurry it up. Okay?

MR. HALLETT: Pardon me?

MR. GEIER: Could that be a --

THE COURT: You have an order from me to hurry it up --

MR. HALLETT: I will do my best.

THE COURT: -- to speed things up. And, you know, do not treat that ten days before as the time that you're going to really make the effort. Try and get it done, because --

MR. HALLETT: No, I understand, Your Honor, but --

THE COURT: -- if there's some disputes out of these depositions that can be resolved by Judge Babcock at that trial prep conference, he will value it.

MR. HALLETT: I understand and I appreciate it. There's an enormous amount of work to be done, and I just don't want to make commitments that I can't meet. For example, every deposition -- and there's a lot of them -- of out of state, out of jurisdiction witnesses, his order requires that we highlight the portions that we want to offer, and that requires going through each dep and doing that, and we'll do that, we'll meet the time lines, we'll meet the time lines on this. I just don't want to make commitments that I can't meet.

THE COURT: Okay.

MR. GEIER: The only thing that I have to add to that is with respect to -- and I guess maybe this is left for Judge Babcock in a motion in limine by both parties, but to the extent that Mr. Hallett wants to take the dep -- actually complete the deposition that he noticed of KPMG, or depose Refco (phonetic) or whatnot, we certainly have no

objections and we'll work with them.

THE COURT: Well, you know -- and, in fact, I'll enter a conditional order if that arises that he's entitled to it, so treat it as such.

MR. GEIER: We've never --

THE COURT: Anything else?

MR. HALLETT: Nothing further, Your Honor.

THE COURT: How about you, Amy, you've been quiet?

MS. MATCHISON: No, Your Honor. I've nothing further.

THE COURT: Oh, well, darn. All right. We're signing off with you then. Bye-bye.

We're in recess.

(Whereupon, the within hearing was then in conclusion at 12:45 p.m. on April 5, 2007.)

I certify that the foregoing is a correct transcript, to the best of my knowledge and belief, from the record of proceedings in the above-entitled matter.

Bonnie Nikolas 5-22-07

Signature of Transcriber Date