IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| CARLOS E. SALA and<br>TINA ZANOLINI SALA, | )<br>) |
| | )     05-cv-00636-LTB-KLM |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

_____

## UNITED STATES' SUPPLEMENTAL BRIEF

_____

Defendant, the United States of America ("United States") hereby respectfully submits this Supplemental Brief addressing 26 C.F.R. § 1.752-6 as requested by this Court in its Order dated March 19, 2008.  (Docket No. 241).

## I.  OVERVIEW

Treasury Regulation § 1.752-6 (b) was promulgated in 2003 and made retroactive to October 18, 1999, a date before implementation of the scheme at issue in this case.  Therefore, because the transaction in this case is described in IRS Notice 2000-44 the regulation applies. The regulation defeats the scheme used by Carlos Sala to generate an inflated basis by providing that the liabilities assumed by Deerhurst Investors, G.P. when it received the offsetting options reduced Mr. Sala's basis in the partnership.  Once the liability side of the offsetting option pairs is included in basis, the mismatch between economic gain or loss and tax gain or loss is eliminated.

The application of Treas. Reg. § 1-752-6 eliminates the issue of whether *Helmer v. Comm'r*, 34 T.C.M. (CCH) 727 (1975) [1] is determinative of the IRC § 752 basis issue in this case. Under the regulation, if a partnership assumed a contributing partner's "fixed or contingent obligation to make payment" then Treas. Reg. § 1.752-6(a) generally effects a corresponding reduction in the contributing partner's basis in his partnership interest to the extent such obligation is not otherwise taken into account under IRC § 752.

There is no doubt that the application of Treas. Reg. § 1.752-6 to Mr. Sala's shelter transaction will decrease the partnership's basis in the contributed property as well as Mr. Sala's basis in the partnership. Consequently, when Mr. Sala's subchapter S corporation, Solid Currencies, withdrew from the partnership, its basis was not the claimed $60,000,000, but rather $728,000, the net out-of-pocket costs to acquire the long and short option positions.

The question, then, is whether the Secretary of the Treasury's determination to give the regulation retroactive effect to transactions occurring after October 18, 1999, and in this case, after the issuance of Notice 2000-44, should be respected. The Seventh Circuit answered this question affirmatively. In *Cemco Investors, LLC v. United States*, 2008 WL 321270, No. 07-

---

[1] It has been argued by Son of BOSS shelter participants, including Mr. Sala, that these cases stand for the proposition (which has since been superseded by Treas. Reg. §§ 1.752-6 and 1.752-7) that contingent liabilities are not taken into account for purposes of § 752. In *Helmer*, 34 T.C.M. at 730-31, the court held that a partnership's obligation to apply amounts received under an option contract towards the purchase price of the underlying property in the event the option was exercised was not a liability for purposes of § 752. In *Long v. Comm'r*, 71 T.C. 1, 7-8 (1978), *rev'd in part on other grounds*, 660 F.2d 416 (10th Cir. 1981), the court held that unliquidated claims against a partnership relating to structural defects in a building the partnership had erected were too contingent to be taken into account under § 752. And in *La Rue v. Comm'r*, 90 T.C. 465, 477-80 (1988), the court held that a partnership could not account for its liability reserves under § 752 because "the reserves were not a fixed obligation of the partnership sufficiently determinable in amount." *Id.* at 479. These cases are arguably distinguishable from the Son of BOSS type shelters at issue here, in that none of these cases involved offsetting paired options where the contingencies which would create a liability also, at the same time, created an offsetting gain.

2220 (7th Cir. Feb. 7, 2008), the Court held that, in accordance with 26 U.S.C. 7805(b)(6), the retroactive effective date of Treas. Reg. § 1.752-6 is valid because the Secretary promulgated the regulation pursuant to the Congressional grant of authority set forth in section 309 of the Community Renewal Tax Relief Act of 2000.  *Id.*  The Court of Appeals reasoned that –

> although regulations generally do not apply to transactions that occur before the initial publication date of a draft regulation, see 26 U.S.C. § 7805(b)(1)(C), the norm of prospective application "may be superseded by a legislative grant from Congress authorizing the Secretary to prescribe the effective date with respect to any regulation."  26 U.S.C. § 7805(b)(6).  Section 309 of the Community Renewal Tax Relief Act of 2000, Pub. L. 106-554, 114 Stat. 2763A-587, 638 (2000), enacts basis-reduction rules for many transactions and authorizes the IRS to adopt regulations prescribing similar rules for partnerships and S corporations. Section 309(d)(2) of the 2000 Act adds that those regulations may be retroactive to October 18, 1999.  That's the power the Commissioner used when promulgating Treas. Reg. § 1.752-6.

