# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00636-LTB-KLM

CARLOS E. SALA and
TINA ZANOLINI SALA,

      Plaintiffs,

   v.

UNITED STATES OF AMERICA,

      Defendant.

---

## PLAINTIFFS' BRIEF REGARDING TREASURY REGULATION SECTION 1.752-6

---

## Introduction

    We submit that a plain reading of the statute upon which Treasury purported to rely when it promulgated Treas.Reg. § 1.752-6 shows that Treasury exceeded the authority granted to it by Congress, and attempted to effect a change in the law which only Congress can make. The government therefore cannot rely upon this regulation to disallow Plaintiffs' claimed loss.

**I.**     **The Law Has Consistently Provided For Many Years That Contingent Liabilities Are Not "Liabilities" For Purposes of Section 752.**

    The government has successfully argued, in a series of cases over several decades, that obligations that are contingent either in nature or amount do not constitute "liabilities" for purposes of § 752 of the Internal Revenue Code. In 1975, the government prevailed on precisely that argument in *Helmer v. Commissioner*, T.C. Memo. 1975-160. *Helmer* involved a partnership that sold an option to acquire property owned by the partnership. One of the partners

1

treated the option as a "liability" which increased his basis in his partnership interest under §§ 752(a) and 722, which would have permitted him to recognize no gain on the distribution of option proceeds to him by the partnership. However, the court agreed with the IRS that the option was *not* a liability for purposes of § 752 because the obligation of the partnership was *contingent* upon the option being exercised.[1] Thus, the partner was required to pay tax on what could well be described as "phantom gain."[2]

Subsequent to *Helmer*, the IRS successfully argued that contingent obligations are not "liabilities" within the meaning of § 752 in several cases. *Long v. Commissioner*, 71 T.C. 1, 8 (1978), *motion for reconsideration*, 71 T.C. 724 (1979), *aff'd and remanded*, 660 F.2d 416 (10th Cir. 1981); *Gibson Prods. Co. v. United States*, 637 F.2d 1041 (5th Cir. 1981); *La Rue v. Commissioner*, 90 T.C. 465, 479 (1988). In *Helmer*, *Long*, *Gibson*, and *La Rue*, the courts unanimously agreed with the government's contention that an obligation that is contingent in either nature or amount does not constitute a "liability" within the meaning of § 752.[3] Moreover, none of these courts found any ambiguity in the statutory term "liability."

---

[1] The Tax Court confirmed that *Helmer* was still good law in 2000 in *Salina Partnership, LLC v. Commissioner*, T.C. Memo 2000-352.

[2] Indeed, Mr. Helmer would end up paying tax *twice*: once upon receipt of the option proceeds as a distribution, and again as an item of partnership income when the option was either exercised or expired.

[3] Because the benefit claimed by taxpayer is fairly within the statute, the rule in *Helmer* must be applied equally, both when it benefits the government and when it works to the government's detriment:

> As the Supreme Court stated in *Lewyt Corp. v. Commissioner of Internal Revenue*, 349 U.S. 237, 240, 75 S.Ct. 736, 99 L.Ed. 1029 (1955):
>
>> But the rule that general equitable considerations do not control the measure of deductions or tax benefits cuts both ways. It is as applicable to the government as to the taxpayer. Congress may be strict or lavish in its allowance of deductions or tax benefits. The formula it writes may be arbitrary and harsh in its applications. *But where the statutory language and the construction sought is in harmony with the statute as an organic whole, the benefits will not be withheld from the taxpayer though they represent an unexpected windfall.*

**II.    Treasury Attempted To Change The Law In 2003.**

The rule of law articulated in *Helmer* applied when Sala filed his 2000 tax return.  In 2003, the government acknowledged that Sala's application of § 752 comported with settled law, but expressly attempted to *change* the definition of the term "liability" to include a contingent liability by adopting a new, purportedly retroactive regulation under § 752 – almost three years *after* the transactions involved in this case were concluded.  Treasury made it clear that it understood that it was attempting to change the law (retroactively) when it promulgated Treasury Regulation §1.752-6:

> The definition of a liability contained in these proposed regulations does not follow *Helmer v. Commissioner*, TC Memo 1975-160. (The Tax Court, in *Helmer*, held that a partnership's issuance of an option to acquire property did not create a partnership liability for purposes of Section 752.)

*See* Assumption of Partner Liabilities, 68 Fed. Reg. 37434, 37436 (June 24, 2003).

