IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Case No. 05-cv-00636-LTB-KLM

CARLOS E. SALA and
TINA ZANOLINI-SALA,

      Plaintiffs,

  v.

UNITED STATES OF AMERICA,

      Defendant.

---

**MEMORANDUM IN SUPPORT OF UNITED STATES'**
**MOTION FOR A NEW TRIAL**

---

      Defendant, the United States of America ("United States"), submits this memorandum in support of its motion under Federal Rule of Civil Procedure 59(a), for a new trial.[1] A final judgment was entered on May 28, 2008. (Dkt. # 256.) As grounds for this relief, the United States has obtained material evidence that was not available during the trial of this case. Andrew Krieger, a principal involved in Mr. Sala's tax shelter, has recently provided a sworn statement recanting his prior deposition testimony as to the purpose of the shelter transaction. This statement addresses the specific trades which Mr. Sala utilized to claim his tax basis, and undermines much of the premise of Plaintiffs' evidence. This Court relied on Mr. Krieger's deposition testimony in entering summary judgment on the issue of interest suspension (Dkt. #

---

[1] Alternatively, the Government seeks relief under Rules 52(b) and 59(e) for amending findings and conclusions consistent with this motion.

3311671.4

154) and final judgment against the United States. Permitting these determinations to stand in light of this evidence would constitute a manifest injustice.

By his own admission, Mr. Krieger's deposition testimony, offered by the Plaintiffs at trial, was purposefully misleading and untruthful. Contrary to his previous testimony, Mr. Krieger now states that Mr. Sala's shelter was designed and implemented to generate tax losses. The primary purpose of the shelter, its structure, and the foreign currency option positions were to generate tax losses and not profits. In fact, the steps undertaken in carrying out the shelter, including the acquisition of long and offsetting short positions, would not have been done absent the need to generate a tax loss. The trades were not economically sound and these facts were concealed through the use of Mr. Krieger's wholly owned entity, Beckenham Trading Company ("BTC").

**Background**

This case involved Mr. Sala's purchase of a tax shelter which utilized the trading of options on foreign currency to generate substantial non-economic tax losses exponentially greater than the funds placed at risk. The United States asserted that Mr. Sala was not entitled to the claimed losses for a number of reasons, including that the trades giving rise to the claimed tax basis lacked economic substance and the requisite profit potential. Andrew Krieger was the foreign currency trader who carried out the steps of the transaction and he also participated in the transaction. Mr. Krieger was deposed as a fact witness on October 26 and 27, 2006 and again as an expert designated by Plaintiffs on April 17, 2007. At his deposition, Mr. Krieger testified: that he had no understanding the tax losses would be generated in 2000 (Exhibit 1, Krieger dep. (day 1) at 263:2-4); that his understanding of the purpose of the "test period" was to permit investors to test the waters of his long term strategy (*id.* (day 2) at 426:22-427:15); that achieving

3311671.4

a tax loss was completely irrelevant or incidental to the programs because the transaction was profit driven (*id* (day 2) at 428:8-429:21, 452:16-453:20); that he would have entered into the tax trades without the tax benefits (i*d*. (day 2) at 510.7-23); that the purpose of Deerhurst Investors GP was to make money (*id*. (day 2) at 513:9-514:17); and that there was a valid business purpose to liquidate at years end (*id*. (day 2) at 516.7-22).

At the pretrial conference conducted on December 14, 2007 (Dkt. ## 197 and 213) the parties agreed to present Mr. Krieger's testimony via his video-taped deposition for the trial scheduled for March 5, 2008.  Two weeks before trial, on February 27, 2008, the parties received a letter from Mr. Krieger's counsel, Jay Fischer.  (Dkt. # 229.)  The letter advised the parties that Mr. Krieger's deposition testimony was materially inconsistent with information Mr. Krieger was then currently providing to the Office of the United States Attorney for the Southern District of New York ("USAO") regarding an ongoing criminal investigation.  Mr. Krieger's counsel also stated, contrary to prior sworn testimony, that "the programs in which Mr. Sala was involved were essentially tax driven as opposed to profit driven."  According to Mr. Fischer, Mr. Krieger was making a detailed review of his deposition and would advise the parties of "other specific areas in which there are material inconsistencies and/or modifications" regarding his testimony.  Further, the parties were informed by Mr. Fischer that Mr. Krieger would not provide sworn testimony in this case until he had finalized an agreement with the USAO.  Instead, Mr. Krieger would invoke his Fifth Amendment rights and decline to testify.  (*Id*. at p. 2.)

