# EXHIBIT 2

247

1     IN THE UNITED STATES DISTRICT COURT

2     FOR THE DISTRICT OF COLORADO

3   Civil Action No. 05-cv-00636-LTB-KLM

4   CARLOS E. SALA and TINA ZANOLINI-SALA,

5       Plaintiffs,

6   vs.

7   UNITED STATES OF AMERICA,

8       Defendant.

---

**REPORTER'S TRANSCRIPT**
(Trial to Court - Volume 2)

---

        Proceedings before the HONORABLE LEWIS T. BABCOCK, Judge, United States District Court for the District of Colorado, commencing at 8:41 a.m., on the 11th day of March, 2008, in Courtroom C401, United States Courthouse, Denver, Colorado.

Proceeding Recorded by Mechanical Stenography, Transcription Produced via Computer by Gwen Daniel, 901 19th Street, Room A259, Denver, Colorado, 80294, 303.571.4084

1  clouded in this respect:  What has given rise to the letter of
2  February 27 is some troubling motivation for the letter.  And
3  by that I mean the reference that Mr. Krieger was questioned
4  extensively by the U.S. attorney who is investigating the Ernst
5  & Young tax shelter matter.  I don't even know what that is.
6  The timing is troubling as well.
7          This whole sequence of events that give rise to the
8  February 27 letter virtually on the eve of the trial of this
9  case, in light of the repeated efforts by the government to
10 delay, postpone, stay, and otherwise put off the trial of this
11 case, is troubling.
12         It says "it appears" Mr. Krieger provided information
13 to the United States government."  "It appears."  It is not
14 definite.  It is not stated in terms that Mr. Krieger did.  It
15 says that "it appears" that he provided information to the
16 United States government, as qualified.  That may be
17 inconsistent.
18         Early on in learning to write opinions I learned the
19 difference, and in reading statutes and case opinions I learned
20 the difference between "may" and "is," between "shall" and
21 "may."  So that's not specific and it's qualified.
22         Then he says:  "For example, it is now Mr. Krieger's
23 view based upon his review and reevaluation of the
24 circumstances and the programs," i.e. I suppose Deerhurst, "in
25 which Mr. Sala was involved were essentially tax-driven as

1   opposed to profit-driven."

2          So that says to me, as written, the programs were
3   essentially tax-driven as opposed to profit-driven, not that
4   Mr. Sala's motive in entering Deerhurst was essentially --
5   essentially, and a use of adverbs is also a weasel way of
6   writing -- not that Mr. Sala's motive was tax-driven as opposed
7   to profit-driven.

8          Now whether or not these transactions had economic
9   substance generally from an objective point of view, whether or
10  not Deerhurst did, the GP or the LLC, is a matter that I can
11  determine from all of the evidence in the case.

12         It goes on to say that this of course does not change
13  any of Mr. Krieger's testimony as to what Mr. Sala told
14  Mr. Krieger regarding his, Sala's, motivation.

15         So that's not inconsistent at all.  Nor does it affect
16  any testimony provided in deposition as to any lack of
17  knowledge on Mr. Krieger's part as to the ultimate utilization
18  by Sala of any gains and/or losses in the preparation of his
19  tax returns.

20         Well, it is ambiguous.  To the extent that an
21  ambiguity might be resolved to any degree, frankly it would be
22  resolved in Mr. Sala's favor.

23         Now it never hurts to go to the source, the font of
24  the Federal Rules of Evidence.  Rule 102 says that, "These
25  rules shall be construed to secure fairness in the

|    |                                                                                      |
|----|--------------------------------------------------------------------------------------|
| 1  | administration, elimination of unjustifiable expense and delay                       |
| 2  | and promotion of growth and development of the law of evidence                       |
| 3  | to the end that the truth may be ascertained and proceedings                         |
| 4  | justly determined."                                                                  |
| 5  |     Frankly, this February 27 letter does not meet that          |
| 6  | overarcing goal of the Federal Rules of Evidence.                                    |
| 7  |     Drilling deeper, of course, is the question as to            |
| 8  | whether anything referenced by Mr. Fischer attributable to                           |
| 9  | Mr. Krieger constitutes a statement against interests under                          |
| 10 | Rule 804(b)(3). Beginning with the predicate that any                                |
| 11 | statement attributable to Mr. Krieger is ambiguous, it is very                       |
| 12 | difficult to determine that it meets the test of that rule.                          |
| 13 |     I know the government can indict a ham sandwich, but I       |
| 14 | would be shocked that the government would indict Mr. Krieger                        |
| 15 | based upon any information contained within this February 27                         |
| 16 | letter. Now whether or not there's substance behind that                             |
| 17 | vis-a-vis 18 U.S.C. 1001 or otherwise affecting Mr. Krieger, I                       |
| 18 | can't determine that.                                                                |
| 19 |     It is a stringent rule. The statement has to be so           |
| 20 | far contrary to the declarant's pecuniary or proprietary                             |
| 21 | interest. There's no indication that it is in any way contrary                       |
| 22 | to his pecuniary or proprietary interest. Or so far tended to                        |
| 23 | subject the declarant to civil or criminal liability. The                            |
| 24 | ambiguity certainly doesn't meet that high hurdle. Or to                             |
| 25 | render invalid a claim by the declarant against another. There                       |