1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF COLORADO

3   Civil Action No. 05-cv-00636-LTB-KLM

4   CARLOS E. SALA and TINA ZANOLINI-SALA,

5       Plaintiffs,

6   vs.

7   UNITED STATES OF AMERICA,

8       Defendant.
   _____

9

10                  **REPORTER'S TRANSCRIPT**
              (Final Trial Preparation Conference)

11
   _____

12

13          Proceedings before the HONORABLE LEWIS T. BABCOCK,

14   Judge, United States District Court for the District of

15   Colorado, commencing at 3:00 p.m., on the 5th day of March,

16   2008, in Courtroom C401, United States Courthouse, Denver,

17   Colorado.

18

19

20

21

22

23

24    Proceeding Recorded by Mechanical Stenography, Transcription
       Produced via Computer by Gwen Daniel, 901 19th Street,
25        Room A259, Denver, Colorado, 80294, 303.571.4084

**APPEARANCES**

Darrell Delmar Hallett, Robert J. Chicoine, Cori E. Flanders-Palmer, Attorneys at Law, Chicoine & Hallett, Inc., P.S., 719 Second Avenue, #425, Seattle, WA 98104, appearing for the Plaintiff.

David Neil Geier, Joseph Andrew Sergi and Amy T. Matchison, Attorneys at Law, U.S. Department of Justice-DC-Tax Division-P.O. Box 683, P.O. Box 683, Ben Franklin Station, Washington, DC 20044, appearing for the Defendant.

* * * * *

**PROCEEDINGS**

(In open court at 3:00 p.m.)

THE COURT:  Please be seated.

05-cv-636, Sala vs. United States.

Appearances, please.

MR. HALLETT:  Darrell Hallett for the plaintiff, Carlos Sala, and with me in addition to my co-counsel is Mr. Sala, the plaintiff in this case, your Honor.

THE COURT:  Thank you.

MR. CHICOINE:  Good afternoon, your Honor.  Robert Chicoine for the plaintiff.

MS. FLANDERS:  Good afternoon, your Honor.  It's Cori Flanders for the plaintiff.

MR. GEIER:  Good afternoon, your Honor.  David Geier

 1    for the defendant, United States.

 2             MR. SERGI:  Your Honor, Joe Sergi on behalf of the

 3    government.

 4             MS. MATCHISON:  Amy Matchison, your Honor, on behalf

 5    of the United States.

 6             THE COURT:  Thank you.

 7             This is our final trial preparation hearing before

 8    trial to begin next Monday at 8:30.

 9             Let me review what I have here in addition to proposed

10    findings and conclusions which have been filed by the parties

11    previously.

12             I have plaintiff's readvised second amended list, and

13    I note Mr. Krieger will be by deposition.  We will address this

14    issue in a moment.  Mr. Schwartz by video deposition, Dr. Kolb

15    as a live witness, Mr. Nemirow as a live witness, Mr. **Brady** as

16    a live witness, I think.

17             MR. HALLETT:  Your Honor, excuse me, Mr. **Brady** is by

18    deposition.

19             THE COURT:  He is by deposition?

20             MR. HALLETT:  Yes.

21             THE COURT:  Hard copy?

22             MR. HALLETT:  Hard copy.

23             THE COURT:  Okay.  Now there is attached a document

24    entitled "Witness list" with tab numbers 1 through 17.  Are

25    these witnesses?  They're not trial witnesses, are they?

```
 1            MS. FLANDERS:  Your Honor, if I may.  Actually, those
 2   are all witnesses that are going to be -- whether it's going to
 3   be by deposition, video deposition, or live witnesses.  And I
 4   believe in your scheduling or your rules that you require
 5   addresses and phone numbers.  So that was just for the Court's
 6   benefit so you had knowledge of current available information
 7   on them.
 8            THE COURT:  What does "chamber witness" stand for?
 9            MS. FLANDERS:  Basically taking a hard deposition
10   copy.  Those are not going to be during court as a video
11   deposition.
12            THE COURT:  What does "subpoenaed" mean, that they
13   will be here live?
14            MS. FLANDERS:  Yes, your Honor.
15            THE COURT:  Mr. Dice, Mr. 4, for example, why isn't he
16   listed on the witness list itself, 1 through 4?
17            MS. FLANDERS:  Your Honor, he is not our witness, he
18   is the government witness.  So we were just trying to get a
19   list of all the witnesses we saw -- it was really for your
20   benefit, and I apologize, it was probably confusing.
21            THE COURT:  Okay.  Now I understand.  No. 4.  So your
22   witnesses at the trial will be Mr. Sala, Mr. Krieger,
23   Mr. Schwartz, Dr. Kolb, Mr. Nemirow, and Mr. **Brady**, right?
24            MS. FLANDERS:  Yes, your Honor.
25            THE COURT:  All right.  Then I have the defense
```

```
 1    witness list.  There is some overlap.  Let's see,

 2    deposition-wise:  Martin White, Christopher Dice, Michael

 3    Schwartz.  Separate from his -- same deposition, I assume.

 4    Mr. Nemirow, who is going to be here for the plaintiff.

 5    Mr. Natbony, deposition.  John Raby, deposition.

 6            MR. GEIER:  Your Honor, John Raby will be live.

 7            THE COURT:  All right.

 8            MR. GEIER:  Yeah.  And, your Honor, if I may back up,

 9    I didn't want to interrupt.  Mr. White is something that we

10    ought to confront.  Mr. White is represented by Mr. Sala's

11    counsel.  At the last hearing that we had as a final pretrial

12    in December it was represented that Mr. White would be here --

13    your Honor, should I stand up when I am addressing you?  Or

14    would it be okay --

15            THE COURT:  No, we're not in Texas.

16            MR. GEIER:  Thank you.  I apologize to the Court.

17    Your Honor, at the December 14th pretrial you went through this

18    list, and I know we're doing it again to confirm how this trial

19    is going to proceed, and at that time the question of

20    Mr. White -- and Mr. Hallett represented on two occasions in

21    response to questions to the Court that Mr. White would be

22    testifying live.  And we confirmed with Mr. Hallett that and,

23    therefore, we didn't sync his video deposition up or do any

24    designations.  We counted on him being live and actually we

25    wanted him live.
```

1    Mr. White, a close friend of Mr. Sala's, entered the

2    transaction that's at issue twice, once to obtain ordinary

3    losses and once to obtain capital losses.  Yesterday we were

4    advised by e-mail as we were heading out the door that

5    Mr. White was no longer relevant, that Mr. White was on

6    vacation, that Mr. White won't be here.

