IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 05-cv-00636-LTB

CARLOS E. SALA, and
TINA ZANOLINI-SALA,

      Plaintiffs,

v.

UNITED STATES OF AMERICA,

      Defendant.

_____

**ORDER**
_____

This action concerns a claim by Plaintiffs Carlos E. Sala and Tina Zanolini-Sala (referred to herein as "Sala," since Tina Zanolini-Sala is a named plaintiff only because the Salas filed a joint tax return) for a refund on Sala's 2000 federal taxes. An eight-day trial to the Court was held commencing March 10, 2008, and concluding March 19, 2008. The two claims at issue were Sala's entitlement to a refund of the taxes, penalties, and interest he paid on his 2000 income and—to the extent any refund was due Sala on putatively "excess" interest—the Government's entitlement to an accuracy-related penalty owed, but not assessed. After a review of all the evidence presented both at trial and by deposition, I found in favor of Sala and against the Government on all claims and counterclaims on April 22, 2008 [**Docket # 246**]. The Government now moves for a new trial [**Docket ## 258, 259**]. Oral argument would not materially assist the determination of this motion. After consideration of the motion, the papers,

and the case file, and for the reasons stated below, I DENY the Government's Motion for a New Trial [**Docket # 258**].

## I. BACKGROUND

The facts of this case are well-summarized in my April 22, 2008, Findings of Fact, Conclusions of Law, and Order [**Docket # 246**] and I need not repeat them here. Relevant to this motion is the videotaped deposition testimony of Andrew Krieger—the principal owner and manager of the Deerhurst foreign currency investment program ("Deerhurst Program") at issue in this case—played over three days beginning March 11, 2008, and concluding March 13, 2008.

Before Krieger's deposition was played, I heard argument from the Government objecting to the use of Krieger's video deposition—which was taken on October 26 and 27, 2006, and April 17, 2007—on the basis of a February 27, 2008, letter from Krieger's counsel, Jay Fischer ("Fischer letter") [**Docket # 229 p. 9**]. The Fischer letter stated Krieger—subsequent to the taping of his deposition—was questioned extensively by the Government in regards to a criminal investigation in another matter. The Fischer letter stated:

> Having had some time to consider questions raised in the Sala deposition, it appears Mr. Krieger provided information to the United States government that may be inconsistent with information provided in the depositions. For example, it is now Mr. Krieger's view, based upon his review and reevaluation of the circumstances, that the programs in which Mr. Sala was involved were essentially tax driven, as opposed to profit driven. This, of course, does not change any of Mr. Krieger's testimony as to what Mr. Sala told Mr. Krieger regarding his (Sala's) motivation nor does it affect any testimony provided in the deposition as to the lack of any knowledge on Mr. Krieger's part as to the ultimate utilization by Sala of any gains and/or losses in the preparation of any tax returns.

After reviewing the Fischer letter and considering the arguments made by counsel for both parties, I concluded the Fischer letter—which clearly was hearsay at any rate—amounted to no

more than speculation and was ambiguous as to which portions of Krieger's deposition, if any, were "inconsistent." I also noted that the circumstances leading to the letter were troubling, both because the letter was procured as the result of a criminal investigation unrelated to this case and because the eve-of-trial timing of the letter was suspect in light of the Government's repeated efforts to delay, postpone, stay, and otherwise put off the trial of this case. Accordingly, I overruled the Government's objection and proceeded with the video.

The Government now provides a sworn statement from Krieger dated May 22, 2008, recasting portions of his videotaped deposition testimony as "false, misleading and incomplete." [**Docket # 260-4**]. Krieger states he knew his deposition to be "false, misleading and incomplete" before the Fischer letter was sent, but he "was not willing to be re-interviewed by the parties or provide sworn testimony in this case at that time because [his] truthful statements would have incriminated [him]." Krieger states he informed Fischer of both specific and possible inconsistencies and these inconsistencies were noted in a letter—undisclosed to the Court until now—sent to Sala and the Government on March 12, 2008. At that time, however, Krieger was still unwilling to be re-interviewed or provide sworn testimony.