*Id.* at 5.  The Court of Appeals expressly rejected the contrary holding of the *Klamath* district court (*Klamath Strategic Investment Fund v. United States*, 440 F. Supp. 2d 608 (E.D. Tex. 2006)); advanced by Mr. Sala in this case.[2]

The regulation clearly applies to this basis inflating transaction, because the method used to inflate basis is the contribution of "contingent" liabilities and because the transaction is covered by IRS Notice 2000-44.

## II.  ARGUMENT

### A.  Treasury Regulation § 1.752-6 is a Valid Legislative Regulation and Has the Force and Effect of Law.

#### 1.  Legislative History.

---

[2]  Moreover, Mr. Sala's circumstances are distinguishable from those in *Klamath* because, unlike the taxpayer in *Klamath*, Mr. Sala entered into his shelter *after* the date that the Notice was issued on August 11, 2000 and was aware of Notice 2000-44.

3161141.3

Treas. Reg. § 1.752-6 was adopted pursuant to the explicit Congressional directive contained in § 309 of the Community Renewal Tax Relief Act of 2000, Pub. L. No. 106-554, 114 Stat. 2763A-587 ("2000 Act").  Section 309(a) added § 358(h) to the Internal Revenue Code. Section 358(h) requires a taxpayer's basis in stock received in certain corporate exchanges to be reduced by the amount of any liability assumed by the corporation in the exchange, and defines "liability" to include any fixed or contingent obligation to make payment regardless of whether the obligation is otherwise taken into account for purposes of the Internal Revenue Code.  I.R.C. § 358(h)(1) & (3).

Section 309(c)(1) of the 2000 Act required the Secretary of the Treasury to adopt comparable rules for transactions involving  partnerships:

> (c) Application of comparable rules to partnerships and S corporations.–The Secretary of the Treasury or his delegate--
>
> (1) shall prescribe rules which provide appropriate adjustments under subchapter K of chapter 1 of the Internal Revenue Code of 1986 to prevent the acceleration or duplication of losses through the assumption of (or transfer of assets subject to) liabilities described in section 358(h)(3) of such Code (as added by subsection (a)) in transactions involving partnerships.

Section 309(d)(2), moreover, expressly authorizes retroactivity of the regulations the Secretary was directed to issue by providing that regulations pursuant to § 309(c) "shall apply to assumption of liabilities after October 18, 1999, or such later date as may be prescribed in such rules."

Section 309(c) directs the Secretary to issue retroactive regulations to prevent the creation of improper losses through the assumption of liabilities in transactions *involving* partnerships. Treas. Reg. § 1.752-6 properly implements this Congressional mandate by requiring a basis

reduction, analogous to the basis reduction required under IRC § 358(h), where, in a transaction involving a partnership, liabilities are assumed in an attempt to create wholly artificial tax losses. If Congress had intended the Secretary to issue regulations applying only in the narrow circumstances claimed by Mr. Sala, it would have so specified in § 309(c) of 2000 Act and would not have used the broad language it did to describe the transactions for which the Secretary was directed to issue regulations.  Although § 309(c)(1) does not specifically mention § 752, it does instruct Treasury to "prescribe rules which provide appropriate adjustment *under subchapter K. . . .*"  (Emphasis supplied.)  Since subchapter K includes §§ 701 through 771 of the Internal Revenue Code, Treas. Reg. § 1.752-6 is a proper and direct fulfillment of that mandate.

Treas. Reg. § 1.752-6 is consistent with the express language of § 309(c)(1) of the 2000 Act.  Section 309(c)(1) requires the issuance of regulations pertaining to "assumption of (or transfer of assets subject to) liabilities described in section 358(h)(3) of such Code."  Treas. Reg. § 1.752-6(a) provides, "If . . . a partnership assumes a liability (defined in section 358(h)(3)) . . . ."  Section 309(c) requires the "[a]pplication of comparable rules [to § 358(h)] to partnerships."  Treas. Reg. § 1.752-6 and I.R.C. § 358(h) are "comparable" because both cause the denial of an artificial tax loss that taxpayers attempt to create by transferring property and an obligation to a business entity, and both accomplish that objective by requiring basis reduction.

The Department of Treasury drafted Treas. Reg. § 1.752-6 to mirror § 358(h) as closely as possible for partnership assumptions of liabilities after October 18, 1999, as required by Congress, even though the Treasury did not believe that this was the best approach for the

assumption of liabilities by partnerships, given their passthrough nature.[3]  *See* 68 Fed. Reg. 37,434, 37,436-37,437 (2003).  Section 358(h) provides that, after the application of § 358(d), the basis in stock received in certain exchanges must be reduced by the amount of any liability assumed in the exchange.  Similarly, Treas. Reg. § 1.752-6 provides that ". . . after application of section 752(a) and (b), the partner's basis in the partnership is reduced (but not below the adjusted value of such interest) by the amount . . . of the liability."