**III.   The Attempted Revision Of Existing Law Pertaining  To The Treatment Of Contingent Liabilities In Transactions Involving Partners and Their Partnerships By Treas. Reg. § 1.752-6 Was Not Authorized By Statute.**

Section 309 of the Community Renewal Tax Relief Act of 2000 (Pub. L. 106-554, 114 Stat. 2763A-587, 638 (2000) (the "2000 Act") enacted New § 358(h) of the Code, as part of the rules governing corporate tax-free exchanges (e.g. §§ 351, which applies where a shareholder transfers property to his corporation in exchange for stock).  Section 358(d)(1) provides that shareholders must treat any assumption of a liability by the corporation in connection with a transfer by the shareholder of property to the corporation in exchange for the corporation's stock as "money received by the taxpayer on the exchange," which reduced the shareholder's stock basis under § 358(a)(1)(ii).  However, before the enactment of § 358(h), the tax law provided

---

*Colorado Gas Compression, Inc. v Commissioner*, 366 F.3d 863, 867-868 (10th Cir. 2004) (Emphasis in original; internal citations omitted.)

that a contingent liability is not a liability for purposes of § 358(d)(1), and therefore its assumption by the corporation did not reduce shareholder's stock basis.

Section 358(h) changed the law regarding contingent liabilities in the corporate context, and required that, in some circumstances, contingent liabilities be taken into account to reduce shareholder basis in corporate stock. The law remained the same under § 358(h)(2)(B), where substantially all of the assets with respect to which a contingent liability is associated are transferred to the corporation, i.e., in the context of this case, the long options are transferred along with the short options. However, where the contingent liability does not follow the associated assets, the rules of § 358(h)(1) and (3) require that shareholder basis be reduced by the amount of the contingent liability.

To understand the narrow intended application of Section 309 of the 2000 Act, it is important to first understand the purpose and operation of § 358(h). The Joint Committee on Taxation's General Explanation of § 358(h) described the purpose of the new provision:

> The Congress was concerned about a type of transaction in which taxpayers seek to *accelerate*, and potentially *duplicate*, deductions involving certain liabilities. As an example, assume a transferor corporation transfers assets with a fair market value basis in exchange for preferred stock of the transferee corporation, plus the transferee's assumption of a contingent liability that is deductible in the future. The transferor claims a basis in the stock received equal to the basis of the assets. However, the value of the stock is reduced by the amount of the liability, creating a potential loss. The transferor may then attempt to accelerate the deduction that would be attributable to the liability by selling or exchanging the stock. Furthermore, the transferee might take the position that it is entitled to deduct the payments on the liability, effectively duplicating the deduction attributable to the liability.

STAFF JT. COMM. ON TAX'N, 106TH CONG., GENERAL EXPLANATION OF TAX LEGISLATION ENACTED IN THE 107TH CONGRESS, 154 (Jt. Comm., Print 2001).

Succinctly stated, the explanation above means that Congress was concerned that a shareholder would transfer assets to a corporation, and the corporation would assume a

4

contingent liability that would give rise to a deduction in a future taxable period. The

shareholder would claim a basis in the stock equal to basis of the assets he transferred to the

corporation, unreduced by the contingent liability. Then, the shareholder could sell his stock,

with the buyer paying an amount reflecting the contingent liability. Hence, the shareholder

would get an immediate loss deduction on the sale of the stock before the corporation ever paid

the contingent liability. Additionally, the corporation might claim a deduction when it did pay

the liability, thus giving rise to both the "acceleration" and "duplication" that concerned

Congress.

Section 358(h) was added to the Code to combat the tax results of the transaction

described by the Joint Committee, and further delineated in Notice 2001-17, 2001-1 C.B. 730

(noting that the IRS will disallow losses on this transaction pursuant to § 358(h)). This

transaction involved the acceleration and duplication of a loss relating to certain contingent

liabilities (e.g. medical benefits for retirees) by transferring those liabilities, and then selling the

stock in the subsidiary. By ignoring the contingent liability, the corporate parent obtains a loss

on the sale of the stock in the subsidiary. Later, the subsidiary itself may claim a deduction if

and when it is required to pay the contingent liability. Section 309(a) enacts § 358(h), which

combats this perceived abuse by reducing basis by the amount of any contingent liabilities

assumed in connection with the transaction, but not below the fair market value of the property

transferred.

Section 309(c) of the 2000 Act provides that Treasury is authorized to prescribe rules

making "appropriate adjustments" to prevent the "acceleration or duplication of losses" through

the assumption of liabilities in corporate exchanges with partnerships and S corporations:

> (c) Application of Comparable Rules to Partnerships and S Corporations –
> The Secretary of the Treasury or his delegate –

> **(1)** ***shall prescribe rules which provide appropriate adjustments under subchapter K*** of chapter 1 of the Internal Revenue Code of 1986 ***to prevent the acceleration or duplication of losses*** through the assumption of (or transfer of assets subject to) ***liabilities described in section 358(h)(3) of such Code*** (as added by subsection(a)) in transactions involving partnerships, and
>
> **(2)** may prescribe rules which provide appropriate adjustments under subchapter S of chapter 1 of in transactions described in paragraph (1) involving S corporations rather than partnerships.

When it promulgated § 1.752-6, Treasury claimed to rely on § 309(c) to authorize sweeping changes in the definition of "liability" for purposes of § 752.