Government counsel promptly initiated a call to chambers to advise the Court of the contents of the letter.  The Court advised that this issue would be discussed at the pretrial conference scheduled for March 5, 2008.  Based upon the communications with Mr. Fischer, the Government moved the court to vacate the trial.  *Id*.  At the pretrial conference the Government

advised the Court of the communications with Mr. Krieger's counsel and explained that Government counsel was ethically precluded from presenting Mr. Krieger's prior sworn deposition testimony.  The Government also explained that the problems with his deposition testimony could not be rectified by simply excluding the witness.  Mr. Krieger's deposition testimony was inextricably intertwined with the development of this case even to the extent that it was relied upon by the Court in granting summary judgment against the United States.[2]  Also, both parties' experts relied upon Mr. Krieger's testimony in preparing their reports.  In light of the prejudice it would face in not being able to present Mr. Krieger's testimony, the Government requested that the trial be vacated.  *Id*.   The Court denied the motion.  (Dkt. # 231.)

The objections to Mr. Krieger's deposition testimony were renewed prior to the presentation of the testimony via videotape.  During trial, the Government offered, over objection, Mr. Fischer's letter as evidence of Mr. Krieger's recantation.  The Court sustained the objection and excluded the letter.  In reaching its ruling the Court detailed the chain of events and communications since the receipt of the initial letter, including a more recent March 6, 2008 letter from Mr. Krieger's counsel to the Court.  This Court determined the letter was not "definite," and was subject to qualifications and ambiguities.  (Exhibit 2, Transcript of Trial, at 363.)  The Court held that any ambiguities were to be resolved in Mr. Sala's favor.  (*Id*. at 364.)  Finally, the Court determined that the letter, and subsequent communications by Mr. Fischer, "does not meet that overarching goal of the Federal Rules of Civil Evidence" which are to "be construed to secure fairness in the administration, elimination of unjustifiable expense and delay and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined."  (*Id*. at 364-65.)

---

[2] In granting summary judgment on the issue of whether interest may be suspended, the Court relied on Mr. Krieger's deposition testimony as to the motivations for the transaction.

3311671.4

After trial, the Court entered Findings of Fact and Conclusions of Law finding in favor of Mr. Sala. (Dkt. # 246.) In reaching its conclusions, the Court relied upon the deposition testimony of Mr. Krieger. The Court found: that the trades in Mr. Sala's tax shelter were typical of Mr. Krieger's trading program (*id*. at 21); that the objective intent of the trading program was to generate huge profits (*id*. at 20); that the structure of the program was implemented to provide non-tax benefits (*id*. at 23); that the contribution of the tax trades to an S corporation had a legitimate purpose other than the creation of tax benefits (*id*. at 24); that the need for the partnership (which existed for less than three weeks) was for non-tax reasons (*id*. at 25); that the test period served a legitimate non-tax business purpose (*id*. at 26-28); that there was a legitimate non-tax reason to liquidate the trading positions by year end (*id*. at 26); and that the tax trades were entered into for legitimate business reasons (*id*. at 29) and could be separated into their separate positions (*id*. at 38-39).