7         And we had representations that he would be.  We did

8    not designate on that basis, and was surprised that the witness

9    that we had been told and this Court had been told would

10   absolutely be here is now not going to be here.  And that;

11   leaves us in a somewhat strange position at the very last

12   moment.  We'd like him to be here, and we understood from his

13   counsel that he would be.

14        THE COURT:  Mr. Hallett.

15        MR. HALLETT:  Yes.  Let me just -- let me clarify.

16   First of all Mr. White resides in New York.  He spends some

17   time in Tuscany.  The government took his deposition by

18   videotape, at their request to videotape it, was treated as an

19   out-of-jurisdiction witness.  The deposition took place from 10

20   o'clock in the morning until 5:48 in the afternoon, in the

21   evening.  There was 210 pages of government examination, many,

22   many exhibits, and 13 pages of my examination.

23        The point is that at the time his deposition was taken

24   they fully anticipated that he would be an out-of-jurisdiction

25   witness.  He was videotaped.  He was thoroughly examined.  I

1    didn't absolutely promise he would be here.  Our thinking

2    was -- in the initial witness list our thinking was that we

3    would call him.  And like many lawyers do, when we hunker down

4    in preparation for the final chance to put the witnesses in,

5    frankly took a close look at his testimony, and others, and

6    concluded that he had very little, if anything, that was

7    relevant to Mr. Sala's case.

8         The issue in this case is Sala's transactions and

9    Sala's intent.  And, frankly, I felt that there would be many

10   objections, and probably correctly so, if I called him.  So I

11   just thought that -- our thinking was, no, we're not going to

12   call him.  We made the final decision going through the

13   deposition carefully, as well as the others, as to whether it

14   added anything or shedded any light on anything, we concluded

15   it didn't.  Advised counsel promptly when we made the decision,

16   and advised counsel that if counsel wishes to put the videotape

17   in, that's not a logistically difficult thing, that we're

18   agreeable to either putting the transcript of the dep or

19   putting the videotape in, or both --

20         THE COURT:  The videotape runs how many hours?

21         MR. HALLETT:  The deposition was 10 o'clock until

22   about 6 o'clock.

23         THE COURT:  Well, let's put in -- if the government

24   wants his testimony, let's put in his hard copy deposition.

25         MR. HALLETT:  That's fine.

| | |
|---|---|
| 1 | THE COURT:  Okay.  Let's see, Christopher Dice, that |
| 2 | will be by deposition, correct? |
| 3 | MR. GEIER:  Mr. Dice will be a live witness, your |
| 4 | Honor. |
| 5 | THE COURT:  Live.  I think you told me that.  Michael |
| 6 | Schwartz, he will be live, I think? |
| 7 | MR. GEIER:  Your Honor, no, Mr. Schwartz will be by |
| 8 | video. |
| 9 | THE COURT:  Okay.  Instead of stumbling continuously, |
| 10 | let me take them name by name.  Mr. Nemirow. |
| 11 | MR. GEIER:  Mr. Nemirow will be live. |
| 12 | THE COURT:  Natbony. |
| 13 | MR. GEIER:  Natbony will be by video. |
| 14 | THE COURT:  Raby? |
| 15 | MR. GEIER:  Raby will be live, your Honor. |
| 16 | THE COURT:  Gillis? |
| 17 | MR. GEIER:  I'm sorry, your Honor? |
| 18 | THE COURT:  Tim Gillis? |
| 19 | MR. GEIER:  Oh, by transcript, your Honor. |
| 20 | THE COURT:  Napier? |
| 21 | MR. GEIER:  By transcript, your Honor. |
| 22 | THE COURT:  Vertucca? |
| 23 | MR. GEIER:  By transcript, your Honor. |
| 24 | THE COURT:  Raby we've already addressed.  Lemmons? |
| 25 | MR. GEIER:  Transcript, your Honor. |

1        THE COURT:  Is **Raby** going to be live?

2        MR. GEIER:  Transcript.

3        THE COURT:  Cantley?

4        MR. GEIER:  Transcript.

5        THE COURT:  DeRosa?

6        MR. GEIER:  He's the government expert and will be

7   live.

8        THE COURT:  And Krieger?

9        MR. GEIER:  We're going to address that, but --

10       What I have received -- well, we'll get to the

11   exhibits.  I have received this fax which indicates that -- and

12   I think there was at one point an agreement that Mr. Krieger's

13   deposition could be admitted.  I have this fax that indicates I

14   guess government counsel got a letter from Mr. Krieger's

15   lawyer, Mr. Fischer, indicating that his deposition testimony

16   is potentially false, fraudulent or perjured and therefore

17   should not be permitted at trial.

18       Now do you have a copy of the letter?

19       MR. GEIER:  Your Honor, we do have a copy of the

20   letter.  The letter was sent to counsel for Mr. Sala and the

21   United States together.

22       THE COURT:  Let me take a look at it.  Okay.  I will

23   quote it, it's not long.  From J. D. Fischer, dated February

24   27, 2008.  When was his deposition taken?

25       MR. GEIER:  His deposition was taken over -- excuse

1     me, your Honor.  His deposition was taken over three different

2     dates.  I don't have them at my fingertips, but we certainly

3     can try to find them.