On May 21, 2008—after entry of my Findings of Fact, Conclusions of Law, and Order in this case, but before the May 27, 2008, entry of Judgment—Krieger executed a non-prosecution agreement with various Government offices—including the United States Attorney's Office ("USAO"), the Tax Division of the United States Department of Justice, and the Internal Revenue Service—that required him "to provide truthful information and testimony about [his] activities involving tax shelters, and . . . provides that if [he] do[es] so, [he] will not be prosecuted for those activities or for the false testimony [he] gave in this matter." Krieger stated

he was advised not to provide any sworn testimony until the non-prosecution agreement was signed, and, in any event, he was living in Dubai at least from August 2007 through the date of the trial.

Addressing the "false, misleading and incomplete" portions of his deposition, Krieger now asserts the following is the actual "truthful information" regarding the Deerhurst Program—referring to the basis-generating trades as the "tax trades":

a. The primary purpose of the tax trades was to generate tax losses, not positive economic returns. The tax benefits were not "incidental." But for the need to generate tax losses, Krieger would not have made the tax trades. Krieger also had predetermined to sell the tax trade positions by year end regardless of market conditions;

b. Krieger was told by Michael Schwartz—a promoter of the Deerhurst Program—that he was to purchase roughly equal amounts of long and short options with premiums approximately equal to the tax losses sought in order to effectuate the tax losses. Krieger would not have entered into trades with the face amounts of the tax trades but for the need to purchase trades with premiums equal to the tax losses sought;

c. If Krieger had charged Sala the transaction costs normally charged by Refco, the trades would have been cost prohibitive. Krieger utilized his Beckenham Trading Company to assume the risk of the trades in order to decrease the cost to the investors and to help ensure profitability by year's end;

d. Krieger could not have separated the long and short options due to the size of the premiums relative to the amount of capital in the account;

e. The test period in 2000 was not a realistic test of Krieger's trading program and was not

      intended to acclimate investors to foreign exchange trading, but was intended only for disguising the tax benefits;

f.     The structure of the Deerhurst Program—including the use of an S corporation and a general partnership—was not designed for any purpose other than the creation of tax losses. The Deerhurst Program was executed in a series of predetermined series of steps orchestrated by Mr. Schwartz for the purpose of creating a tax loss;

g.     There was no business purpose for liquidating the test accounts at the close of 2000 other than the generation of tax losses. Absent consideration of the tax losses, the positions in the test accounts would not have been prematurely unwound;

h.     Krieger was an investor in the Deerhurst Program and his primary motive for so participating was to generate a 2000 tax loss.

Krieger also asserts he "purposely avoided all discussions of tax matters and purposely downplayed the tax motives behind the tax trades or the 'investment program.'" He claims he was "aware that the primary motivation for entering into these tax trades and the 'investment program' was to generate tax savings."

In light of Krieger's May 22, 2008, declaration, the Government now seeks a new trial under FED. R. CIV. P. 59(a), or, in the alternative, amended findings and conclusions under FED. R. CIV. P. 52(b) and/or 59(e).

## II. NEW TRIAL UNDER FED. R. CIV. P. 59(a)

A party seeking a new trial under Rule 59(a) on the basis of newly discovered evidence must show: (1) the evidence was newly discovered since trial; (2) the moving party was diligent in discovering the new evidence; (3) the newly discovered evidence is not merely cumulative or

impeaching; (4) the newly discovered evidence is material; and (5) that a new trial—with the newly discovered evidence—would probably produce a different result. *Joseph v. Terminix Int'l Co.*, 17 F.3d 1282, 1285 (10th Cir. 1994). On such a motion, if the Court is convinced the prior judgment was based on manifest error of law or fact, it may open the judgment, take additional testimony, amend or make new findings of fact and conclusions of law, and/or direct entry of a new judgment. *Lyons v. Jefferson Bank & Trust*, 793 F. Supp. 989, 992 (D. Colo. 1992). If the Government, as the moving party, cannot meet each of the five inquiries, however, relief under Rule 59(a) is not available.