Likewise, the exceptions to the applicability of § 1.752-6 mirror the statutory exceptions to the applicability of I.R.C. § 358(h).  Treas. Reg. § 1.752-6(b)(1) makes applicable the exceptions contained in § 358(h)(2)(A) and (B), except as provided in § 1.752-(b)(2).  The inapplicability, under § 1.752-(b)(2), of the § 358(h)(2)(B) exception to partnership assumptions of liability in transactions described in, or substantially similar to, the transactions described in Notice 2000-44 is comparable to the exception contained in I.R.C. § 358(h)(2).  Section 358(h)(2) provides that the exceptions contained in § 358(h)(2)(A) & (B) apply "[e]xcept as provided by the Secretary."

In the summer of 1999, Congress began considering legislation pertaining to the tax treatment of assumptions of liabilities in connection with transfers to controlled corporations.

---

[3] Because Treasury thought the approach, required by Congress for assumption of liabilities after October 18, 1999, and contained in Treas. Reg. § 1.752-6, was not the best approach for partnerships, it proposed regulations, applicable to partnership assumption of liabilities on or after June 24, 2003, that do not immediately reduce the partner's outside basis upon the partnership's assumption of a liability.  Instead, the partner's outside basis is not reduced until the occurrence of a later triggering event, such as disposition or liquidation of a partnership interest.  *See* Prop. Treas. Reg. § 1.752-7, 68 Fed. Reg. at 37,436-37,437, 37,443-37,444.  Taxpayers had (until December 31, 2005) the right to elect to apply § 1.752-7 to assumptions of liabilities occurring after October 18, 1999, and before June 24, 2003, in lieu of Treas. Reg. § 1.752-6.  Temp. Treas. Reg. § 1.752-6T(d)(2); Treas. Reg. § 1.752-6(d)(2); Treas. Reg. § 1.752-7(k)(iv).

3161141.3

On July 21, 1999, the Senate Committee on Finance favorably reported S. 1429, 106th Cong. (1999), the Taxpayer Refund Act of 1999.  S. Rep. No. 106-120 at 1 (1999).  S. 1429 included a provision (§ 1318) broadening the scope of I.R.C. § 357(b), the anti-abuse rule related to assumptions of liabilities in connection with transfers to controlled corporations, effective July 15, 1999.  *Id*. at 214-15.  The Committee explained:

> As one example of a transaction that concerns the Committee, a transferor corporation may transfer assets with a fair market value basis . . . in exchange for preferred stock of the transferee corporation, plus the transferee's assumption of a contingent liability. . . .  The transferor claims a high basis for the stock of the transferee held with respect to this transfer, because the basis of the assets is taken into account, while the taxpayer contends that the assumed liability does not reduce stock basis under current law. However, the value of the transferee stock in the hands of the transferor is nominal, because of the liability that offsets virtually all the value of the assets.

*Id*.

Section 1318 of S. 1429 survived the reconciliation with H.R. 2488, 106th Cong. (1999) (as passed by the House, the Financial Freedom Act of 1999), to become § 1512 of the conference version of H.R. 2488, the Taxpayer Refund and Relief Act of 1999.  H.R. Conf. Rep. No. 106-289 at 537 (1999).  The Conference Committee added (*id*. at 538):

> It is also expected that the Treasury Department will promptly examine the use of partnerships and apply similar rules (for example, with respect to adjustments to the basis of a partnership interest with respect to certain contingent liabilities) where there is a principal purpose of avoiding Federal income tax through the use of a transaction that includes the assumption of liabilities by a partnership.  The conferees note that pursuant to section 7805(b)(3), if necessary to prevent abuse, the Secretary

could determine that any regulations applying such rules should be effective on the same date as this provision, i.e., July 15, 1999.[4]

Thus, less than three months before the introduction of S. 1792, the Conference Committee urged Treasury to "promptly examine the use of partnerships and apply similar rules (for example, with respect to adjustments to the basis of a partnership interest with respect to certain contingent liabilities) where there is a principal purpose of avoiding Federal income tax through the use of a transaction that includes the assumption of liabilities by a partnership." *Id.* That Congress decided to draft the subsequent grants of authority in S. 1792 and the 2000 Act as broadly as possible – limiting them neither to partnership assumptions of liabilities nor to transactions described in § 358, but instead referring to "transactions involving partnerships" – should come as no surprise.