It is clear from the language of § 309 of the 2000 Act that Treas. Reg. § 1.752-6 is not authorized by the 2000 Act because: (a) the rules set out for partnerships in Treas. Reg. § 1.752-6 are not "comparable" to the rules for corporations described in § 358(h) as required by § 309(c); (b) the rules promulgated by the Treasury do not address the "acceleration or duplication of deductions" which were the focus of the 2000 Act and the guidepost for any rules regarding partnerships adopted under the aegis of the 2000 Act; (c) the new regulation does not apply to "liabilities described in section 358(h)(3)"; and (d) the regulations contemplated by the 2000 Act were regulations covering "appropriate adjustments" for partnerships involved *as shareholders* in corporate exchanges[4], not regulations changing the law in transactions involving transactions between partners and their partnerships. Each of these issues is addressed in turn.[5]

---

[4] Treasury adopted regulations governing "appropriate adjustments" for partners in partnerships who were shareholders in tax-free exchanges. See Treas. Reg. § 1.358-7.

[5] Professor Philip F. Postlewaite, Professor of Law and Director of the Graduate Tax Program at Northwestern University School of Law, submitted extensive comments on Treas.Reg. § 1.752-6 on behalf of the Coalition Against Regulatory Excess, reprinted by Tax Analysts at Doc. 2003-21409. These comments are attached to this brief as Exhibit A.

**A.      The Retroactive Regulation Is Invalid Because It Does Not Apply "Comparable Rules" To Partnerships.**

Section 309(c)(1) of the 2000 Act authorizes the Secretary to issue rules to be applied to transactions involving transfers from partnerships to corporations *comparable* to the general rules provided for transactions involving corporations and their shareholders under § 358(h).  In promulgating § 1.752-6, the IRS squarely departed from its specific legislative grant of authority.[6]

As applied to this case, Section 358(h) requires that Sala's short options be disregarded in determining his basis in Solid's stock.  This is because, while the short options would otherwise be treated as a liability under § 358(h)(3) and would therefore reduce Sala's stock basis under § 358(h)(1), § 358(h)(2)(B) makes an exception where the shorts are assumed **by** Solid, along with Sala's transfer of the associated longs to Solid.[7]  Thus, Sala's basis in Solid's stock is approximately $60 million.

However, the Retroactive Regulation attempts to make a different and contrary rule for the purpose of determining Solid's basis in its general partnership interest in Deerhurst.  It does so by creating "an exception to the exception" provided by § 358(h)(2)(B) solely for transactions described in Notice 2000-44. Treas. Reg. § 1.752-6(b).[8]  Thus, the newly enacted corporate

---

[6] In connection with a 1999 bill, which did not become law, and which would have amended a different corporate statute (§ 357), the Conference Committee report suggested that Treasury might enact regulations under its general rule making power to address assumptions of liabilities by a partnership. H.R. Conf.Rep. No. 106-289, at 537 (1999).  When § 358(h) was ultimately enacted, Treasury's authorization to enact regulations pertaining to partnerships was specifically restricted in § 309(c), as discussed in this brief.

[7] Section 358(h)(2)(B) provides an exception to the general rule regarding contingent liabilities being taken into account where the liabilities associated the asset are transferred along with the asset.  Section 358(h)(2) grants Treasury the authority to limit the applicability of this section by stating "except as otherwise provided by the Secretary."  Treasury has not "otherwise provided," and has issued no regulations restricting the applicability of the § 358(h)(2)(B) exception in the case of corporate exchanges.

[8] When Treas. Reg. § 1.752-6 was proposed, commentators recognized that the Regulation exceeded the

statute would provide the enhanced basis the government complains about in this case,

permitting, in the government's words a "non-economic loss" when Solid was liquidated. Yet

the regulation purports to create a contrary rule for determining the partner's – Solid's – basis in

its partnership interest. The rule Treasury attempted to legislate for partners and partnerships

could hardly be less comparable to and less consistent with the rule Congress provided generally

to be applied to corporations and their shareholders.

Treasury's attempt to legislate an exception to the statutory exception to be applied only

in Notice 2000-44 transactions was an obvious effort to bootstrap the government's litigating

position with respect to so-called "Son of Boss" cases. Indeed, the day following the

promulgation of the regulations, Treasury told its attorneys to use the newly enacted regulations

as a principal ground to challenge taxpayers' claimed losses in so-called "Son of Boss"

transactions. Chief Counsel Notice CC-2003-020, released June 25, 2003. Such a procedure is

patently improper, and such make-weight regulations are properly disregarded by the Courts.

*See, e.g., Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988) ("Deference to what

appears to be nothing more than an agency's convenient litigating position would be entirely

inappropriate."); *see also Chock Full O'Nuts Corp. v. United States*, 453 F.2d 300, 303 (2d Cir.