On May 21, 2008, Mr. Krieger executed a non-prosecution cooperation agreement with the USAO. (Exhibit 3, Dec. of Andrew Krieger, at ¶ 8.) Mr. Krieger agreed to provide truthful information and testimony about his activities involving tax shelters. (*Id*. at ¶ 8.) Prior to reaching an agreement, Mr. Krieger would not have provided any additional testimony in Mr. Sala's case relying on his Fifth Amendment right. (*Id*. at ¶ 9.) On May 22, 2008, undersigned counsel obtained a sworn declaration from Mr. Krieger recanting testimony from his deposition that was "false, misleading and incomplete." (*Id*.) The declaration was made pursuant to 28 U.S.C. § 1746 and included the following representations:

- In connection with an investigation relating to tax shelter transactions Krieger was contacted by the USAO;

- Krieger provided information under a proffer agreement which provided that his statements could not be used against him;

- That before the trial in this case, Krieger authorized his counsel to advise the parties and the Court that his prior testimony was inconsistent with what he knew to be the true facts regarding the motivation of the shelter and that the deposition testimony he gave in this case was false and misleading;

- That on May 21, 2008, the day before he provided a sworn declaration to Government counsel in this case, Krieger entered into a non-prosecution agreement with the USAO. That agreement requires him to provide truthful information and testimony about his activities involving tax shelters and to cooperate with the Government;

- At his deposition Krieger purposefully avoided acknowledging the motivation for the tax trades and he would not have entered into these trades but for the need to generate tax basis;

- The primary motivation for entering into the tax trades and the investment program was the tax savings and these savings were not incidental to the transaction;

- Krieger was required to liquidate the tax trades to generate the tax losses and market conditions did not play a factor in the decision to liquidate the trades;

- There was no sound business reason to liquidate accounts at year end other than to create a tax loss. Absent the requirement of generating a tax loss the position would not have been prematurely unwound;

- The amount of long options premiums purchased as part of the tax trades intentionally approximated the tax losses sought by the participants. The face amounts of the long options were so significant that the trade would not have been entered into but for the need to purchase options with such large premiums.

- The costs of these tax trades were so significant that absent the intervention of Krieger's company, BTC, and its agreement to assume the risk of these trades to avoid incurring additional fees to Refco, the trades would not have been economically feasible;

- Similarly, if BTC had itself charged fees to which it was entitled to charge "it would have been significantly harder to ensure a profit at year end;"

- The transaction's "test period" was not a realistic test of the trading program. The test period was designed to disguise the real purpose of the tax trades from the IRS; and

- The structure imposed on the participants in 2000, including the use of an S Corporation and a general partnership, was not designed to assist in the creation of a profit or for a purpose other than the creation of a tax loss. The structure and events in 2000 were designed by the shelter's promoter, Michael Schwartz, for the purpose of generating tax basis and a tax loss for the participants.

3311671.4

## ARGUMENT

A.  Standard

In an action tried without a jury, the court may grant a new trial for any of the reasons for which rehearings have been granted in suits in equity.  Fed. R. Civ. P. 59(a)(2); *Lyons v. Jefferson Bank & Trust*, 793 F.Supp. 989 (D. Colo. 1992), *rev'd on other grounds*, 994 F.2d 716 (10th Cir. 1993).  The court may open the judgment, take additional testimony, amend or make new findings of fact and conclusions of laws, and direct entry of a new judgment.  A rehearing should be based upon a "manifest error of law or mistake of fact, and a judgment should not be set aside except for substantial reasons."  *Id*. at 992 *quoting* 11 Wright & Miller, *Federal Practice and Procedure*, § 2804 (1973).  The decision to grant this relief is committed to the discretion of the trial court.  *McHargue v. Stokes Div. of Pennwalt Corp.*, 912 F.2d 394, 396 (10th Cir. 1990).

To obtain relief a movant must establish that:  (1) the evidence was newly discovered since the trial; (2) the movant was diligent in discovering the new evidence; (3) the newly discovered evidence is not merely cumulative or impeaching; (4) the newly discovered evidence is material; and (5) that a new trial, with the newly discovered evidence, would probably produce a different result.  *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716 (10th Cir. 1993) (rejecting a claim for a new trial on the ground that the evidence was immaterial).