4          MR. CHICOINE:  Your Honor, his deposition was taken on

5     October 26th, 2006/October 27th, 2006.  The government deposed

6     him for the first day, part of the second day.  Mr. Hallett

7     concluded on that second day.  And then the government took the

8     position that Mr. Krieger might be an expert witness, there was

9     expert testimony.  So by stipulation there was a third

10    deposition taken in April of 2007, your Honor.  And all told

11    those depositions took almost three days.

12         THE COURT:  Okay.  So one deposition taken on October

13    26 and 27, 2006, one on April 7th, 2007.

14         MR. CHICOINE:  Yes, sir.

15         THE COURT:  April what was that?  In April.

16         MR. CHICOINE:  I'm not sure, I believe it was early

17    April, April 7th or so.

18         THE COURT:  Okay.  So this letter is written February

19    28.  By the way, was Mr. Krieger represented by counsel at

20    those depositions?

21         MR. GEIER:  He was, your Honor.

22         MR. CHICOINE:  Yes, he was, your Honor.  He was

23    represented by a Mr. Thomas, if you look on that letterhead, by

24    Mr. Alan Thomas, who I believe is a partner of Mr. Fischer, and

25    he attended and participated in all three of those depositions.

1    MR. GEIER:  Your Honor, just to be clear about the

2    third deposition, we didn't take the position that he was an

3    expert, plaintiff's designated Mr. Krieger --

4    THE COURT:  Doesn't matter.

5    So the next question is -- or under Rule 30(e) was

6    Mr. Krieger allowed to review his deposition?

7    MR. CHICOINE:  I believe he was, your Honor.

8    THE COURT:  Okay.  Now let me quote the letter.

9    "From:  Fischer Porter & Thomas," and this is written

10   by J. D. Fischer, the first name on the list.

11   "February 27, 2008.  Gentlemen:  As you know we

12   represent Andrew Krieger, whose deposition was taken in the

13   above matter.  We wish to advise you that subsequent to the

14   deposition Mr. Krieger was questioned extensively by the United

15   States attorney who is investigating the Ernst & Young tax

16   shelter matter.  We have learned recently that the trial of the

17   above matter is scheduled to begin on or about March 11.

18   "Having had some time to consider questions raised in

19   the Sala deposition, it appears Mr. Krieger provided

20   information to the United States government that may be

21   inconsistent with information provided in the depositions.  For

22   example, it is now Mr. Krieger's view, based upon his review

23   and reevaluation of the circumstances, that the programs in

24   which Mr. Sala was involved were essentially tax-driven as

25   opposed to profit-driven.  This of course does not change any

1   of Mr. Krieger's testimony as to what Mr. Sala told Mr. Krieger

2   regarding his, Sala's, motivation, nor does it affect any

3   testimony provided in the deposition as to the lack of any

4   knowledge on Mr. Krieger's part as to the ultimate utilization

5   by Sala of any gains and/or losses in the preparation of any

6   tax returns.  We are in the process of making a more detailed

7   review of Mr. Krieger's deposition and subsequent information

8   provided by Mr. Krieger, and to the extent that there are

9   specific areas in which there are material inconsistencies

10  and/or modifications in Mr. Krieger's deposition testimony, we

11  shall advise you at the earliest possible date."

12          Okay.  Now as I indicated the fax of February 29 from

13  Mr. Sergi -- or Sergi?

14          MR. SERGI:  Sergi, your Honor.

15          THE COURT:  Sergi.  To Ms. Flanders says:  "We have

16  reason to believe that Mr. Krieger's deposition testimony is

17  potentially false, fraudulent or perjured."

18          Well, from reading the letter I think that is

19  speculative and, therefore, should not be permitted at the

20  trial.  Well, it is what it is.

21          And the trial should be continued to allow the parties

22  to attempt to secure Krieger's live testimony.

23          There's also reference that he may intend to plead the

24  Fifth Amendment.

25          Well, the depositions were taken in October 2006 and

1   April 2007.  If Mr. Krieger committed perjury, that's a

2   separate matter to be addressed in a separate forum under

3   separate circumstances.

4           To the extent that Mr. Krieger may wish to claim a

5   Fifth Amendment privilege not referenced in Mr. Fischer's

6   letter, he's too late vis-a-vis the deposition.  It was not,

7   first of all, a custodial interrogation; and, secondly, while

8   an individual can assert a Fifth Amendment privilege in a civil

9   matter, there's no indication he did that.  So any Fifth

10  Amendment privilege which might have attended relative to his

11  depositions was waived.

12          Now the e-mail goes on -- and I see no reason for a

13  continuance, certainly, and would not grant one on the basis of

14  that e-mail and this letter that I have.  The government

15  references also in the e-mail that they may wish to introduce

16  this letter that I just read under Rule 807, the residual

17  exception.

18          Well, there are certain requirements vis-a-vis that

19  rule, and it is premature to consider them at this time, and I

20  don't know that plaintiff's counsel has had an opportunity to

21  even consider that.

22          So the implication apparently is that government

23  counsel doesn't want to counter-designate based upon its ethics

24  rules.  So as I see it his deposition as now to be proffered by

25  the plaintiff will simply come into evidence at the trial for

1     whatever it's worth.

2               Mr. Geier, do you disagree with this analysis?

3               MR. GEIER:  Yes, your Honor.  The Court apparently has

4     made up its mind.  We have been advised by --

5               THE COURT:  No.  I just did an analysis and want you

6     to try to poke holes in it.

7               MR. GEIER:  Sure.  Your Honor, we received this letter

8     from Mr. Fischer.  We contacted Mr. Fischer.  Mr. Hallett

9     contacted Mr. Fischer.  We have a formal motion that we can

10    file with the Court with the declaration authenticating the

11    letter and the conversations with Mr. Fischer.

12              Mr. Fischer advised us that if we sought his

13    testimony, either live or somehow before the Court, because

14    obviously we wanted to put him before the Court, that he would

15    decline to testify at that point and would assert his Fifth

16    Amendment rights.

17              THE COURT:  If he were called as a live witness, you

18    mean.