Although the Government spends the majority of its briefing arguing that the "evidence" is "newly discovered"—a contention that strains credulity in light of the fact that the Government received an itemized letter delineating the content of Krieger's May 22, 2008, declaration as early as March 12, 2008—the Government spends a cursory three sentences arguing the "newly discovered evidence" is, in fact, "new"—that is, that the "newly discovered evidence" is not merely cumulative or impeaching. The Government's neglect in this regard is certainly understandable: a comparison of Krieger's May 22, 2008, declaration with the evidence introduced at trial shows that none of the statements in the former but one—that involving the separability of the long and short options—actually concerns "new" information.

BLACK'S LAW DICTIONARY defines "impeach" as "[t]o dispute, disparage, deny, or contradict" and "impeachment" as "[t]o call into question the veracity of a witness." BLACK'S LAW DICTIONARY 678 (5th ed. 1979). While the Government argues its "intention is not to impeach Mr. Krieger, but rather to present truthful testimony about what transpired in Plaintiff's tax shelter," it cannot escape the fact that many of the statements made in Krieger's May 22,

2008, declaration directly dispute, deny, or contradict—and therefore, by definition, impeach—his video deposition. These statements are: (1) the primary purpose of the tax trades was to generate tax losses, not profits; (2) the purpose of the test period was to generate tax losses, not to acquaint Sala and other investors with the program; (3) the structure of the Deerhurst Program that gave rise to the tax losses had no purpose other than the creation of tax losses; (4) there was no purpose in unwinding the tax trades at the end of 2000 other than achieving tax losses and the positions would not have been unwound prematurely but for the tax losses; and (5) Krieger's primary purpose in participating in the Deerhurst Program was to generate a tax loss in 2000.

"Cumulative evidence" is defined as: "Additional or corroborative evidence to the same point. That which goes to prove what has already been established by other evidence." BLACK'S LAW DICTIONARY 343 (5th ed. 1979). The non-impeaching statements in the May 22, 2008, declaration—with the exception of the one "new" assertion—are cumulative with evidence already in the record. As I noted during the course of trial and in my April 22, 2008, Findings of Fact, Conclusions of Law, and Order ("Order"), the evidence showed: the use of roughly-equivalent long and short options was intended to generate tax losses for the Deerhurst Program participants (Trial Transcript p. 594; Order pp. 3, 29); the Deerhurst GP account was intended from inception to be liquidated at the end of 2000 (Order p. 9); the face values of the tax trades were intentionally structured to mirror the expected tax loss (Order p. 9); the Deerhurst Program was intended to have significant tax benefits (Order pp. 16, 23); Beckenham Trading charged no fee for executing the tax trades (Order p. 21); the fees charged by Beckenham Trading in subsequent years were substantial (Order p. 33); had Krieger charged Sala comparable fees for

executing the tax trades, it would have significantly reduced the economic feasibility of the Deerhurst Program (Order p. 33); and the structure of the Deerhurst Program was ordered around a series of predetermined steps orchestrated by Mr. Schwartz for the purpose of creating a tax loss (Order pp. 3, 8–10, 16–18, 23–26, 29). Accordingly, as to each assertion in Krieger's May 22, 2008, declaration—other than that involving the separability of the long and short options—the third prong of the Rule 59(a) inquiry is not met.

As to the one non-cumulative and non-impeaching statement in Krieger's May 22, 2008, declaration—that Krieger could not have separated the long and short options due to the size of the premiums relative to the amount of capital in the account—the inclusion of this testimony would not have altered the outcome of this case. The Government argued this position strenuously at trial, but even the Government's own expert—self-proclaimed "government contractor" Dr. DeRosa—conceded that separating the long and short options was possible, although impractical or improbable (Trial Transcript pp. 687–88, 823–30). Even if I considered Krieger's "new" testimony to be credible—which seems unlikely due to the suspect circumstances under which his "examples of truthful testimony" now come before me—its inclusion would not produce a different result.