---

[4] Congress passed the legislation on August 5, 1999, but the President vetoed it on September 23, 1999. H.R. Rep. No. 106-1036, at 5 (2000).  What is now § 309 of the 2000 Act originated on October 19, 1999, when the Chairman of the Senate Committee on Finance released his markup of a bill that would be introduced a week later as S. 1792, the Tax Relief Extension Act of 1999.  Staff of the Joint Comm. on Taxation, 106th Cong., *General Explanation of Tax Legislation Enacted in the 106th Congress* 153 n.174 (Comm. Print 2001) (JCS-2-01), *reprinted in* 2000-3 C.B. 565, 651.  Instead of altering the general anti-abuse provision of I.R.C. § 357(b), S. 1792 contained a provision (§ 213) aimed at arrangements whereby a taxpayer transfers assets to a corporation in connection with the corporation's assumption of the transferor's contingent liability.  145 Cong. Rec. 27,547, 27,553-27,554 (1999).  The Finance Committee again recognized the potential for abuse:  "The transferor claims a basis for the stock equal to the basis of the transferred assets [without reduction for the liability assumption] . . . [but] the value of the stock is reduced by the amount of the liability, creating a potential loss."  S. Rep. No. 106-201 at 47 (1999).

Section 213(a) of S. 1792, *supra*, would have added a basis reduction rule to I.R.C. § 358 applicable to stock received in contribution/assumption transactions.  145 Cong. Rec. at 27,553.  Section 213(b) of the bill directed the Secretary of the Treasury to prescribe similar rules for transactions involving partnerships, and § 213(c)(2) of the bill authorized retroactive application of those rules to liability assumptions occurring after October 18, 1999.  *Id.* at 27,554.  Although several of the bill's provisions were eventually included in Title V of the Ticket to Work and Work Incentives Improvement Act of 1999, Pub. L. No. 106-170, 113 Stat. 1860 (1999), § 213 was not among them.  In December 2000, Congress enacted the basis reduction rule of § 358(h), which is substantially similar to § 213 of S. 1792.

3161141.3

The Department of Treasury's promulgation, pursuant to § 309(c) of the 2000 Act, of Prop. Treas. Reg. § 1.358-7 (which subsequently became a final regulation) to govern transfers by partners and partnerships to corporations does not mean that Treas. Reg. § 1.752-6 was not also promulgated pursuant to the 2000 Act.  Congress did not limit Treasury to one regulation, but required it to "prescribe *rules* which provide appropriate adjustments under subchapter K. . . ."  2000 Act, § 309(c)(1) (emphasis supplied).  Treas. Reg. § 1.752-6 goes to the very heart of the harm referred to by Congress in § 309 of the 2000 Act – abusive transactions designed to inflate basis artificially in a way that creates an artificial tax loss.  The promulgation of Treas. Reg. § 1.752-6 was necessary to prevent certain taxpayers who – prevented from abusing the corporate form by the new I.R.C. § 358 – would undoubtedly "go down the street" to the partnership form in order to avoid paying their fair share of taxes.  Without Treas. Reg. § 1.752-6, I.R.C. § 358(h) is essentially impotent to stem the very abuse Congress sought to address with its enactment.  Thus, because Treas. Reg. § 1.752-6 was promulgated pursuant to express Congressional direction, it has the force and effect of law.  *Chevron USA, Inc. v. Natural Res. Def. Council, Inc*., 467 U.S. 837, 844 (1984).

## 2.  The Treasury Department complied with the requirements of the Administrative Procedure Act

In general, the Administrative Procedure Act ("APA") requires agencies to publish notices of proposed rulemaking in the Federal Register and to provide interested persons the opportunity to comment on the proposed rules before they are adopted as final regulations. 5 U.S.C. § 553(b)(B) & (c).  These requirements, however, do not apply if "the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefore in the rules

issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." *Id.* § 553(b).

The Treasury Department published Temp. Treas. Reg. § 1.752-6T in the Federal Register on June 24, 2003.  68 Fed. Reg. 37,414 (2003).  In this publication, the Treasury Department stated that it had good cause for dispensing with the APA's notice requirements:

> These temporary regulations are necessary to prevent abusive transactions of the type described in the Notice 2000-44. Accordingly, good cause is found for dispensing with notice and public procedure pursuant to 5 U.S.C. 553(b)(B) and for dispensing with a delayed effective date pursuant to 5 U.S.C. 553(d)(1) and (3).

*Id.* at 37,416.

On the same day that Treasury issued Temp. Treas. Reg. § 1.752-6T  (June 24, 2003), it also published in the Federal Register a "Notice of Proposed Rulemaking; Notice of Proposed Rulemaking by Cross-Reference to Temporary Regulations; and Notice of Public Hearing" with respect to regulations on the assumption of partner liabilities.  68 Fed. Reg. 37,434 (2003).  This notice stated that the text of Temp. Treas. Reg. § 1.752-6T serves as the text of Treas. Reg. § 1.752-6.  68 Fed. Reg. at 37,438.  The notice solicited comments on this regulation and provided instructions on how to submit them by mail, hand delivery, or the internet.  *Id.* at 34,434. Comments were received, and a public hearing was held on October 14, 2003, at which two commentators spoke.  70 Fed. Reg. 30,334, 30,336-30,337 (2005).  On May 26, 2005, Temp. Treas. Reg. § 1.752-6T was withdrawn, and Treas. Reg. § 1.752-6, which is identical to the temporary regulation, was adopted.  *Id.* at 30,344.  The Government's issuance of Treas. Reg. § 1.752-6 thus complied with the APA.