1971) ("[T]he Commissioner may not take advantage of his power to promulgate retroactive

---

scope of Congressional authority. *See, e.g.*, Letter from the American Institute of Certified Public Accountants to Commissioner Mark Everson, *reprinted in AICPA Comments on Proposed and Temporary Regulations on Assumption of Partner Liabilities Under I.R.C. Section 752*, 83 DTR G-7 (April 30, 2004) ("[T]he AICPA is concerned that these regulations appear to exceed the underlying statutory authority."); Letter from the New York State Society of Certified Public Accountants to Mr. Horace Howells at IRS, *reprinted in CPAs Comment on Proposed Definition of Partnership Liabilities*, 2003 Tax Notes Today 195-16 (Sept. 15, 2003) (noting that the Regulation cannot be reconciled with existing precedent and expressing concern about the ability of taxpayers to rely on settled law). Letter from Fred Goldberg, Jr. (former IRS Chief Counsel, Commissioner of IRS, and Assistant Secretary of the Treasury for Tax Policy) to IRS, *reprinted in Goldberg Suggests Son of Boss Regs Will Diminish Settlement Prospects*, 2003 Tax Notes Today 219-47 (Nov. 13, 2003) ("the IRS has significant litigation risks respecting the validity of the Temporary Regulation.").

regulations during the course of a litigation for the purpose of providing himself with a defense based on the presumption of validity accorded to such regulation.").

In promulgating the Retroactive Regulations, Treasury chose to ignore the statutory exemption for transfers of substantially all of the assets with which a liability is associated, and extended the regulations completely beyond the scope of the statute in an effort to bolster the litigating position set forth in Notice 2000-44, 2000-2 C.B. 255.

**B.     Because The Contingent Liabilities At Issue Do Not Cause Any "Acceleration Or Duplication" Of Loss, The Regulation Exceeds The Statutory Authoritization.**

Sala's transfers and the resulting basis do not cause any acceleration or duplication of deductions.  But "duplication and acceleration" of deductions were the sole reason for the enactment of § 358(h).  Moreover, Treasury is authorized to make "appropriate adjustments" under Subchapter K (the partnership provisions of the Code) only to the extent necessary "to prevent the acceleration or duplication of losses through the assumption of ... liabilities described in section 358(h)(3)." 2000 Act, § 309(c)(1).

As set out in the Joint Committee Report quoted above, Congress used the term "accelerate" to refer to a corporate transaction whereby the stock in a transferee corporation was (following the exchange) sold by the shareholder *before* the time that the deduction related to the contingent liability was otherwise allowable (on the later payment of the expense).  Congress was concerned about a taxpayer (who otherwise could not obtain the deduction until the distant future) contributing property along with the obligation to a corporation, and then selling the stock, thereby *accelerating* the deduction.

This case does not involve the necessary conditions precedent for the promulgation of a regulation – there is no "acceleration" or "duplication" of losses arising out of the general assumption of contingent liabilities in transactions involving a partnership and a corporation.

9

The investments described in Notice 2000-44, 2000-2 C.B. 255, at which the Retroactive Regulation is targeted, do not, like transactions described in Notice 2001-17 at which § 358(h) was aimed, accelerate or duplicate any loss.  Transactions described in Notice 2000-44 result in only a single tax loss and that loss is not accelerated.[9]

In *Rite Aid Corp. v. United States*, 255 F.3d 1357 (Fed. Cir. 2001), the Federal Circuit considered a case where Treasury adopted legislative regulations that exceeded the statutory grant of authority.  Pursuant to § 1502, Treasury was granted "the power to conform the applicable income tax law of the Code to the special, myriad problems resulting from the filing of consolidated returns." *American Standard, Inc. v. United States*, 602 F.2d 256, 261 (Ct. Cl. 1979); *Rite Aid*, 255 F.3d at 1359-60 ("[I]n the absence of *a problem* created from the filing of consolidated returns," the Treasury lacked general authority to change the tax rules for consolidated corporations) (Emphasis supplied.).

Treasury adopted a "duplicate loss rule," which applied to disallow a loss when a parent corporation sold stock in a subsidiary at a loss, and the (former) subsidiary held assets that would later be sold at a loss.  Former Treas.Reg. § 1.1502-20.  The *Rite Aid* court found that the problem with this regulation was that non-consolidated corporations could engage in the same transactions, and enjoy the "duplicate loss."[10]  Because the issue addressed by Treasury was not one of "the problems resulting from the filing of consolidated returns," which the authorizing

---

[9] On the other hand, a partnership's contribution of a contingent obligation to a corporation in which it is a shareholder *does* present the potential for accelerating and duplicating losses.  A partner in a partnership which transferred a contingent liability to a corporation could have claimed a high tax basis in the partnership (unreduced by the contingent liability), and claimed or loss (or reduced gain) on the sale of his or her partnership interest.  Subsequently, when the corporation satisfied the liability, the corporation might have duplicated the deduction.  Section (b) of Treas. Reg. § 1.358-7 effectively requires partners to reduce their partnership basis in order to eliminate this acceleration/duplication problem.