Although it is not an express requirement in the Tenth Circuit, courts generally conduct an evidentiary hearing to evaluate the credibility and impact of a recantation.  *See United States v. Page*, 828 F.2d 1476, 1478 (10th Cir. 1987), *cert. denied*, 484 U.S. 989 (1987) (concluding that the trial court must first be satisfied that the trial testimony was false and to make such a finding a court must ordinarily conduct an evidentiary hearing to evaluate the credibility and impact of a

recantation); *United States v. Ramsey*, 726 F.2d 601, 605 (10th Cir. 1984), *cert. denied*, 474 U.S. 1082 (1986).  An evidentiary hearing allows the court an opportunity to evaluate a witness's credibility, especially as is the case here where the witness did not physically appear for trial. *See United States v. Miller*, 987 F.2d 1462 (10th Cir. 1993).  Where the new evidence is a recantation of trial testimony, a threshold issue that must be addressed is whether the challenged testimony is actually false.  *United States v. Bradshaw*, 787 F.2d 1385, 1391 (10th Cir. 1986).

The newly discovered evidence in this case eviscerates Plaintiffs' case.  Mr. Krieger has now addressed the 800 pound gorilla in the room: Mr. Sala's shelter transaction consisted of predetermined steps with stated but false business reasons that were effectuated solely to generate $60,000,000 in tax losses for Mr. Sala and tens of millions in losses for others.

B.     Application of Legal Standard

1. Mr. Krieger's trial testimony was false

Mr. Krieger is the individual who carried out the steps in Mr. Sala's shelter transaction and is therefore in the best position to explain their significance.  His corrected testimony is entirely consistent with the Government's expert testimony.  Mr. Krieger's affidavit describing carefully choreographed steps over a very short period of time with the use of multiple entities in a "test period" is also consistent with Mr. Schwartz's marketing materials and exposes the self-serving but strained non-tax rationales for the program.

Numerous parts of Mr. Krieger's deposition testimony, entered into evidence by Plaintiffs at the trial, are misleading and false.  Mr. Krieger now admits, contrary to his deposition testimony, that the primary purpose of the "tax trades" was to generate tax losses for

the participants and not to generate positive economic returns.[3] *Compare* Exhibit 1, Krieger dep. (day 2) at 505:6-15 *with* Exhibit 3, Krieger dec. at ¶ 12(a).  Similarly, Mr. Krieger admits that the trades were not economically feasible but for his waiving and hiding certain inherent transaction costs.  Exhibit 3, Krieger dec., at ¶ 12(c).  Contrary to his deposition testimony that the test period was for investors to test the waters of his long term strategy (Exhibit 1, Krieger dep. (day 2) at 426:22-427:15), instead the term 'test period' was simply coined by Mr. Schwartz as a catch phrase to deceive the IRS and to disguise the true purpose of the trades.  Exhibit 3, Krieger dec. at ¶ 12(e).  Further, although in his deposition Mr. Krieger testified that the purpose of the partnership was to make money (Exhibit 1, Krieger dep. (day 2) at 513:9-514:17), instead the use of the S Corp and the general partnership were merely "predetermined steps required by Mr. Schwartz, all for the purpose of generating tax basis and a tax loss for the participants." Exhibit 3, Krieger dec., at ¶ 12(f).  Finally, although Mr. Krieger testified in his deposition that there was a valid business purpose to liquidate at year end (Exhibit 1, Krieger dep. (day 2) at 516:7-22), in fact, "there was no sound trading or business reason to liquidate the trades by year end . . ." and it was simply a predetermined requirement of the structure of the tax trades to liquidate them by year end in order to obtain the tax benefits.  Exhibit 3, Krieger dec., at 12(g).

By his own admission Mr. Krieger acknowledges that his trial testimony was "false, misleading and incomplete."  Exhibit 3 at ¶¶ 5, 6 and 11.