19              MR. GEIER:  That's correct.  Or if we sought to

20    take -- if we obtained leave to take his deposition, that he

21    would refuse to testify as well in light of the fact that he

22    is, according to Mr. Fischer, working with -- or trying to work

23    an immunity deal, as Mr. Fischer told us, with the U.S.

24    Attorney's Office, and that Mr. Krieger is out of the country

25    presently and would still continue to review his deposition as

1    the letter said.

2              So what we have is the representation in the letter --

3              THE COURT:  He only has 30 days to review his

4    deposition.

5              MR. GEIER:  But, your Honor, what we're faced with --

6    under Rule 30 I understand exactly where the Court is coming

7    from on that.  But on a different level here, the witness has

8    advised us that his testimony, and the testimony that's

9    important as one of the issues in this case, is this

10   profit-driven or is this tax-driven, and the plaintiffs have

11   relied heavily in citing in their findings of fact, conclusions

12   of law, and said that this is profit-driven based upon

13   Mr. Krieger, and cited his deposition extensively.

14             Plaintiff's expert has relied on Mr. Krieger.  This

15   Court has granted -- plaintiffs cited to this Court

16   Mr. Krieger's testimony regarding the profit motive in seeking

17   summary judgment, which this Court granted, and in granting

18   relied in part on the testimony and cited to the testimony of

19   Mr. Krieger.

20             Now that this witness before trial, not after the

21   fact, has come forward and said, What I said is not correct.

22   There are inconsistencies.  And as counsel in this letter

23   points out, your Honor, in page 2 in the final paragraph it

24   refers to "if there are other specific areas in which there are

25   material inconsistencies" thus, suggesting very clearly that

1  the inconsistencies in the testimony specifically identified,

2  that is, whether this was profit motivated or not, this

3  transaction, is now called into strong question.  In fact the

4  reason for this letter is to tell us that that testimony is

5  incorrect.

6        And so the testimony about the motivations is

7  inextricably intertwined with not only what the Court has

8  already ruled on, but what testimony will be heard at trial.

9        And we have consulted -- and I understand it's not

10  determinative of what this Court would do, but we have

11  consulted our ethics people and provided a copy of the letter;

12  and their response is that given this letter we cannot present

13  the testimony of Mr. Krieger at this point.

14        And I think if we are trying to get to the right

15  result and have learned that the central premise of this case,

16  at least one issue -- there are many other issues, but one of

17  the issues that the plaintiff is relying on, we ought to have

18  the ability to secure the correct and proper testimony of a

19  witness who has recanted.

20        There also is --

21        THE COURT:  Wait a minute.

22        MR. GEIER:  Sure.

23        THE COURT:  So you want to take further deposition or

24  testimony from Mr. Krieger, but he through his lawyer says he

25  would assert the Fifth Amendment.

1          MR. GEIER:  Your Honor, that's absolutely correct.

2   His lawyer said to us that he is attempting and has -- I think

3   in his words have given over 95 -- or 95 percent of the

4   information that the U.S. attorneys are seeking from him, and

5   that he can't predict a time line, but he would assert the

6   Fifth -- this is what counsel is saying.  We can certainly try

7   to take the deposition, regardless of that representation, but

8   has indicated that he will testify obviously if an agreement is

9   reached with the U.S. Attorney's Office.

10          I can't represent to this Court anything more than

11   that.

12          THE COURT:  Sure.

13          MR. GEIER:  We've confronted this issue, your Honor,

14   with respect to the Stein criminal trial and another criminal

15   investigation.  This one, as the Court may look at in the first

16   paragraph, refers to an Ernst & Young investigation, which was

17   not the basis of our request for relief --

18          THE COURT:  And that witness was Tracie Henderson.

19          MR. GEIER:  Well, there was Raymond Ruble as well, the

20   attorney who wrote the opinion letter, Mr. Sala's accountant,

21   Tracie Henderson, and now we have the individual who entered

22   into the trades that were relied upon to create the tax loss

23   that is at issue before this Court.

24          So from our perspective -- we had designated

25   testimony, and we were going to proceed with the video.  We

1    can't do that, and, you know, that could be subject to

2    question.  Plaintiffs have to make their own call with respect

3    to that, but we can't.  And I think in fairness to us, given

4    the representation of a witness who is both an expert and a

5    fact witness for the plaintiffs, who has been relied upon by

6    their expert witness, that when counsel for a witness seeks to

7    write a letter such as this and referred to material

8    inconsistencies and referred to one that -- you know, that is

9    relied heavily upon that is the motivation for the transaction,

10   and the objective motivation for the transaction, which this

11   Court will have to confront, it seems to me that what we're --

12   well, what we're asking for, your Honor, is the ability to not

13   allow this testimony to go forward as it is and find out from

14   Mr. Krieger exactly what his testimony is now.

15        Obviously that may be subject to question regardless,

16   given what he's already testified to, and that's something that

17   this Court would have to weigh and confront and see what is.

18        This is a fairly strong statement, and it's a fairly

19   strong statement as to the ultimate -- an ultimate issue -- one

20   ultimate issue in the case.  And it's been cited so

21   extensively, you know -- I mean plaintiffs have relied on this

22   in their findings of fact, conclusions of law.  They indicate

23   that the purpose was for profits, and they cite many, many

24   pages of Mr. Krieger, its -- I think even just paragraph 48 of

25   their findings of fact have extensive cites to Mr. Krieger for

1   this very point.

2           And while a witness would have 30 days to review, if a

3   witness comes before a tribunal, as would be a witness'

4   obligation, and says, My testimony may not be correct -- or is

5   inconsistent materially with what information I provided in a

6   criminal investigation, it seems to me that pause ought to be

7   given to allow that, and especially since the other witnesses,

8   and particularly the experts, are intertwined with that.  And

9   we're obviously -- our hands are tied by what we think are our

10  ethical constraints.