I am also unconvinced that the Government was diligent in attempting to discover the "new" evidence. "The intent of the diligence requirement is to insure litigants do not 'hold back' evidence so as to be granted a new trial if the first trial is lost." *Graham v. Wyeth Labs.*, 906 F.2d 1399, 1417 (10th Cir. 1990). Krieger's declaration states he met with the USAO sometime before leaving for Dubai in August 2007, and informed the USAO that parts of his deposition were "false, misleading, and incomplete." Nonetheless, the Government now says it was unable

to procure a specific recantation until May 22, 2008—a month after my Findings of Fact, Conclusions of Law, and Order was issued and (conveniently) the same day as the deadline for the parties to stipulate to final judgment. This is so—the Government would have me find—despite the Government's awareness of the detrimental nature of the deposition testimony as early as October 2006 and as late as April 2007? This is so despite the Government's demonstrated power to wield the Sword of Damocles to secure a non-prosecution agreement? I think not.

Rather than showing diligence, the timing of this "new" evidence instead implies a deliberate attempt on the part of the Government to further delay and derail this case for tactical gain. Likewise, the Government's mere fig leaf of explanation as to why it did not disclose the March 12, 2008, letter to this Court—despite the fact that the Government was in receipt of the letter while Krieger's video testimony was ongoing—does not show diligence. Considering the timing of the present motion, the circumstances surrounding and content included in Krieger's May 22, 2008, declaration, and the Government's continued efforts to delay the ultimate resolution of this case, I am convinced a new trial under Rule 59(a) is—to say the least—inappropriate.

### III. AMENDMENT UNDER FED. R. CIV. P. 52(b) OR 59(e)

A Rule 52(b) or Rule 59(e) motion to alter or amend a judgment should be entered only to correct manifest errors of law or to present newly discovered evidence. *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997); *Lyons v. Jefferson Bank & Trust*, 793 F. Supp. 989, 990–91 (D. Colo. 1992). Where—as here—the movant seeks to amend the judgment based on additional evidence, the movant must show that the evidence is newly discovered and—if the

evidence was available, but undiscovered, at the time of the decision being challenged—that counsel made a diligent yet unsuccessful effort to discover the evidence. *Comm. for First Amendment v. Campbell*, 962 F.2d 1517, 1523 (10th Cir. 1992). A motion to amend should not be granted where the proposed additional findings of fact are not material to the court's conclusions. *Lyons*, 793 F. Supp. at 991.

"The granting of a motion to alter or amend is an extraordinary remedy which is used sparingly in order to further the strong public policy interest in finalizing litigation and conserving judicial resources." *Torre v. Federated Mut. Ins. Co.*, 906 F. Supp. 616, 619 (D. Kan. 1995). It is well established "that a district court does not abuse its discretion in denying a Rule 59 motion when it is premised on evidence that the [moving] party had in his control prior to the original entry of judgment." *Emmons v. McLaughlin*, 874 F.2d 351, 358 (6th Cir. 1989); *see also Coastal Transfer Co. v. Toyota Motor Sales*, U.S.A., 833 F.2d 208, 212 (9th Cir. 1987); *Taylor v. Texgas Corp.*, 831 F.2d 255, 259 (11th Cir. 1987). In light of my holding that the statements in Krieger's May 22, 2008, declaration were neither new nor newly discovered—and that the Government did not act diligently in any case—amendment under Rule 52(b) or Rule 59(e) is also inappropriate.

## IV. CONCLUSION

Accordingly, the Government's Motion for a New Trial [**Docket # 258**] is DENIED.

Plaintiff is awarded costs.


Dated: July   18  , 2008.

                                                BY THE COURT:

                                                   s/Lewis T. Babcock
                                                Lewis T. Babcock, Judge