3161141.3

**B. The Retroactive Application of Treasury Regulation § 1.752-6 is Valid and Constitutional.**

Although regulations generally are not retroactive (I.R.C. § 7805(b)(1)), there are exceptions to that rule. For example, § 7805(b)(3) authorizes Treasury to "provide that any regulation may take effect or apply retroactively to prevent abuse." In addition, the statutory presumption against retroactive regulations "may be superseded by a legislative grant from Congress authorizing the Secretary to prescribe the effective date with respect to any regulation." *Id.* § 7805(b)(6).

These two exceptions apply here and validate the retroactivity of Treas. Reg. § 1.752-6. In adopting Treas. Reg. § 1.752-6, "the Secretary [of the Treasury] has determined that a retroactive effective date is appropriate to prevent abuse." T.D. 9207, 2005-1 C.B. at 1347. Abuse is patent in Son of Boss tax shelters, which are designed to generate paper tax losses where no comparable economic losses have occurred. The present case is a perfect illustration of that abuse where Mr. Sala has claimed a $60 million tax loss while incurring a small economic loss after taking into account actual expenses. Thus, under I.R.C. § 7805(b)(3) the Secretary was authorized to make Treas. Reg. § 1.752-6 retroactive.

Section 7805(b)(6) also authorizes the retroactivity because the Community Renewal Relief Tax Act expressly provides that regulations adopted pursuant to § 309(c) "shall apply to assumption of liabilities after October 18, 1999, or such later date as may be prescribed in such rules." Community Renewal Tax Relief of 2000, § 309(d)(2).

As discussed *supra*, the Seventh Circuit recently upheld the regulation in a strong opinion in *Cemco Investors v. United States*, 7th Cir. No. 07-2220 (February 7, 2008), which represented the first appellate court decision to address its validity. The validity of the regulation is also an

11

issue in two pending Fifth Circuit cases--*Kornman and Associates v. United States*, No. 06-11422 (argued on January 28, 2008), and *Klamath Strategic Investment Fund v. United States*, No. 07-40861 (which has not yet been fully briefed).  In *Cemco,* 2008 WL 321270, No. 07-2220 (7th Cir. Feb. 7, 2008), the Seventh Circuit (Easterbrook, C.J.) held that, in accordance with § 7805(b)(6), the retroactive effective date of Treas. Reg. § 1.752-6 is valid because the Secretary promulgated the regulation pursuant to the congressional grant of authority set forth in section 309 of the 2000 Act.

Mr. Sala argues that while the retroactive application of Treas. Reg. § 1.752-6 may be proper with respect to certain transactions that seek to accelerate and duplicate losses, retroactive application is improper here because this transaction does not involve the acceleration or duplication of losses, and otherwise has economic substance, and thus, is not abusive.[5]  Mr. Sala is incorrect.  As the *Cemco* Court pointed out, the grant of authority to issue the retroactive regulation was broad and clearly applies to this basis inflating transaction, when the means used to inflate basis is the contribution of "contingent" liabilities.  Moreover, the regulations give the Secretary authority to proscribe broad categories or classes of transactions, so that it need not litigate the economic substance of a particular transaction on a case-by-case basis.

> And the IRS has considerable latitude in issuing regulations that specify sorts of transactions that may be looked through. (These regulations avoid the need to litigate, one tax shelter at a time, whether any real economic transaction is inside the box.)

*Cemco*, 2008 WL 321270 at 2.  In light of the recent decisions regarding Son of BOSS transactions, it cannot be seriously argued that as a class of transactions, those transactions

---

[5] For reasons explained in the Government's Conclusions of Law, Mr. Sala's transaction was abusive and lacked economic substance.  While beyond the scope of this discussion, the United States does not waive these arguments.

described in Notice 2000-44 are not the types of transactions which "may be looked through" even if, in any one case, the taxpayer could present evidence that there was a small economic profit and a profit motive on the part of the taxpayer, upon which a court might find a "real economic transaction is inside the box."  *Id.*

Mr. Sala argues that *Cemco* is wrongly decided.  He argues that the standard applied by the district court in *Klamath* is the appropriate standard.  In *Klamath*, the district court concluded that Treas. Reg. § 1.358-7, but not § 1.752-6, falls within the congressional grant of authority set forth in section 309(c)(1) of the 2000 Act.[6] (1R. 4076-79).  The two reasons offered by the *Klamath* court in support of its conclusion do not withstand analysis and were expressly rejected in *Cemco*.