[10] Non-consolidated corporations could enjoy the "duplicated loss" to the extent that the losses were not limited pursuant to §§ 382 and 383. *Rite Aid*, 255 F.3d at 1360.

statute had granted Treasury authority over (but rather a more general feature of the income tax laws), the *Rite Aid* court ruled that the duplicate loss rule exceeded the authority granted by Congress. *Rite Aid*, 255 F.3d at 1360.

Similarly in this case, in § 309(c), Congress authorized Treasury to "prescribe rules which provide appropriate adjustments under subchapter K to prevent the acceleration or duplication of losses through the assumption of ... liabilities described in section 358(h)(3) of [the] Code." However, Treasury has identified no "acceleration or duplication of losses" that generally result from the treatment of contingent liabilities under § 752. In some cases, the treatment of contingent liabilities favors the government (e.g., *Helmer*), and in other cases, the treatment favors the taxpayer. The option strategy discussed in Notice 2000-44 did not involve a claimed loss by both the partner and the partnership; only the partner claimed any loss. Nor is the loss "accelerated" by the assumption of contingent liabilities to obtain the loss any earlier than the Code otherwise allows. "Acceleration" and/or "duplication" are simply not an issue.[11] Thus, the regulations exceed the authority granted under the statute.

## C.   The Retroactive Regulation Purports To Deal With Liabilities Beyond Those Described in Section 358(h)(3).

Section 309(c) provides Treasury with the authority to promulgate a rule of application to "the assumption of liabilities described in section 358(h)(3)" in corporate transactions involving partnerships. However, the Retroactive Regulation purports to apply only to liabilities that are not described in the specified subsection. Treasury has taken the position that Congress gave it

---

[11] McKee and Nelson, FEDERAL INCOME TAXATION OF PARTNERSHIPS AND PARTNERS (4th Ed.), § 7.04[2], footnote 79 ("The Treasury was authorized to issue Regulations preventing the duplication or acceleration of losses through the assumption of liabilities described in § 358(h)(3). Pub.L. 106-554, § 309(c). Regulations § 1.752-6 prevents deduction of losses that have not been duplicated or accelerated."). A copy of this portion of the McKee and Nelson Treatise is attached as Exhibit B to this brief.

carte blanche to revise the treatment of contingent liabilities generally in transactions between partners and their partnerships.

Section 358 by its own terms applies only to liabilities that are assumed in connection with certain corporate exchanges. Section 358(h)(3) provides that "for purposes of this subsection," the term "liability" shall include certain contingent obligations. The specific "subsection" referenced by § 358(h)(3) is § 358(h). Subsection 358(h) has application solely to liabilities assumed in "an exchange or series or exchanges" to which "section 351, 354, 355, 356 or 361 applies" (§§ 358(h)(1) and 358(a)) – all sections involving corporate exchanges. Thus, the language authorizing Treasury to issue regulations relating to "the assumption of liabilities described in section 358(h)(3)" can only be interpreted to relate to contingent liabilities assumed in a corporate exchange.

Because § 358(h)(3) has application to liabilities that are assumed in an exchange or series of exchanges between a corporation and its shareholders, the language in § 309(c)(1) authorizing Treasury to issue regulations relating to "the assumption of liabilities described in section 358(h)(3) .. in transactions involving partnership" requires that the regulations only apply when an exchange transaction between a corporation and a partnership (as the shareholder) takes place. Yet the regulation at issue applies to any transaction where a partner contributes property to a partnership in exchange for an interest in that partnership (a transaction governed by § 721), and the partnership assumes a contingent liability of the partner. This regulation, attempting to legislate rules for partner-partnership exchanges, is patently beyond the authority granted by § 309(c)(1). That is especially evident in light of the fact that § 358(h) is a <u>corporate</u> provision. Had Congress intended to make a sea change in the law with respect to transactions between

partners and their partnerships, it would have done so directly. It certainly would not have authorized Treasury to do so by regulation, without even mentioning § 752.

### D.    Treasury Adopted The Regulations Congress Required By § 309(c) When It Promulgated Treas. Reg. § 1.358-7.

The Treasury Department in fact promulgated a rule in accordance with the requirement of § 309(c) of the Community Renewal Tax Relief Act when it issued Treas. Reg. § 1.358-7. This regulation, titled "Transfers by partners and partnerships to corporations," addresses contributions of assets and liabilities by partnerships to corporations in which they are shareholders, the implications of such transfers under § 358(h), and the "appropriate adjustments" (in the language of Section 309(c) of the 2000 Act) required at the partnership level. This regulation was in fact exactly the type of regulation actually contemplated by Congress in the 2000 Act. *Klamath Strategic Investment Fund, LLC v. United States*, 440 F. Supp.2d. 608, 621 (E.D. Tex. 2006).