2. <u>The evidence was newly discovered since the trial</u>

Promptly after the receipt of the information from Mr. Krieger's counsel regarding the material misstatements, the Government informed the Court.  The Government also promptly

---

[3] In fact, Mr. Krieger's primary motivation for participating in Mr. Sala's shelter was to obtain a tax benefit for himself. *Compare* Exhibit 1, Krieger dep. (day 1) at 261:1-9 *with* Exhibit 3, Krieger dec., at ¶ 12(h).

sought to vacate the trial.  The Court concluded that Mr. Fischer's communications were insufficient to alter the trial date or impact admissibility of the testimony.  It was not until after the trial that Mr. Krieger entered into a non-prosecution cooperation agreement and agreed to provide sworn truthful testimony about Mr. Sala's shelter.  Before then he refused.

      3. <u>The Government was diligent in discovering the new evidence</u>

It cannot be disputed that the Court was informed immediately about Mr. Krieger's intention to recant before trial.  However, the Court found that Mr. Krieger's counsel's statements, the only evidence available to the Government at that time, were insufficient to justify vacating the trial date.  The Government was unable to secure a sworn statement from Mr. Krieger until after the trial.  The evidence was presented promptly to this Court upon its availability.  Unlike many of the cases where courts have been reluctant to overturn a judgment based upon recanted testimony, in this case the witness came forward through counsel before trial and before the presentation of his testimony.

That Mr. Krieger was subject to cross-examination during discovery does not alter the conclusion that his recantation is newly discovered.  It is simply unrealistic to assume that Mr. Krieger's recantation could have been obtained during his deposition given that Mr. Krieger "purposely avoided all discussions of tax matters and purposely downplayed the tax motives behind the tax trades or the 'investment program.'"  Exhibit 3, Krieger dec., at ¶ 11; s*ee Ramsey*, 726 F.2d at 604 (10th Cir. 1984) ("it is unrealistic to assume that the defense attorneys could have elicited the recantation at trial.")

      4. <u>The newly discovered evidence is not merely cumulative or impeaching</u>

Far from being cumulative or impeaching, the testimony is inconsistent with the entirety of Mr. Sala's presentation of evidence.  It is offered as evidence of the design and intent of the

10

3311671.4

transaction from the perspective of one of the principals engaged to carry out the plan who also participated in the transaction as an "investor."

    5.  <u>The newly discovered evidence is material</u>

        *(a) the evidence is relevant to the economic substance test*

The Supreme Court has concluded that where there is nothing of substance to be realized from a transaction apart from income tax savings, the transaction will be disregarded for federal tax purposes. *Knetsch v. United States*, 364 U.S. 361, 366 (1960). The test in the Tenth Circuit is "whether the transaction had any practical economic effects other than the creation of income tax losses." *James v. Commissioner,* 899 F.2d 905, 908-909 (10th Cir. 1990).

Mr. Krieger's explanation of the motivation for the various predetermined steps created by Mr. Schwartz -- that the steps had no valid business purpose, that they were imposed by Mr. Schwartz to create a tax loss, that the purchase and sale of the tax trades were not economically defensible, that the tax trades would not have been undertaken at all but for the need to generate tax losses, that fees were deliberately not charged because that would have diminished the profitability of the transaction and that the "test period" was a ruse -- all are material facts for the Court's consideration of economic substance.

        *(b) the evidence is relevant to merits of the deduction under 26 U.S.C. § 165*

26 U.S.C. § 165(c)(2) of the Internal Revenue Code limits a taxpayer's deductions to only those "losses incurred in any transaction entered into for profit." The section requires a taxpayer to show that his or her <u>primary motive</u> for entering into a transaction was to make a profit. *Miller v. Commissioner*, 836 F.2d 1274, 1280 (10th Cir. 1988). "The test of deductibility

is one of degree, considering the facts and circumstances surrounding the transaction." *Id*. at 1279.