11          And we have a motion, we can file it, but the only

12  thing that the motion may add is we've put in a case cite, a

13  Supreme Court of Colorado case, that deals with the ethics

14  issue, which is not before this Court in terms of making its

15  decision.  But I think we find ourselves in a really troubling

16  spot, and it seems to me it's one that would -- that a solution

17  would be to allow us to try to present the full testimony to

18  the Court.

19          THE COURT:  Yeah, but he says he's going to take the

20  Fifth Amendment.

21          MR. GEIER:  One, he's out of the country; two, his

22  counsel has represented to both sets of counsel here that he

23  would presently assert, that's correct, your Honor, that this

24  day he would.  He's told us the reason why.

25          THE COURT:  It is too late with regard to the

1    deposition, that's clear.

2           MR. GEIER:  Well, but -- that's right, but he has come

3    forward -- a witness has come forward, as we would hope

4    witnesses would do when they've given testimony that they're

5    now worried about, and said, My testimony is wrong and it's

6    problematic.

7           Sometimes these courts are confronting it -- courts

8    are confronting this after the fact, Rule 60, but here we have

9    the opportunity to address it beforehand.  And given that other

10   witnesses have relied on this testimony in reaching their

11   conclusions, it seems like an opportunity ought to be given to

12   make sure that this Court hears what is the correct or present

13   testimony of the witness who is backing away from -- very

14   strongly backing away.

15          And as counsel says "other material inconsistencies."

16   Obviously in representing a client you don't want to make

17   pejorative allegations with respect to your own client.  And I

18   think the reference to "material inconsistencies," and other

19   ones, and the reason for this letter is to alert this Court so

20   that something could be done in advance.

21          THE COURT:  Do you have the motion?

22          MR. GEIER:  I believe I have a copy with me, and we

23   would file it electronically after.

24          THE COURT:  Do you have a copy for plaintiff's

25   counsel?

1          MR. GEIER:  I believe that I do.

2          THE COURT:  I would like to take a look at it.

3          MR. GEIER:  Your Honor, I have a motion and a

4    declaration.  Can I hand a copy to opposing counsel?

5          THE COURT:  Sure, please do.

6          MR. GEIER:  And to your courtroom deputy.

7          THE COURT:  I hope Mr. Fischer knows where out of the

8    country he may be.

9          MR. GEIER:  Your Honor, my understanding, and counsel

10   at this table can correct me if I'm wrong, he was in Dubai, and

11   then traveling to -- he has a residence in Dubai, but he was in

12   Korea this past week.  So he is --

13         THE COURT:  Mr. Hallett?

14         MR. HALLETT:  I am going to defer to Mr. Chicoine on

15   this one, your Honor.

16         THE COURT:  Mr. Chicoine.

17         MR. CHICOINE:  Chicoine, your Honor.  A few brief

18   comments.

19         First, I think, your Honor, we need to put this in

20   perspective.  Counsel gives the impression that Mr. Krieger on

21   his own, as sometimes witnesses do, come forward and state that

22   they've made material inconsistent statements in a prior

23   deposition.  That, your Honor, I submit did not happen here.

24         What did happen?  Well, first of all, your Honor, as

25   you've observed, there have been many days of depositions taken

1    of Mr. Krieger with his counsel present, and he was

2    cross-examined.  Subsequent to that the U.S. Attorney's Office

3    talks to him.  Under what circumstances, we don't know.  And

4    now supposedly after those discussions Mr. Krieger's lawyer

5    sends a letter.

6          Now what does that lawyer say?  I heard counsel say --

7    and if you look at this motion it states in the second

8    paragraph, "Mr. Fischer advises the parties that the deposition

9    testimony provided by Mr. Krieger in this case is

10   inconsistent."

11         If one looks at the letter, your Honor, it makes no

12   such statement.  It is a vague letter.  And if you start on the

13   second paragraph, it states:

14         "Having some time to consider questions," after he was

15   confronted by the U.S. Attorney's Office, and who knows what

16   kind of discussions took place there, "it appears," that's what

17   it says, "it appears Mr. Krieger provided information to the

18   United States government."  It doesn't say in this case.

19         And what does it say?  It says "that may be

20   inconsistent."  It doesn't say as counsel indicated "is

21   inconsistent."  It says "it may be inconsistent with

22   information," it doesn't say what, "that was provided in the

23   depositions."

24         Now counsel points out that supposedly it went to

25   Mr. Krieger.  It certainly suggests it went to Mr. Sala and

1   Mr. Krieger's profit motive, but it doesn't say that.

2           What does it say?  It says, for example, "it is now

3   Mr. Krieger's view."  Now what is his view?  Does Mr. Krieger

4   have any personal information to offer a view?  He states that

5   it is his view "based upon his review under the circumstances

6   that the programs."

7           Now Mr. Sala was only in one program, Deerhurst.  So

8   we don't know exactly what programs were discussed.

9           "In New York by Mr. Krieger under a criminal

10  investigation relating to."

11          This is hardly something of a statement, a clear

12  statement that there were false representations.

13          And counsel argues that there was potentially fraud

14  and perjured testimony.  He indicates that in his

15  communications which were submitted to the Court.

16          Now we take our ethical obligations seriously.  The

17  government is not the only one that worries about the ethics of

18  these things.  Our position is that the government under these

19  circumstances when they have talked to the man after the

20  deposition now raises this whole issue -- and, your Honor, we

21  also called Mr. Fischer, and we asked Mr. Fischer

22  specifically -- and in fact we sent a letter to Mr. Fischer on

23  advice of our ethics adviser, and specifically asked:  Were

24  there to your knowledge any false statements of fact, material

25  false statements of fact made in that deposition?  Mr. Fischer

1   told us that he was unaware of any such statements.

2          Mr. Hallett and I had a conversation with him on the

3   28th the day after we received this letter.  Mr. Hallett had a

4   conversation with him -- Mr. Fischer on the next day, the 29th,

5   and specifically asked him again:  Are you aware of any false

6   material statements or perjured -- I believe it was perjured

7   testimony in that deposition.  And we were told no.  We then

8   asked that he inform us if he's aware of any such information.