The district court's first reason was that "the [2000] Act and its legislative history do not mention Section 752," clearly proves too much.  The 2000 Act and its legislative history similarly do not mention § 705 ("Determination of Basis of Partner's Interest"), and yet Treas. Reg. § 1.358-7(b) contains a substantive rule relating to § 705.[7]  Under the court's reasoning, then, § 1.358-7(b), no less than § 1.752-6, falls outside the scope of section 309(c)(1) of the 2000 Act, and yet the court regarded § 1.358-7(b) as falling within the scope of that congressional grant of authority.

---

[6] The IRS issued Treas. Reg. § 1.358-7 (in proposed form) as part of the same package of regulations that included § 1.752-6 (in temporary form).  *See* REG-106736-00, 2003-2 C.B. 60.  Section 1.358-7 provides rules relating to (1) transfers of partnership interests to corporations, and (2) contribution-assumption transactions where the shareholder is a partnership.

[7] Indeed, Treas. Reg. § 1.705-1(a)(8), included (in proposed form) in the same package of regulations, cross-references § 1.358-7(b).

13

The *Klamath* court's second rationale – that, because the legislation that became section 309 of the 2000 Act was initially proposed on October 19, 1999 (*i.e.*, as section 213 of S. 1792, *supra*), Congress could not have been aware of the transactions described in Notice 2000-44 at that time – is similarly flawed.  This reasoning suggests that Treas. Reg. § 1.752-6 is somehow limited to the particular transactions described in Notice 2000-44, which clearly is not the case. Perhaps the court is suggesting that, because neither section 213 of S. 1792, section 309 of the 2000 Act, nor the corresponding legislative history specifically mentions assumptions of liabilities *by partnerships* in transactions that have nothing to do with § 358, Congress must not have been aware of the potential for abuse inherent in such transactions.  But this suggested lack of awareness is belied by the Conference Report to H.R. 2488, *supra* (the Taxpayer Refund and Relief Act of 1999), issued less than three months prior to the introduction of S. 1792, in which the Conference Committee urged the Treasury Department to "promptly examine the use of partnerships and apply similar rules (for example, with respect to adjustments to the basis of a partnership interest with respect to certain contingent liabilities) where there is a principal purpose of avoiding Federal income tax through the use of a transaction that includes the assumption of liabilities by a partnership."  H.R. Conf. Rep. No. 106-289, *supra* at 538.  That Congress decided to draft the subsequent grants of authority in S. 1792 and the 2000 Act as broadly as possible – limiting them neither to partnership assumptions of liabilities nor to transactions described in § 358, but instead referring to "transactions involving partnerships" – is hardly surprising.

Moreover, the Seventh Circuit in *Cemco* expressly rejected the contrary holding of the district court in *Klamath*.  Specifically, the Court of Appeals was baffled by the *Klamath* court's

14

conclusion that § 1.752-6 was not promulgated pursuant to section 309 of the  2000 Act, since the regulation clearly "applies to partnerships (and LLCs treated as partnerships) a rule 'similar' to the approach that Congress adopted for other business entities" in the 2000 legislation.  *Id.* at 6.  The Seventh Circuit's decision in *Cemco* thus confirms that the *Klamath* court erred as a matter of law in holding that the Treasury's decision to make §1.752-6 retroactive to October 19, 1999 was not authorized under I.R.C. §7805(b)(6).

In short, in issuing a regulation retroactive to October 1999 to combat tax avoidance resulting from the assumption by partnerships of purportedly contingent liabilities, the Treasury did precisely what Congress directed it to do in section 309 of the 2000 Act.  It therefore follows that the regulation's retroactive effective date is valid under I.R.C. § 7805(b)(6).

> **1.   The retroactive effective date of Treas. Reg. § 1.752-6 is also authorized under I.R.C. §7805(b)(3), which provides that the Secretary may promulgate retroactive regulations in order to prevent abuse.**

Neither § 7805(b)(3) nor its legislative history defines the word "abuse."  It is not unreasonable, however, to assume that Congress's perception of that concept, at least as applied to partnerships, would have been informed by Treas. Reg. § 1.701-2 (the "anti-abuse" regulation), which was adopted approximately 18 months prior to the 1996 enactment of § 7805(b)(3).  *Cf.* H.R. Conf. Rep. No. 105-220, at 525 n.8 (1997), *reprinted in* 1997-4 (Vol. 2) C.B. 1457, 1995 (referencing § 1.701-2(f), ex. 2, in connection with amendment of I.R.C. § 1059(e)(1)).  Section 1.701-2(b) refers to the use of a partnership in connection with a tax-motivated transaction "in a manner that is inconsistent with the intent of Subchapter K … even though the transaction may fall within the literal words of a particular statutory or regulatory provision … ."  As the district court itself confirmed in *Klamath*, there can be little doubt that the