Section § 1.358-7 describes many of the "appropriate adjustments" that must be made under Subchapter K when a partnership is involved as a shareholder in a transaction covered by § 358(h). For example, any reduction in stock basis under § 358(h) is treated as an expenditure of the partnership under § 705(a)(2)(B) that must be allocated among the partners in accordance with the rules of § 704(b) and (c). Treas.Reg. § 1.358-7(b). The regulations also provide an example where partner's basis in their partnership interest is reduced by the amount of contingent liability assumed by the corporation. Treas.Reg. § 1.358-7(e)(Example 1). Having the partners reduce their partnership basis eliminates the possibility of "accelerated" or "duplicated" deductions. Otherwise, the partner could sell his high basis partnership interest and recognize a loss, and then the corporation might later satisfy the assumed contingent obligation and claim a deduction.

13

Treasury Regulation § 1.358-7 does provide comparable rules and make appropriate adjustments in transactions applicable to transactions where partnerships transfer property to a corporation and the corporation assumes contingent liabilities. That regulation is in stark contrast to § 1.752-6, which attempts to adopt contrary rules to be applied in the transactions between partners and their partnerships. The former regulation is clearly what Congress contemplated in § 309(c); the latter is not. *Klamath*, 440 F. Supp. 2d at 622.

## IV.   *Cemco* Is Not Persuasive Authority To Uphold The Application Of The Retroactive Regulation.

The government has cited the Seventh Circuit opinion in *Cemco Investors, LLC v. United States*, 515 F.3d 749 (7th Cir. 2008) as persuasive authority for upholding the validity of the Retroactive Regulation. As an initial matter, the validity of the transaction at issue in *Cemco* did not turn solely on the application of the regulations. Indeed, the *Cemco* court considered the lack of "economic substance" in that case to be the core reason for its decision[12], and stated:

> Cemco says that in treating $50,000 of euros as having a $3.6 million basis, which turned into a loss when the euros were sold for exactly what they had been worth all along, it was just relying upon *Helmer v. CIR*, 34 T.C.M. 727 (1975), and a few similar decisions. That may or may not be the right way to understand *Helmer*; we need not decide, for it is not controlling in this court – or anywhere else. *The Commissioner has a statutory power to disregard transactions that lack economic substance.*

*Cemco*, 515 F.3d at 751 (Emphasis supplied and internal citations omitted).

---

[12] *Cemco* was decided on summary judgment, such that there were no trial findings as to economic substance. The taxpayer in *Cemco* attempted to obtain summary judgment on a procedural issue, i.e., on the grounds that the TEFRA partnership rules required it to calculate its adjusted basis in the same manner as an upstream partnership (CIP), and that the IRS had issued an FPAA to the wrong entity. The IRS filed a cross motion, claiming that because Cemco "did not directly challenge the FPAA's determination that the foreign currency option lacked economic substance," Cemco had conceded "for purposes of this litigation that the foreign currency transactions that are the substance of this litigation lacked economic substance." Memorandum by United States in Support of Motion for Summary Judgment (filed June 30, 2006), at 3.

Before the Seventh Circuit, the *Cemco* taxpayer did not argue that the Treasury had exceeded its statutory authority in promulgating the Retroactive Regulation. Instead, the *Cemco* taxpayer merely argued only that the retroactive effect of the regulation was impermissible. *See* Appellant's Br. at 18-20, Appellee's Br. at 23, *Cemco*, 515 F.3d at 752. In advancing that narrow argument, the taxpayer in *Cemco* did not discuss the limited scope of the rulemaking authority granted by § 309(c) and did not address whether the Retroactive Regulation was a permissible exercise of that authority.

Without having the issue placed before it, the *Cemco* court concluded, completely without analysis, that § 309 broadly gave the Treasury the power to enact regulations governing basis:

> *Section 309 enacts basis-reduction rules for many transactions and authorizes the IRS to adopt regulations prescribing similar rules for partnerships and S corporations.* Section 309(d)(2) of the 2000 Act adds that the regulations may be retroactive to October 18, 1999. That's the power the Commissioner used when promulgating Treas. Reg. § 1.752-6.

*Cemco*, 515 F.3d at 752 (Emphasis supplied.) The *Cemco* court simply did not analyze whether or not Treas. Reg. § 1.752-6 was in fact consistent with the specific directives of the authorizing statute.

The *Cemco* court failed to acknowledge the *Klamath* court's reasons for concluding that the regulation was not authorized by the statute:

> The district court in *Klamath* did not doubt that the retroactivity ***could rest on the 2000 Act***; Treas.Reg. § 1.752-6 applies to partnership (and LLCs treated as partnerships) a rule "similar to the approach that Congress adopted for other business entities. *Klamath* held, however, that when promulgating Treas.Reg. § 1.752-6, the IRS had not availed itself of that power. But if the IRS was not using that authority, why in the world does the regulation reach back to October 18, 1999? Retroactivity requires justification: to make a rule retroactive is to invoke one of the available justifications; and the choice of date tells us that the justification is the one supplied by the 2000 Act (in conjunction with § 7805(b)(6)). A regulation's legal effect does not depend on reiterating the obvious.