The most recent Tenth Circuit decision addressing § 165(c)(2) is *Keeler v. Commissioner, 243 F.3d 1212* (10th Cir. 2001). In *Keeler* the Court found that the trading program entered into by the taxpayer provided hefty opportunities for tax savings and that the profit potential was anemic compared to the capacity for tax gaming. *Id*. at 1214. In rejecting the taxpayer's claimed loss, the Court considered that the claimed tax losses offset almost all of the taxpayer's income, that the transaction was designed to create the loss by year end, and the that pattern of trading activity was suspicious. *Id*. at 1220.

Much of what concerned the Court in *Keeler* is present here. Given Mr. Krieger's testimony regarding the economic feasibility of the trades, the hidden costs, that the trades would not have been acquired or sold but for the need to generate tax basis and that the test period was a sham, the evidence is clearly material to this Court's consideration of whether the transactions were entered into for profit. But for the tax losses, the transaction would not have occurred. The Tenth Circuit will not permit "the tax tail" to "wag the business judgment dog." *Miller*, 836 F.2d at 1279.

*(c)  the evidence is relevant to the issue of interest suspension*

This Court's ruling on Plaintiffs' motion for partial summary judgment on the issue of interest suspension (Dkt. # 154) could have been impacted had Mr. Krieger's statements been known to the Court. For example, in reaching its conclusion, the Court noted that Mr. Krieger had a reputation for seeking profits in his trades. *Id*. at 12. The Court also gave credence to Mr. Krieger's pattern of trading activity. Mr. Krieger now testifies that the test period was a ruse and

3311671.4

the tax trades were not part of his trading pattern.  *Id*. at 2-3.  The test period was created by Mr. Schwartz for purely tax reasons.  *Id*.  2-3.

Mr. Sala's intentions and the true purpose of the transaction ought to be considered in light of the true facts.

      6.   <u>A New Trial Would Probably Produce a Different Result</u>

The Court relied upon much of Mr. Krieger's testimony.  For example, in its Findings of Fact and Conclusions of Law the Court concluded: that the tax trades were typical of Mr. Krieger's trading program (Dkt. # 246);  that the objective intent of the trading program was to generate huge profits (*id*. at 20); that the structure of the program was implemented to provide non-tax benefits (*id*. at 23);  that the use of an S Corporation and partnership was appropriate (*id*. at 24-5); that there were legitimate non-tax reasons to acquire and then liquidate the positions (*id*. at 26 and 29); and that the long and short positions comprising the tax trades could be separated (*id*. at 38-9).  Mr. Krieger's truthful testimony casts considerable doubt on these conclusions and if accepted, should result in a finding that the transaction was improper.

3311671.4

## CONCLUSION

For the reasons above the Government seeks a new trial or the opportunity to present additional evidence.

Dated this  10th  day of June, 2008.

                               TROY A. EID
                               United States Attorney
                               MARK S. PESTAL
                               Assistant U.S. Attorney

                               s/ David Geier
                               DAVID N. GEIER
                               JOSEPH A. SERGI
                               AMY MATCHISON
                               Trial Attorneys, Tax Division
                               U.S. Department of Justice
                               P.O. Box 683
                               Ben Franklin Station
                               Washington, D.C. 20044-0683
                               Telephone:  (202) 616-3448
                               Facsimile:   (202) 307-0054
                               Email: David.N.Geier@usdoj.gov

          Street Address:            Judiciary Center Building
                               555 Fourth Street, N.W.
                               Washington, D.C. 20001

3311671.4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CERTIFICATE OF SERVICE (CM/ECF)

     I hereby certify that on June 10, 2008, I electronically filed the foregoing MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR A NEW TRIAL with the Clerk of Court using the EFC system which will send notification of such filing to the following e-mail addresses:

dhallett@chicoine-hallett.com
jcolvin@chicoine-hallett.com
david.n.geier@usdoj.gov
joseph.a.sergi@usdoj.gov
amy.t.matchison@usdoj.gov

                           s/ David Geier
                           DAVID N. GEIER
                           U.S. Department of Justice
                           Tax Division