9          Now counsel talks about the requirement under the Code

10  of Professional Responsibility in Colorado, which is 3.3.  If

11  one looks at 3.3 -- and here, your Honor, is where I find

12  Mr. Fischer's comment to be appropriate.  Mr. Fischer told us

13  also two things:  One, he thought this was much to do about

14  nothing; and, secondly, he said nothing in connection with any

15  type of fraud allegations that had to do with Deerhurst.

16         Now if you look at 3.3, it says, "A lawyer shall not

17  knowingly" -- I can provide a copy of this to your Honor, under

18  3, "offer evidence that the lawyer knows to be false."

19         Now under these circumstances I submit, your Honor,

20  that neither counsel for the government nor counsel for the

21  plaintiff knows of any falsity.  We do not know that evidence

22  that is being offered in that testimony in those depositions

23  when the man was cross-examined for hours by their counsel for

24  the precise reason to determine if there were any

25  inconsistencies, that there is anything that is false.

1          It then goes on to say:  If a lawyer's client or a

2    witness is called and has offered material evidence and we

3    become -- or that lawyer becomes aware of a falsity, he or she

4    shall take remedial measures, including disclosing to the

5    Court.

6          What does that suggest?  That suggests if subsequently

7    we find out, then there might be remedial measures, but the

8    remedial measures, certainly aren't excluding this testimony,

9    your Honor.

10          THE COURT:  Well, it could be, I suppose.

11          MR. CHICOINE:  Well, I suppose it depends on what it

12    says.  But this letter doesn't point out to any kind of false

13    statement.  We sent a confirming letter, and we provided a

14    copy, and we haven't received any kind of indication of any

15    false material statement of facts.  And that's what the rules

16    go to, your Honor.

17          The other point about this letter, if you actually

18    look at the letter, because counsel -- and we can get to that

19    later, counsel has indicated that they might want to offer it

20    in evidence.

21          First of all, it's hearsay on hearsay.  I mean it's

22    Mr. Fischer's statement of what Mr. Krieger's view was that

23    supposedly occurred at several extensive interviews.

24          THE COURT:  Well, it may be hearsay on hearsay, but it

25    may also be construed to be an admission against penal

1    interests on the part of Mr. Krieger, in which case the hearsay

2    on hearsay rule would not exclude it because it would otherwise

3    be admissible.

4              MR. CHICOINE:  My first point, your Honor, was --

5              THE COURT:  I mean the relevancy would be toward

6    credibility.

7              MR. CHICOINE:  I suppose, but my first point was, your

8    Honor, that according to Mr. Fischer, he wasn't present at all

9    of those interviews, he was present at maybe one or two.  So he

10   doesn't have the personal knowledge to state whether or not

11   there in fact was some inconsistency.  He just says there may

12   be.  We don't even know what it is.

13             And under the circumstances, your Honor, I don't

14   believe that that exception applies.  An exception that they

15   are referring to, the residual exception under Rule 807, is

16   used in very rare and exceptional circumstances, because this

17   kind of information is the kind of information that really, if

18   it doesn't meet the other tests, shouldn't be admitted.

19             Now if the Rules of Professional Conduct don't

20   indicate that there is a specific problem, because there's

21   nothing specifically to indicate there's a false statement of

22   material fact, then certainly, your Honor, if those aren't met

23   our position is that this Court should not take the extreme

24   measure of excluding Mr. Krieger's testimony, who the

25   government admitted whose testimony could be used in this case

1    by video deposition.

2              THE COURT:  Well, let's go ahead -- Deb, we'll file

3    the motion and the declaration.  Of course this is not the

4    first motion for continuance or stay.  I mean it's been a

5    repeated proclivity of the government in this case to

6    continually attempt to continue the trial of the case for one

7    reason or another.

8              The letter is vague and makes no specific reference to

9    any part of the deposition which Mr. Krieger recants.  That is

10   to say that it is couched in terms of "maybe."  There will be

11   ongoing review.  And it is simply not sufficient to continue

12   the trial of the case.

13             Counsel are officers of this Court, and I can

14   appreciate if government counsel has an ethical concern about

15   in any way endorsing any part of Mr. Krieger's testimony, that

16   they should do what they believe to be ethically correct.  As

17   officers of the Court plaintiff's counsel acknowledges under

18   the local rules -- or the Colorado Rules of Professional

19   Responsibility their duty not to present testimony they know to

20   be false.

21             So what we have are two depositions taken in October

22   2006 and April 2007 under oath.  The deponent had an

23   opportunity and right under federal Rule 30(e) to review those

24   depositions.  Deponent was represented by counsel of the same

25   firm as the attorney writing this February 27, 2008, letter.

1          To the extent the deponent, Mr. Krieger, may have had

2   a right to exercise a Fifth Amendment privilege, that right was

3   waived vis-a-vis these two depositions.

4          There comes a time under the heavens where there is a

5   time for everything.  Or as the saying goes, it's time to reap

6   and it is time to sow, and that time has arrived in this case.

7          To the extent the deposition is introduced into

8   evidence without the government's imprimatur, it is introduced

9   into evidence with the imprimatur of plaintiff's counsel.  And

10  the Court will consider it for whatever it's worth.

11         You see, to grant the continuance -- and the timing is

12  frankly suspect.  To grant the continuance would mean that

13  government counsel and plaintiff's counsel would then seek to

14  redepose Mr. Krieger when they can eventually get him before a

15  court reporter, at which time he may or may not, it's

16  speculative, choose to exercise a Fifth Amendment privilege.

17         Now it is said that his testimony forms a basis for

18  plaintiff's expert testimony.  So to grant the continuance

19  would basically be an open-ended continuance based upon a vague

20  and speculative letter, which would also, depending on how

21  Mr. Krieger presented that deposition, reopen the expert

22  evaluation of the circumstances of this case.