Son of BOSS shelter, which represents an egregious assault on the Treasury through the generation of entirely artificial, *i.e.*, noneconomic, losses, is abusive under this or any other reasonable definition of the word.  *See ACM P'ship v. Comm'r*, 157 F.3d 231, 252 (3d Cir. 1998); *cf. Cemco Investors*, ("all [§ 1.752-6] does is instantiate the pre-existing norm that transactions with no economic substance don't reduce people's taxes").  Accordingly, the Treasury's promulgation of retroactive regulations to combat abusive transactions, such as the Son of BOSS shelter involved here, was authorized by § 7805(b)(3), as well as by § 7805(b)(6).

> ### 2.  Mr. Sala urges the wrong standard in arguing against retroactivity by relying on cases applying § 7805(b) as in effect prior to the enactment of § 7805(b)(3).

Prior to 1996, there was no statutory provision specifically authorizing the Secretary to promulgate retroactive regulations in order to prevent abuse.  Instead, the Secretary was generally authorized to issue retroactive regulations, subject to judicial review for abuse of discretion.  *See* I.R.C. § 7805(b) (1994); *Gehl Co. v. Comm'r*, 795 F.2d 1324, 1332 (7th Cir. 1986).

Presumably, the Secretary's specific authority under § 7805(b)(3) to issue retroactive regulations in order to prevent abuse – an exception to the general prohibition against retroactive regulations effected by the 1996 amendment of § 7805(b) – is subject to judicial review for abuse of discretion as well.  It would be a mistake, however, to assume that the considerations underlying the application of that standard in the context of an otherwise unlimited grant of authority such as former § 7805(b), on the one hand, and in the context of a "specific purpose" grant of authority such as § 7805(b)(3), on the other, are identical.  Thus, Mr. Sala's reliance on the four-factor analysis of *Snap-Drape Inc. v. Comm'r*, 98 F.3d 194, 202 (5th Cir. 1996), which

involved the issuance of a retroactive regulation pursuant to the general grant of authority under pre-1996 § 7805(b), is misplaced. (Plaintiffs' Proposed Findings of Fact ("Pl. PFOF") at p. 32-33).   *Cf. Kandi v. United States*, 97 A.F.T.R. 2d 2006-721, 724 (W.D. Wash. 2006), *appeal docketed*, No. 06-35209 (9th Cir. Mar. 14, 2006) ("Petitioner's reliance on case law interpreting the pre-1996 version of § 7805 is inapposite.").   Even if these standards were to apply, the Court should take into account the abusive nature of the Son of BOSS shelter in determining whether the Secretary, in retroactively applying Treas. Reg. § 1.752-6, overstepped his bounds under § 7805(b)(3).[8]   Instead, Mr. Sala argues that the Court should simply ignore the specific statutory authority granted to the Secretary in § 7805(b)(3) to issue retroactive regulations to prevent abuse, analyzing § 1.752-6 instead as if the applicable authority were the supplanted former § 7805(b).

### 3. Retroactive application of Treasury Regulation  § 1.752-6 is constitutional.

Since the statutory challenges to retroactivity lack merit, Mr. Sala may also argue that the retroactive application of Treas. Reg. § 1.752-6 is unconstitutional.  This argument also fails. The Supreme Court "repeatedly has upheld retroactive tax legislation against a due process challenge."  *United States v. Carlton*, 512 U.S. 26, 30 (1994) (citing cases).  Furthermore, at least two lower courts have expressly upheld retroactive regulations against due process challenges. *See Tate & Lyle, Inc. v. Commissioner*, 87 F.3d 99, 107 (3d Cir. 1996) (holding that a six-year retroactive application of a regulation did not violate due process); *A. Tarricone, Inc. v. United States*, 4 F. Supp. 2d 323, 327 (S.D.N.Y. 1998).

---

[8]  In addition, Mr. Sala was aware of Notice 2000-44 prior to entering into his shelter transaction which belies any contention of unfairness.

The Supreme Court has held that a taxpayer's detrimental reliance on the tax law in effect at a particular time is insufficient to establish a due process violation:

> Although Carlton's [detrimental] reliance is uncontested . . . – his reliance alone is insufficient to establish a constitutional violation. Tax legislation is not a promise, and a taxpayer has no vested right in the Internal Revenue Code.