15

*Cemco*, 515 F.3d at 752 (Emphasis supplied.)

The Court in *Cemco* completely misinterpreted the *Klamath* decision. The *Klamath* court did not conclude that "retroactivity *could rest* on the 2000 Act." To the contrary, *Klamath* concluded that the Retroactive Regulation was not within the authority granted by the 2000 Act. *Cemco* did not address the legislative authorization issue (which was the focus of *Klamath*); for *Cemco*, it was sufficient that the IRS *claimed* it had the authority under the 2000 Act.

If the regulations are not legislative, and are merely interpretive, they are clearly inconsistent with the established law. Before the promulgation of Treas. Reg. § 1.752-6, courts had consistently held that contingent liabilities were not to be taken into account in determining basis under § 752. Application of that rule required taxpayers to pay more tax than they would have if the contingent liability had been disregarded. Both the IRS and the courts in those cases had no problem concluding that disregard of contingent liabilities did not violate the long-standing economic substance rule. The law clearly does not permit the Treasury to adopt inconsistent positions, depending on "whose ox is being gored." *Klamath*, 440 F. Supp.2d. at 619. Moreover, the regulation itself only provides a rule for liabilities "other than a liability to which section 752(a) and (b) apply." Treas.Reg. § 1.752-6(a). To the extent this regulation purports to be interpreting § 752, it affirmatively disavows its statutory anchor.

Likewise, the court in *Cemco* concluded that the regulation requiring contingent liabilities to be taken into account in a Notice 2000-44 transaction merely "instantiate[d] the pre-existing norm that transactions without economic substance don't reduce people's taxes." *Cemco*, 515 F.3d at 752. But the court ignored altogether the fact that, despite the existence of a "pre-existing economic substance rule," the IRS was permitted to ignore contingent liabilities when to do so resulted in partners paying more in taxes.

16

**V.   Were The Court To Conclude That The Regulation At Issue Is Invalid As A Legislative Regulation And Consider The Weight To Be Afforded It As An Interpretive Regulation, The Regulation Should Carry No Weight Whatsoever In This Case.**

As set forth above, the regulation is plainly inconsistent with the statutory grant of authority and therefore fails as a legislative regulation. Because it also attempts to amend § 752 of the Code and adopt a rule admittedly inconsistent with that section[13], it likewise fails as an interpretive regulation. In any event, its attempted retroactive change to the law is invalid. *See* Plaintiffs' Findings of Fact and Conclusions of Law, pp. 35-37.[14]

**VI.   The Retroactive Regulation Is Owed No Deference Under *Chevron* Because It Contravenes The Statutory Language And Exceeds The Scope Of The Authority Delegated To Treasury.**

In *Chevron v. Natural Resources Defense Council*, 467 U.S. 837 (1984), the Supreme Court announced a two-step analysis for determining whether deference should be accorded an administrative interpretation contained in an air quality regulation:

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear … the court as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous, the question for the court is whether the agency's answer is based upon a permissible construction of the statute.

467 U.S. at 842-843 (Internal citations omitted.)

It is fundamental that Congress makes the tax law. *Manhattan Gen. Equip. Co. v.*

---

[13] The regulation applies only to a liability "other than a liability to which section 752(a) and (b) apply." Treas.Reg. § 1.752-6(a). It can hardly be said to be "interpreting" § 752(a) and (b).

[14] The *Klamath* court noted that the transaction before it took place before Notice 2000-44 was issued, and left open the issue of whether the same analysis of Treas.Reg. § 1.752 as an interpretive regulation would apply to transactions taking place after the publication of Notice 2000-44. *Klamath*, 440 F. Supp.2d at 625. Because Notice 2000-44 was only the announcement of a government litigating position, and did not even hint that changes might be made to the underlying law, it can hardly be viewed as "notice" to taxpayers that the law had or would be altered to their detriment.

*Commissioner*, 297 U.S. 129, 134-135 (1936) (the authority to issue regulations is not the power to make law, it is only the power to carry into effect the will of Congress as expressed in the statutes); *Mayo Foundation for Medical Education and Research v. United States*, 100 A.F.T.R.2d 2007-5449 (D. Minn. 2007). Treasury is authorized to interpret the taxing statutes.[15] In the case of so-called "legislative regulations," authorized by statutes containing specific grants of authority, Treasury may be authorized to define statutory terms or prescribe a method for executing a statutory provision. *See United States v. Vogel Fertilizer*, 455 U.S. 16, 24 (1982) (less deference is owed by the courts to interpretive regulations than those promulgated pursuant to a specific grant of authority).