23         It would scramble the egg, and we would basically be

24  back to square one, after all of the time, effort, expense and

25  preparation for trial of this case, which is ready to go.

1      So I'm going to deny the motion.  Should the letter be

2  proffered during the trial, I will permit the proffer, even

3  though it would not be timely endorsed, and I'll consider the

4  807 arguments at that time.

5      MR. GEIER:  May I speak, your Honor?  Not -- just to

6  ask for a separate request for relief, would the Court consider

7  keeping the record open in this case to allow us time to secure

8  the testimony?  Because that --

9      THE COURT:  Well, what we're going to do is we're

10  going to start the trial Monday morning.

11      MR. GEIER:  Understood.

12      THE COURT:  We'll take the evidence.  Obviously I'm

13  not going to be able to issue a bench ruling, it's going to

14  take some time to prepare and issue findings of fact,

15  conclusions of law and judgment.

16      There is of course an opportunity under the federal

17  rules for either losing party or losing party in part and

18  prevailing party in part to file a motion to alter or amend the

19  findings and conclusions or for new trial.  Now there are

20  certain deadlines.  I think Rule 60 would specifically address

21  the circumstance where a witness is shown to have provided

22  perjured testimony.

23      So all of what would occur after the trial would be

24  governed by the Federal Rules of Civil Procedure.

25      MR. GEIER:  Your Honor, I understand that.  I am well

1    aware of Rule 60 and that avenue, and I just wanted to be clear

2    with my request at this time, because obviously a Rule 60

3    request would come at the end and after the judgment is

4    entered.

5            THE COURT:  Well, what is your request?

6            MR. GEIER:  My request is that before this Court

7    issues its ruling that if Mr. Krieger is able to give testimony

8    or is willing to give testimony, that we could come back to

9    your Honor and ask for that so that -- before you issue your

10   ruling you have a chance to --

11           THE COURT:  You're asking for an advisory opinion at

12   this point based upon what may or may not happen.

13           MR. GEIER:  Correct.

14           THE COURT:  As I told you what we'll do is we'll

15   complete the trial, we'll go to work on the findings and

16   conclusions, and we're going to proceed one foot in front of

17   the other forward, always forward.

18           MR. GEIER:  Thank you, your Honor.

19           THE COURT:  Okay.  What I have is an exhibit list

20   dated March 5, 2008, designated as defendant's list.  And I

21   note there are designated, and I assume the J stands for Joint

22   Exhibits 1 through 50.  I assume since they're designated as

23   joints exhibits those exhibits can be admitted.  Correct,

24   Mr. Hallett?  Mr. Hallett, or whoever is taking this?

25           MS. FLANDERS:  Yes, your Honor.  Also as well as the

1    other -- I believe there's only a few outstanding.  We have

2    agreed to all of the government's exhibits at this time.

3          I just have one question.  I think one is still on

4    here that -- but for the most part I believe that all of these

5    we have agreed will be admissible, but for I think one right

6    now.

7          THE COURT:  Which one?

8          MS. FLANDERS:  It is.  Let's see, I believe it's

9    No. B70, your Honor.

10         THE COURT:  B70.  If I didn't specifically deny the

11   motion to continue, I will do so now.

12         MS. FLANDERS:  Yes, sir, B, as in Bob, 70.

13         THE COURT:  B as in bravo.  You've never been in the

14   military?

15         MS. FLANDERS:  I haven't, sir.  Sorry.

16         THE COURT:  B70, the Barloon letter.

17         MS. FLANDERS:  Yes, your Honor.  It's our

18   understanding that the government was withdrawing that exhibit.

19         MR. GEIER:  Withdrawn.

20         THE COURT:  Withdrawn.  Well, that answers that.

21         MS. FLANDERS:  So, your Honor, we do agree that all of

22   these at this point in time are admissible.  And I did just get

23   this list today, so I haven't had a chance to make sure

24   everything is in, but I think this is an accurate reflection of

25   what we've all agreed to.

1        And, your Honor -- sorry.

2        THE COURT:  The exhibits designated in the March 5,

3    2008 list are admitted.  Do you have a separate list?

4        MS. FLANDERS:  That's actually what I was just getting

5    to, your Honor.  It looks like it's not a part of this.  I

6    think there was a misunderstanding.  I apologize.  I thought we

7    were going to have a completed list.  I think there was some

8    back and forth with Connie, so we will submit that right after

9    this hearing.

10       We do have a revised list, and we worked with counsel,

11   and at this point in time we've withdrawn some of our exhibits

12   and they've withdrawn most of their objections.  I believe

13   there's only two outstanding objections to our exhibits at this

14   point in time.

15       THE COURT:  If you can prepare that list in the format

16   as submitted by the government -- or the government's March 5

17   list reflecting your stipulations and the objections before

18   Monday, I would appreciate that very much, because I would be

19   working over the weekend.

20       MS. FLANDERS:  Yes, your Honor.  Thank you.

21       THE COURT:  Okay.  I have your trial memoranda.  We'll

22   consider the issues there, as they may present themselves at

23   the trial.

24       So you will be bringing the hard copy of the

25   depositions with you to court on Monday, right?

1          MS. FLANDERS:  Your Honor, I have them today, if you

2     would like the copies today.  I would like to lighten my load,

3     if you want them.

4          THE COURT:  Well, you know, the old saying, it all

5     rolls downhill.  Okay.  Unlighten before you leave.

6          MS. FLANDERS:  Thank you, your Honor.

7          THE COURT:  All right.  Anything further from the

8     plaintiff?

9          MR. HALLETT:  Just looking forward towards stepping

10    towards the goal line, your Honor indicated previously we would

11    have oral argument.  Do you see just plaintiff first and then

12    defendant or do you see rebuttal?

13         THE COURT:  Where?  The opening statement or oral

14    argument?

15         MR. HALLETT:  No, I'm talking about closing arguments.

16         THE COURT:  Closing arguments.  Let's see what the --

17    why don't your proposed findings and conclusions fulfill that

18    purpose?