*Carlton*, 513 U.S. at 33.  Similarly, in *Welch v. Henry*, 305 U.S. 134 (1938), the Court rejected a due process challenge to tax imposed in 1935 on income received in 1933.  It reasoned that a tax is not a liability that a taxpayer "assumes by contract . . . but a way of apportioning the cost of government among those who in some measure are privileged to enjoy its benefits. . . . Since no citizen enjoys immunity from that burden, its retroactive imposition does not necessarily infringe due process."  *Id.* at 146-147.  *See also Milliken v. United States*, 283 U.S. 15, 23 (1931) (rejecting a similar lack of notice argument and declaring that a taxpayer "should be regarded as taking his chances of any increase in the tax burden which might result from carrying out the established policy of taxation"); *Tarricone*, 4 F. Supp. 2d at 327 (ruling that retroactive regulation did not violate taxpayer's due process rights notwithstanding his "settled expectations that he would not be liable for the excise tax").

Mr. Sala has cited no authority for his assertion that Treas. Reg. § 1.752-6 "was to buttress a litigation position with respect to so called 'Son of Boss Transactions.'" (Pl. PFOF at p. 32).  To the contrary, as discussed above, the Treasury Department promulgated Treas. Reg. § 1.752-6 to comply with Congress's directive to adopt retroactively rules comparable to I.R.C. § 358(h) for partnerships.  2000 Act, § 309(c)(1).  Furthermore, since Temp. Treas. Reg. § 1.752-6T, promulgated on June 24, 2003, predated the commencement of this case, it clearly was not adopted to further the Government's litigating position herein.  Moreover, a regulation that is

3161141.3

adopted in the course of litigation can still be valid.  *See Long Island Care at Home, Ltd. v. Coke*, 127 S. Ct. 2339, 2349 (2007) (upholding Department of Labor's most recent interpretation of its regulation even though this interpretation was "written in response to this litigation").

Nor is the period of retroactivity of Treas. Reg. § 1.752-6 unconstitutionally long.  The period of retroactively is almost four years from October 18, 1999, to June 23, 2003, the date preceding the date that Temp. Treas. Reg. § 1.752-6T was promulgated.  This period of retroactivity was necessary to stem the vast amount of abusive transactions by taxpayers who used partnerships to create artificial tax losses.  Moreover, it was Congress that expressly stated the Treasury would be authorized to issue retroactive regulations with an effective date of October 1999. 2000 Act, § 309(d)(2).

Courts have upheld the retroactive application of tax regulations and rulings for periods exceeding the period at issue here.  *See National Muffler Dealers Ass'n v. United States*, 440 U.S. 472, 478-482 (1979) (upholding the validity of a regulation issued six years after enactment of the statute and modified ten years later); *Tate & Lyle*, 87 F.3d at 108 (upholding six-year period of retroactive application of regulation); *E.I. du Pont de Nemours & Co. v. Commissioner*, 41 F.3d 130, 133, 140 (3d Cir.1994) (upholding thirteen-year period of retroactive application of regulation); *Rutter v. Commissioner,* 760 F.2d 466, 468-469 (2d  Cir.1985) (upholding five-year period of retroactive application of revenue ruling).  Thus, the retroactivity of Treas. Reg. § 1.752-6 is constitutional.

### C.  Treasury's Interpretation of Section 309(c) is Controlling.

Under *Chevron USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984), a regulation issued pursuant to a specific delegation of authority from Congress must be given

3161141.3

controlling weight unless it is arbitrary, capricious, or manifestly contrary to the statute.  As

described above, Treasury Regulation § 1.752-6 was issued pursuant to a specific grant of

authority.  Even if this Court were to determine that the regulation is merely interpretive, the

conclusion would not change.  Accordingly, the regulation is entitled to this highest degree of

*Chevron* deference.

## II.        CONCLUSION

For the reasons stated, the Court should deny plaintiffs' refund claim and find for the

Government on both the tax and penalty issues in this case.

Dated this 2nd day of April, 2008.

TROY A. EID
United State Attorney
MARK S. PESTAL
Asst. U.S. Attorney

/s/ Joseph A. Sergi
DAVID N. GEIER
JOSEPH A. SERGI
AMY MATCHISON
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C. 20044-0683
Telephone:  (202) 305-2558
Facsimile:   (202) 307-0054

Street Address:                         Judiciary Center Building
555 Fourth Street, N.W.
Washington, D.C. 20001

3161141.3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on April 2, 2008, I electronically filed the foregoing United States' Trial Brief with the Clerk of Court using the EFC system which will send notification of such filing to the following e-mail addresses:

dhallett@chicoine-hallett.com
jcolvin@chicoine-hallett.com
david.n.geier@usdoj.gov
joseph.a.sergi@usdoj.gov
amy.t.matchison@usdoj.gov

/s/ Joseph A. Sergi
JOSEPH A. SERGI
U.S. Department of Justice
Tax Division

3161141.3