In the case of the corporate statutes governing shareholder basis in tax-free exchanges, prior to the enactment of § 358(h) in 2000, contingent liabilities were not treated as "liabilities" for purposes of § 358(d)(1).  Section 358(d)(1) treats any liability assumed as "money *received* by the taxpayer on the exchange," which *receipt* reduces shareholder basis pursuant to § 358(a)(1)(A)(ii).  With the enactment of § 358(h), Congress provided a specific set of rules governing contingent liabilities, i.e. liabilities "with respect to which subsection (d)(1) does not apply to the assumption."  § 358(h)(1)(B).  The statute that includes "contingent liabilities" within the ambit of the term "liability" only does so "for purposes of this subsection [§ 358(h)]." § 358(h)(3).

In the words of the *Chevron* court, Congress "has directly spoken to the precise question at issue."  In unambiguous terms, it changed rules governing transactions involving corporate exchanges where contingent liabilities were assumed.  There is not even a hint in the corporate statute that it was also intended to change the law governing all transactions between partners

---

[15] Section 7805 of the Code generally authorizes the Treasury "to prescribed all needful rules and regulations for the enforcement of [Title 26.]"

and their partnerships involving a partnership assumption of contingent liabilities.

Further, while Congress provided special basis rules for contingent liabilities in the corporate context, it did not make a comparable change to the partnership basis rules of § 752. Using language similar to that of § 358(d)(1), § 752(b) provides (both before and after the enactment of § 358(h)) that any assumption of a partner's liability by the partnership is treated as "a distribution of money to the partner," which distribution reduces basis pursuant to § 733(1). As noted above, the term "liability" for purposes of § 752 has, at the urging of the IRS, consistently been applied to exclude contingent liabilities. In contrast to the change in law on the corporate side to include contingent liabilities made by § 358(h), Congress left § 752(b) intact and unmodified. Subsequently, Treasury attempted to effect a change in the law itself, with the promulgation of Treas.Reg. § 1.752-6.

The Retroactive Regulation (Treas.Reg. § 1.752-6) itself expressly acknowledges its attempted amendment to the partnership statute. In Treas.Reg. § 1.752-6(a), Treasury purports to bring into effect the new rules governing corporate contingent liabilities in situations where the ordinary rules of § 752(b) do not apply, i.e. the assumption of a partner's contingent liability by a partnership. Treasury was not defining a statutory term – it acknowledged that the term "liability" as used in § 752(b) does not include contingent liabilities. Instead, Treasury attempted to create a rule contrary to the statute, i.e., the law, in this case. It is fundamental that Congress, not Treasury, makes the law. *Union Carbide Corp. v United States*, 612 F.2d 558, 563 (Ct. Cl. 1979) (legislative regulations invalid where they conflict with the language of the statute). Treasury, in an effort to salvage its litigating position, overlooked that fundamental rule.

Neither is there any ambiguity in the law authorizing Treasury to promulgate regulations pertaining to transactions involving corporate assumptions of contingent liabilities in transactions

involving partnerships. As set out above, the statutory authorization granted to Treasury to make "appropriate adjustments" under Subchapter K to prevent "acceleration or duplication" resulting from the assumption of liabilities described in § 358(h)(3) (liabilities assumed in certain corporate exchanges) did not authorize Treasury to make wholesale changes to the general definition of "liability" for purposes of § 752, and anticipated regulatory action of a much more limited scope, such as the changes made by Treas.Reg. § 1.358-7.

### Conclusion

The regulation at issue involves a blatant attempt by Treasury to make a change in the law that it believed was necessary in order to advance its litigating position in cases involving a tax result with which it disagreed. Rather than urging Congress to change the relevant partnership provisions of the Code[16], it purported to hang its hat on a statute that plainly does not authorize the changes it made. The hat does not fit.

WHEREFORE, Plaintiffs respectfully request this Court hold that Treas.Reg. § 1.752-6 not apply to this case.

DATED this 2nd day of April, 2008.

CHICOINE & HALLETT, P.S.

s/ John M. Colvin
Darrell D. Hallett
John M. Colvin
Chicoine & Hallett, P.S.
Attorneys for the Plaintiffs Carlos E. Sala
and Tina Zanolini-Sala
719 Second Ave. Suite 425
Seattle WA, 98104
Telephone: (206) 223-0800
Facsimile: (206) 467-8170

---

[16] Any such statutory change, like the corporate provision enacted in § 358(h), would likely have been retroactive only to date that such legislation was introduced.

20

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2008, I electronically filed PLAINTIFFS' BRIEF REGARDING TREASURY REGULATION SECTION 1.752-6 using the CM/ECF system, which will send notification to the following:

David N. Geier

Joseph A. Sergi

Amy Matchison

I declare under the penalty of perjury under the laws of the State of Washington and the United States that the foregoing is true and correct.

DATED this 2nd day of April, 2008.

CHICOINE & HALLETT, P.S.

s/ John M. Colvin
Cori Flanders-Palmer
John M. Colvin
Darrell D. Hallett
Chicoine & Hallett, P.S.
Attorneys for the Plaintiffs Carlos E. Sala
    and Tina Zanolini-Sala
719 Second Avenue, Suite 425
Seattle WA, 98104
Telephone: (206) 223-0800
Facsimile: (206) 467-8170