19         MR. HALLETT:  In lieu of a closing argument?

20         THE COURT:  In lieu of lengthy, protracted closing

21    argument, yes.

22         MR. HALLETT:  I always try to be brief, your Honor.  I

23    just think -- logistically that might be difficult.  I take it

24    you're seeing something --

25         THE COURT:  Well, look, of course I will entertain

1  brief opening statement.  I am going to go through yet again

2  your proposed findings and conclusions very, very closely this

3  weekend.

4       So in opening statements, if you wish to give one, try

5  to keep it brief and entertaining.  With regard to your closing

6  arguments, if you want to give closing argument I will

7  entertain closing argument if you promise to entertain.

8       Now since the plaintiff brought the Complaint, you go

9  first, then there is a rebuttal -- or a response by the

10  defendant, and then you get a rebuttal.  You get the last word

11  because you have the burden of proof generally speaking on the

12  guts of the case as to whether or not Deerhurst constituted a

13  legitimate investment enterprise or rather an abusive tax

14  shelter through the purchase and sale of long and short-term

15  foreign monetary instruments, and whether Mr. Sala, as I expect

16  he will testify, had an expectation of profit, and whether it

17  is an expectation of profit that is objective under the

18  circumstances, the circumstances themselves being somewhat

19  Byzantine and complex.

20       Now that wasn't very entertaining.

21       MR. HALLETT:  I'm intrigued with Byzantine and

22  complex.  We'll try to make it simple.  Was your Honor

23  suggesting that at the close of the trial we be prepared for

24  findings and conclusions or some short time after?

25       THE COURT:  Oh, no.  Give me your best shot at the end

1    of the trial.

2          MR. HALLETT:  All right.

3          THE COURT:  And then we'll give you our best shot

4    after an opportunity to read and go through all of the

5    depositions on their hard copy, and an opportunity to review

6    and reflect on the testimony presented at trial, and the law

7    that will apply to the facts as the Court will find them to be.

8          MR. HALLETT:  Would it be agreeable with your Honor in

9    the closing argument -- as your Honor is aware there are a

10   number of issues, if it's convenient that we think we may -- my

11   partner and I may split that argument, not duplicating?

12         THE COURT:  Sure.  How much time, assuming you are

13   exquisitely prepared and have probably already drafted your

14   closing argument, how much time do you think you will need for

15   closing argument?

16         MR. HALLETT:  You are going to hold me to this one

17   now?

18         THE COURT:  I hold all lawyers to time limits on

19   closing that I set.

20         MR. HALLETT:  Your Honor, my goal -- the plaintiff's

21   goal is to boil this down, and I think it can be boiled down

22   simply.  The hesitation is there a number of legal issues.  But

23   I would have every anticipation that the closing argument would

24   be an hour or less.

25         THE COURT:  Doesn't sound too bad.  You know, what I

1    do with a jury is I negotiate, depending on the nature of the

2    case, how much time counsel thinks you're going to need, and I

3    give equal time to both sides.  I have been known in front of a

4    jury to cut an attorney off in mid sentence, because I think

5    the arguments ought to be fairly timed.  But this is a bench

6    trial.  And I never interrupt lawyers in their closing

7    arguments before juries by my own questions, but I have been

8    known to do that in a bench trial.  So I have a reasonable

9    degree of flexibility on that part of the trial process.

10          MR. HALLETT:  I think I understand, your Honor.  I

11   appreciate it.

12          THE COURT:  Okay.  Anything further from the defense?

13          MR. GEIER:  Yes, your Honor.  The government, subject

14   to the Court's approval, obviously, would probably use for live

15   witnesses, having the exhibits flashed on the electronic

16   screens --

17          THE COURT:  That's why we have all these bells and

18   whistles.

19          MR. GEIER:  I just wanted to make sure with a bench

20   trial this Court didn't have any problem with shifting between

21   one or the other.

22          THE COURT:  Oh, no.  This stuff is wonderful.

23          MR. GEIER:  Okay.

24          THE COURT:  You know, I used to be a member of the

25   flat earth society, but I've come around.  It's wonderful as

1    long as it works, but you should be prepared that if it breaks

2    down we don't stop.  If it breaks down you use a No. 2 lead

3    pencil and a pad of paper.  There are old-fashioned ways of

4    doing things.  So you've got to be sure you have hard copy here

5    too.

6             MR. GEIER:  We will, your Honor.  I just wanted to

7    make sure.  Thank you.

8             We don't have anything else.

9             THE COURT:  Ms. Flanders, you were standing to your

10   full height.

11            MS. FLANDERS:  I just wanted to know if you were

12   spending your time this weekend on the pretrial memorandum, on

13   our memorandum --

14            THE COURT:  It's fairly short.

15            MS. FLANDERS:  Yes, and the last issues have been

16   resolved, so I don't want you to spend too much time.  On

17   exhibits proposed by the government, those issues have all been

18   resolved now.

19            THE COURT:  Let me get that.

20            MS. FLANDERS:  It's on page 3 of plaintiff's pretrial

21   memorandum.

22            THE COURT:  Plaintiff's pretrial.  And that is now

23   moot?

24            MS. FLANDERS:  Those have been resolved, your Honor.

25            THE COURT:  The government raised a question about

1    Ms. Tang.  I guess that's moot too?

2            MS. FLANDERS:  Yes, your Honor.

3            THE COURT:  All right.  It's never too late to settle

4    the case.  But maybe it is.  As I said if there is a time to

5    try a case, and the time is now -- well, the time is Monday.

6            Okay.  Anything else?  All right.  We'll be in recess.

7        (Proceedings concluded at 4:03 p.m.)

8                    **REPORTER'S CERTIFICATE**

9        I certify that the foregoing is a correct transcript from

10   the record of proceedings in the above-entitled matter.  Dated

11   at Denver, Colorado, this 17th day of June, 2008.

12

13                                _____

14                                      s/Gwen Daniel

15

16

17

18

19

20

21

22

23

24

25